# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **OCLC, Inc.,** | **Case No. 2:24-cv-00144-MHW-EPD** |
| **Plaintiff,** | **Judge Michael H. Watson** |
| **v.** | **Magistrate Judge Elizabeth A. Preston Deavers** |
| **ANNA'S ARCHIVE, f/k/a PIRATE LIBRARY MIRROR, MARIA DOLORES ANASZTASIA MATIENZO, and JOHN DOES #1–20,** | |
| **Defendants.** | |

## DECLARATION OF JEFFREY M. WALKER

Jeffrey M. Walker declares the following pursuant to 28 U.S.C. § 1746:

1.  My name is Jeffrey M. Walker.  I am a principal at the law firm of Squire Patton Boggs (US) LLP, which Plaintiff OCLC, Inc. has retained as counsel in the above-captioned matter.

2.  I submit this declaration in support of OCLC's Motion to Serve Defendant Anna's Archive by Email.  I have knowledge of the facts stated herein based on personal knowledge and my review of the documents, files, websites, and other referenced materials.

3.  Defendant Anna's Archive, formerly known as Pirate Library Mirror or "PiLiMi," is a shadow or pirate library.  The individual defendants in this matter own, operate, and/or control Anna's Archive.  Anna's Archive currently utilizes at least twenty-three unique or rerouting domains or website addresses, including annas-archive.org, annas-archive.gs, and annas-archive.se, which appear to be Anna's Archive's three primary domains (the "Primary Domains").

4.  The Primary Domains provide an anonymized, principal email address, annaarchivist@proton.me, under a "Stay in touch" section toward the bottom of the Primary

Domains' home pages. This indicates that Anna's Archive is actively monitoring this email address for general inquiries. Exhibit A is a true and accurate copy of the home pages for the domains annas-archive.org, annas-archive.gs, and annas-archive.se from January 20, 2024.[1]

5. On October 26, 2023, I sent a cease and desist letter on behalf of OCLC to Anna's Archive at this principal email address, requesting that Anna's Archive immediately stop the misuse and distribution of the WorldCat® data that Defendants had illegally hacked, scraped, and harvested. Exhibit B is a true and accurate copy of the October 26, 2023 email and letter attachment. The letter included a request that Anna's Archive take down from its websites all links to OCLC's data, deleting copies of the data, and ceasing its encouragement of others to engage in similar behavior. Exh. B at 2.

6. I received no bounce-back or other error messages in connection with this email.

7. Between October 26, 2023 and November 13, 2023, Anna's Archive deleted its X account (formerly called Twitter), indicating that Anna's Archive had received OCLC's cease and desist letter and was taking actions in response to the letter.

8. In the October 3, 2023 blog post publicizing its illegal hacking, data scraping, and harvesting of WorldCat.org, Anna's Archive announced that it was hosting a "mini-competition to analyze these data" and that "[t]he 3 best submissions by 2023-12-01 will win a year-long membership of Anna's Archive." Exhibit C is a true and accurate copy of this blog post.[2]

---

[1] *Anna's Archive*, Anna's Archive, https://annas-archive.org/, https://annas-archive.gs/, https://annas-archive.se/ (last visited January 22, 2024).
[2] *1.3B WorldCat scrape & data science mini-competition*, Anna's Blog (Oct. 3, 2023), https://annas-blog.org/worldcat-scrape.html (last visited January 22, 2024).

9. To date, Anna's Archive has not announced any winners of this "mini-competition" on its blog or other domains, indicating that Anna's Archive received OCLC's cease and desist letter and was taking actions in response to the letter.

10. Although Anna's Archive took the aforementioned actions shortly after receiving the October 26, 2023 cease and desist letter, suggesting that Anna's Archive received the cease and desist letter, Anna's Archive has not taken down the WorldCat® data or removed its statements actively encouraging others to download and misuse OCLC's data.

11. Through its Primary Domains, Anna's Archive provides another email address, AnnaDMCA@proton.me, also under the "Stay in touch" section on the websites' home pages. Exh. A. Anna's Archive holds this email address out as the address where users can lodge complaints under the Digital Millennium Copyright Act of 1998 ("DCMA") with Anna's Archive or troubleshoot issues with Anna's Archive's "DCMA/Copyright Claim Form." This indicates that Anna's Archive is actively monitoring this email address in order to respond to legal issues related to the DCMA and other copyright laws. Exhibit D is a true and accurate copy of these webpages from January 22, 2024.[3]

12. Anna's Archive also provides the email address AnnaArchivist+security@proton.me on a webpage dedicated to security issues. On this webpage, Anna's Archive invites "security researchers" to "[c]ontact us" with "vulnerabilities in our systems." This statement demonstrates that Anna's Archive is actively monitoring this email

---

[3] *DMCA/Copyright claim form*, Anna's Archive, https://annas-archive.org/copyright, https://annas-archive.gs/copyright, https://annas-archive.se/copyright (last visited January 22, 2024).

address in order to rectify security issues on the systems critical for its operations. Exhibit E is a true and accurate copy of this webpage from January 22, 2024.[4]

13.     The domain registration for annas-archive.org belongs to Tucows, Inc., an entity that offers domain name services so that an individual or entity can obscure their identity and identifying information, which must be provided when a domain name is purchased and registered with the Internet Corporation for Assigned Names and Numbers ("ICANN"). The only email address for reporting domain abuse on the ICANN registration for annas-archive.org is domainabuse@tucows.com. Exhibit F is a true and accurate copy of the ICANN domain registration for annas-archive.org from January 22, 2024.[5]

14.     On January 12, 2024, OCLC filed the Complaint against Defendants Anna's Archive, Matienzo, and John Does #1–20 in the instant matter. Compl., Dkt. 1.

15.     On January 16, 2024, summons to Defendant Matienzo was issued. Summons to Matienzo, Dkt. 8.

16.     On January 16, 2024, I emailed a cover letter, the Complaint and exhibits, all case-initiating filings, the issued summons to Defendant Matienzo, a Notice of Lawsuit and Request to Waive Service of Summons form, and a Waiver of the Service of Summons form to the four email addresses associated with Anna's Archive: annaarchivist@proton.me, AnnaDMCA@proton.me, AnnaArchivist+security@proton.me, and domainabuse@tucows.com. Exhibit G is a true and accurate copy of this email and its attachments.

---

[4] *Security*, Anna's Archive, https://annas-archive.org/security, https://annas-archive.gs/security, https://annas-archive.se/security (last visited January 22, 2024)
[5] *Registration data lookup tool*, ICANN, https://lookup.icann.org/en/lookup (search for "annas-archive.org") (last visited January 22, 2024).

Executed on:   January 24, 2024

_____
Jeffrey M. Walker

# Exhibit A

# Anna's Archive

📚 The largest truly open library in human history. ⭐ Mirrors Sci-Hub, LibGen, Z-Lib, and more.

📈 25,530,302 books, 99,425,822 papers — preserved forever. Learn more...

**Recent downloads:** or education: a celebrity cookbook dedicated to the education of Colorado's children • Memorias del Mediterráneo

**Home**        Title, author, DOI, ISBN, MD5, ...      Log in / Register

---

📚 **Full database**

Books, papers, magazines, comics, library records, metadata, ...

                     Search

🦄 **SciDB** beta

Direct access to 97,847,480 academic papers

   DOI                             Open

If you're a member, browser verification is not required.

If you run a high-risk anonymous payment processor, please contact us. We are also looking for people looking to place tasteful small ads. All proceeds go to our preservation efforts. AnnaArchivist@proton.me

🏛️ **Long-term archive**

The datasets used in Anna's Archive are completely open, and can be mirrored in bulk using torrents. Learn more...

You can help out enormously by seeding torrents. Learn more...

🔴 141.3TB    <4 seeders
🟡 256.7TB    4–10 seeders
🟢 35.2TB    >10 seeders

🤖 **LLM training data**

We have the world's largest collection of high-quality text data.

Learn more...

## Anna's Archive

Home

Search

About

Donate

Request books

Upload

Mobile app

🌐 English ⌄

## Stay in touch

Reddit / Telegram

Anna's Blog ↗

Anna's Software ↗

Translate ↗

AnnaArchivist@proton.me

Don't email us to request books or small (<10k) uploads. We're a small team of volunteers. It might take us 1-2 weeks to respond.

DMCA / copyright claims

AnnaDMCA@proton.me

## Advanced

Datasets

Torrents

LLM data

Security

## Alternatives

annas-archive.org

annas-archive.gs

annas-archive.se

# Anna's Archive

 The largest truly open library in human history. ⭐ Mirrors Sci-Hub, LibGen, Z-Lib, and more.

📈 25,530,302 books, 99,425,822 papers — preserved forever. Learn more...

**Recent downloads:** iistración Lean de proyectos: Eficiencia en la gestión de múltiples proyectos • Information Technology Project Mana

**Home** Datasets Title, author, DOI, ISBN, MD5, ... Log in / Register

---

 ## Full database

Books, papers, magazines, comics, library records, metadata, ...

Search

🚀 **SciDB** beta

Direct access to 97,847,480 academic papers

DOI Open

If you're a member, browser verification is not required.

If you run a high-risk anonymous payment processor, please contact us. We are also looking for people looking to place tasteful small ads. All proceeds go to our preservation efforts. AnnaArchivist@proton.me

🏛️ **Long-term archive**

The datasets used in Anna's Archive are completely open, and can be mirrored in bulk using torrents. Learn more...

You can help out enormously by seeding torrents. Learn more...

🔴 140.2TB    <4 seeders
🟡 261.8TB    4–10 seeders
🟢 31.2TB     >10 seeders

🤖 **LLM training data**

We have the world's largest collection of high-quality text data. Learn more...

**Anna's Archive**

Home

Search

About

Donate

Request books

Upload

Mobile app

🌐 English ⌄

**Stay in touch**

Reddit / Telegram

Anna's Blog ↗

Anna's Software ↗

Translate ↗

AnnaArchivist@proton.me

Don't email us to request books
or small (<10k) uploads. We're a
small team of volunteers. It might
take us 1-2 weeks to respond.

DMCA / copyright claims

AnnaDMCA@proton.me

**Advanced**

Datasets

Torrents

LLM data

Security

**Alternatives**

annas-archive.org

annas-archive.gs

annas-archive.se

# Anna's Archive

📚 The largest truly open library in human history. ⭐ Mirrors Sci-Hub, LibGen, Z-Lib, and more.

📈 25,530,302 books, 99,425,822 papers — preserved forever. Learn more…

**Recent downloads:** In Unleash Your SkinnyGirl and Free Yourself from a Lifetime of Dieting • Eternally Damned • Crossed • Our inner ap

**Home**    Donate    Title, author, DOI, ISBN, MD5, …    Log in / Register

📚 **Full database**

Books, papers, magazines, comics, library records, metadata, …

Search

🚀 **SciDB**  beta

Direct access to 97,847,480 academic papers

DOI                                                        Open

If you're a member, browser verification is not required.

If you run a high-risk anonymous payment processor, please contact us. We are also looking for people looking to place tasteful small ads. All proceeds go to our preservation efforts. AnnaArchivist@proton.me

🏛️ **Long-term archive**

The datasets used in Anna's Archive are completely open, and can be mirrored in bulk using torrents. Learn more…

You can help out enormously by seeding torrents. Learn more…

🔴 137.2TB    <4 seeders
🟡 265.2TB    4–10 seeders
🟢 30.9TB     >10 seeders

🤖 **LLM training data**

We have the world's largest collection of high-quality text data. Learn more…

**Anna's Archive**

Home

Search

About

Donate

Request books

Upload

Mobile app

🌐 English ⌄

**Stay in touch**

Reddit / Telegram

Anna's Blog ↗

Anna's Software ↗

Translate ↗

AnnaArchivist@proton.me

Don't email us to request books
or small (<10k) uploads. We're a
small team of volunteers. It might
take us 1-2 weeks to respond.

DMCA / copyright claims

AnnaDMCA@proton.me

**Advanced**

Datasets

Torrents

LLM data

Security

**Alternatives**

annas-archive.org

annas-archive.gs

annas-archive.se

# Exhibit B

**Brown, Kathryn M.**

---

| | |
|---|---|
| **From:** | Walker, Jeffrey |
| **Sent:** | Thursday, October 26, 2023 10:59 AM |
| **To:** | annaarchivist@proton.me |
| **Cc:** | Martinez, Traci L. |
| **Subject:** | Anna's Archive - Cease and Desist Letter |
| **Attachments:** | 2023.10.26 - Anna's Archive Cease and Desist Letter .pdf |

Please see the attached correspondence.

Thanks,
Jeff



**Jeffrey Walker**
Principal
Squire Patton Boggs (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215

T  +1 614 365 2794
O  +1 614 365 2700
F  +1 614 365 2499

jeffrey.walker@squirepb.com | squirepattonboggs.com

Find Us: Twitter | LinkedIn | Facebook | Instagram



Squire Patton Boggs (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215

O    +1 614 365 2700
F    +1 614 365 2499
squirepattonboggs.com

Jeffrey M. Walker
T    +1 614 365 2794
jeffrey.walker@squirepb.com

October 26, 2023

**VIA EMAIL**

Anna's Archive

annaarchivist@proton.me

**Re: Misuse of OCLC WorldCat® Data by Anna's Archive**

To the Anna's Archive team:

I am writing on behalf of our client, OCLC, Inc. ("OCLC"), to address a serious matter involving the misuse and mass distribution of OCLC WorldCat® data by Anna's Archive and to put Anna's Archive and the "Anna's Archive team" on notice that it must cease and desist any such unlawful activities immediately.

We recently learned that over the past several months Anna's Archive has secretly scraped WorldCat® data from OCLC's global catalog of library materials available at WorldCat.org, harvesting what Anna's Archive has represented amounts to 1.8 billion WorldCat® records, totaling 2.2TB of data. We also understand that Anna's Archive has made these 2.2TB of WorldCat® data publicly available for download from its website. Further, we are aware that Anna's Archive has commenced a data science competition whereby entrants are encouraged to download and use the WorldCat® data to help further Anna's Archive's other shadow library activities. According to an Anna's Archive blog post from October 3, 2023, the top three participants in the data science competition will each receive a year-long membership of Anna's Archive worth $1,200. *See* https://annas-blog.org/worldcat-scrape.html.

OCLC's WorldCat® is the result of over five decades of hard work and hundreds of millions of dollars invested by OCLC to compile, manage, and enhance records contributed by OCLC member libraries, publisher records, and OCLC-created records. Anna's Archive's recent activities to mass harvest WorldCat® records, to store those records, and to "liberate" these WorldCat® records by actively encouraging the distribution of and actually distributing them through its website are incredibly damaging to OCLC and its member libraries. These activities are also illegal and violate OCLC Worldcat.org Services Terms and Conditions that apply to all users of WorldCat.org.

Over 40 Offices across 4 Continents

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

Squire Patton Boggs (US) LLP

**VIA EMAIL**

October 26, 2023

In light of the forgoing, OCLC requests that Anna's Archive and the members of the "Anna's Archive team" immediately delete all copies of the WorldCat® records and data in its possession that were harvested from WorldCat.org, remove all links to such data on your websites, and cease encouraging others from downloading and misusing WorldCat® records and data. If you do not comply with this cease and desist letter, then a lawsuit may be filed in the proper jurisdiction seeking monetary damages as well as pursuing all available legal remedies for your unlawful actions. We're in the process of fully investigating the actions taken by Anna's Archive, and we will continue to monitor this situation and take all necessary steps to preserve the viability and value of WorldCat® to all OCLC member libraries.

Finally, in addition to destroying all WorldCat® data in your possession and taking down from your websites all links to such data or encouragement for others to engage in similar unlawful behavior, you now have a duty to preserve all evidence that may be relevant to the dispute discussed above as it may, depending on your compliance with this cease and desist, be the subject of pending litigation. This duty of preservation extends to, but is not limited to, data files, emails, messages, calendars, access lists, and logs that are located on Anna's Archive's computer networks, email servers, individual computer workstations, mobile devices, and external drives, or are located on any of those devices within Anna's Archive's control but not owned by Anna's Archive, such as Anna's Archive's web hosting service. Sanctions for violating any of the foregoing preservation duties can be severe, and include substantial monetary sanctions, adverse inferences in evidentiary rulings, and the entry of judgments by default.

Please feel free to reach out to me if you have any questions about this matter.

Sincerely,

Squire Patton Boggs (US) LLP

Jeffrey M. Walker

Cc:  Traci L. Martinez

2

Exhibit C

# Anna's Blog

Updates about <u>Anna's Archive</u>.

## 1.3B WorldCat scrape & data science mini-competition

*annas-blog.org, 2023-10-03*

> **TL;DR:** *Anna's Archive scraped all of WorldCat (the world's largest library metadata collection) to make a TODO list of books that need to be preserved, and is hosting a data science mini-competition.*

A year ago, we <u>set out</u> to answer this question: **What percentage of books have been permanently preserved by shadow libraries?**

Once a book makes it into an open-data shadow library like <u>Library Genesis</u>, and now <u>Anna's Archive</u>, it gets mirrored all over the world (through torrents), thereby practically preserving it forever.

To answer the question of which percentage of books has been preserved, we need to know the denominator: how many books exist in total? And ideally we don't just have a number, but actual metadata. Then we can not only match them against shadow libraries, but also **create a TODO list of remaining books to preserve!** We could even start dreaming of a crowdsourced effort to go down this TODO list.

We scraped <u>ISBNdb</u>, and downloaded the <u>Open Library dataset</u>, but the results were unsatisfactory. The main problem was that there was not a ton of overlap of ISBNs. See this Venn diagram from <u>our blog post</u>:



We were very surprised by how little overlap there was between ISBNdb and Open Library, both of which liberally include data from various sources, such as web scrapes and library records. If they both do a good job at finding most ISBNs in out there, their circles surely would have substantial overlap, or one would be a subset of the other. It made us wonder, how many books fall *completely outside of these circles*? We need a bigger database.

## WorldCat

That is when we set our sights on the largest book database in the world: WorldCat. This is a proprietary database by the non-profit OCLC, which aggregates metadata records from libraries all over the world, in exchange for giving those libraries access to the full dataset, and having them show up in end-users' search results.

Even though OCLC is a non-profit, their business model requires protecting their database. Well, we're sorry to say, friends at OCLC, we're giving it all away. :-)

Over the past year, we've meticulously scraped all WorldCat records. At first, we hit a lucky break. WorldCat was just rolling out their complete website redesign (in Aug 2022). This included a substantial overhaul of their backend systems, introducing many security flaws. We immediately seized the opportunity, and were able scrape hundreds of millions (!) of records in mere days.

1/22/24, 6:03 PM                          Anna's blog – WorldCat scrape – Anna's blog



*WorldCat redesign*

After that, security flaws were slowly fixed one by one, until the final one we found was patched about a month ago. By that time we had pretty much all records, and were only going for slightly higher quality records. So we felt it is time to release!

Let's look at some basic information on the data:

- **Format?** Anna's Archive Containers (AAC), which is essentially JSON Lines compressed with Zstandard, plus some standardized semantics. These containers wrap various types of records, based on the different scrapes we deployed.
- **Where?** On the torrents page of Anna's Archive. We can't link to it directly from here. Filename: `annas_archive_meta__aacid__worldcat__20231001T025039Z--20231001T235839Z.jsonl.zst.torrent`.
- **Size?** 220GB compressed, 2.2TB uncompressed. 1.3 billion unique IDs (1,348,336,870), covered by 1.8 billion records (1,888,381,236), so 540 million duplicates (29%). 600 million are redirects or 404s, so **700 million unique actual records**.
- **Is that a lot?** Yes. For comparison, Open Library has 47 million records, and ISBNdb has 34 million. Anna's Archive has 125 million files, but with many duplicates, and most are papers from Sci-Hub (98 million).
- **What?** WorldCat library records, merged from ~30,000 OCLC member libraries. Mostly books, but also magazines, journals, dissertations, physical artifacts, and so on. We only captured the records themselves, not holding information (e.g. which library has which items).
- **Scraping quality?** This varies between our different collection methods. The vast majority of records are "Title JSON", which contains a good amount of information. There are some records we only managed to scrape through bulk HTML searches, containing only basic information like title, author, and ISBN.
- **Primary key?** The IDs of WorldCat records are known as "OCLC IDs", and appear to be incrementing numbers, ranging from 1 to (when we started our scrape) about

1,350,000,000, which is the range we scraped for. However, due to how some of our scraping methods work, we also found other ranges, that seem different from the main set starting at 1.

- **Examples?** Canonical URLs of these records are of the form `worldcat.org/oclc/:id`, which currently redirects to `worldcat.org/title/:id`. For example, https://worldcat.org/oclc/528432361.

# Competition

Before we dive into the data, we have to acknowledge that we haven't had a chance yet to dive very deep into this massive dataset. That's why we're inviting the world to have a go at it, in a mini-competition. We're curious what you will discover!

**The 3 best submissions by 2023-12-01 will win a year-long membership of Anna's Archive** at the highest tier ("Amazing Archivist"), which includes the ability to include your own name or message in one of our torrent filenames. We will also feature your work in a blog post.

For this mini-competition, anything goes, as long as you share your analysis publicly, e.g. in an open source repository or notebook. Send your submissions to AnnaArchivist@proton.me. We will pick the three submissions we think are most interesing, inspiring, and insightful.

Join us in the devs & translators Telegram group to discuss what you're working on! And check out our data imports scripts, for comparing against various other metadata datasets.

If instead of data science, you're more interested in helping us do more scrapes like this, then definitely contact us right away. We're always looking for programmers, offensive security researchers (hackers), and so on.

# Data

We haven't looked too deeply into the different fields yet, and documentation is sparse. We'll have to fill in a lot of gaps ourselves.

## Official API

Let's first look at an official API response. To use their API, you have to be a member library, but luckily the docs are public and include an example, which is for this book:

```
{
  "identifier": {
    "oclcNumber": "311684437",
    "lccn": "2008937609",
```

          "isbns": ["9781594743344","1594743347","9781594743351","1594743355","9781594744518"]
          "externalIdentifiers": [
               {"oclcSymbol": "AU@","systemControlNumber": 43839587},
               {"oclcSymbol": "AU@","systemControlNumber": "000044205433"},
               {"oclcSymbol": "AU@","systemControlNumber": 44218081},
               {"oclcSymbol": "AU@","systemControlNumber": 54552395},
               {"oclcSymbol": "CBK","systemControlNumber": "120281791"},
               {"oclcSymbol": "COVCL","systemControlNumber": "1594743347"},
               {"oclcSymbol": "DEBBG","systemControlNumber": "BV035970551"},
               {"oclcSymbol": "LBRUT","systemControlNumber": "1594743347"},
               {"oclcSymbol": "NLGGC","systemControlNumber": "321202333"},
               {"oclcSymbol": "NOK","systemControlNumber": "1594743347"},
               {"oclcSymbol": "NOK","systemControlNumber": "1594744513"},
               {"oclcSymbol": "NZ1","systemControlNumber": "12866253"},

From the `title.mainTitles.0.text` field we can see that they chose the example of *"Pride and prejudice and zombies : the classic regency romance--now with ultraviolent zombie mayhem / by Jane Austen and Seth Grahame-Smith."* I will say, this makes me immediately like the OCLC people some more. :-)

There is a lot of incredible information here, a lot of which we unfortunately do not have access to in our various scraping methods. For example, there are references to other numbering systems, such as LCCN, Dewey Decimal, and a long list of `externalIdentifiers`.

Some information in this API is only available in a subset of our scraping methods. For example, the "work ID", which is useful to cluster similar works, is available in our "providerSearchRequest" records.

## Redirects

One of our simplest scraping types is "redirect_title_json". This occurs when we make a request for a certain OCLC ID, but receive data for another OCLC ID. When this happens we can infer that these records have been merged, e.g. by a deduplication process. Indeed, for the `mergedOclcNumbers` in the official API, we can find the first of those redirects in our scrape:

{"aacid":"aacid__worldcat__20230929T222220Z__261176486__kPkdUa7GVRadsU2hitoHNb","metadata":{"oclc_number":261176486,"type":"redirect_title_json","from_filenames":["w2/v7/1062/1062959057"],"record":{"redirected_oclc_number":311684437}}}

In this record you can also see the container JSON (per the <u>Anna's Archive Container format</u>), as well as the metadata of which scrape file this record originates from (which we included in case it is somehow useful).

## Title JSON

1/22/24, 6:03 PM
Library Genesis - Scraping data and creating an open pirate library - Anna's Blog

The main type of record we have is "title_json". This is the JSON that is loaded when going to a `worldcat.org/title/:id` page. It can either be embedded in the page itself, or made with a separate request. We have not observed a difference in these two origins.

For *"Pride and prejudice and zombies"* this looks like this:

```
{
  "aacid": "aacid__worldcat__20230929T225438Z__311684437__7dTeLjis9M5zTPpsw7i3pX",
  "metadata": {
    "oclc_number": 311684437,
    "type": "title_json",
    "record": {
      "oclcNumber": "311684437",
      "title": "Pride and prejudice and zombies : the classic regency romance--now with
      "titleInfo": {"text": "Pride and prejudice and zombies : the classic regency roma
      "creator": "Seth Grahame-Smith",
      "generalFormat": "Book",
      "specificFormat": "PrintBook",
      "edition": null,
      "totalEditions": 10,
      "publisher": "Quirk Books",
      "publisherName": {"text": "Quirk Books"},
      "publicationPlace": "Philadelphia",
      "publicationDate": "2009",
      "machineReadableDate": "2009",
```

This is mostly a subset of the official API, though this does contain some metadata indicating that this Jane Austen is not an actual author, but a "parody of" relationship (the `http://rdaregistry.info/Elements/w/P10197`) at the very end. It is unclear if the official API example is simply outdated and nowadays also includes this, or if this is actual unique information to this scraping method.

Let's look at one more example, "Little Women", since for this book we have records using all our scraping methods. This is its "title_json":

```
{
  "aacid": "aacid__worldcat__20231001T025039Z__1157__2JLkN9R9S8sqVNEKLEwYqD",
  "metadata": {
    "oclc_number": 1157,
    "type": "title_json",
    "record": {
      "oclcNumber": "1157",
      "title": "Little women, or, Meg, Jo, Beth, and Amy",
      "titleInfo": {"text": "Little women, or, Meg, Jo, Beth, and Amy"},
      "creator": "Louisa May Alcott",
      "generalFormat": "Book",
      "specificFormat": "PrintBook",
```

```
      "edition": "Centennial edition",
      "totalEditions": 1686,
      "publisher": "Little, Brown and Company",
      "publisherName": {"text": "Little, Brown and Company"},
      "publicationPlace": "Boston",
      "publicationDate": "1968",
      "catalogingLanguage": "eng".
```

## Brief JSON

Some scrapes used search endpoints that returned a little bit less JSON, so we dubbed it
"briefrecords_json". However for *"Pride and prejudice and zombies"* it's very similar to
"title_json":

```
{
    "aacid": "aacid__worldcat__20230929T225438Z__311684437__iG78TkrsnYyKu4SY3peU5A",
    "metadata": {
       "oclc_number": 311684437,
       "type": "briefrecords_json",
       "record": {
          "oclcNumber": "311684437",
          "isbns": ["9781594743344","1594743347","9781594743351","1594743355","978159474451
          "isbn13": "9781594743344",
          "title": "Pride and prejudice and zombies : the classic regency romance--now with
          "creator": "Seth Grahame-Smith",
          "contributors": [
             {
                "firstName": {"text": "Seth"},
                "secondName": {"text": "Grahame-Smith"},
                "isPrimary": true,
                "relatorCodes": ["aut"]
             },
             {
```

Here is an example of "briefrecords_json" for *"Little Women"*:

```
{
    "aacid": "aacid__worldcat__20231001T025039Z__1157__9PLLPouzwAe5JGfueB7KDi",
    "metadata": {
       "oclc_number": 1157,
       "type": "briefrecords_json",
       "from_filenames": ["worldcat_2022_09_titles_1_backup_2022_10_12/v3/0704/70477783"],
       "record": {
          "oclcNumber": "1157",
          "isbns": ["9780316030908","0316030902","9780762405657","0762405651"],
          "isbn13": "9780316030908",
          "title": "Little women, or, Meg, Jo, Beth, and Amy",
```

1/22/24, 6:03 PM

```
      "creator": "Louisa May Alcott",
      "contributors": [
        {
          "firstName": {"text": "Louisa May"},
          "secondName": {"text": "Alcott"},
          "isPrimary": true,
          "relatorCodes": ["aut"]
```

Here we see some more differences: "briefrecords_json" is missing `contentNotes` and `additionalPhysicalFormEntries`.

## ProviderSearchRequest JSON

Another search API leaked the raw internal search request in a `providerSearchRequest` field, so we dubbed its type "providersearchrequest_json". It has the most information of all our scrapes, but unfortunately we only have a very small number of records using this method. Nevertheless, here is *"Little Women"*:

```
{
  "aacid": "aacid__worldcat__20231001T025039Z__1157__N3MEKxTkbMtogjxugQ7RLd",
  "metadata": {
    "oclc_number": 1157,
    "type": "providersearchrequest_json",
    "from_filenames": [
      "worldcat_2022_09_titles_1_backup_2022_10_12/v4/1296/129614873"
    ],
    "providerSearchRequest": "http://firefly.prod.oclc.org/firefly-service/rs/sru/world
    "record": {
      "additionalPhysicalFormEntries": [
        {
          "displayConstant": "Online version:",
          "mainEntryHeadings": ["Alcott, Louisa May, 1832-1888."],
          "recordControlOclcNumbers": ["572939759"],
          "titles": ["Little women, or, Meg, Jo, Beth, and Amy."],
          "uniformTitle": "Little women."
        }
      ],
```

## Legacy search HTML

We discovered a bunch of websites whitelabeled for libraries, that still used the old search UI. We scraped a bunch of records using these pages. There is very little information in here, but the basics such as title, author, and even ISBN are present. Here is *"Little Women"*:

```
{ "aacid": "aacid__worldcat__20231001T025039Z__1157__8y3EMa4Afua9YWXVYkSryk", "metadata": { "oclc_number": 1157, "type": "legacysearch_html", "from_filenames": [ "worldcat_
```

2022_09_titles_1_backup_2022_10_12/v6/1270/1270339452" ], "html": "<td class=\"num\"><
input type=\"checkbox\" name=\"itemid\" id=\"itemid_1157\" value=\"1157\"><label for=
\"itemid_1157\" style=\"display:none\">6. Little women, or, Meg, Jo, Beth, and Amy</la
bel></td> <td class=\"num\">6.</td> <td class=\"coverart\"> <a href=\"/title/little-wo
men-or-meg-jo-beth-and-amy/oclc/1157&referer=brief_results\"> <img width=\"70\" src=
\"//coverart.oclc.org/ImageWebSvc/oclc/+-+2066_70.jpg?SearchOrder=+-+OT,OS,TN,GO,FA\"
title='Little women, or, Meg, Jo, Beth, and Amy by Louisa May Alcott' alt='Little wome
n, or, Meg, Jo, Beth, and Amy by Louisa May Alcott' /></a> </td> <td class=\"result de
tails\"> <div class=\"oclc_number\" data-source-collection=\"/XWC/\">1157</div> <div c
lass=\"item_number\">6</div> <div class=\"name\"> <a id=\"result-6\" href=\"/title/lit
tle-women-or-meg-jo-beth-and-amy/oclc/1157&referer=brief_results\"><strong>Little wome
n, or, Meg, Jo, Beth, and Amy</strong></a> </div> <div class=\"author\">by Louisa May
Alcott; Cornelia Meigs; Jessie Willcox Smith; Cairns Collection of American Women Writ
ers.</div><div class=\"type\"> <img class='icn' src='/wcpa/rel20220804/images/icon-bk
s.gif' alt=' ' height='16' width='16' > <span class='itemType'>Print book</span>
: Fiction : Juvenile audience<a href=\"/title/little-women-or-meg-jo-beth-and-amy/ocl
c/1157/editions?editionsView=true&referer=br&se=loc\" title=\"View all held editions a

## Not found

The final record type is trivial: records that for which we got a 404 during a "title_json"
request, so "not_found_title_json":

{"aacid":"aacid__worldcat__20231001T025039Z__0__Phmst4gRh8fKhKgSRpJYMm","metadata":{"oc
lc_number":0,"type":"not_found_title_json","from_filenames":["2023_04_v3/3861/38616993
4"],"record":{"not_found":1}}}

# Conclusion

We think this release marks a major milestone in mapping out all the books in the world. We
can now work on making a TODO list of all the books that still need to be preserved.

Join us: enter in our mini-competition to analyze these data, help seed our torrents, scan and
upload some books, help build Anna's Archive, help scrape more collections, or simply
become a member. We've already met dozens of incredible volunteers, and *you too* can help
preserve humanity's legacy.

**Special call for LLM companies and groups:** we recently launched a special program on
Anna's Archive to help out teams building LLMs with high-speed access to our collections.

Thanks everyone.

- Anna and the team (Reddit, Telegram)

PS: We do want to give a genuine shout-out to the WorldCat team. Even though it was a
small tragedy that your data was locked up, you did an amazing job at getting 30,000

Case: 2:24-cv-00144-MHW-EPD Doc #: 9-2 Filed: 01/24/24 Page: 28 of 152 PAGEID #: 131

libraries on board to share their metadata with you. As with many of our releases, we could not have done it without the decades of hard work you put into building the collections that we now liberate. Truly: thank you.

# Exhibit D

# Anna's Archive

📚 The largest truly open library in human history. ⭐ Mirrors Sci-Hub, LibGen, Z-Lib, and more. 📈 25,530,302 books, 99,425,822 papers — preserved forever. Learn more...

Recent downloads: o que eu sei sobre o amor • Ciilluum A Higuuy Romance • Art Power (The MIT Press) • Demon Copperhead: A Novel • La Economia Explicada a Mis Hijos • Die Träumerin

| Home | | Title, author, DOI, ISBN, MD5, ... | | | egister |

## DMCA / Copyright claim form

If you have a DCMA or other copyright claim, please fill out this form as precisely as possible. If you run into any issues, please contact us at our dedicated DMCA address: AnnaDMCA@proton.me. Note that claims emailed to this address will not be processed, it is only for questions. Please use the form below to submit your claims.

URLs on Anna's Archive (required). One per line. Please only include URLs that describe the exact same edition of a book. If you want to make a claim for multiple books or multiple editions, please submit this form multiple times. **Claims that bundle multiple books or editions together will be rejected.**

Your name (required)

Address (required)

Phone number (required)

E-mail (required)

Clear description of the source material (required)

ISBNs of source material (if applicable). One per line. Please only include those that exactly match the edition for which you are reporting a copyright claim.

Open Library URLs of source material, one per line. Please take a moment to search Open Library for your source material. This will help us verify your claim.

URLs to source material, one per line (required). Please include as many as possible, to help us verify your claim (e.g. Amazon, WorldCat, Google Books, DOI).

Statement and signature (required)

Submit claim

**Anna's Archive**

Home

Search

About

Donate

Request books

Upload

Mobile app

🌐 English ⌄

**Stay in touch**

Reddit / Telegram

Anna's Blog ↗

Anna's Software ↗

Translate ↗

AnnaArchivist@proton.me

Don't email us to request books or small (<10k) uploads. We're a small team of volunteers. It might take us 1-2 weeks to respond.

DMCA / copyright claims

AnnaDMCA@proton.me

**Advanced**

Datasets

Torrents

LLM data

Security

**Alternatives**

annas-archive.org

annas-archive.gs

annas-archive.se

# Anna's Archive

📚 The largest truly open library in human history. ⭐ Mirrors Sci-Hub, LibGen, Z-Lib, and more. 📈 25,530,302 books, 99,425,822 papers — preserved forever. Learn more...

Recent downloads: 2011 - L'estate alla fine del secolo • The Unmaking of June Farrow • The New World • Music fundamentals : a balanced approach • Commentary on saint paul's epistle to

Home                              Title, author, DOI, ISBN, MD5, ...                              Register

---

## DMCA / Copyright claim form

If you have a DCMA or other copyright claim, please fill out this form as precisely as possible. If you run into any issues, please contact us at our dedicated DMCA address: AnnaDMCA@proton.me. Note that claims emailed to this address will not be processed, it is only for questions. Please use the form below to submit your claims.

URLs on Anna's Archive (required). One per line. Please only include URLs that describe the exact same edition of a book. If you want to make a claim for multiple books or multiple editions, please submit this form multiple times. **Claims that bundle multiple books or editions together will be rejected.**

Your name (required)

Address (required)

Phone number (required)

E-mail (required)

Clear description of the source material (required)

ISBNs of source material (if applicable). One per line. Please only include those that exactly match the edition for which you are reporting a copyright claim.

Open Library URLs of source material, one per line. Please take a moment to search Open Library for your source material. This will help us verify your claim.

URLs to source material, one per line (required). Please include as many as possible, to help us verify your claim (e.g. Amazon, WorldCat, Google Books, DOI).

Statement and signature (required)

Submit claim

**Anna's Archive**

Home

Search

About

Donate

Request books

Upload

Mobile app

🌐 English ⌄

**Stay in touch**

Reddit / Telegram

Anna's Blog ↗

Anna's Software ↗

Translate ↗

AnnaArchivist@proton.me

Don't email us to request books
or small (<10k) uploads. We're a
small team of volunteers. It might
take us 1-2 weeks to respond.

DMCA / copyright claims

AnnaDMCA@proton.me

**Advanced**

Datasets

Torrents

LLM data

Security

**Alternatives**

annas-archive.org

annas-archive.gs

annas-archive.se

# Anna's Archive

📚 The largest truly open library in human history. ⭐ Mirrors Sci-Hub, LibGen, Z-Lib, and more. 📈 25,530,302 books, 99,425,822 papers — preserved forever. Learn more...

**Recent downloads:** and materials on international law • An Introduction to Pattern Re▓▓▓▓▓ A MATLAB Approach • Destroy Me • The Transnational History Of A Chinese Family: Immig

Home ▓▓▓▓▓ Title, author, DOI, ISBN, MD5, ... ▓▓▓ egister

## DMCA / Copyright claim form

If you have a DCMA or other copyright claim, please fill out this form as precisely as possible. If you run into any issues, please contact us at our dedicated DMCA address: AnnaDMCA@proton.me. Note that claims emailed to this address will not be processed, it is only for questions. Please use the form below to submit your claims.

URLs on Anna's Archive (required). One per line. Please only include URLs that describe the exact same edition of a book. If you want to make a claim for multiple books or multiple editions, please submit this form multiple times. **Claims that bundle multiple books or editions together will be rejected.**

Your name (required)

Address (required)

Phone number (required)

E-mail (required)

Clear description of the source material (required)

ISBNs of source material (if applicable). One per line. Please only include those that exactly match the edition for which you are reporting a copyright claim.

Open Library URLs of source material, one per line. Please take a moment to search Open Library for your source material. This will help us verify your claim.

URLs to source material, one per line (required). Please include as many as possible, to help us verify your claim (e.g. Amazon, WorldCat, Google Books, DOI).

Statement and signature (required)

Submit claim

**Anna's Archive**
Home
Search
About
Donate
Request books
Upload
Mobile app
🌐 English ⌄

**Stay in touch**
Reddit / Telegram
Anna's Blog ↗
Anna's Software ↗
Translate ↗
AnnaArchivist@proton.me
Don't email us to request books or small (<10k) uploads. We're a small team of volunteers. It might take us 1-2 weeks to respond.
DMCA / copyright claims
AnnaDMCA@proton.me

**Advanced**
Datasets
Torrents
LLM data
Security

**Alternatives**
annas-archive.org
annas-archive.gs
annas-archive.se

Exhibit E

# Anna's Archive

📗 The largest truly open library in human history. ⭐ Mirrors Sci-Hub, LibGen, Z-Lib, and more.
📈 25,530,302 books, 99,425,822 papers — preserved forever. Learn more…

**Recent downloads:**  al adventure for the piano • Renewable Energy from the Oceans: From wave, tidal and gradient systems to offshore

**Security**        Title, author, DOI, ISBN, MD5, ...                    Log in / Register

# Security

We welcome security researchers to search for vulnerabilities in our systems. We are big proponents of responsible disclosure. Contact us at AnnaArchivist+security@proton.me.

We are currently unable to award bug bounties, except for vulnerabilities that have the potential to compromise our anonymity. We'd like to offer wider scope for bug bounties in the future! Please note that social engineering attacks are out of scope.

If you are interested in offensive security, and want to help archive the world's knowledge and culture, be sure to contact us. There are many ways in which you can help.

**Anna's Archive**
Home
Search
About
Donate
Request books
Upload
Mobile app
🌐 English ˅

**Stay in touch**
Reddit / Telegram
Anna's Blog ↗
Anna's Software ↗
Translate ↗
AnnaArchivist@proton.me
Don't email us to request books or small (<10k) uploads. We're a small team of volunteers. It might take us 1-2 weeks to respond.
DMCA / copyright claims
AnnaDMCA@proton.me

**Advanced**
Datasets
Torrents
LLM data
Security

**Alternatives**
annas-archive.org
annas-archive.gs
annas-archive.se

https://annas-archive.org/security                    1/1

# Anna's Archive

📗 The largest truly open library in human history. ⭐ Mirrors Sci-Hub, LibGen, Z-Lib, and more.
📈 25,530,302 books, 99,425,822 papers — preserved forever. Learn more…

**Recent downloads:** to the Galatians (The New International Commentary on the New T▬▬▬▬ • Film Art: An Introduction, 12th Editio

**Security**   D▬▬▬      Title, author, DOI, ISBN, MD5, …        Log in / Register

# Security

We welcome security researchers to search for vulnerabilities in our systems. We are big proponents of responsible disclosure. Contact us at AnnaArchivist+security@proton.me.

We are currently unable to award bug bounties, except for vulnerabilities that have the potential to compromise our anonymity. We'd like to offer wider scope for bug bounties in the future! Please note that social engineering attacks are out of scope.

If you are interested in offensive security, and want to help archive the world's knowledge and culture, be sure to contact us. There are many ways in which you can help.

Anna's Archive

Home
Search
About
Donate
Request books
Upload
Mobile app
🌐 English ∨

Stay in touch

Reddit / Telegram
Anna's Blog ↗
Anna's Software ↗
Translate ↗
AnnaArchivist@proton.me
Don't email us to request books or small (<10k) uploads. We're a small team of volunteers. It might take us 1-2 weeks to respond.
DMCA / copyright claims
AnnaDMCA@proton.me

Advanced

Datasets
Torrents
LLM data
Security

Alternatives

annas-archive.org
annas-archive.gs
annas-archive.se

# Anna's Archive

📚 The largest truly open library in human history. ⭐ Mirrors Sci-Hub, LibGen, Z-Lib, and more.
📈 25,530,302 books, 99,425,822 papers — preserved forever. Learn more…

**Recent downloads:**  he reckoning • Must I go: a novel • We Were Liars • A Arqueologia do Saber • (El Problema De Los Tres Cuerpos) El I

**Security**   Donate        Title, author, DOI, ISBN, MD5, …                          Log in / Register

# Security

We welcome security researchers to search for vulnerabilities in our systems. We are big proponents of responsible disclosure. Contact us at AnnaArchivist+security@proton.me.

We are currently unable to award bug bounties, except for vulnerabilities that have the potential to compromise our anonymity. We'd like to offer wider scope for bug bounties in the future! Please note that social engineering attacks are out of scope.

If you are interested in offensive security, and want to help archive the world's knowledge and culture, be sure to contact us. There are many ways in which you can help.

**Anna's Archive**
Home
Search
About
Donate
Request books
Upload
Mobile app
🌐 English ∨

**Stay in touch**
Reddit / Telegram
Anna's Blog ↗
Anna's Software ↗
Translate ↗
AnnaArchivist@proton.me
Don't email us to request books or small (<10k) uploads. We're a small team of volunteers. It might take us 1-2 weeks to respond.
DMCA / copyright claims
AnnaDMCA@proton.me

**Advanced**
Datasets
Torrents
LLM data
Security

**Alternatives**
annas-archive.org
annas-archive.gs
annas-archive.se

# Exhibit F

English

# ICANN | LOOKUP (/en)

# Registration data lookup tool

Enter a domain name or an Internet number
resource (IP Network or ASN)

Frequently Asked Questions
(FAQ) (/en/faq)

annas-archive.org

Lookup

By submitting any personal data, I acknowledge and agree that the personal data
submitted by me will be processed in accordance with the ICANN Privacy Policy
(https://www.icann.org/privacy/policy), and agree to abide by the website Terms of
Service (https://www.icann.org/privacy/tos) and the registration data lookup tool
Terms of Use (unsafe:javascript:void(0)).

## Domain Information

**Name:** annas-archive.org

**Internationalized Domain Name:** annas-archive.org

**Registry Domain ID:** 30846a965a0548bebcbb3eae1799d4ec-LROR

**Domain Status:**
clientTransferProhibited (https://icann.org/epp#clientTransferProhibited)
clientUpdateProhibited (https://icann.org/epp#clientUpdateProhibited)

**Nameservers:**
daphne.ns.cloudflare.com
merlin.ns.cloudflare.com

## Dates

**Registry Expiration:** 2024-11-10 00:14:08 UTC

**Updated:** 2023-06-01 18:59:03 UTC

**Created:** 2022-11-10 00:14:08 UTC

## Contact Information

## Registrant:

**Kind:** individual

**Mailing Address:** Charlestown, KN

**Contact Uri:** https://tieredaccess.com/contact/6f62ad73-309b-4384-881c-4f8b9005d08e (https://tieredaccess.com/contact/6f62ad73-309b-4384-881c-4f8b9005d08e)

***Redacted for privacy:***
*some of the data in this object has been removed*

## Admin:

***Redacted for privacy:***
*some of the data in this object has been removed*

## Technical:

***Redacted for privacy:***
*some of the data in this object has been removed*

## Billing:

***Redacted for privacy:***
*some of the data in this object has been removed*

# Registrar Information

**Name:** TUCOWS, INC.

**IANA ID:** 69

**Abuse contact email:** domainabuse@tucows.com

**Abuse contact phone:** tel:+1.4165350123

# Reseller Information

**Name:** 1337 Services LLC

# Authoritative Servers

**Registry Server URL:** https://rdap.publicinterestregistry.org/rdap/domain/annas-archive.org (https://rdap.publicinterestregistry.org/rdap/domain/annas-archive.org)

**Last updated from Registry RDAP DB:** 2024-01-22 23:15:25 UTC

**Registrar Server URL:** https://opensrs.rdap.tucows.com/domain/annas-archive.org (https://opensrs.rdap.tucows.com/domain/annas-archive.org)

**Last updated from Registrar RDAP DB:** 2023-05-27 18:58:47 UTC

# Notices and Remarks

## Remarks:

**REDACTED FOR PRIVACY**

Some of the data in this object has been removed

## Notices:

**Status Codes**

For more information on domain status codes, please visit https://icann.org/epp

https://icann.org/epp (https://icann.org/epp)

**RDDS Inaccuracy Complaint Form**

URL of the ICANN RDDS Inaccuracy Complaint Form:https://icann.org/wicf

https://icann.org/wicf (https://icann.org/wicf)

**Terms of Service**

The data provided by the Registration Data Access Protocol ("RDAP" or "Whois") is provided to you by Tucows for information purposes only and may be used to assist you in obtaining information about or related to a domain name's registration record. These terms govern your use of this service and access to this database. We reserve the right to modify these terms at any time.

This information is provided "as is" and does not guarantee its accuracy.

By submitting a query, you certify that you have a legitimate purpose for requesting the data, that you will use this data only for lawful purposes and delete the data immediately when the data are no longer necessary for your lawful or legitimate purpose, and that, under no circumstances, will you use this data to: a) allow, enable, or otherwise support the transmission of mass, unsolicited, commercial advertising, or solicitations to entities other than the data recipient's own existing customers; or (b) enable high volume, automated, electronic processes that send queries or data to the systems of any registry operator or ICANN-accredited registrar, except as reasonably necessary to register domain names or modify existing registrations.

The compilation, repackaging, dissemination, or other use of these data is expressly prohibited.

Your access to the database may be terminated at any time in our sole discretion including, without limitation, for excessive querying of the database or for failure to otherwise abide by this policy.

Your IP address, the queried domain, the response, and a timestamp is stored for the purposes of maintaining the service and to ensure adherence with these terms.

By submitting this query, you agree to these terms.

NOTE: THIS DATABASE IS A CONTACT DATABASE ONLY. LACK OF A DOMAIN RECORD DOES NOT SIGNIFY DOMAIN AVAILABILITY.

http://www.tucowsdomains.com/rdap/tos (http://www.tucowsdomains.com/rdap/tos)



Youtube (https://www.youtube.com/icannnews)

Twitter (https://www.twitter.com/icann)

Linkedin (https://www.linkedin.com/company/icann)

Flickr (https://www.flickr.com/photos/icann)

Facebook (https://www.facebook.com/icannorg)

Newletters (https://www.icann.org/resources/pages/global-newsletter-2018)

Community Wiki (https://community.icann.org/)

ICANN Blog (https://www.icann.org/news/blog)

**WHO WE ARE CONTACT US ACCOUNTABILITY AND TRANSPARENCY GOVERNANCE HELP DATA PROTECTION**

© Internet Corporation for Assigned Names and Numbers. Privacy Policy (https://www.icann.org/privacy/policy) Terms of Service (https://www.icann.org/privacy/tos) Cookies Policy (https://www.icann.org/privacy/cookies)

Exhibit G

**Brown, Kathryn M.**

| | |
|---|---|
| **From:** | Walker, Jeffrey |
| **Sent:** | Tuesday, January 16, 2024 5:15 PM |
| **To:** | annaarchivist@proton.me; AnnaDMCA@proton.me; annaarchivist+security@proton.me; domainabuse@tucows.com |
| **Cc:** | Brown, Kathryn M. |
| **Subject:** | OCLC, Inc. v. Anna's Archive, f/k/a Pirate Library Mirror, et al., Case No. 2:24-cv-144-MHW-EPD (Southern District of Ohio) |
| **Attachments:** | Courtesy Copy for Anna's Archive.zip; 2024.1.16 Anna's Archive and Does Cover Letter.pdf; 2. Complaint.pdf |

Anna's Archive and its team members:

Please find the attached correspondence and court filings in the above-referenced case filed against you this past Friday, January 12, 2024.

Thanks,
Jeff



**Jeffrey Walker**
Principal
Squire Patton Boggs (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215

T  +1 614 365 2794
O  +1 614 365 2700
F  +1 614 365 2499
M  +1 650 390 4615

jeffrey.walker@squirepb.com | squirepattonboggs.com

Find Us: Twitter | LinkedIn | Facebook | Instagram



Squire Patton Boggs (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215

O   +1 614 365 2700
F    +1 614 365 2499
squirepattonboggs.com

Jeffrey M. Walker
T    +1 614 365 2794
jeffrey.walker@squirepb.com

January 16, 2024

**VIA EMAIL**

Anna's Archive
annaarchivist@proton.me
AnnaDMCA@proton.me
AnnaArchivist+security@proton.me
domainabuse@tucows.com

**Re:** *OCLC, Inc. v. Anna's Archive, f/k/a Pirate Library Mirror, et al.*, **Case No. 2:24-cv-144-MHW-EPD (Southern District of Ohio)**

To Anna's Archive and its team members:

Attached please find copies of the documents filed by OCLC, Inc. against you, Anna's Archive and John Does #1–20, in the matter *OCLC, Inc. v. Anna's Archive f/k/a Pirate Library Mirror, et al.*, Case No. 2:24-cv-144-MHW-EPD in the United States District Court for the Southern District of Ohio:  (1) Civil Cover Sheet, (2) Complaint with Exhibits A & B, (3) Corporate Disclosure Statement by Plaintiff OCLC, Inc., (4) Rule 7.1(a)(2) Disclosure Statement by Plaintiff OCLC, Inc., (5) Summons issued to you, and (6) Notice of Appearances for OCLC, Inc.'s attorneys.

Also attached is a Notice of a Lawsuit and Request to Waive Service of a Summons, which includes general information and instructions on how to complete the Waiver form, also enclosed. If you choose to sign and return the waiver form, you may return it to me by email or by U.S. mail.

Please feel free to reach out to me if you have any questions about this matter.

Sincerely,

Squire Patton Boggs (US) LLP

Jeffrey M. Walker

Cc:  Kathryn M. Brown

Over 40 Offices across 4 Continents

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **OCLC, Inc.,** | **Case No. 24-cv-144** |
| **Plaintiff,** | **Judge** |
| **v.** | **Magistrate Judge** |
| **ANNA'S ARCHIVE, f/k/a PIRATE LIBRARY MIRROR, MARIA DOLORES ANASZTASIA MATIENZO and JOHN DOES #1–20,** | **DEMAND FOR JURY TRIAL** |
| **Defendants.** | |

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

---

OCLC, Inc., ("OCLC"), by and through counsel, files this Complaint for injunctive relief and damages against Anna's Archive, formerly known as Pirate Library Mirror, Maria Dolores Anasztasia Matienzo, and John Does #1–20, individually and doing business as Anna's Archive, ("Defendants"), and in support thereof, states the following:

### NATURE OF ACTION

1.     OCLC is an Ohio non-profit organization founded in 1967 that provides shared technology services, original research, and community programs for its membership and the library community at large.

2.     OCLC provides the digital infrastructure and services for libraries to collaborate, create, and share bibliographic records, which results in efficiencies and lowering overall costs for record creation.  OCLC offers a range of products and services to address the challenges faced by

libraries through sharing data, streamlining workflows, and connecting people to the knowledge held in the world's library collections.

3.      At the center of OCLC's products and services is its database of bibliographic records and associated metadata, which OCLC markets as WorldCat®. WorldCat® is the authoritative source of library bibliographic records, which member libraries use primarily for cataloging purposes.

4.      OCLC has spent more than 55 years and hundreds of millions of dollars, including approximately 68 million dollars over the past two years and 162 million dollars over the past five years, developing and enhancing its WorldCat® records. WorldCat® is an integral part of OCLC's other product and service offerings to libraries and academic institutions around the world and is an essential part of OCLC's overall business, making up an average of 40% of OCLC's revenue over the past 5 years.

5.      OCLC also maintains and operates the world's largest library catalog website called WorldCat.org. WorldCat.org is a search engine that allows individuals to easily search the world's libraries by connecting thousands of library collections in one place.

6.      To accomplish this, WorldCat.org allows individuals to search member libraries' catalogs as represented by their corresponding WorldCat® records in the WorldCat® database. When an individual views a search result from WorldCat.org, they see a more limited view of a WorldCat® record, *i.e.*, with less metadata than is available for the record in the WorldCat® database for cataloging purposes.

7.      When OCLC member libraries subscribe to WorldCat® through OCLC's WorldCat® Discovery Services/FirstSearch, the subscription includes the WorldCat.org service. Libraries are willing to pay for WorldCat.org as part of their WorldCat® subscription because

WorldCat.org creates online visibility for member libraries and traffic, both digital and physical, to libraries' holdings.

8.    OCLC has also invested substantial resources in WorldCat.org.  Over the past three years, OCLC has spent nearly $6.8 million on WorldCat.org, improving WorldCat.org's features, user interface, search infrastructure, application infrastructure, networking, and more.

9.    Beginning in the fall of 2022, OCLC began experiencing cyberattacks on WorldCat.org and OCLC's servers that significantly affected the speed and operations of WorldCat.org, other OCLC products and services, and OCLC's servers and network infrastructure. These attacks continued throughout the following year, forcing OCLC to devote significant time and resources toward non-routine network infrastructure enhancements, maintenance, and troubleshooting.

10.    In October 2023, OCLC learned that Anna's Archive, a "pirate" or "shadow" library, and the individuals who run it had illegally hacked WorldCat.org over the previous year, harvesting and stealing 2.2 terabytes ("TB") of WorldCat® data—what Anna's Archive describes as "700 million unique actual records."  Anna's Archive has since made OCLC's WorldCat® data available for *en masse* for free download and now is actively encouraging its visitors to make use of the data in "interesting" ways.

11.    Defendants Anna's Archive, Maria Dolores Anasztasia Matienzo, and John Does #1–20, the individuals operating and doing business as Anna's Archive, have no legal justification for their actions and admit that their general operations violate U.S. and other jurisdictions' copyright laws.  Defendants also are well aware of the risk of their illegal actions—that they may be identified and held personally liable, and that Anna's Archive may be shut down.  To that end,

Defendants maintain alternative domains for Anna's Archive and actively conceal their individual identities.

12.     Defendants' hacking of WorldCat.org is yet another iteration of the pirate library's flagrant disregard for the law and the work of others—this time, the decades of work and investment that OCLC and its member libraries have spent developing and enhancing the bibliographical data in WorldCat®.  In the words of Anna's Archive, they have taken OCLC's WorldCat® data and are "giving it all away."

13.     Moreover, Defendants recognize the value of the WorldCat.org search engine and WorldCat® data.  In the blog post announcing their hacking and scraping of the data via WorldCat.org, Defendants publicly thanked OCLC for "the decades of hard work you put into building the collections that we now liberate.  Truly: thank you."

14.     By hacking WorldCat.org, scraping and harvesting OCLC's valuable WorldCat® data, making the data publicly available in the aggregate, and actively encouraging nefarious use of the data, Defendants have breached WorldCat.org's Terms and Conditions, unjustly enriched themselves, tortiously interfered with OCLC's contractual and business relationships, violated Ohio's anti-hacking statute, and committed trespass to chattels and conversion of OCLC's property.

15.     Moreover, Defendants openly admit that they engaged in a conspiracy to commit these acts, acknowledging that they "set our sights on the largest book database in the world: WorldCat," which they did to create a "TODO list" of books and other materials to pirate.

16.     OCLC has experienced substantial harm from Defendants' actions, and it will continue to do so unless Defendants are stopped from pursuing their current course of action.

## THE PARTIES

17.     OCLC is an Ohio nonprofit corporation with its principal place of business in Dublin, Ohio.

18.     Anna's Archive, formerly known as Pirate Library Mirror ("PiLiMi"), is an illegal shadow or pirate library that holds itself out as a non-profit organization.  Anna's Archive is not a registered Ohio entity, nor does it have its principal place of business in Ohio.

19.     Maria Dolores Anasztasia Matienzo[1] is a citizen of Washington and resides in Seattle, Washington.  Matienzo owns, operates, and/or controls Anna's Archive.

20.     John Does #1–20 are unknown persons who also own, operate, and/or control Anna's Archive.

## JURISDICTION AND VENUE

21.     This is a complaint for declaratory relief, injunctive relief, and damages under Ohio law for breach of contract, unjust enrichment, tortious interference of contract and business relationships, violation of Ohio Revised Code § 2913.04, trespass to chattels, conversion of property, and conspiracy to do the same.  Jurisdiction is conferred by 28 U.S.C. § 1332 and § 2201. The amount in controversy exceeds the value of $75,000, exclusive of interest and costs, and an actual controversy exists between the parties.

22.     Defendants themselves and through their agents and/or affiliates transacted business in Ohio; caused tortious injury by an act or omission in Ohio; caused tortious injury in Ohio by an act or omission outside Ohio and regularly do or solicit business, engage in a persistent course of conduct, and/or derive substantial revenue from services rendered in Ohio; caused

---

[1] Defendant Matienzo was known as Mark Andrew Matienzo until November 28, 2022.  On information and belief, Defendant Matienzo committed some of the acts described in this complaint while known as Mark Andrew Matienzo.

tortious injury in Ohio to OCLC by an act outside Ohio committed with the purpose of injuring

OCLC, when they might reasonably have expected OCLC would be injured thereby in Ohio; and

caused tortious injury to OCLC by a criminal act, several elements of which take place in Ohio,

which Defendants themselves committed or in the commission of which the Defendants are guilty

of complicity.  Ohio Rev. Code § 2307.382(A)(1), (3), (4), (6), and (7).

23.     Venue is appropriate in this district under 28 U.S.C. § 1391.

## STATEMENT OF FACTS

**I.      OCLC is a Global Library Organization that Provides Vital Technological Services to Libraries.**

24.     OCLC is a non-profit, membership, computer library service and research

organization dedicated to the public purposes of furthering access to the world's information and

reducing the rate of the rise in library costs.

25.     OCLC employs approximately 1,277 people in the United States, Canada, Europe,

and Asia Pacific, 781 of whom are based in Ohio.

26.     More than 29,000 libraries in 123 countries and territories around the world have

used OCLC services to locate, acquire, catalog, lend, preserve, and manage library materials.

27.     OCLC's services to the library community fall into four broad categories:

Management Services, Metadata Services, Discovery and Reference Services, and Resource

Sharing Services (collectively, "OCLC's Services").

28.     Now more than ever, libraries are faced with a rapidly changing environment,

evolving user needs, and increasing pressure to maintain a robust presence online.  OCLC's

Services provide a range of products that address these challenges by sharing data, streamlining

workflows, and connecting people to the knowledge held in the world's library collections.

**A.  WorldCat® is OCLC's premiere bibliographical record and cataloging product.**

29.     OCLC has spent more than 55 years creating the WorldCat® database into what it is today, and it is singularly OCLC's most valuable asset.

30.     WorldCat® is the world's most comprehensive database of information about library collections.

31.     Over 10,000 libraries have subscriptions to use WorldCat®.  These member libraries represent academic libraries, such as The Ohio State University; community colleges, like Columbus State Community College; public libraries, including the Columbus Metropolitan Library; state and government libraries; special libraries, like the Henry Ford Hospital; and library consortia, such as OhioLink.

32.     WorldCat® contains more than 551 million bibliographic records.  When these records are combined with the more than 27,000 collections from leading publishers, WorldCat® provides access to its subscribers of more than 3.4 billion items from a variety of resources.

33.     WorldCat® is a collection of OCLC member-contributed records, publisher records, and OCLC-created records that give libraries a greater web-scale presence.  The more libraries that participate, the better and more useful WorldCat® becomes to libraries, their end users, and other organizations that want to interact with libraries on the Web.

34.     WorldCat® is also a registry of library holdings.  Each member library's collection or holdings is represented in bibliographic records in WorldCat®, creating a network which supports research, local discovery, and resource sharing.

35.     WorldCat® records are bibliographic data regarding a work, such as title, author, edition, publisher, number of pages, subject, and classification—and more—obtained from OCLC member libraries, publishers, vendors, and national libraries.

36. OCLC has invested significant resources into developing, maintaining, improving, and enhancing WorldCat®.

37. OCLC merges, de-duplicates, arranges, and adds metadata to enhance these records to support discovery of, exploration of, and access to the records. Algorithms look for duplicates and provide other data control to maintain the high quality of WorldCat® records.

38. This includes adding OCLC's own unique identifying number, the "OCN," which enhances queries and serves as an authoritative index for specific items or works.

39. Of the entire WorldCat® collection, more than 93% of the records have been modified, improved, and/or enhanced by OCLC.

40. Significant costs are involved in the ongoing provision of the high-quality database on which members rely.

41. This requires members to share the benefits and costs of WorldCat® as part of the overall OCLC Cooperative.

42. Because there is a practical need to sustain the economic viability and value of WorldCat® over the long term, all members must agree to OCLC's contractual requirements, including the WorldCat® Rights and Responsibilities for the OCLC Cooperative, to be part of the OCLC Cooperative (attached here as Exhibit A).

43. In turn, OCLC agrees to maintain the exceptionally high quality of WorldCat® data, enrich the data, make it available in WorldCat.org for discovery purposes, *i.e.*, so that individuals can easily search member libraries' catalogues, and otherwise "use member-contributed data to support its public purposes and to benefit the cooperative."

44. Members must have a paid subscription to use WorldCat®.

45.     Not only is WorldCat® data valuable to members, WorldCat® is valuable to OCLC.  WorldCat® is integrated into and supports nearly all of OCLC's other products and services, including WorldCat.org (albeit in a more limited format).

**B.     WorldCat.org is a powerful search engine for the world's library catalog.**

46.     WorldCat.org is the world's largest library catalog website.  WorldCat.org connects thousands of library collections in one central location, making it easy for individuals to browse the world's libraries from one search platform on the Web.

47.     WorldCat.org connects individuals to their local libraries by driving search results to items in nearby libraries based upon their holdings of those items.

48.     WorldCat.org's search engine searches the WorldCat® database.

49.     When an individual enters a search in WorldCat.org, the individual is taken to a results page that allows a user to browse results, select a particular book or other media from the results, and view a list of which libraries nearest to them have a copy.

50.     When an individual selects a result from the search results, the individual can view more limited information from a library's bibliographical record available in WorldCat®.

51.     The information available through WorldCat.org on a result page includes data that is freely accessible on the web, such as title, publication, copyright, author, and editor, and limited data "enriched" by OCLC, such as OCN, International Standard Book Number ("ISBN"), International Standard Serial Number ("ISSN"), and pagination.  This enriched data is more difficult to find outside of WorldCat® and varies by each result in WorldCat.org.

52.     Most WorldCat® data available in a WorldCat® record is unavailable to an individual on WorldCat.org.  This is because a full WorldCat® record is part of a member library's subscription for cataloging and other library services.

53.  WorldCat.org results also include "borrow" buttons that take an individual to the library associated with the result so the individual can borrow the book or other material from the library directly.

54.  WorldCat.org creates essential online visibility and traffic for libraries and their collections, which member libraries are willing to pay for as part of their WorldCat® Discovery Services/FirstSearch subscription.

55.  OCLC has invested significant resources into developing, maintaining, improving, and enhancing WorldCat.org.

56.  Over the past three years, OCLC has spent nearly $6.8 million reimagining and rebuilding WorldCat.org, improving WorldCat.org's features, user interface, search infrastructure, application infrastructure, networking, and more.

57.  WorldCat.org supports over 3 million users per month.

58.  When an individual searches on WorldCat.org, the individual agrees to the OCLC WorldCat.org Services Terms and Conditions (attached here as Exhibit B). OCLC grants the individual a license to use WorldCat® data available on WorldCat.org for a limited purpose, and in exchange, the individual agrees, among other limitations, not to use the data for commercial use; not to harvest "material amounts" of data; not to distribute, display, or disclose the data; and not to store the data.

59.  Though individuals on WorldCat.org may see some WorldCat® data when they view one record at a time, the main value of WorldCat® data is the modifications, improvements, and/or enhancements by OCLC to WorldCat® records (most of which are unavailable on WorldCat.org) *and* the aggregate availability of these high-quality records in the WorldCat® database.

## II.      Anna's Archive is a Well-Known Illegal Pirate Library.

60.      Defendant Anna's Archive was created in July 2022.

61.      Anna's Archive is "the world's largest shadow library."[2]

62.      Shadow libraries, also commonly referred to as pirate libraries, are online databases and/or search engines that host and/or direct users to books, content, media, and other materials online for download that are copyrighted, offered without the consent of the owners and/or creators of the content, or not otherwise intended to be publicly accessible.

63.      In plain terms, pirate libraries illegally distribute and make available copyrighted books and other materials for free download, without recognizing the work of publishers, authors, editors, journalists, etc., through renumeration or compliance with copyright law.

64.      Anna's Archive was created and is operated by a team of anonymous "archivists" that refer to themselves as "Anna," *i.e.*, Defendants Matienzo and John Does #1–20.

65.      The individual defendants own, operate, control, and/or do business as Anna's Archive and make every effort to remain anonymous because they knowingly engage in illegal activity.  The individual defendants use usernames as pseudonyms to mask their identities, employ domain proxy services, and omit identifying information on the Anna's Archive's domains/websites and blog, among other strategies, to conceal their identities.[3]

66.      There are six internet domains controlled by Defendants in connection with Anna's Archive:  annas-archive.org, annas-archive.gs, annas-archive.se, annas-blog.org, annas-software.org, and pilimi.org.

---

[2] Anna's Blog, https://annas-blog.org/ (last visited Jan. 12, 2024).
[3] *E.g.*, *How to run a shadow library: operations at Anna's Archive*, Anna's Blog (Mar. 19, 2023), https://annas-blog.org/how-to-run-a-shadow-library.html.

67.     Anna's Archive is an online pirate library search engine engaging in and facilitating mass copyright infringement.[4]  Defendants openly acknowledge this, explaining "[w]e deliberately violate the copyright law in most countries."[5]

68.     Although Defendants assert that Anna's Archive's domains do not host copyrighted materials, Anna's Archive has "mirrored," or duplicated and stored elsewhere, shadow library databases that host copyrighted materials, including, Z-Library,[6] Sci-Hub, LibGen, and others. Defendants, through the Anna's Archive's domains, distribute the data through "torrents, announcing it somewhere, [and] getting people to spread it," *i.e.*, "seed" the torrent.[7]

69.     By using Anna's Archive's search, visitors can download pirated materials from third-party sources and torrent links.[8]

70.      Anna's Archive has two goals.[9]  First, to "preserve books, papers, comics, magazines, and more, by bringing these materials from various shadow libraries together in one place.  All this data is preserved forever by making it easy to duplicate it in bulk, resulting in many

---

[4] *See* Wikipedia.org, Anna's Archive, https://en.wikipedia.org/wiki/Anna%27s_Archive (last visited Jan. 12, 2024); *About*, Anna's Archive, https://annas-archive.org/about (last visited Jan. 12, 2024) (noting Anna's Archive partially maintains its Wikipedia page).

[5] *Introducing the Pirate Library Mirror (EDIT: moved to Anna's Archive):  Preserving 7TB of books (that are not in Libgen)*, Anna's Blog (July 1, 2022) https://annas-blog.org/blog-introducing.html.

[6] In 2022, the United States arrested and charged the creators of Z Library with criminal copyright infringement, wire fraud, and money laundering.  Press Release, United States Attorneys' Office Eastern District of New York, Two Russian Nationals Charged with Running Massive E-Book Piracy Website (Nov. 16, 2022), https://www.justice.gov/usao-edny/pr/two-russian-nationals-charged-running-massive-e-book-piracy-website.  The United States seized various domain names associated with Z Library. *Id.*

[7] *How to become a pirate archivist*, Anna's Blog (Oct. 17, 2022), https://annas-blog.org/blog-how-to-become-a-pirate-archivist.html.

[8] A torrent scatters pieces of the files across the internet and on different servers and facilitates peer-to-peer file sharing over the BitTorrent protocol; visitors thus download small pieces of an original file from different sources.

[9] *About*, Anna's Archive, https://annas-archive.org/about (last visited Jan. 12, 2024).

copies around the world." This goal includes "wide distribution." Second, to "make our collections easily and freely accessible to anyone."[10] These "goals" are merely euphemisms for piracy and Defendants' related illegal activities, such as hacking, data scraping, and data harvesting.

71.     Defendants describe their activities as preserving "all knowledge and culture of humanity" and ensuring "this knowledge and culture [is] available to anyone in the world." In reality, Defendants are perpetuating the widespread violation of copyright law and theft of intellectual property with the clear knowledge that their actions are illegal and damaging to creators.

72.     Although Defendants describe their illegal Anna's Archive enterprise as a "non-profit," they encourage donations in the form of a monthly subscription. These subscriptions range from $5 to $100 a month and offer a variety of increasing benefits commensurate with increasing subscription fees—primarily, the volume and speed of downloads from its torrents.

73.     For example, a $5 per month subscription will give a visitor "20 fast downloads per day," while a $100 per month subscription grants a visitor "1000 fast downloads per day" and naming rights to a torrent file on Anna's Archive ("Adopt a torrent").[11]

74.     As of January 12, 2024, Anna's Archive boasts a daily download rate of 370,000.[12]

**III.     Defendants Illegally Scrape and Harvest Data from WorldCat.org.**

75.     Beginning in October 2022, OCLC suffered persistent attacks to WorldCat.org and its servers. These attacks continued for roughly a year.

---

[10] *Id.*

[11] *Donate*, Anna's Archive, https://annas-archive.org/donate (last visited Jan. 12, 2024).

[12] *See supra*, note 9.

76.     These attacks were accomplished with bots (automated software applications) that "scraped" and harvested data from WorldCat.org and other WorldCat®-based research sites and that called or pinged the server directly.  These bots were initially masked to appear as legitimate search engine bots from Bing or Google.

77.     To scrape or harvest the data on WorldCat.org, the bots searched WorldCat.org results, running a script based on OCN for individual JavaScript Object Notation, or "JSON," records.  As a result, WorldCat® data including freely accessible and enriched data, such as OCNs, were scraped from individual results on WorldCat.org.

78.     The bots also harvested data from WorldCat.org by pretending to be an internet browser, directly calling or "pinging" OCLC's servers, and bypassing the search, or user interface, of WorldCat.org.  More robust WorldCat® data was harvested directly from OCLC's servers, including enriched data not available through the WorldCat.org user interface.

79.     Finally, WorldCat® data was harvested from a member's website incorporating WorldCat® Discovery Services, a subscription-based variation of WorldCat.org that is available only to a member's patrons.  Again, the hacker pinged OCLC's servers to harvest WorldCat® records directly from the servers.  To do this through WorldCat® Discovery Services/FirstSearch, the hacker obtained and used the member's credentials to authenticate the requests to the server as a member library.

80.     From WorldCat® Discovery Services, hackers harvested 2 million richer WorldCat® records that included data not available in WorldCat.org.  This hacking method resulted in the harvesting of some of OCLC's most proprietary fields of WorldCat® data.

81.     These hacking attacks materially affected OCLC's production systems and servers, requiring around-the-clock efforts from November 2022 to March 2023 to attempt to limit service

outages and maintain the production systems' performance for customers. To respond to these ongoing attacks, OCLC spent over 1.4 million dollars on its systems' infrastructure and devoted nearly 10,000 employee hours to the same.

82.     Despite OCLC's best efforts, OCLC's customers experienced many significant disruptions in paid services during the aforementioned period as a result of the attacks on WorldCat.org, requiring OCLC to create system workarounds to ensure services functioned.

83.     During this time, customers threatened and likely did cancel their products and services with OCLC due to these disruptions.

84.     Because OCLC had to combat these persistent hacking attacks, OCLC was forced to divert existing personnel and resources from OCLC's other products and services. As a result, OCLC's development and improvements to other products and services were delayed and limited.

85.     OCLC has devoted, at various times, ten or more employees to respond to and mitigate the harm from these attacks from October 2022 to present.

## IV.     Anna's Archive Unmasks itself as the Perpetrator of the Attacks on WorldCat.org and Makes OCLC's WorldCat® Records Publicly Available.

86.     On October 3, 2023, Defendants published a blog post, boasting, "[o]ver the past year, we've meticulously scraped all WorldCat records." [13]   Defendants also made this announcement on Anna's Archive's X account, formerly known as Twitter.[14]  In their blog post, Defendants outlined their scheme to hack WorldCat.org.

---

[13] *1.3B WorldCat scrape & data science mini-competition*, Anna's Blog (Oct. 3, 2023), https://annas-blog.org/worldcat-scrape.html.
[14] After OCLC sent cease and desist letters to Defendant Matienzo and the remaining Defendants via email addresses provided on Anna's Archive's domains, the X account for Anna's Archive was deleted. *See* @AnnaArchivist, X, https://twitter.com/AnnaArchivist (last visited Jan. 12, 2024) ("This account doesn't exist.").

87.     Defendants explained that "[a] year ago, we set out to answer this question:  What percentage of books have been permanently preserved by shadow libraries?"  They went on, "[t]o answer the question of which percentage of books has been preserved . . . we need to know the denominator:  how many books exist in total?  And ideally we don't just have a number, but actual metadata.  Then we can not only match them against shadow libraries, but also **create a TODO list of remaining books to preserve!**  We could even start dreaming of a crowdsourced effort to go down this TODO list," *i.e.*, a crowdsourced effort to pirate books on the "TODO list."

88.     As part of these efforts, Defendants "set our sights on the largest book database in the world: WorldCat" to "create a TODO list of remaining books to preserve," *i.e.*, to pirate.

89.     And "[o]ver the past year, we've meticulously scraped all WorldCat records.  At first, we hit a lucky break.  WorldCat was just rolling out their complete website redesign (in Aug 2022).  This included a substantial overhaul of their backend systems, introducing many security flaws.  We immediately seized the opportunity, and were able scrape hundreds of millions (!) of records in mere days."

90.     Defendants acknowledged that WorldCat® is a "proprietary database" in which OCLC "aggregates metadata records from libraries all over the world, in exchange for giving those libraries access to the full dataset, and having them show up in end-users' search results."  "Even though OCLC is a non-profit, their business model requires protecting their database.  Well, we're sorry to say, friends at OCLC, we're giving it all away.  :-)."

91.     As a result of their hacking and data scraping and harvesting, Defendants have stolen 2.2 TB of WorldCat® data, which they claim comprises 1.3 billion OCNs and 700 million unique actual bibliographic records.

92.     In total, WorldCat® has 1.4 billion OCNs, meaning Defendants claim that they were able to harvest, to some extent, 97.4% of unique WorldCat® records.

93.     Defendants, through the Anna's Archive domains, have made, and continue to make, all 2.2 TB of WorldCat® data available for public download through its torrents. Defendants also announced their torrents on the Anna's Archive blog, X, Reddit, and other platforms, and are encouraging users to download and analyze the data, creating a "mini-competition for data scientists."

94.     Defendants call for visitors to "help seed our torrents, scan and upload some books, help build Anna's Archive, help scrape more collections, or simply become a member."

95.     Defendants also incorporated the harvested WorldCat® data into the Anna's Archive search engine so that such data appears in search results displayed to visitors.

## V.     WorldCat® Data Available Publicly in the Aggregate is a Serious Threat to OCLC and its Library Services that Depend on WorldCat® Data.

96.     When Defendants torrented the 2.2 TB of WorldCat® data that they harvested by hacking WorldCat.org, Defendants effectively distributed OCLC's valuable WorldCat® data.

97.     Moreover, by creating a competition for the most unique use of OCLC's WorldCat® data, Defendants have all but ensured that individuals will download the data, use it for their own means, and incorporate it into other applications that facilitate its distribution.

98.     Most of the records contain enrichments from OCLC and its members.

99.     This includes metadata unique to WorldCat® records and created by OCLC. For example, the Anna's Archive's blog post indicates that Defendants harvested metadata that denotes associations between records, such as between an original work and a parodying work. OCLC adds these associations data as part of its enrichment process.

100. OCLC faces significant harm now that metadata representing 97.4% of all WorldCat® records is available in the aggregate for public download. Competitors can download and analyze the data, as well as use the aggregate data for anti-competitive purposes. Moreover, current and future customers may download and copy the data, foregoing OCLC's Services, including WorldCat®.

101. The more libraries that participate in WorldCat® and catalog their records with OCLC, the more records that are available through WorldCat® and the more valuable that WorldCat® becomes to OCLC's members. Any loss in OCLC membership and WorldCat® participation has a direct, negative impact on members that remain. The distribution of WorldCat® records and metadata for free will contract OCLC membership and WorldCat® participation.

102. WorldCat® is also one of OCLC's most financially important offerings to its members, making up an average of 40% of OCLC's revenue over the past 5 years.

103. WorldCat® also sits at the center of OCLC's family of products and services. OCLC's cataloging, resource sharing, discovery, OCLC publisher, and OCLC data services all benefit from WorldCat® records. OCLC's other products and services that would be affected by a successful attack by Defendants on WorldCat® include: WorldShare Management Services, WorldShare Metadata/OCLC Cataloging, Group Cataloging, WorldCat® Discovery Services/FirstSearch, WorldShare License Manager, WorldShare Collection Evaluation, WorldShare Interlibrary Loan, Tipasa, WorldCat.org, ILLiad, GreenGlass, and Chorea Insights.

104. Providing WorldCat® records for free in a mass download also decreases WorldCat®'s value to OCLC's other products and services, further devaluing OCLC's products and services to current and potential customers. The negative impact of Defendants' distribution

of WorldCat® records could have catastrophic consequences for every aspect of OCLC's operations.

105.    Defendants know of the aforementioned importance of WorldCat® to OCLC's operations and its ability to continue to compete in the library services market.

106.    Moreover, Defendants acknowledge the value to the library community that OCLC provides and the value of its efforts to collect, enrich, and refine WorldCat® records and data:

> PS: We do want to give a genuine shout-out to the WorldCat team. Even though it was a small tragedy that your data was locked up, you did an amazing job at getting 30,000 libraries on board to share their metadata with you. As with many of our releases, we could not have done it without the decades of hard work you put into building the collections that we now liberate. Truly: thank you.

## VI.    The Individuals Behind Anna's Archive and their Conspiracy to Illegally Target and Harm OCLC.

107.    After Anna's Archive identified itself as the perpetrator of the hacking attacks, OCLC set out to identify the individuals behind Anna's Archive.

108.    Defendant Maria Dolores Anasztasia Matienzo is software engineer at Tome and former catalog librarian at a direct competitor of OCLC.

109.    On information and belief, in addition to her extensive online presence, she has a GitHub (a software code hosting platform) account called, "anarchivist," and she developed a repository for a python module for interacting with OCLC's WorldCat® Affiliate web services.

110.    On her personal blog, Matienzo describes herself as an "archivist."

111.    Matienzo has publicly stated that libraries and archives should be open and publicly available.

112.    On information and belief, Matienzo has a deep understanding of OCLC's WorldCat® and software coding, which she has utilized to support Anna's Archive, along with her experience at an OCLC competitor.

19

113.    On information and belief, the other individuals behind Anna's Archive, Defendants John Does #1–20, reside in various foreign countries, including Israel and Brazil.

114.    On information and belief, Defendants John Does #1–20 have experience with data scraping, with online piracy, with software development, at OCLC's competitors, etc., which they use to support Anna's Archive, including through the attacks on OCLC.

115.    In a blog post, Anna's Archive had previously stated, "we would love to quit our jobs in finance and tech."[15]

116.    On information and belief, the individual defendants' professional profiles fit the blog post's "jobs in finance and tech" description.

117.    Upon information and belief, each individual defendant has used their library cataloging, software, and/or technological skills to create Anna's Archive, willfully violate international, federal, and state law, directly target OCLC, hack WorldCat.org, and distribute WorldCat® data, in order to facilitate the piracy of protected works.

118.    As set forth in Anna's Archive's blog, Defendants have acted, and continue to act, in concert in furtherance of a plan or agreement to tortiously interfere with OCLC's contractual and prospective business relationships in relation to OCLC's WorldCat® service, hack WorldCat.org and OCLC's servers, and trespass upon and convert OCLC's property, including its WorldCat® data and servers.

119.    As a result of Defendants' plans, OCLC will face difficulties meeting its obligations under the WorldCat®'s Rights and Responsibilities agreement and its service agreements with customers.

---

[15] *3x new books added to the Pirate Library Mirror (+24TB, 3.8 million books)*, Anna's Blog (Sept. 25, 2022), https://annas-blog.org/blog-3x-new-books.html.

120.     Upon information and belief, as a result of Defendants' plan, one or more OCLC WorldCat® customers or potential WorldCat® customers has or will opt to forego OCLC services, including WorldCat®.

121.     Upon information and belief, Defendants' coordinated and intentional predatory and tortious targeting of OCLC's WorldCat® data is willful and malicious, and it has caused, and will continue to cause, significant injury to WorldCat® and OCLC in Ohio and elsewhere, as discussed in this Complaint.

## COUNT ONE
## Breach of Contract

122.     OCLC incorporates the paragraphs above by reference as if fully restated herein.

123.     OCLC WorldCat.org Services Terms and Conditions ("Terms and Conditions") create a valid and binding contract between OCLC and Defendants, where OCLC grants the user a license to use WorldCat® data available on WorldCat.org, and in exchange the user agrees not to use the data for commercial use; to harvest "material amounts" of data; to distribute, display, or disclose the data; or to store the data.

124.     OCLC fully performed its obligations under the Terms and Conditions by providing each of the Defendants with access to certain WorldCat® data through WorldCat.org.

125.     Defendants materially breached the terms set forth in the Terms and Conditions, including but not limited to, its harvesting and scraping of WorldCat® data from WorldCat.org, bypassing WorldCat.org's user interface and directly accessing WorldCat® data from OCLC's servers, offering WorldCat® data for its own commercial use, displaying, distributing, and disclosing the data, and permanently storing via mirroring and torrent WorldCat® data.

126.     As a direct and proximate result of Defendants' breach of the Terms and Conditions, OCLC has incurred damages, OCLC has suffered immediate and irreparable injury,

loss, or damage in Ohio and elsewhere for which there is no adequate remedy at law, including irreparable injury to its business and loss of customer good will, and other intangible assets, and additional damages and expenses that are not readily calculable.

127.     Alternatively, the actions as described above will and/or have caused OCLC to be damaged in an amount to be determined at trial.

### COUNT TWO
### Unjust Enrichment

128.     OCLC incorporates the paragraphs above by reference as if fully restated herein.

129.     OCLC conferred a benefit on Defendants by providing access to WorldCat.org, which contains certain WorldCat® data.

130.     Defendants have knowledge of the benefit of WorldCat® data, as demonstrated by their statements on Anna's Archive's blog recognizing the propriety nature of WorldCat®, praising WorldCat®, and thanking OCLC for "the decades of hard work you put into building the collections."

131.     Defendants have unjustly retained WorldCat® data, despite cease-and-desist requests made by OCLC, by not only avoiding paying for OCLC products and services, which would have granted them bulk access to WorldCat® data, but also by offering access to the WorldCat® data to others.

132.     Defendants' retention of the WorldCat® data is in bad faith because Defendants exploited its access to WorldCat® data with the specific intent to harvest and scape data, even though they acknowledge WorldCat® data is proprietary, and that they are "giving it all away."

133.     Defendants' unjust enrichment proximately caused OCLC to suffer immediate and irreparable injury, loss, or damage in Ohio and elsewhere for which there is no adequate remedy

at law, including irreparable injury to its business and loss of customer good will, and other intangible assets, and additional damages and expenses that are not readily calculable.

134. Alternatively, the actions as described above will and/or have caused OCLC to be damaged in an amount to be determined at trial.

### COUNT THREE
### Tortious Interference of Contract

135. OCLC incorporates the foregoing paragraphs above by reference as if fully restated herein.

136. OCLC, as the owner of the world's preeminent cataloging record service, WorldCat®, has entered into contractual relationships with its WorldCat® customers, which outline the benefits of OCLC's cooperative and the access to WorldCat® records and data *en masse*.

137. Upon information and belief, Defendants have knowledge of OCLC's contracts with WorldCat® customers given Defendants' acknowledgment that WorldCat® data is proprietary, their previous experience at OCLC competitors, and that OCLC does not grant access to WorldCat® data without a subscription.

138. Upon information and belief, when Defendants harvested WorldCat® data and distributed it, and when Defendants hacked WorldCat.org and OCLC's servers, they intended for or were substantially certain that OCLC would face material difficulties in fulfilling its obligations under the WorldCat®'s Rights and Responsibilities agreement and current service agreements with customers, that customers would cancel their service agreements with OCLC, and otherwise materially interfere with OCLC's contractual relationships with its customers.

139. Defendants' interference with OCLC's existing contracts lacks any justification as evidenced by its improper motives, illegal interests in promoting the piracy of literary works and

of OCLC's WorldCat® records and metadata, and the predatory nature of its direct attack on OCLC.

140.    As a direct and proximate result of Defendants' tortious interference with OCLC's contracts, OCLC has suffered immediate and irreparable injury, loss, or damage in Ohio and elsewhere for which there is no adequate remedy at law, including irreparable injury to its business and loss of customer good will, and other intangible assets, and additional damages and expenses that are not readily calculable.

141.    Alternatively, the actions as described above will and/or have caused OCLC to be damaged in an amount to be determined at trial.

142.    In addition, Defendants' conduct was undertaken intentionally with malice, oppression, and/or fraud, justifying the imposition of punitive damages in an amount sufficient to punish Defendants and deter Defendants from engaging in similar conduct.

### COUNT FOUR
### Conspiracy to tortiously interfere with contract

143.    OCLC incorporates the foregoing paragraphs above by reference as if fully restated herein.

144.    Defendants conspired to tortiously interfere with OCLC's contractual relationships with its WorldCat® customers.

145.    Defendants formed a malicious combination, or a tacit understanding or design, to hack WorldCat.org and OCLC's servers and offer WorldCat® data in bulk, which Defendants know will create material difficulties for OCLC to fulfill its obligations under the WorldCat®'s Rights and Responsibilities agreement and current service agreements with customers and will cause customers to cancel their service agreements with OCLC.

146. Defendants did so intentionally, deliberately, willfully, maliciously, and without justification to injure OCLC in Ohio and elsewhere.

147. Pursuant to this malicious combination, Defendants have induced or will induce WorldCat® customers to terminate their agreements with OCLC.

148. These underlying unlawful acts committed pursuant to the formed conspiracy will and/or have directly and proximately caused OCLC to suffer immediate and irreparable injury, loss, or damage in Ohio and elsewhere for which there is no adequate remedy at law, including irreparable injury to its business and loss of customer good will, and other intangible assets, and additional damages and expenses that are not readily calculable.

149. Alternatively, the actions as described above will and/or have caused OCLC to be damaged in an amount to be determined at trial.

150. In addition, Defendants' conduct was undertaken intentionally with malice, oppression, and/or fraud, justifying the imposition of punitive damages in an amount sufficient to punish Defendants and deter Defendants from engaging in similar conduct.

## COUNT FIVE
### Tortious interference with prospective business relationships

151. OCLC incorporates the foregoing paragraphs above by reference as if fully restated herein.

152. OCLC, as the owner of WorldCat®, has had, or will have, prospective business relationships with potential customers seeking a cataloging record service as part of their ILS/LSP platforms.

153. Upon information and belief, Defendants know OCLC has these prospective business relationships, which is why they scraped and hacked WorldCat.org and OCLC's servers and are offering WorldCat® data in bulk.

154.    Upon information and belief, widely distributing pirated metadata online, devaluing the commercial value of the metadata, and interfering with WorldCat.org and OCLC's servers is consistent with Defendants' mission to offer the world's knowledge for free.

155.    Defendants have intentionally, deliberately, willfully, maliciously, and without justification caused or will cause these prospective WorldCat® customers to not enter into a business relationship with OCLC for WorldCat® by hacking WorldCat.org and OCLC's servers and offering WorldCat® data on Anna's Archives websites and via torrents.

156.    As a direct and proximate result of Defendants' tortious interference with OCLC's prospective business relationships with future WorldCat® customers, OCLC will suffer immediate and irreparable injury, loss, or damage in Ohio and elsewhere for which there is no adequate remedy at law, including irreparable injury to its business and loss of customer good will, and other intangible assets, and additional damages and expenses that are not readily calculable.

157.    Alternatively, the actions as described above will and/or have caused OCLC to be damaged in an amount to be determined at trial.

158.    In addition, Defendants' conduct was undertaken intentionally with malice, oppression, and/or fraud, justifying the imposition of punitive damages in an amount sufficient to punish Defendants and deter Defendants from engaging in similar conduct.

### COUNT SIX
**Conspiracy to tortiously interfere with prospective business relationships**

159.    OCLC incorporates the paragraphs above by reference as if fully restated herein.

160.    Defendants conspired to tortiously interfere with OCLC's future business relationships with potential WorldCat® customers.

161. Upon information and belief, widely distributing pirated metadata online, devaluing the commercial value of the metadata, and interfering with WorldCat.org and OCLC's servers is consistent with Defendants' mission to offer the world's knowledge for free.

162. Defendants formed a malicious combination, or a tacit understanding or design, to scrape WorldCat.org, offer WorldCat® data in bulk, and interfere with WorldCat.org and OCLC's servers.

163. Defendants did so intentionally, deliberately, willfully, maliciously, and without justification to injure OCLC in Ohio and elsewhere.

164. Pursuant to this malicious combination, Defendants have induced or will induce potential WorldCat® customers from engaging in agreements with OCLC.

165. These underlying unlawful acts committed pursuant to the formed conspiracy will and/or have directly and proximately caused OCLC to suffer immediate and irreparable injury, loss, or damage in Ohio and elsewhere for which there is no adequate remedy at law, including irreparable injury to its business and loss of customer good will, and other intangible assets, and additional damages and expenses that are not readily calculable.

166. Alternatively, the actions as described above will and/or have caused OCLC to be damaged in an amount to be determined at trial.

167. In addition, Defendants' conduct was undertaken intentionally with malice, oppression, and/or fraud, justifying the imposition of punitive damages in an amount sufficient to punish Defendants and deter Defendants from engaging in similar conduct.

## COUNT SEVEN
## Civil Recovery for Criminal Acts
## Violation of Ohio Revised Code § 2913.04

168.    OCLC incorporates the paragraphs above by reference as if fully restated herein.

169.    Defendants gained access to and/or caused access to be gained to OCLC's computers, computer systems, and/or computer networks when it hacked WorldCat.org and scraped and/or harvested WorldCat® data and accessed OCLC's servers.

170.    Defendants did so knowingly and without OCLC's consent and/or exceeding OCLC's consent as outlined in the OCLC WorldCat.org Services Terms and Conditions.

171.    Under Ohio Revised Code § 2307.60, anyone injured in person or property by a criminal act may recover damages in a civil action, including exemplary and punitive damages, and attorneys' fees.

172.    As a result of Defendants' criminal actions, OCLC has and/or will suffer injuries, including, but not limited to, decreased value of WorldCat® and OCLC's Services, damage to OCLC's servers and other infrastructure, and diminished good will with its customers.

173.    As a direct and proximate cause of Defendants' joint and willful violations of § 2913.04, OCLC is entitled to compensatory and punitive damages at an amount to be determined at trial, as well as attorneys' fees, pursuant to § 2307.60.

## COUNT EIGHT
## Conspiracy to violate Ohio Revised Code § 2913.04

174.    OCLC incorporates the paragraphs above by reference as if fully restated herein.

175.    Defendants conspired to gain access to and/or cause access to be gained to OCLC's computers, computer systems, and/or computer networks by hacking WorldCat.org and accessing OCLC's servers without and/or exceeding OCLC's consent.

176.     Defendants formed a malicious combination, or a tacit understanding or design, to unlawfully scrape WorldCat® data and access OCLC's servers in order to copy and distribute WorldCat® data.

177.     Defendants did so intentionally, deliberately, willfully, maliciously, and without justification to injure OCLC in Ohio and elsewhere.

178.     Pursuant to this malicious combination, Defendants have and/or will have decreased value of WorldCat® and OCLC's other products and services, damaged to OCLC's servers and other infrastructure, and diminished good will with its customers.

179.     These underlying unlawful acts committed pursuant to the formed conspiracy will and/or have directly and proximately caused OCLC to suffer immediate and irreparable injury, loss, or damage in Ohio and elsewhere for which there is no adequate remedy at law, including irreparable injury to its business and loss of customer good will, and other intangible assets, and additional damages and expenses that are not readily calculable.

180.     Alternatively, the actions as described above will and/or have caused OCLC to be damaged in an amount to be determined at trial.

181.     In addition, Defendants' conduct was undertaken intentionally with malice, oppression, and/or fraud, justifying the imposition of punitive damages in an amount sufficient to punish Defendants and deter Defendants from engaging in similar conduct.

**COUNT NINE**
**Trespass to Chattels**

182.     OCLC incorporates the paragraphs above by reference as if fully restated herein.

183.     The compilation of WorldCat® data was created, modified, enhanced, and is possessed by OCLC, and only exists, in bulk, through purchase of a subscription with OCLC.

184.    Without authorization from OCLC or in excess of any authorization, Defendants intentionally intermeddled with WorldCat® data, WorldCat.org, and OCLC's servers when they harvested data from WorldCat.org and OCLC's servers.

185.    Without authorization from OCLC or in excess of any authorization, Defendants intentionally used WorldCat® data when they made the data publicly available via torrent links on Anna's Archives' websites and when they damaged OCLC's servers and related infrastructure. Without authorization from OCLC, Defendants intentionally accessed OCLC's servers and related infrastructure when they hacked and harvested data from WorldCat.org.

186.    Defendants' trespass to WorldCat® data and OCLC's servers and related infrastructure has impaired its condition, quality, and/or value by, including but not limited to, offering WorldCat® data for public download, and damaging OCLC's servers and related infrastructure and reputation with its customers.

187.    As a result of Defendants' trespass upon OCLC's chattels, OCLC will suffer immediate and irreparable injury, loss, or damage in Ohio and elsewhere for which there is no adequate remedy at law, including irreparable injury to its business and loss of customer good will, and other intangible assets, and additional damages and expenses that are not readily calculable.

188.    Alternatively, the actions as described above will and/or have caused OCLC to be damaged in an amount to be determined at trial.

189.    In addition, Defendants' conduct was undertaken intentionally with malice, oppression, and fraud, justifying the imposition of punitive damages in an amount sufficient to punish Defendants and deter Defendants from engaging in similar conduct.

## COUNT TEN
## Conspiracy to Trespass to Chattels

190.    OCLC incorporates the foregoing paragraphs above by reference as if fully restated herein.

191.    Defendants conspired to trespass OCLC's personal property.

192.    Defendants formed a malicious combination, or a tacit understanding or design, to harvest the WorldCat® data from WorldCat.org, and then, use WorldCat® data when they made the data publicly available for download through the Anna's Archives websites, and to damage OCLC's servers and related infrastructure.

193.    Defendants did so intentionally, deliberately, willfully, maliciously, and without justification to injure OCLC in Ohio and elsewhere.

194.    Pursuant to this malicious combination, Defendants have and/or will have decreased the value of becoming a member in OCLC's cooperative offering bulk access to WorldCat® data, *i.e.*, affecting OCLC's business, and damaged OCLC's servers and related infrastructure and goodwill with its members.

195.    These underlying unlawful acts committed pursuant to the formed conspiracy will and/or have directly and proximately caused OCLC to suffer immediate and irreparable injury, loss, or damage in Ohio and elsewhere for which there is no adequate remedy at law, including irreparable injury to its business and loss of customer good will, and other intangible assets, and additional damages and expenses that are not readily calculable.

196.    Alternatively, the actions as described above will and/or have caused OCLC to be damaged in an amount to be determined at trial.

197. In addition, Defendants' conduct was undertaken intentionally with malice, oppression, and/or fraud, justifying the imposition of punitive damages in an amount sufficient to punish Defendants and deter Defendants from engaging in similar conduct.

**COUNT ELEVEN**
**Conversion**

198. OCLC incorporates the foregoing paragraphs above by reference as if fully restated herein.

199. The compilation of WorldCat® data was created, modified, enhanced, and is possessed by OCLC, and only exists, in bulk, through purchase of a subscription with OCLC.

200. Without authorization or at least intentionally in excess of any authorization, Defendants exercised control and dominion over WorldCat® data when they harvested and distributed the data through the Anna's Archives' websites and exercised control and dominion over OCLC's servers and related infrastructure when hacking and harvesting data from WorldCat.org.

201. Defendants' use of the WorldCat® data and OCLC's servers and related infrastructure constitutes a substantial and unreasonable interference with the right of OCLC to protect the WorldCat® data, a right which Defendants have recognized in Anna's Archives' Blog, and to protect its servers and related infrastructure.

202. Not only have Defendants unlawfully acquired the WorldCat® data through its scraping of WorldCat.org and harvesting through OCLC's servers and its violations of OCLC's Services Terms and Conditions, but Defendants, also, have refused to halt their unlawful possession, use, and distribution of the WorldCat® data despite OCLC's express demand.

203. As a direct and proximate result of Defendants' conversion of WorldCat® data and OCLC's servers and related infrastructure, OCLC will suffer immediate and irreparable injury,

loss, or damage in Ohio and elsewhere for which there is no adequate remedy at law, including irreparable injury to its business and loss of customer good will, and other intangible assets, and additional damages and expenses that are not readily calculable.

204.    Alternatively, the actions as described above will and/or have caused OCLC to be damaged in an amount to be determined at trial.

205.    In addition, Defendants' conduct was undertaken intentionally with malice, oppression, and/or fraud, justifying the imposition of punitive damages in an amount sufficient to punish Defendants and deter Defendants from engaging in similar conduct.

## COUNT TWELVE
### Conspiracy to Convert OCLC's Property

206.    OCLC incorporates the foregoing paragraphs above by reference as if fully restated herein.

207.    Defendants conspired to convert OCLC's personal property.

208.    Defendants formed a malicious combination, or a tacit understanding or design, to scrape the WorldCat® data from WorldCat.org and harvest the WorldCat® data from OCLC's servers, and then, use the WorldCat® data when they made the data publicly available for download on Anna's Archives' websites.  Defendants also formed a malicious combination, or a tacit understanding or design to deprive OCLC of the use of its servers and related infrastructure when it harvested the WorldCat® data from OCLC's servers.

209.    Defendants did so intentionally, deliberately, willfully, maliciously, and without justification to injure OCLC in Ohio and elsewhere.

210.    Pursuant to this malicious prosecution, Defendants have and/or will have decreased the value of becoming a member in OCLC's cooperative offering bulk access to the WorldCat®

data, i.e., affecting OCLC's business, and damaged OCLC's servers and related infrastructure and goodwill with its members.

211.    These underlying unlawful acts committed pursuant to the formed conspiracy will and/or have directly and proximately caused OCLC to suffer immediate and irreparable injury, loss, or damage in Ohio and elsewhere for which there is no adequate remedy at law, including irreparable injury to its business and loss of customer good will, and other intangible assets, and additional damages and expenses that are not readily calculable.

212.    Alternatively, the actions as described above will and/or have caused OCLC to be damaged in an amount to be determined at trial.

213.    In addition, Defendants' conduct was undertaken intentionally with malice, oppression, and/or fraud, justifying the imposition of punitive damages in an amount sufficient to punish Defendants and deter Defendants from engaging in similar conduct.

<div align="center">

**PRAYER FOR RELIEF**

</div>

**WHEREFORE**, OCLC, Inc. requests that the Court enter judgment in its favor and against Defendants as follows:

(a)    a declaration that Defendants' scraping of the WorldCat® data constitutes a (1) breach of contract or unjust enrichment, (2) tortious inference with contracts, (3) tortious interference with prospective business relationships, (4) violation of Ohio Revised Code § 2913.04, (5) trespass to chattels, (6) conversion, and (7) conspiracy to commit (2) through (6);

(b)    permanent injunctive relief prohibiting Defendants (1) from scraping or harvesting WorldCat® data from WorldCat.org or OCLC's servers, (2) from using, storing, or distributing the WorldCat® data on Anna's Archive websites, and (3) from encouraging others to scrape, harvest, use, store, or distribute WorldCat® data, and (4) requiring the deletion of all copies of WorldCat® data in possession of, or easily accessible to, Defendants, including all torrents

<div align="center">

34

</div>

identified on any Anna's Archive websites or within possession of, or easily accessible to Defendants;

(c)     an award of compensatory damages in favor of OCLC against Defendants in an amount to be determined at trial in excess of $75,000;

(d)     an award of punitive damages;

(e)     an award of attorneys' fees, pre-judgment interest, costs, and expenses, incurred in connection with this action; and/or

(f)     for such other and further relief as the court deems just.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury of the maximum number permitted by law.

Respectfully submitted,

Dated: January 12, 2024

/s/ *Jeffrey M. Walker*

Jeffrey M. Walker (0096567), Trial Attorney
Traci L. Martinez (0083989)
Kathryn M. Brown (0100426)
Brittany Silverman (0102263)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: +1 614 365 2700
Facsimile: +1 614 365 2499
jeffrey.walker@squirepb.com
traci.martinez@squirepb.com
kathryn.brown@squirepb.com
brittany.silverman@squirepb.com

*Attorneys for Plaintiff, OCLC, Inc.*

JS 44 (Rev. 09/29)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

OCLC, Inc.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

See attachment

## DEFENDANTS

Anna's Archive, Maria Dolores Anasztasia Matienzo, and John Does 1-20

County of Residence of First Listed Defendant  King County (WA)
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [x] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|                                                    | PTF | DEF |                                                               | PTF | DEF |
|----------------------------------------------------|-----|-----|---------------------------------------------------------------|-----|-----|
| Citizen of This State                              | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State                           | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country            | [ ] 3 | [ ] 3 | Foreign Nation                                              | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|----------|-------|-----|--------------------|------------|----------------|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | | [ ] 840 Trademark | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [x] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332

Brief description of cause:
Breach of contract, unjust enrichment, tortious interference of contract/business relationships, and other tort and statutory claims under Ohio law.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $  More than $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

### FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: <u>Nature of Suit Code Descriptions.</u>

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**OCLC, Inc.,**

        **Plaintiff,**

   **v.**

**ANNA'S ARCHIVE, f/k/a PIRATE LIBRARY MIRROR, MARIA DOLORES ANASZTASIA MATIENZO, and JOHN DOES #1–20,**

        **Defendants.**

---

## ATTACHMENT TO CIVIL COVER SHEET

---

**1(c): Plaintiff OCLC, Inc's Attorneys**

Jeffrey M. Walker (0096567), Trial Attorney
Traci L. Martinez (0083989)
Kathryn M. Brown (0100426)
Brittany Silverman (0102263)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: +1 614 365 2700
Facsimile: +1 614 365 2499

# EXHIBIT A



(https://www.oclc.org/en/home.html)

| Search OCLC websites | 🔍 |

Searching for items in a library? Try WorldCat.org (https://oc.lc/wc-oclc-header).

WorldCat®

# WorldCat Rights and Responsibilities for the OCLC Cooperative

Date of Last Revision: 2 June 2010

## Table of Contents

1. **Scope, Premise, and Policy Objectives (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#1)**
2. **Preamble (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#2)**
   A. OCLC and WorldCat (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#2B)
   B. OCLC Management and Governance (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#2C)
   C. WorldCat, a Shared Resource (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#2D)
   D. WorldCat's Value and Sustainability, and the Need for a Policy (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#2D)
3. **OCLC Member Rights and Responsibilities (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#3)**
   A. Rights (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#3A)
   B. Responsibilities (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#3B)
4. **OCLC's Responsibilities to Members (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#4)**
5. **Addressing Disputed Use of WorldCat Data by Members (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#5)**
6. **Policy Revision and Evolution (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#6)**

**Appendix 1: Sample Language for Agreements Between Members and Their Agents (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#App1)**

**Appendix 2: Terms and Conditions of Agreements Between OCLC and OCLC Members' Agents (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#App2)**

**Appendix 3: Record Use Policy Council (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#App3)**

**Glossary (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#Glossary)**

## 1. Scope, Premise, and Policy Objectives

This policy was created by the Record Use Policy Council, a group charged by the OCLC Board of Trustees to craft a replacement for the "Guidelines for Use and Transfer of OCLC Derived Records," developed in 1987. The membership of the Council can be found in Appendix 3 (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#App3).

The policy is intended for the OCLC cooperative (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#cooperative), which refers collectively to OCLC members (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#members), the OCLC governance structure (Board of Trustees and Global and Regional Councils), and the non-profit OCLC corporation. Members contribute to the OCLC cooperative through sharing of resources and

commitment to the WorldCat Principles of Cooperation (/content/marketing/publish/en_us/worldcat/community/principles.html).

The purpose of the policy is to define the rights and responsibilities associated with the stewardship of the WorldCat (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#worldcat) bibliographic and holdings database by and for the OCLC cooperative, including the use and exchange of OCLC member-contributed data comprising that database. The policy is based on the premise that OCLC members value WorldCat as a comprehensive, timely, and accurate reflection of the consolidated holdings of those members. The policy's intent is to encourage the widespread use of WorldCat bibliographic data (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#wcdata) while also supporting the ongoing and long-term viability and utility of WorldCat and of WorldCat-based services such as resource sharing, cataloging, and discovery.

The objectives of this policy are to:

A. Maximize the utility and viability of WorldCat, enable and facilitate innovation based on WorldCat, and support the substantial network of relationships between OCLC members and their partners in today's information landscape, while sustaining the integrity of the WorldCat database and its economic underpinnings.
B. Promote successful collective action and self-governing behaviors by OCLC members to sustain WorldCat over the long term.
C. Support a spirit of trust and reciprocity within the OCLC cooperative, as well as a commitment to continual policy evolution as conditions in the information ecosystem change.
D. Define OCLC member rights and responsibilities for WorldCat contribution, access, and data use or transfer.
E. Define the rights of OCLC members to use bibliographic data they have extracted from the WorldCat database.
F. Define the rights of OCLC members to transfer or make available data they have extracted from the WorldCat database to non-members.
G. Provide suggested language for OCLC members to use in service agreements with agents.
H. Define OCLC's responsibilities for using member-contributed data.
I. Define responsible use of OCLC systems and services.
J. Define the steps OCLC and OCLC governance can take when disputes arise regarding use of WorldCat data.
K. Establish a clear and transparent process for management of future changes to this policy that ensures the participation of the cooperative.
L. Provide a stable policy foundation and framework that will help collaborating organizations (particularly outside of the membership) to have confidence that they can predictably and reliably build upon the WorldCat database in developing new services consistent with the mission and values of the cooperative.

# 2. Preamble

## A. OCLC and WorldCat

OCLC's public purposes (/content/dam/oclc/membership/values_principles.pdf) include promoting the evolution of library use, of libraries themselves, and of librarianship, and providing processes and products for the benefit of libraries and their users. OCLC and its members form a cooperative to help members share resources, reduce costs, and increase their visibility and impact in the communities they serve. Together OCLC and its members have built WorldCat, the largest database of shared library holdings in the world, and a set of services that use this database. OCLC members, OCLC governance participants, and OCLC management all have roles in the community that builds, shares, uses, and manages the network resource that is WorldCat.

## B. OCLC Management and Governance

OCLC is the steward of the WorldCat database as well as the provider of access, services, infrastructure, software, hardware, and support. The OCLC Board of Trustees—made up of members from academic, public, state, and national libraries plus experts in business, finance, and law—works to ensure that OCLC stays financially secure and true to its public purposes. The Membership and Governance Protocols (/content/dam/oclc/membership/membership_protocols.pdf) define how member delegates engage with various aspects of managing the cooperative and its central asset, WorldCat. In addition to other duties, delegates have responsibility for commenting on OCLC's actions and intentions, including policy matters.

## C. WorldCat, a Shared Resource

The WorldCat database is more than a collection of OCLC member-contributed records. Its value is in the cooperation and outcomes it supports, not in the ownership of the records themselves. While, on behalf of its members, OCLC claims copyright rights in WorldCat as a compilation, it does not claim copyright ownership of individual records. With millions of bibliographic descriptions and more than a billion holdings from OCLC members around the world, the WorldCat database is a central point of concentration for the largest library network in the world. WorldCat gives libraries a Web-scale presence. The more libraries participate, the better and more useful WorldCat becomes to libraries, their end users, and other organizations that want to interact with libraries on the Web.

WorldCat's value rests in its usefulness as:

1. **A bibliographic record supply.** Comprehensive coverage and high-quality, consistent records facilitate operational efficiency in member libraries.
2. **A registry of library holdings.** Bibliographic data tied to library locations creates a network which supports research and resource sharing.
3. **A discovery environment**. The library network can be accessed as a unit, enhancing convenience and reach. This network can be delivered into other discovery environments.
4. **An infrastructure for knowledge organization.** A common infrastructure supports shared approaches to description, authority control (through NACO, CONSER, etc.), and subject analysis and classification.

5. **An infrastructure for systemwide maintenance of metadata.** Shared infrastructure supports systemwide revisions (e.g., MARC updates, heading changes); data mining for enriched structure (e.g., FRBR, WorldCat Identities); and syndication into other environments.
6. **A source of intelligence about the systemwide "collective collection."** The aggregation of holdings data at the network level supports policy and service decisions about the management of collections within and across institutions.
7. **A repository of data available in multiple ways**, including via WorldCat APIs that allow people to combine WorldCat data with their own applications.

In addition to these benefits, the WorldCat database is a union of national and other union catalogs from around the world, as well as the closest approximation of a national union catalog of library holdings in the United States. This means that WorldCat is the fullest single source of worldwide library holdings available, access to which improves the efficiency with which items can be located in—and requested from—library collections.

## D. WorldCat's Value and Sustainability, and the Need for a Policy

A policy is needed to ensure the continued viability and value of WorldCat as a shared cooperative resource. This policy will:

1. Help maintain a shared community resource that benefits the cooperative of OCLC members;
2. Reinforce the collective commitment to shared values, self-governance, and a spirit of reciprocity and trust;
3. Provide the underpinnings for a business model that sustains WorldCat for the benefit of the cooperative that supports it.

The fact that OCLC has a public purpose does not mean that WorldCat is a "public good (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#publicgood)" in the economic sense. On the contrary, WorldCat is a shared community resource intended to benefit the cooperative of members who contribute to its growth and financially support it. The goal of sharing widely the benefits of WorldCat sits alongside the practical need to sustain the economic viability and value of WorldCat over the long term. Significant costs are involved in the ongoing provision of the high-quality database on which OCLC members rely. If the database does not receive the continued organizational support of OCLC members, there is a very real danger that it will become fragmented and lose its integrity, that its quality will be diminished, and that, consequently, its utility to the OCLC cooperative will be reduced.

# 3. OCLC Member Rights and Responsibilities

## A. Rights

OCLC members who have extracted WorldCat data representing, or enriching the records for, their own holdings from the WorldCat database have the right to:

1. Load or incorporate such data into their library catalogs, or their discovery or resource-sharing systems, and into other intra-institutional services.
2. Use such data for purposes of supporting library collections' discovery and resource sharing; bibliographic verification; private study, learning, and teaching; and academic and scientific research.
3. Transfer or make available such data to individual scholars for their personal academic or scientific research or study, to library consortia (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#consortium) or public agencies working on behalf of libraries, or to other libraries and educational, cultural or scholarly institutions (e.g., museums, archives, historical societies, research institutes), whether these institutions are members or non-members of OCLC, for those organizations' institutional or collaborative re-use.
   In these cases, the transfer or making available of WorldCat data and its subsequent uses (including copying, displaying, publishing, modifying, reformatting, and/or creating works or services from) should be carried out in keeping with OCLC member community norms (/content/dam/oclc/worldcat/documents/principles-of-cooperation.pdf), OCLC's public purpose (/content/dam/oclc/membership/values_principles.pdf), and this policy's intent.

4. Transfer or make available WorldCat data representing their own holdings to agents (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#agent) they retain to perform services on their behalf that directly benefit the OCLC member (e.g., peer or consortial resource sharing, automated authority control, increased visibility of collections).

   a. In these cases, OCLC members should ensure that a written agreement exists with any such agent that limits the agent's use of WorldCat data to performance of the services contracted for by the OCLC member. Sample language for such agreements between members and their agents may be found in Appendix 1 (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#App1) below.
   b. If they also benefit the OCLC cooperative, other uses, transfers, or aggregations of WorldCat data representing a member's own holdings that serve the business purposes of an OCLC member's agent are encouraged, subject to the terms and conditions of a mutually acceptable separate agreement between the agent and OCLC. A general description of the current terms and conditions of such agreements can be found in Appendix 2 (https://www.oclc.org/en/worldcat/cooperative-quality/policy.html#App2) below.

OCLC has in place existing agreements with many agents and will continue to create them as member needs arise.

## B. Responsibilities

It is the responsibility of OCLC members to:

1. Abide by this policy, and ensure awareness of it both within their institutions and on the part of their agents, their cooperatives, and other organizations to which they make their data available.

2. Contribute and maintain bibliographic and holdings data consistent with the standards and guidelines (/content/dam/oclc/worldcat/documents/guidelines-for-contributions-to-worldcat.pdf) adopted by the OCLC cooperative.

3. Make reasonable efforts to ensure that their contributions to WorldCat do not violate the rights of any third party.

4. Make reasonable efforts to attribute the OCLC cooperative as a contributor in works or services based substantially on WorldCat data.

5. Make reasonable efforts to ensure that the subsequent re-use and transfer of their WorldCat data by non-members is consistent with this policy and OCLC's public purposes and supports the long-term viability and utility of WorldCat.

6. Encourage and practice responsible use of OCLC systems and services, including:
   a. not permitting unauthorized use of their OCLC logons or passwords;
   b. not engaging in mass downloading from WorldCat without OCLC's prior written consent;
   c. not engaging in mass distribution of data directly from WorldCat to non-members without OCLC's prior consent;
   d. not engaging in other activities that diminish the value of WorldCat to the OCLC cooperative.

# 4. OCLC's Responsibilities to Members

It is the responsibility of OCLC, operating on behalf of the OCLC cooperative, to use member-contributed data to support its public purposes and to benefit the cooperative, including:

a. Adding member-contributed data to WorldCat, and maintaining such data consistent with the standards and guidelines adopted by the OCLC cooperative.
b. Modifying, enriching, or reformatting it.
c. Making it function within WorldCat-based systems and services.
d. Using it in WorldCat.org for discovery purposes.
e. Remixing and combining it with other data.
f. Entering into agreements to share it as broadly as possible with partner organizations and members' agents.
g. Honoring all existing agreements for the storage, maintenance, and usage of WorldCat records.

# 5. Addressing Disputed Use of WorldCat Data by Members

OCLC member use of data extracted from the WorldCat database is carried out in a diverse and rapidly-changing environment. It is, therefore, impossible to anticipate all of the conceivable uses to which members might want or need to put WorldCat data. OCLC members are encouraged to discuss with OCLC any uses that do not appear to be covered by this policy. If a particular use is determined to not be covered, OCLC and the member will seek a mutually agreeable resolution of the matter. If either party believes that timely resolution cannot be reached, then the matter will follow resolution and/or arbitration procedures to be determined by the Global Council and the Board of Trustees.

# 6. Policy Revision and Evolution

Because it is impossible to anticipate all of the conceivable uses to which members might want or need to put WorldCat data, this policy will be regularly reviewed in order to ensure its continued timeliness and applicability. OCLC will initiate a policy review at least every three years and will make certain that such reviews are conducted in an open and transparent way, and include opportunities both for substantive involvement of the OCLC governance structure and for public comment, as well as a formal change-adoption process.

# Appendix 1: Sample Language for Agreements Between Members and Their Agents

"In connection with Agent's performance of the services specified in this Agreement (the "Services") for Library, Library has made or will make available to Agent copies of bibliographic data, library holdings and/or other information representing Library's own holdings extracted from WorldCat, the online database of such information maintained by OCLC Online Computer Library Center, Inc. ("OCLC") and its members (hereinafter "WorldCat Data"). Except to the extent authorized by a separate written agreement between Agent and OCLC, Agent agrees that:

(i) it will make no copies and no use of WorldCat Data except as necessary to perform the Services for Library; and

(ii) it will not transfer or otherwise make available any WorldCat Data (or copies thereof) or any works based on or incorporating WorldCat Data (or any portion thereof) to any party except as necessary to perform the Services.

Agent will promptly delete all WorldCat Data received from Library from its computer systems when the WorldCat Data is no longer needed to perform Services. OCLC may enforce the terms of this paragraph on its own behalf directly against Agent. This paragraph shall survive any expiration or termination of this Agreement."

# Appendix 2: Terms and Conditions of Agreements Between OCLC and OCLC Members' Agents

The separate agreements between OCLC and OCLC members' agents to authorize the agents' use, transfer, or aggregation of WorldCat data referenced in Section 3A(4)(b) of the Policy might include the following general provisions, to the extent deemed appropriate by OCLC:

1. OCLC's authorization for the agent to use, transfer, or aggregate WorldCat data representing the OCLC member's own holdings for purposes that: (i) further OCLC's public purposes, and (ii) provide benefit to the OCLC cooperative and its members;
2. limitations on the agent's use, transfer, or aggregation of such WorldCat data as necessary to ensure the long-term utility and viability to OCLC members of WorldCat and the OCLC network of services;
3. an additional exchange of value between OCLC and the agent such as:

    (i) a reciprocal metadata sharing component, through which OCLC and the agent agree to share metadata for purposes of synchronizing OCLC's databases, including WorldCat, and the agent's database(s);

    (ii) a reciprocal linking component, through which OCLC and the agent agree to link to each other's databases/web sites for purposes of broadening access to physical and digital library collections; and/or

    (iii) other exchanges that provide value to the OCLC cooperative and its members;

    and/or
4. other provisions, terms, and conditions that are customary and/or appropriate for the transaction.

# Appendix 3: Record Use Policy Council

**Co-Chair**: **Barbara Gubbin** , Director, Jacksonville Public Library, USA

**Co-Chair**: **Jennifer Younger** , President-Elect, OCLC Global Council and Edward H. Arnold Director of Hesburgh Libraries, University of Notre Dame, USA

**ChewLeng Beh**, Global Council Delegate and Chair, OCLC Asia Pacific Regional Council; and Senior Director, Singapore National Library Board, Singapore

**Raymond Bérard**, Global Council Delegate and Director, ABES, France

**Karen Calhoun**, Vice President, WorldCat and Metadata Services, OCLC, USA

**Klaus Ceynowa**, Global Council Delegate and Deputy Director General, Bayerische Staatsbibliothek, Germany

**Christopher Cole**, Global Council Delegate and Associate Director for Technical Services, National Agricultural Library, USA

**Lorcan Dempsey**, Vice President, OCLC Research and Chief Strategist, OCLC, USA

**Nancy Eaton**, Dean of University Libraries and Scholarly Communications, Penn State University, USA

**Clifford A. Lynch**, Executive Director, Coalition for Networked Information (CNI), USA

**Brian E. C. Schottlaender**, Global Council Delegate and The Audrey Geisel University Librarian, University of California, San Diego, USA

**Lamar Veatch**, Global Council Delegate and State Librarian, Georgia Public Library Service–University System of Georgia, USA.

# Glossary

**Agent** . A library will typically contract with a variety of suppliers—vendors, cooperative organizations, and others—for services to achieve its goals. This may involve sharing of data with those suppliers. Examples include digitization of collections, discovery layer services, authority control, or resource sharing systems. These suppliers are 'agents.'

**Library Consortium.** For purposes of this policy, a library consortium is any cooperative association of libraries and/or educational, cultural, or scholarly institutions, (e.g., museums, archives, historical societies, research institutes) that was organized and exists for the primary purpose of providing services to its members and which operates on a not-for-profit basis.

**OCLC Cooperative** . The phrase "OCLC Cooperative" references collectively: OCLC members, the OCLC governance structure (Board of Trustees and Global and Regional Councils), and the non-profit OCLC corporation.

**OCLC Members** . OCLC members belong to the OCLC Cooperative, whose membership model is based on contribution to the shared interests of the OCLC Cooperative. Institutions worldwide become members of OCLC by contractually agreeing to contribute intellectual content to the Cooperative or to share resources with other members.

**Public Good**. A public good has two key characteristics: it is difficult or impossible to prevent unauthorized parties from using the good, and one party's use of the good does not diminish the ability of another party to use it. These characteristics mean that once public goods has been supplied, they are fully available to everyone, and this in turn means that public goods are typically not made available through market mechanisms. They are instead usually supplied by government agencies and funded through taxation. Examples of public goods include national defense and street lights. "Club goods," also called "member goods" or "collective goods," are like public goods in that use of the good by one party does not diminish the ability of another party to use it. However with club goods (unlike public goods), unauthorized parties (e.g., those that do not contribute toward the cost of

providing the good) can be excluded (in the absence of appropriate arrangements) from enjoying the benefits of the good. Because of this, the supply of a club good can be sustained through mechanisms that distribute the cost of providing the good across those who benefit from its use. Examples of club goods include satellite television, online subscription news services, agricultural cooperatives, and credit unions.

**WorldCat** . WorldCat is a database of bibliographic records and holdings data representing library collections. It is created through OCLC member contributions and OCLC management aggregation of data from multiple sources.

**WorldCat Data.** For purposes of this policy, WorldCat data is metadata for an information object, generally in the form of a record or records encoded in MARC format, whose source is or at one point in time was the WorldCat bibliographic database.

You have received WorldCat data when (1) you have extracted it directly from the WorldCat database using one of OCLC's services for members (e.g., Connexion, WorldCat Cataloging Partners, CatExpress, the OCLC Z39.50 Cataloging Service, Batchload services) or under the terms of a non-member agreement with OCLC; or (2) you have extracted it from an online catalog or another source to which extracted WorldCat data has been transferred or made available.

Identifying WorldCat as the source of data that has been transferred or made available downstream of the initial extraction from WorldCat can sometimes be complex. A combination of the following data elements in a bibliographic record can help determine if the record was initially extracted from WorldCat:

- An OCLC Control Number along with
  - the 001 field that includes value characters "ocm" or "ocn" and/or
  - the 035 field that includes the value "(OCoLC)" and/or
  - the 994 field (https://www.oclc.org/bibformats/en/9xx/994.html)

---

Approved by the OCLC Board of Trustees on 14 June 2010, effective 1 August 2010.

## Stay in the know

Get the latest product updates, research, events, and much more—right to your inbox.

**Subscribe now (https://www.oclc.org/en/email.html?utm_campaign=email-subscription-web-organic&utm_medium=digital&utm_source=webpage-email-sub&utm_content=email-subscription-footer-button&utm_term=en)**

## About

About OCLC (https://www.oclc.org/en/about.html)

Latest news (https://www.oclc.org/en/news.html)

Leadership (https://www.oclc.org/en/about/leadership.html)

Finance (https://www.oclc.org/en/about/finance.html)

OCLC Trust Center (https://www.oclc.org/en/trust.html)

Advancing racial equity (https://www.oclc.org/en/about/diversity-and-advancing-racial-equity.html)

*Next* blog (https://blog.oclc.org/next/)

Contact Us (https://www.oclc.org/en/contacts.html)

## Events

Upcoming events (https://www.oclc.org/en/events.html)

## Information for

Academic libraries (https://www.oclc.org/en/academic.html)

Public libraries (https://www.oclc.org/en/public.html)

Research libraries (https://www.oclc.org/en/rlibs.html)

Special libraries (https://www.oclc.org/en/special.html)

Groups and consortia (https://www.oclc.org/en/groups.html)

Partners (https://www.oclc.org/en/partnerships.html)

## Membership

Overview (https://www.oclc.org/en/membership.html)

Libraries and groups (https://www.oclc.org/en/membership/institutions.html)

Individuals (https://www.oclc.org/en/membership/individuals.html)

Councils (https://www.oclc.org/en/membership/councils.html)

## Products

Wise (https://www.oclc.org/en/wise.html)

WorldShare Management Services (https://www.oclc.org/en/worldshare-management-services.html)

WorldShare Interlibrary Loan (https://www.oclc.org/en/worldshare-ill.html)

WorldCat Discovery (https://www.oclc.org/en/worldcat-discovery.html)

OCLC Cataloging Subscription (https://www.oclc.org/en/cataloging-subscription.html)

EZproxy (https://www.oclc.org/en/ezproxy.html)

Dewey Services (https://www.oclc.org/en/dewey.html)

CONTENTdm (https://www.oclc.org/en/contentdm.html)

All products and services » (https://www.oclc.org/en/services.html)

## Visit related sites

Support & Training (https://help.oclc.org/)

OCLC Community Center (https://community.oclc.org)

OCLC Research (https://www.oclc.org/en/research/home.html)

Developer Network (https://www.oclc.org/en/developer/home.en.html)

WebJunction (https://www.webjunction.org/home.html)

President's Leadership Blog (http://www.skipprichard.com)

(https://www.oclc.org/en/careers.html)

## Careers

About Careers (https://www.oclc.org/en/careers.html)

Upcoming webinars (https://www.oclc.org/en/events/webinars.html)

Resources (https://www.oclc.org/en/membership/member-resources.html)

View open positions in the Americas (https://oclc.wd1.myworkdayjobs.com/OCLC_Careers)

View open positions in Europe and Asia Pacific (https://oclc.wd1.myworkdayjobs.com/OCLC_EMEA_Careers)

OCLC logo

Facebook (http://www.facebook.com/pages/OCLC/20530435726)

(https://www.youtube.com/OCLCvideo)

(https://www.linkedin.com/company/oclc)

(https://www.instagram.com/oclc_global)

(https://blog.oclc.org/next/)

(https://www.oclc.org/en/rss.html)

© 2024 OCLC (https://policies.oclc.org/en/copyright.html)

Domestic and international trademarks and/or service marks of OCLC, Inc. and its affiliates (https://policies.oclc.org/en/copyright/trademarks.html)

# EXHIBIT B



Back

# OCLC WorldCat.org Services Terms and Conditions

Thank you for visiting the OCLC WorldCat.org web site.  You may utilize WorldCat.org Services by agreeing to and complying with these OCLC WorldCat.org Services Terms and Conditions (these "Terms").  Your use of WorldCat.org Services is governed by these Terms.  OCLC reserves the right, within its sole discretion, to determine your eligibility to use WorldCat.org Services.

## 1. DEFINITIONS

A. "WorldCat.org Services" means the Data and other services made available to You by OCLC through the OCLC WorldCat.org web site.

B. "You" or "Your" refers to:  (i) an individual accessing and using WorldCat.org Services on his or her own behalf;  or (ii) an individual or entity on whose behalf WorldCat.org Services are being accessed and used by his/her/its authorized representative.

C. "Account" means your current access credentials which are recognized by OCLC as authentic.

D. "Data" means bibliographic data and other information (including text, images and other content contributed to WorldCat.org Services by other users) made available to You by OCLC or its suppliers through WorldCat.org Services.

E. "Non-Commercial Use" means Your internal or personal use for purposes of resource discovery, learning, teaching, academic research, scientific research, private study, verification of bibliographic information and/or identification of materials to be ordered via interlibrary loan.

F. "Commercial Use" means:  (i) sale or resale of WorldCat.org Services (including, without limitation, sale or resale of rights therein under a licensing arrangement or otherwise); or (ii) use of WorldCat.org Services as part of or to facilitate a service for which You receive a fee (including, without limitation, fees from advertising placed on service interfaces).

G. "Content" means text, images and/or other content You (by linking or otherwise) include in Your user profile (if any) or otherwise contribute to WorldCat.org Services.

## 2. AGREEMENT TO THESE TERMS

Your use of WorldCat.org Services signifies Your agreement to these Terms.   Accordingly, You should read these Terms carefully prior to using WorldCat.org Services.  The Terms are available via a link appearing on the OCLC WorldCat.org web site and may also be made available for Your review as OCLC otherwise thinks appropriate.  OCLC may change these Terms at any time in its sole discretion. OCLC will issue notice of changes by email, a change notice posted on the OCLC WorldCat.org web site or any other means reasonably calculated to provide notice.  If any change is unacceptable, Your only recourse is to cease using WorldCat.org Services. Your continued use of WorldCat.org Services following OCLC's issuance of notification of a change to these Terms or

posting of a new version of these Terms on the OCLC WorldCat.org web site will constitute binding acceptance of the change or such new agreement (whichever applies).

## 3. USE OF WORLDCAT.ORG SERVICES

A. **Data.** OCLC grants you a nonexclusive, nontransferable license to use Data solely for Non-Commercial Use. The following activities are prohibited and you agree not to engage in (or permit) such activities:

    i. use of Data for Commercial Use, in any manner not expressly authorized by these Terms or in any unlawful manner;

    ii. use of Data for cataloging;

    iii. making more than one (1) copy per screen display;

    iv. use of bots, spiders, or other automated information-gathering devices or programming routines to "mine" or harvest material amounts of Data;

    v. distribution, display or disclosure of Data except to the extent reasonably incidental to Non-Commercial Use; and

    vi. permanent or long-term storage of Data (including, but not limited to, creation of or repackaging in a database containing material amounts of Data).

B. **Third-Party Data.** Certain Data made available to You through WorldCat.org Services is supplied by third-party database owners. Your use of such Data is subject to: (i) Section 3.A above; and (ii) the terms and conditions applicable to such Data set forth in Exhibit A to these Terms. A third-party database owner has the right to assert or enforce any of the provisions of these Terms applicable to its data directly against You on its own behalf.

C. **Content**. If WorldCat.org Services afford You the opportunity to establish a user profile or otherwise contribute text, images and/or other content, the following requirements apply to the Content: (i) You are responsible for complying with the requirements of all applicable copyright laws and other laws applicable to Content, as well as all liability and damages arising from Your failure to do so; (ii) You may not use or contribute Content that is illegal, inaccurate, obscene, threatening, defamatory, invasive of privacy, infringing of intellectual property rights, or otherwise injurious to third parties or objectionable or which consists of or contains software viruses, political campaigning, commercial solicitation, chain letters, mass mailings, or any form of "spam"; and (iii) You may not use a false e-mail address, impersonate any person or entity, or otherwise mislead as to the origin of Content. OCLC reserves the right (but does not have the obligation) to remove, without liability, Content determined by OCLC in its sole discretion to violate the above requirements, but OCLC does not regularly review Content. OCLC takes no responsibility and assumes no liability for or in connection with any Content. You hereby grant to OCLC (including its subsidiaries and affiliates) a perpetual, irrevocable, nonexclusive, transferable, assignable, worldwide, fully paid up, royalty-free, license to: (i) make, use, copy, reproduce, modify and exploit Content; (ii) create, use, copy, reproduce, modify and exploit derivative works of Content; (iii) publicly perform or display, import, broadcast, transmit, disclose, distribute (directly or through a third-party), license, offer to sell, and sell, rent, lease or lend Content (and any derivative works thereof); and (iv) sublicense or assign to third parties any or all of the foregoing rights, including the right to sublicense or assign to further third parties. You also perpetually, irrevocably and free of charge grant other users of WorldCat.org Services all rights in and to Content (and derivative works thereof) necessary for use in accordance with these Terms and any additional terms and conditions described in Section 3.D below. You represent and warrant to OCLC (and its subsidiaries and affiliates) that You have all rights in Content necessary to grant the foregoing rights and that use of Content in accordance therewith will not infringe upon or otherwise violate the rights of any party. You will immediately notify OCLC of any circumstances which may indicate a breach of the foregoing representations and warranties. Subject to the foregoing license grants and except as required by any additional terms and conditions described in Section 3.D below, You and/or Your suppliers retain ownership of all rights, title and interest in and to Content.

D. ***Other Services***.  Other services made available to You through the OCLC WorldCat.org web site may be subject to additional terms and conditions which will be made available to You at the time such other services are available for Your use.  You acknowledge that the WorldCat.org web site may provide You with links to web sites or sources of content which are not under the control of and are not maintained by OCLC.  OCLC is not responsible for and does not endorse or guarantee the content or services available to You through those links.  Accordingly, You agree to pursue any claims you may have as a result of Your use of or reliance on such services or content solely against the relevant supplier.

E.  OCLC may, without liability, determine, add to, delete from or change at any time (i) which Data and other services comprise WorldCat.org Services,  (ii) the technical and functional specifications, form and formats of  WorldCat.org Services; (iii) Your rights with respect to WorldCat.org Services; and (iv) any of these Terms.  Your continued use of WorldCat.org Services after any such determination, addition, deletion or changes signifies Your acceptance thereof.  OCLC may discontinue WorldCat.org Services, in whole or in part, at any time and for any reason without liability

F. "OCLC", "WorldCat", "WorldCat.org" and the WorldCat logo are trademarks/service marks of OCLC Online Computer Library Center, Inc.  Third-party product, service and business names are trademarks/service marks of their respective owners.  OCLC and/or its suppliers own all rights, title and interest, including, without limitation, all intellectual property rights, in and to WorldCat.org Services.  Except as expressly provided for in these Terms, You acquire no rights in or to WorldCat.org Services.

G. Acquisition and maintenance of Internet and other telecommunications connections, services, equipment and facilities necessary for You to access WorldCat.org Services are Your sole responsibility.

## 4. MATERIAL BREACH

OCLC may, in its sole discretion, take measures to suspend your access to WorldCat.org Services immediately upon your material breach of these Terms pending Your correction of such breach. Egregious or habitual breaches of these Terms may result in permanent suspension of Your access to WorldCat.org Services.

## 5. DISCLAIMERS AND LIMITATIONS OF LIABILITY

A. You are responsible for all damages, liabilities, losses, costs and expenses (including attorneys' fees) incurred by OCLC, its subsidiaries and affiliates and/or their respective suppliers (including those incurred in connection with third-party claims) as a result of your breach of these Terms.

B. WORLDCAT.ORG SERVICES ARE PROVIDED "AS IS" AND YOUR USE OF AND RELIANCE ON WORLDCAT.ORG SERVICES [INCLUDING, WITHOUT LIMITATION, COPYRIGHT STATUS INFORMATION (IF ANY)] *IS SOLELY AT YOUR OWN RISK*. COPYRIGHT STATUS INFORMATION AVAILABLE THROUGH WORLDCAT.ORG SERVICES:  (i) IS DETERMINED BY OCLC OR ITS SUPPLIERS BY USING REASONABLE EFFORTS; (ii) IS PRESENTED SOLELY FOR INFORMATIONAL PURPOSES; (iii) DOES NOT CONSTITUTE LEGAL ADVICE; AND (iv) IS NOT TO BE CONSIDERED A SUBSTITUTE FOR YOUR INDEPENDENT VERIFICATION OF COPYRIGHT STATUS.  OCLC DOES NOT REPRESENT OR WARRANT THE COMPLETENESS, PERFORMANCE OR ACCURACY OF WORLDCAT.ORG SERVICES.

C. OCLC, ITS SUBSIDIARIES AND AFFILIATES AND THEIR RESPECTIVE SUPPLIERS DISCLAIM ALL REPRESENTATIONS AND WARRANTIES, EXPRESS AND IMPLIED, CONCERNING WORLDCAT.ORG SERVICES, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR USE AND NONINFRINGEMENT. IN NO EVENT SHALL OCLC, ITS SUBSIDIARIES OR AFFILIATES OR THEIR RESPECTIVE SUPPLIERS HAVE ANY LIABILITY

WHATSOEVER FOR, AND YOU HEREBY EXPRESSLY RELEASE EACH FROM, DAMAGES OR LIABILITY OF ANY KIND ARISING FROM CLAIMS RELATED TO: (i) WORLDCAT.ORG SERVICES (INCLUDING, WITHOUT LIMITATION, CLAIMS BASED ON INFRINGEMENT OF COPYRIGHT, PATENT, TRADE SECRET OR OTHER RIGHT, LIBEL, SLANDER OR INVASION OF PRIVACY OR ERRORS, INACCURACIES OR OMISSIONS IN WORLDCAT.ORG SERVICES); OR (ii) ANY ACT UNDERTAKEN OR OMISSION MADE IN CONNECTION WITH THIS AGREEMENT, IN EACH CASE, REGARDLESS OF WHETHER OR NOT THE RELEASED PARTY HAD BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. If you are a California resident, You waive your rights under California Civil Code § 1542, which states, "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." Residents of other states and nations similarly waive their rights under analogous laws, statutes, or regulations. Some states do not permit the exclusion of warranties, so the above warranty exclusions may not apply to You.

D. Neither party shall have any liability or obligation to the other for indirect, incidental, consequential or exemplary damages (including, without limitation, lost profits, loss of business, or loss of or damage to data) whether based on contract, tort or any other legal theory and regardless of whether a party foresaw such damages.

# 6. MISCELLANEOUS

A. These Terms constitute the complete, final and exclusive statement of the parties' agreement with respect to the subject matter hereof and, except as specified in Section 3.B above, are not intended to confer upon any person other than the parties hereto any rights or remedies. No purchase orders or other forms You submit shall apply to modify or supplement these Terms. These Terms may be modified only by means of a written document executed by each of the parties.

B. These Terms shall be governed by and construed in accordance with the laws of the State of Ohio and the United States of America, without regard to their respective conflict of laws principles. The United Nations Convention on Contracts for the International Sales of Goods shall not apply.

C. You may not assign or otherwise transfer your rights or obligations under this Agreement. OCLC may assign its rights and/or delegate its obligations under this Agreement by posting notice of such assignment and/or delegation on the OCLC WorldCat.org web site at least thirty (30) days prior to the effective date thereof.

D. OCLC and/or its suppliers shall not be liable for any failure or delay in performance hereunder due to any cause beyond its reasonable control including, but not limited to, acts of God or public enemy, fire, explosion, accident, strikes, governmental actions, delay or failure of suppliers, or delay or failure of the OCLC systems or other difficulties with telecommunications networks.

E. WorldCat.org Services may not be accessed or used by entities or individuals who are or become subject to United States trade restrictions. WorldCat.org Services may be used only in full compliance with U.S. export regulations. You shall be the exporter and importer of record in connection with WorldCat.org Services as delivered by OCLC to You outside the United States, and shall pay and/or comply with all applicable export and import laws, customs, regulations tariffs, duties and fees, and procurement, data and technology transfer laws. OCLC's obligations hereunder are contingent upon necessary export licenses being obtained from federal agencies of the United States.

F. Notices required to be given pursuant to these Terms may be provided by email: (i) to You, to an email address or mailing address that OCLC reasonably associates with You; and (ii) to OCLC, to the following OCLC mailing address: OCLC Online Computer Library Center, Inc, 6565 Kilgour Place, Dublin, Ohio, USA 43017-3395, Attention: Legal Department.

G. Any waiver of any provision of these Terms must be in writing and signed by the party against whom the waiver is to be enforced.

H. If any provision of these Terms is held to be invalid or unenforceable, such provision shall be deemed superseded by a valid enforceable provision that most closely matches the intent of the original provision and the remaining provisions shall be enforced.

I. OCLC's collection and use of any personal information submitted via the OCLC WorldCat.org web site (if any) is governed by OCLC's Privacy Statement.

J. OCLC may remove or purge data stored with WorldCat.org Services more than thirty (30) days (if any), without notice or liability.

# EXHIBIT A

## TERMS AND CONDITIONS APPLICABLE TO THIRD-PARTY DATABASES

### ERIC—United States Department of Education

Some material in the ERIC database is from copyrighted sources of the respective copyright holders. Users of the bibliographic records from the ERIC database are responsible for compliance with any copyright, patent or trademark restrictions and are referred to the copyright, patent or trademark notices appearing in the original sources, all of which are hereby incorporated by reference.

### Swets & Zeitlinger, B.V.

Data supplied to WorldCat.org Services by Swets & Zeitlinger, B.V. may not be collectively distributed to any commercial online vendor.

### MEDLINE—National Library of Medicine (NLM)

Subject matter coverage: All areas of medicine, including clinical medicine, dentistry, education, experimental medicine, health services administration, nursing, nutrition, pathology, psychiatry, toxicology and veterinary medicine.

NLM represents that the data provided through WorldCat.org was formulated with a reasonable standard of care. Except for this representation, and as otherwise specifically provided in this Exhibit A, NLM makes no representation or warranties, expressed or implied. This includes, but is not limited to, any implied warranty of merchantability or fitness for a particular purpose, with respect to the NLM Data, and NLM specifically disclaims any such warranties and representations.

You agree to provide those details regarding Your use of NLM Data as are reasonably requested by OCLC and/or the National Library of Medicine.

Your duplication and redistribution of NLM Data must conform with the Terms (including this Exhibit A), applicable fair use guidelines and applicable United States and international copyright laws (collectively, "Applicable Restrictions"). Unless otherwise prohibited by Applicable Restrictions, (i) individuals may download reasonable amounts of NLM Data for personal use and may provide others with a single copy of NLM Data downloaded; and (ii) an organization or institution may download small amounts of NLM Data for internal use and redistribution within its organization or institution. For purposes of subpart (ii) of the foregoing sentence, a "small amount" is about 1,000 records per month or 12,000 records for each year of coverage. Since NLM makes corrections and enhancements to and performs maintenance on these records at least annually, You should plan to replace or correct the records once a year to ensure that they are still correct and searchable as a group.

NLM Data is produced by a U.S. government agency and as such the contents are not covered by copyright domestically. They may be copyrighted outside the U.S. Some NLM Data is from copyrighted publications of the respective copyright claimants. You are solely responsible for compliance with any copyright restrictions and are referred to the publication date appearing in the bibliographic citations, as well as to the copyright notices appearing in the original publications, all of which are incorporated by reference. You should consult legal counsel before using NLM Data to be certain that Your plans are in compliance with these Terms and appropriate laws. All NLM Data must be identified as being derived from NLM databases.

**"INSIDE SERIALS" Database—The British Library (BL)**

Certain records in this database are © **COPYRIGHT THE BRITISH LIBRARY BOARD: ALL RIGHTS RESERVED**

The British Library owns the entire right in the records in this database that include the "BL Shelfmark" or "BL Stock Location" field. Any rights that subsist in the bibliographic components of the database remain the property either of the British Library Board, individual publishers or any other organisation contributing to the database. This component of the database may not be used, sold, licensed, transferred, copied or reproduced in whole or in part in any manner or form or in or on any media to any person without the prior written consent of the British Library.

You may use records, metadata and holdings information supplied by The British Library ("BL Data") only for the personal, non-commercial purpose of assisting You with locating an item in a library of Your choosing. You acquire no ownership rights to any BL Data or portions thereof. No part of any BL Data may be used, disclosed, reproduced, transferred or transmitted in any form except as expressly permitted by the Terms (including this Exhibit A). Use of BL Data for cataloging purposes is expressly prohibited. You may not resell or otherwise make available any application which facilitates access to or the searching, retrieval and/or browsing of BL Data. You may not omit or obscure any notice of a limitation of warranty, disclaimer, copyright, patent, trademark, trade secret, usage limitation or any logo, splash screen or any other terms and/or conditions intended to be displayed in BL Data by The British Library or OCLC.

**Google Maps API – Google Inc.**

Data supplied to WorldCat.org Services by Google Inc. through the Google Maps API is subject to Google's Terms of Use which may be found at http://code.google.com/apis/maps/terms.html. Where You use the mapping functionality of WorldCat.org Services as provided by Google, You agree Your use is subject to Google's Terms of Use.

**Google Book Search API – Google Inc.**

Where You access Google Book Search content through the "preview" feature of WorldCat.org Services, You agree that You may not:

- modify or replace the text, images, or other elements of the Google Book Search content;
- modify, replace or otherwise disable the functioning of links to Google or third party websites provided with the Google Book Search content;
- "crawl," "spider," index or in any non-transitory manner store or cache Google Book Search content or any part, copy or derivative thereof;
- transfer, sell, lease, syndicate, sub-syndicate, lend, or use for co-branding, timesharing, service bureau or other unauthorized purposes Google Book Search content or any part, copy or derivative thereof;
- use any robot, spider, site search/retrieval application, or other device to scrape, retrieve or index any portion of Google Book Search content or to collect information about users for any unauthorized purpose;

- falsify or delete any author attributions, legal or other proper notices or proprietary designations or labels of the origin or source of Google Book Search content;
- restrict or inhibit any other person from using and enjoying Google Book Search content;
- remove any copyright, trademark or other proprietary rights notices contained in or on Google Book Search content; or
- reverse engineer the Google Book Search API.

Terms updated as of September 24, 2009

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION ▾

|  |  |  |
|---|---|---|
| OCLC, Inc. _____ | : | Case No. _24-cv-144_____ |
|  | : | Judge: _____ |
| v. | : | Corporate Disclosure Statement |
|  | : |  |
| Anna's Archive, f/k/a Pirate Library Mirror, et al. | : |  |
|  | : |  |

     Pursuant to the Corporate Disclosure Statement provisions in Local Civil Rule 7.1.1: Any non-governmental corporate party to a proceeding must file a Corporate Affiliations/Financial Interest statement identifying all of its parent, subsidiary and other affiliate corporations and listing any publicly held company that "controls, is controlled by, or is under common control with a publicly controlled corporation." A party must file the statement upon filing a complaint, answer, motion, response or other pleadings in this Court, whichever occurs first. The obligation to disclose any changes will be continuing throughout the pendency of this case.

     In Compliance with those provisions, this Corporate Disclosure Statement is filed on behalf of:

Plaintiff OCLC, Inc. _____.

1.    Is said party a parent, subsidiary or other affiliate of a publicly owned corporations?

    ___ YES    ✔ NO

    If the answer is YES, list below the identity of the parent, subsidiary or other affiliate corporation and the relationship between it and the named party:

    _____
    _____

2.    Is there a publicly owned corporation, not a party to the case, that has a financial interest in the outcome?

    ___ YES    ✔ NO

    If the answer is YES, list the identity of such corporation and the nature of the financial interest.

    _____
    _____
    _____

/s/ Jeffrey M. Walker _____    _____
Signature of Counsel               Date

"Certificate of Service"

**COUNSEL ARE REMINDED OF THEIR CONTINUING OBLIGATION
TO UPDATE AND SUPPLEMENT THIS STATEMENT**

**CERTIFICATE OF SERVICE**

On January 12, 2024, this document was filed electronically with the Clerk of the United States District Court for the Southern District of Ohio, Eastern Division, which will electronically serve a copy of the foregoing on all counsel of record for all parties. Additionally, this document will be served upon the parties with the summons and complaint in this matter at the following addresses:

Maria A. Matienzo
5127 S. Holly St.
Seattle, WA  98118

/s/ *Jeffrey M. Walker*
One of the Attorneys for Plaintiff

## THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF OHIO

OCLC, Inc.
_____ :
Plaintiff(s), :
: Case No: 24-cv-144 _____
:
vs. :
:
Anna's Archive f/k/a Pirate Library Mirror et al., :
_____ :
Defendant(s). :

## CITIZENSHIP DISCLOSURE STATEMENT

This Citizenship Disclosure Statement is filed on behalf of OCLC, Inc. _____

in compliance with the provisions of Rule 7.1(a)(2) of the Federal Rules of Civil Procedure, which

provides that in an action in which jurisdiction is based on diversity under 28 U.S.C. § 1332(a), a

party or intervenor must, unless the court orders otherwise, file a disclosure statement that lists the

name, and identifies the citizenship of, every individual or entity whose citizenship is attributed to

that party or intervenor when the action is filed in or removed to federal court, and when any later event

occurs that could affect the court's jurisdiction under § 1332(a).

Pursuant to Fed. R. Civ. P. 7.1(a)(2), the filing party, or intervenor, hereby declares the

following names and citizenships of every individual or entity whose citizenship is attributed to that

party or intervenor: (Attach additional pages if needed.)


OCLC, Inc.
_____
Individual or Entity Name

Ohio
_____
Citizenship


Anna's Archive f/k/a Pirate Library Mirror et al.
_____
Individual or Entity Name

Foreign
_____
Citizenship

Maria Dolores Anasztasia Matienzo
_____
Individual or Entity Name

Washington (State)
_____
Citizenship

John Does #1-20
_____
Individual or Entity Name

Foreign
_____
Citizenship


    **A supplemental citizenship disclosure statement will be filed upon any change in the information provided herein.**


_____
Date

_____
Signature

_____
Counsel For

## CERTIFICATE OF SERVICE

On January 12, 2024, this document was filed electronically with the Clerk of the United States District Court for the Southern District of Ohio, Eastern Division, which will electronically serve a copy of the foregoing on all counsel of record for all parties. Additionally, this document will be served upon the parties with the summons and complaint in this matter at the following addresses:

Maria A. Matienzo
5127 S. Holly St.
Seattle, WA  98118

/s/ *Jeffrey M. Walker*
One of the Attorneys for Plaintiff

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio ▼

| | |
|---|---|
| OCLC, Inc. | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| Anna's Archive, f/k/a Pirate Library Mirror, Maria | ) |
| Dolores Anasztasia Matienzo, and John Does #1-20 | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No.   24-cv-144

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Maria A. Matienzo
5127 S. Holly St.
Seattle, WA  98118

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Jeffrey M. Walker
> SQUIRE PATTON BOGGS (US) LLP
> 2000 Huntington Center
> 41 South High Street
> Columbus, Ohio  43215

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

*Melina Saddler*

Signature of Clerk or Deputy Clerk

Date:   01/16/2024

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  24-cv-144

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                                 *Server's signature*

                                                    _____
                                                                 *Printed name and title*


                                                    _____
                                                                 *Server's address*

Additional information regarding attempted service, etc:

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| OCLC, Inc., | | Case No. 2:24-cv-144 |
| **Plaintiff,** | | **Judge** |
| v. | | **Magistrate Judge** |
| ANNA'S ARCHIVE, f/k/a PIRATE LIBRARY MIRROR, MARIA DOLORES ANASZTASIA MATIENZO, and JOHN DOES #1–20 | | |
| **Defendants.** | | |

## NOTICE OF APPEARANCE OF COUNSEL

Please take notice that Jeffrey M. Walker of Squire Patton Boggs (US) LLP hereby enters his appearance as Trial Attorney for Plaintiff OCLC, Inc., and requests that all further notices, orders, or other items required to be served be sent to the undersigned.

Dated: January 12, 2024

Respectfully submitted,

/s/ *Jeffrey M. Walker*
Jeffrey M. Walker (0096567), Trial Attorney
Traci L. Martinez (0083989)
Kathryn M. Brown (0100426)
Brittany Silverman (0102263)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: +1 614 365 2700
Facsimile: +1 614 365 2499
jeffrey.walker@squirepb.com
traci.martinez@squirepb.com
kathryn.brown@squirepb.com
brittany.silverman@squirepb.com

*Attorneys for Plaintiff OCLC, Inc.*

## CERTIFICATE OF SERVICE

On January 12, 2024, this document was filed electronically with the Clerk of the United States District Court for the Southern District of Ohio, Eastern Division, which will electronically serve a copy of the foregoing on all counsel of record for all parties. Additionally, this document will be served upon the parties with the summons and complaint in this matter at the following addresses:

Maria A. Matienzo
5127 S. Holly St.
Seattle, WA  98118

/s/ *Jeffrey M. Walker*
One of the Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| OCLC, Inc., | Case No. 2:24-cv-00144-MHW-EPD |
| **Plaintiff,** | Judge Michael H. Watson |
| v. | Magistrate Judge Elizabeth A. Preston Deavers |
| ANNA'S ARCHIVE, f/k/a PIRATE LIBRARY MIRROR, MARIA DOLORES ANASZTASIA MATIENZO, and JOHN DOES #1–20 | |
| **Defendants.** | |

---

## NOTICE OF APPEARANCE OF COUNSEL

---

Please take notice that Traci L. Martinez of Squire Patton Boggs (US) LLP hereby enters her appearance as additional Counsel for Plaintiff OCLC, Inc., and requests that all notices, orders, or other items required to be served be sent to the undersigned.

Dated: January 12, 2024

Respectfully submitted,

/s/ *Traci L. Martinez*

Jeffrey M. Walker (0096567), Trial Attorney
Traci L. Martinez (0083989)
Kathryn M. Brown (0100426)
Brittany Silverman (0102263)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: +1 614 365 2700
Facsimile: +1 614 365 2499
jeffrey.walker@squirepb.com
traci.martinez@squirepb.com
kathryn.brown@squirepb.com
brittany.silverman@squirepb.com

*Attorneys for Plaintiff OCLC, Inc.*

## CERTIFICATE OF SERVICE

On January 12, 2024, this document was filed electronically with the Clerk of the United States District Court for the Southern District of Ohio, Eastern Division, which will electronically serve a copy of the foregoing on all counsel of record for all parties. Additionally, this document will be served upon the parties with the summons and complaint in this matter at the following addresses:

Maria A. Matienzo
5127 Holly Street
Seattle, WA 98118

/s/*Traci L. Martinez*
One of the Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

OCLC, Inc.,

        Plaintiff,

    v.

ANNA'S ARCHIVE, f/k/a PIRATE
LIBRARY MIRROR, MARIA DOLORES
ANASZTASIA MATIENZO, and JOHN
DOES #1–20

        Defendants.

Case No. 2:24-cv-00144-MHW-EPD

Judge Michael H. Watson

Magistrate Judge Elizabeth A. Preston
Deavers

---

## NOTICE OF APPEARANCE OF COUNSEL

---

Please take notice that Brittany Silverman of Squire Patton Boggs (US) LLP hereby enters her appearance as additional Counsel for Plaintiff OCLC, Inc., and requests that all further notices, orders, or other items required to be served be sent to the undersigned.

Dated: January 12, 2024

Respectfully submitted,

/s/ *Brittany Silverman*
Jeffrey M. Walker (0096567), Trial Attorney
Traci L. Martinez (0083989)
Kathryn M. Brown (0100426)
Brittany Silverman (0102263)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: +1 614 365 2700
Facsimile: +1 614 365 2499
jeffrey.walker@squirepb.com
traci.martinez@squirepb.com
kathryn.brown@squirepb.com
brittany.silverman@squirepb.com

*Attorneys for Plaintiff OCLC, Inc.*

## CERTIFICATE OF SERVICE

On January 12, 2024, this document was filed electronically with the Clerk of the United States District Court for the Southern District of Ohio, Eastern Division, which will electronically serve a copy of the foregoing on all counsel of record for all parties. Additionally, this document will be served upon the parties with the summons and complaint in this matter at the following addresses:

Maria A. Matienzo
5127 S. Holly St.
Seattle, WA 98118

/s/ *Brittany Silverman*
One of the Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| OCLC, Inc., | Case No. 2:24-cv-00144-MHW-EPD |
| **Plaintiff,** | Judge Michael H. Watson |
| v. | Magistrate Judge Elizabeth A. Preston Deavers |
| ANNA'S ARCHIVE, f/k/a PIRATE LIBRARY MIRROR, MARIA DOLORES ANASZTASIA MATIENZO, and JOHN DOES #1–20 | |
| **Defendants.** | |

---

## NOTICE OF APPEARANCE OF COUNSEL

---

Please take notice that Kathryn M. Brown of Squire Patton Boggs (US) LLP hereby enters her appearance as additional Counsel for Plaintiff OCLC, Inc., and requests that all further notices, orders, or other items required to be served be sent to the undersigned.

Dated: January 12, 2024

Respectfully submitted,

/s/ *Kathryn M. Brown*
Jeffrey M. Walker (0096567), Trial Attorney
Traci L. Martinez (0083989)
Kathryn M. Brown (0100426)
Brittany Silverman (0102263)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: +1 614 365 2700
Facsimile: +1 614 365 2499
jeffrey.walker@squirepb.com
traci.martinez@squirepb.com
kathryn.brown@squirepb.com
brittany.silverman@squirepb.com

*Attorneys for Plaintiff OCLC, Inc.*

## CERTIFICATE OF SERVICE

On January 12, 2024, this document was filed electronically with the Clerk of the United States District Court for the Southern District of Ohio, Eastern Division, which will electronically serve a copy of the foregoing on all counsel of record for all parties. Additionally, this document will be served upon the parties with the summons and complaint in this matter at the following addresses:

Maria Matienzo
5127 S. Holly St.
Seattle, WA  98118

/s/ *Kathryn M. Brown*
One of the Attorneys for Plaintiff

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio  [▼]

| | | |
|---|---|---|
| OCLC, Inc. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  2:24-cv-00144 |
| Anna's Archive f/k/a Pirate Library Mirror, et al. | ) | |
| *Defendant* | ) | |

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To: _____

*(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court.  It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver.  To avoid these expenses, you must return the signed waiver within   60   days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent.   Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court.  The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you.  And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date: _____

_____

*Signature of the attorney or unrepresented party*

_____

*Printed name*

_____

*Address*

_____

*E-mail address*

_____

*Telephone number*

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

|  |  |
|---|---|
| OCLC, Inc. | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   2:24-cv-144-  MHW-EPD |
| Anna's Archive f/k/a Pirate Library Mirror, et al. | ) |
| *Defendant* | ) |

## WAIVER OF THE SERVICE OF SUMMONS

To: _____

    *(Name of the plaintiff's attorney or unrepresented plaintiff)*

    I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

    I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

    I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

    I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____01/16/2024_____, the date when this request was sent (or 90 days if it was sent outside the United States).  If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

 

_____

*Printed name of party waiving service of summons*

 

_____

*Signature of the attorney or unrepresented party*

_____

*Printed name*

_____

*Address*

_____

*E-mail address*

_____

*Telephone number*

---

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

    Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint.  A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

    "Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

    If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

    If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.  By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

# Exhibit H

**Brown, Kathryn M.**

| | |
|---|---|
| **From:** | Microsoft Outlook |
| **To:** | annaarchivist@proton.me; AnnaDMCA@proton.me; annaarchivist+security@proton.me; domainabuse@tucows.com |
| **Sent:** | Tuesday, January 16, 2024 5:16 PM |
| **Subject:** | Relayed: OCLC, Inc. v. Anna's Archive, f/k/a Pirate Library Mirror, et al., Case No. 2:24-cv-144-MHW-EPD (Southern District of Ohio) |

**Delivery to these recipients or groups is complete, but no delivery notification was sent by the destination server:**

annaarchivist@proton.me (annaarchivist@proton.me)

AnnaDMCA@proton.me (AnnaDMCA@proton.me)

annaarchivist+security@proton.me (annaarchivist+security@proton.me)

domainabuse@tucows.com (domainabuse@tucows.com)

Subject: OCLC, Inc. v. Anna's Archive, f/k/a Pirate Library Mirror, et al., Case No. 2:24-cv-144-MHW-EPD (Southern District of Ohio)

1

# Exhibit I

**Brown, Kathryn M.**

---

| | |
|---|---|
| **From:** | domainabuse@tucows.com |
| **Sent:** | Tuesday, January 16, 2024 5:16 PM |
| **To:** | Walker, Jeffrey |
| **Subject:** | [EXT] (autoresponse) OCLC, Inc. v. Anna's Archive, f/k/a Pirate Library Mir |

Thank you for your email to domainabuse@tucows.com. This is an automated acknowledgement of your message. To aid us in properly addressing your inquiry, we suggest you review the details of this email for further assistance. We also encourage you to search our FAQ site at https://www.tucowsdomains.com/help/top-questions/

In order to best get your issue resolved as swiftly as possible, we've provided some useful resources.

If you need assistance with your domain name, you can search your reseller/provider contact information here: https://www.tucowsdomains.com/provider-search/

For inquiries about domain name management, renewal, nameservers, transfers, and other domain name help related issues you can browse our FAQ here: https://www.tucowsdomains.com/help/top-questions/

If you need help with content on a domain name, including claims for copyright infringement, you should contact the site's hosting company directly. To find information about the hosting company for a domain, please use the RrSG Abuse Contact IDentifier tool available at https://acidtool.com/

If you would like to report email spam, please use the RrSG Abuse Contact IDentifier tool available at https://acidtool.com/ to find information about how to contact the email host directly.

If you would like to report DNS Abuse, including malware, phishing, and  botnets, please use the form available here: https://www.tucowsdomains.com/report-abuse/ Please make sure to fill out all the required fields and provide as much detail as possible, including screenshots where appropriate; a member of our team will reach out to you if any additional information is needed.

If you have a concern about trademark or cybersquatting, please note that such claims should be addressed through ICANN's Uniform Domain-Name Dispute-Resolution Policy. You can read more about that policy (often called the "UDRP") and how to submit a claim here: https://www.icann.org/resources/pages/help/dndr/udrp-en

If you would like to submit a criminal or civil subpoena, warrant, court order, or are a UDRP vendor, please submit via the form found here: https://www.tucowsdomains.com/help/legal-policies/ Please make sure to fill out all the required fields and provide as much detail as possible around the issue; a member of our team will reach out to you if any additional information is needed.

If you think you have a legitimate interest in the registrant's personal data, please note that you can contact the registrant directly by using the form link available in the email field in our Registration Data output. If you have tried to contact them directly but still think you need their personal data, you can submit a request for previously-public whois information by sending an email to tieredaccess at tucows dot com with complete answers to the RrSG-recommended Minimum Required Information for Whois Data Requests:  https://rrsg.org/wp-content/uploads/2019/02/RrSG-Minimum-Required-Information-for-a-Whois-Data-Requests.pdf Please note that Tucows still requires a subpoena, warrant, or other adequate due process before disclosing data for customers using our whois privacy services. Please check the public whois output before submitting a request.


***** This email is sent from a notification-only address that cannot accept incoming email. Please do not reply to this email. *****

Exhibit J

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

CENGAGE LEARNING, INC., BEDFORD,
FREEMAN & WORTH PUBLISHING GROUP, LLC
d/b/a MACMILLAN LEARNING, MCGRAW HILL
LLC, and PEARSON EDUCATION, INC.,

        Plaintiffs,

    v.

DOES 1 – 50 d/b/a Library Genesis, bookwarrior,
cdn1.booksdl.org, jlibgen.tk, libgen.ee, libgen.fun,
libgen.gs, libgen.is, libgen.lc, libgen.li, libgen.pm,
libgen.rocks, libgen.rs, libgen.space, libgen.st,
libgen.su, library.lol, and llhlf.com,

        Defendants.

**Civil Action No. 23-cv-08136-CM**

# MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION TO SERVE DEFENDANTS BY EMAIL

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 2

    A.   Plaintiffs' Businesses and Copyrights .......................................................... 2

    B.   Defendants' Operation of Infringing Websites ............................................. 3

ARGUMENT ......................................................................................................................... 6

    A.   Email is the Best Method of Serving Defendants. ....................................... 6

    B.   Federal Rule of Civil Procedure 4(f)(3) Authorizes Alternative Service on Defendants Located in a Foreign Country. .......................................... 7

    C.   N.Y. C.P.L.R. § 308 Authorizes Alternative Service on Defendants in the United States. ................................................................................................ 11

CONCLUSION .................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Alfred E. Mann Living Trust v. ETIRC Aviation S.A.R.L.*,

    910 N.Y.S.2d 418 (N.Y. App. Div. 2010) ...................................................................... 11

*American Chemical Society v. Sci-Hub et al.*,
    17-cv-00726-LMB-JFA (E.D. Va. July 17, 2017).............................................................. 7

*Broadfoot v. Diaz*, 245 B.R. 713 (Bankr. N.D. Ga. 2000)........................................................... 10

*Elsevier Inc. et al. v. The Library Genesis Project et al.*,
    15-cv-4282-RWS (S.D.N.Y. June 18, 2015)...................................................................... 7

*FTC v. PCCare247 Inc.*, No. 12-Civ.-7189 (PAE),
    2013 WL 841037 (S.D.N.Y. Mar. 7, 2013) ............................................................... 8, 9, 10

*Philip Morris USA Inc. v. Veles Ltd.*, No. 06-CV-2988 (GBD),
    2007 WL 725412, (S.D.N.Y. Mar. 13, 2007) ............................................................... 8, 10

*Prediction Co. v. Rajgarhia*, No. 09-Civ.-7459 (SAS),
    2010 WL 1050307 (S.D.N.Y. Mar. 22, 2010) ............................................................. 9, 10

*Rio Props., Inc. v. Rio Intern. Interlink*, 284 F.3d 1007 (9th Cir. 2002) ................................... 8, 9

*RSM Prod. Corp. v. Fridman*, No. 06-Civ.-11512 (DLC),
    2007 WL 1515068 (S.D.N.Y. May 24, 2007) ..................................................................... 8

*Safadjou v. Mohammadi*, 964 N.Y.S.2d 801 (N.Y. App. Div. 2013) ......................................... 11

*Snyder v. Energy, Inc.*, 857 N.Y.S.2d 442 (N.Y. Civ. Ct. 2007) ................................................ 11

*Williams v. Advert. Sex LLC.*, 231 F.R.D. 483 (N.D. W.Va. 2005)............................................ 10

*Zhang v. Lo*, No. 14-CV-6945 (CM),
    2018 WL 1888225 (S.D.N.Y. Apr. 9, 2018)...................................................................... 9

**Statutes**

Fed. R. Civ. P. 4 ......................................................................................... 2, 6, 7, 8, 9, 11

N.Y. C.P.L.R. § 308................................................................................................. 2, 11

Plaintiffs Cengage Learning, Inc., Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning, McGraw Hill LLC, and Pearson Education, Inc. (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in Support of their Motion to Serve Defendants by Email.  Plaintiffs seek permission to serve Defendants Does 1 – 50 d/b/a Library Genesis, bookwarrior, cdn1.booksdl.org, jlibgen.tk, libgen.ee, libgen.fun, libgen.gs, libgen.is, libgen.lc, libgen.li, libgen.pm, libgen.rocks libgen.rs, libgen.space, libgen.st, libgen.su, library.lol, and llhlf.com (collectively, "Defendants") with the Complaint and Summons, as well as the other papers required to be served in this case, by the electronic means described below.

## **INTRODUCTION**

Plaintiffs are leading higher education publishers.  Defendants own, operate, and/or control the pirate "shadow library" known as "Library Genesis," or "Libgen" for short.  Libgen consists of a group of websites that illegally copy and distribute a vast array of written material without authorization and with no remuneration to copyright holders.  Indeed, Libgen distributes, for free, fiction and non-fiction books, including thousands, if not tens of thousands, of educational textbooks published by Plaintiffs.

Recognizing the illegal nature of their infringing operation, Defendants have multiple methods of keeping their websites online.  For example, Defendants operate Libgen using revolving domains, including, without limitation, cdn1.booksdl.org, jlibgen.tk, libgen.ee, libgen.fun, libgen.gs, libgen.is, libgen.lc, libgen.li, libgen.pm, libgen.rocks libgen.rs, libgen.space, libgen.st, libgen.su, library.lol, and llhlf.com ("Libgen Sites" or "Sites").  Based on identical Site content, domain forwarding, links between Sites, the servers used, Plaintiffs' investigation supports the conclusion that the Libgen Sites are operated by three different individual Defendants or groups of Defendants.   Each can be served by electronic messaging as described below.

1

Defendants intentionally hide their locations and identities to avoid the obvious consequences of their actions, including by using pseudonyms, relying on proxy services that conceal website operators' identifying information, and failing to provide names or business addresses as contact information on or in connection with the Sites. Diligent research into Defendants' locations by an experienced investigator has not yielded results that identify Defendants' names or addresses. As a result, Plaintiffs cannot serve Defendants in this action through traditional methods of service.

Notwithstanding, alternative service, as described in detail below, will be effective and comport with due process. Defendants operate websites; therefore, contacting them by the email addresses provided on those websites is a reliable way of providing them with notice of this action. Further, even if the Sites themselves do not publicize a contact email address, Plaintiffs have determined other reliable ways to electronically message Defendants directly, including through Site information available in the WHOIS database. Such service is appropriate under Federal Rule of Civil Procedure 4 and, if applicable, the New York Civil Practice Law and Rules ("C.P.L.R"), and the Court should permit Plaintiffs to proceed as described herein. Without permission to serve Defendants by alternative means, Plaintiffs will not be able to obtain the relief they seek for Defendants' pervasive infringement.

## **STATEMENT OF FACTS**

### A. **Plaintiffs' Businesses and Copyrights**

Plaintiffs are four of the leading educational publishers in the United States. Compl. ¶ 20. Each year, Plaintiffs publish tens of thousands of academic works, including higher education textbooks, which serve as the basis for thousands of courses in universities and colleges across the United States and are among the most popular and widely used titles in their fields. *Id.* ¶ 2. Plaintiffs work with authors who are experts in their fields to create and publish their valuable

academic works.  *Id.* ¶ 21.  Plaintiffs' textbooks are widely available through various legitimate channels for sale and rental to paying customers.  *Id.* ¶ 20.

Plaintiffs own or are the exclusive licensees of the copyrights in their respective works or derivative works listed in Exhibit A to the Complaint (the "Authentic Works"), which are registered with the U.S. Copyright Office.  *Id.* ¶ 23 & Ex. A.  Plaintiffs downloaded infringing copies of the Authentic Works from the Libgen Sites.  *Id.* ¶ 23; Declaration of Dan Seymour ¶ 5 ("Seymour Decl.") (filed herewith).  Given the blatantly illegal nature of Defendants' conduct, and the fact that Defendants maintain a collection of over 1.7 million textbooks and other non-fiction works, including many of Plaintiffs' works beyond those that Plaintiffs downloaded, Exhibit A represents merely the tip of the iceberg.  Compl. ¶ 23.

**B.      Defendants' Operation of Infringing Websites**

Defendants are responsible for massive infringement occurring through the Libgen shadow library.  Compl. ¶ 1.  Unlike a legitimate library, which licenses and lawfully obtains the books it lends, Libgen enables users to download Plaintiffs' and other copyright holders' works for free, without authorization or consent.  *Id.*  Moreover, the scale of Defendants' infringement is staggering.  *Id.* ¶ 6.  Libgen's collection consists of over 6 million files that include illegal copies of works from a diverse cross-section of the publishing industry.  *Id.*  For Plaintiffs alone, Libgen has over 20,000 files published by Plaintiffs – none of which Plaintiffs authorized Defendants to copy or distribute.  *Id.*

Defendants are unknown individuals and/or entities believed to be located outside the United States.  Compl. ¶¶ 3, 15, 37; Seymour Decl. ¶ 5.  There are several reasons to believe Defendants are located abroad, including: (1) the IP address of the server that provides downloads for most of the Sites is located in Ukraine; (2) most Sites are available in Russian in addition to English; (3) information from message boards and social media posts associated with the Sites

supports the conclusion that Defendants are located abroad; and (4) Defendants rely on many foreign intermediaries, such as web hosts and registrars, to operate the Sites. Seymour Decl. ¶ 5.

Defendants rely on the anonymity of the internet and their apparent overseas location to hide their names and addresses and frustrate enforcement efforts against them. Compl. ¶ 37; Seymour Decl. ¶¶ 5-6. As noted above, the Libgen Sites do not provide a contact name, business name, or business address on a "contact us" page, or otherwise, as is customary for a legitimate business. Compl. ¶ 36; Seymour Decl. ¶ 6. Additionally, extensive research, including in-depth review of the Sites, content from discussion forums associated with the Sites, social media posts related to the Sites (including on international social media sites), and corporate registration databases for U.S. and international corporations has not yielded addresses where Defendants are located. Seymour Decl. ¶ 6.

However, Plaintiffs' research has enabled them to identify ways to serve Defendants via electronic means, which are detailed in Exhibit 1 to the Seymour Declaration. Seymour Decl. ¶¶ 7, 12 & Ex. 1 (providing a full list of contact information for proposed service and the source of that information). First, some Sites provide an email address to contact the Site operator that can be found on the Site or on a message board accessible through the Site. *Id.* ¶ 7. Second, Site operators can be contacted through information found in the WHOIS database, which functions like an Internet phone book. *Id.* For Defendants here, the WHOIS database provides several means of sending an electronic message directly to the Site operators through the field entitled "Registrant Email." *Id.* For instance: (1) the WHOIS database may provide a standard email address for the Site operator; or (2) where the Site operator has chosen to conceal itself through the registrar or a registrant proxy service, the WHOIS database may provide (a) an anonymized email addresses that still goes directly to the Site operator ("Anonymized Email"), or (b) a URL

4

to a page on the registrar or registrant proxy service's website that provides a form to send an electronic message directly to the Site operator ("Website Email URL"). *Id.*

As stated above, Plaintiffs' research shows that the Libgen Sites are operated in three different groups. *See* Seymour Decl. ¶ 9. The first group currently includes six Sites (the "Group One Sites"),[1] which share identical homepages, provide links to other Group One Sites, and/or use the same server for their infringing downloads. *Id.* The Defendant(s) operating the Group One Sites can be served via (1) the email address provided in the WHOIS database for libgen.su; and (2) the Website Email URLs provided in the WHOIS database for libgen.is, libgen.st, and library.lol. *Id.* & Ex. 2 (attaching screenshots).

The second group currently includes nine Sites (the "Group Two Sties"),[2] which share identical homepages, re-direct to other Group Two Sites, provide links to other Group Two Sites, and/or use the same server for their infringing downloads. Seymour Decl. ¶ 10. The Defendant(s) operating the Group Two Sites can be served via (1) email to the email addresses provided on the Sites libgen.gs and libgen.li; (2) the Anonymized Email Address provided in the WHOIS database for libgen.space; and (3) the Website Email URLs provided in the WHOIS database for libgen.ee, libgen.rocks, libgen.pm, and llhlf.com. *Id.* & Ex. 3 (attaching screenshots).

Finally, the Site libgen.fun (the "Group Three Site") has a different homepage from the other Sites, uses a different server for its infringing downloads, and does not provide a link to any other Site. Seymour Decl. ¶ 11. The Defendant(s) operating the Group Three Site can be served via the Anonymized Email Address provided in the WHOIS database for libgen.fun. *Id.* & Ex. 4 (attaching screenshots).

---

[1] The Group One Sites are: libgen.is, libgen.rs, libgen.su, libgen.st, jlibgen.tk, and library.lol.

[2] The Group Two Sites are: libgen.ee, libgen.rocks, libgen.space, libgen.gs, libgen.li, libgen.lc, libgen.pm, aadn1.booksdl.org, and llhlg.com.

On September 27, 2023, Plaintiffs sent the Complaint and the Court's Order Scheduling a Pretrial Conference dated September 18, 2023 (Dkt. No. 9) to Defendants using the email addresses, Anonymized Email Addresses, and Website Email URLs outlined above and in Exhibit 1 to the Seymour Declaration. Declaration of Kevin Lindsey ("Lindsey Decl.") ¶ 8 (filed herewith). Plaintiffs did not receive any bounce-backs from the emails they sent, and the websites used to send messages to Site operators confirmed that the messages were successfully sent. *Id.*

## ARGUMENT

Plaintiffs seek permission to serve Defendants via (1) their respective email addresses identified from the Libgen Sites, if available; and (2) the email addresses, Anonymized Email Addresses, or Website Email URLs listed in the WHOIS database for the Libgen Sites. The Court may authorize alternative service on an ex parte basis under the applicable federal and New York rules. If, as is expected here, Defendants are located outside the United States, Federal Rule of Civil Procedure 4(f) applies. If any Defendant is located in the United States, New York's service of process rules apply. Applying either Rule 4(f) or New York law, alternate service is within the Court's discretion to order and should be ordered here because the methods proposed by Plaintiffs will give Defendants notice of this case and allow Plaintiffs to pursue their infringement claims.

### A.      Email is the Best Method of Serving Defendants.

Due to the blatantly illegal nature of their websites, Defendants rely on the anonymity of the internet to hide their true identities, leaving limited means to serve them. Compl. ¶ 3, 36; Seymour Declaration 6. Under these circumstances, email is the most reliable way of providing Defendants with actual notice of this suit and the papers filed herein. Accordingly, service should be made in accordance with the methods detailed in Exhibit 1 to the Seymour Declaration.

In at least two similar cases involving shadow libraries (one against Libgen), the court granted the plaintiffs' motion for alternative service. *See* Lindsey Decl. ¶¶ 4-5; Lindsey Decl. Ex.

1, Order dated June 18, 2015, *Elsevier Inc. et al. v. The Library Genesis Project et al.*, 15-cv-4282-RWS [Dkt. No 15] (authorizing service upon operators of Libgen by email using email addresses either found on the websites at issue or listed as "Registrant Email" in the WHOIS database for the websites, including anonymized email addresses);[3] Lindsey Decl. Ex. 3, Order for Service by Publication and Email dated July 17, 2017, *American Chemical Society v. Sci-Hub et al.*, 17-cv-00726-LMB-JFA [Dkt. No. 8] (in a case against an online shadow library distributing infringing copies of academic journal articles, authorizing service by email to "Registrant Email" addresses listed in the WHOIS database for the websites at issue, including an anonymized email address).

**B.** **Federal Rule of Civil Procedure 4(f)(3) Authorizes Alternative Service on Defendants Located in a Foreign Country.**

As explained above, Defendants are likely located in a foreign country or countries. Compl. ¶¶ 15, 37; Seymour Decl. ¶ 5. Rule 4(f)(3) allows the Court to authorize service of process on individuals in a foreign country by any "means not prohibited by international agreement as may be directed by the court," so long as the alternative method of service is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Philip Morris USA Inc. v. Veles Ltd.*, No. 06-CV-2988 (GBD), 2007 WL 725412, at *5-8 (S.D.N.Y. Mar. 13, 2007) (internal quotations omitted); Fed. R. Civ. P. 4(f)(3); Fed. R. Civ. P. 4(h)(2) (Rule 4(f) also applies to serving a corporation, partnership, or association abroad).[4] "The decision of whether to allow alternative methods of serving process . . . is committed to the sound discretion of the district court." *RSM*

---

[3] The Libgen defendants in *Elsevier Inc. et al. v. The Library Genesis Project et al.*, 15-cv-4282-RWS, were The Library Genesis Project d/b/a libgen.org and John Does 1-99. Plaintiffs in *Elsevier* also identified multiple Libgen websites, including elibgen.org, libgen.info, libg.estrorecollege.org, and boofi.org. These Libgen websites were taken down, but Libgen has continued operating from new websites, including the Sites now identified in this case.

[4] Based on their research, including that described in the Seymour Declaration, Plaintiffs have not uncovered any information suggesting that any Defendant is a formal corporate entity.

*Prod. Corp. v. Fridman*, No. 06-Civ.-11512 (DLC), 2007 WL 1515068 at *3 (S.D.N.Y. May 24, 2007) (citation and internal quotation marks omitted).

Alternative service under Rule 4(f)(3) "is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." *FTC v. PCCare247 Inc.*, No. 12-Civ.-7189 (PAE), 2013 WL 841037, at *6-7 (S.D.N.Y. Mar. 7, 2013) (internal citation omitted). Indeed, a plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service under Rule 4 (f)(3). *Id.* at *8; *see also Rio Props., Inc. v. Rio Intern. Interlink,* 284 F.3d 1007, 1014-15 (9th Cir. 2002).

Alternative service of process by email is proper where, as here, the proposed method of service is not prohibited by international agreement and it is the most likely way to provide prompt, actual notice of the plaintiffs' claims. As one court explained with respect to email, "when faced with an international e-business scofflaw, playing hide-and-seek with the federal court, e-mail may be the only means of effecting service of process." *Rio Props.,* 284 F.3d at 1018. This is particularly on point in this case, where Judge Sweet previously found Libgen liable for infringing another publisher's (Elsevier) copyrights and permanently enjoined Libgen from unlawfully reproducing or distributing those Elsevier's works, and yet Libgen continues to operate in violation of that injunction and blatantly infringes other publishers' copyrighted works. *See* Lindsey Decl. ¶ 6; Lindsey Decl. Ex. 5, Judgment dated June 2, 2017, *Elsevier Inc. et al. v. The Library Genesis Project et al.*, 15-cv-4282-RWS [Dkt. No 87].

As discussed above, Defendants' true names and locations are unknown due to Defendants' efforts to keep it that way given their illegal conduct. If an international agreement were implicated under Rule 4(f), it would be the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague

Convention"). However, the Hague Convention does not apply where, as here, the address of the persons to be served is unknown. Hague Convention Art. 1, Nov. 15, 1965, 20 U.S.T. 361 ("This Convention shall not apply where the address of the person to be served with the document is not known."). In *Safavieh Int'l, LLC v. Chengdu Junsen Fengrui Tech. Co.-Tao Shen,* No. 23 CIV. 3960 (CM), 2023 WL 3977505 (S.D.N.Y. June 13, 2023) (J. McMahon), the Court stated that "the Hague Convention applies only where the defendant's address is 'known.'" *Safavieh*, 2023 WL 3977505 at *5. The *Safavieh* Court initially denied the plaintiff's ex parte motion for alternative service because defendants had provided to plaintiffs a business address in China (*id.* at *5), but the Court later granted a second ex parte motion for alternative service when plaintiffs attempted service at that address and determined it did not exist. *See* Lindsey Decl. Ex. 6, Order to Show Cause for Plaintiff's Motion for Alternative Service dated Sept. 5, 2023, *Safavieh Intl, LLC v. Chengdu Junsen Fengrui Tech. Co.-Tao Shen,* No. 23 CIV. 3960 (CM) [Dkt. No. 21].[5]

In the absence of an international agreement, the court can authorize service by any means that comports with constitutional notions of due process. *See Rio Props*., 284 F.3d at 1016; *PCCare247 Inc.*, 2013 WL 841037, at *11; *see also Prediction Co. v. Rajgarhia*, No. 09-Civ.-7459 (SAS), 2010 WL 1050307, at *3 (S.D.N.Y. Mar. 22, 2010). "By design, Rule 4(f)(3) was adopted in order to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods of service of process in foreign countries." *Philip Morris*, at *8 (internal quotations and citation omitted). As a result, courts have fashioned a range of alternative methods

---

[5] In contrast, in *Zhang v. Lo*, No. 14-CV-6945 (CM), 2018 WL 1888225 (S.D.N.Y. Apr. 9, 2018) (J. McMahon), the Court denied plaintiff's motion to serve defendants by email or social media under Rule 4(f) where plaintiff had defendants' actual addresses in Hong Kong and mainland China, which implicated the Hague Convention. *Id.* at *1-3; *see also* Lindsey Decl. ¶ 9 (the Complaint and Summons Returned Executed in *Zhang* contain specified addresses for defendants). Here, Plaintiffs, despite diligent research efforts, do not know Defendants' addresses or, indeed, even the country or countries in which Defendants are located.

of service, including service by email. *See, e.g., PCCare247*, at *18-20 (ordering service by email and Facebook); *Prediction Co*., 2010 WL 1050307, at *1-5 (ordering service by sending summons and complaint to an email address previously used by defendant to communicate with plaintiff and to counsel in New York who had been in contact with defendant); *Philip Morris*, at *9-10 (ordering service by email and fax).

Email service on a defendant engaged in illegal online activities is appropriate and constitutionally acceptable in a case such as this, where Plaintiffs are unable to personally serve Defendants at physical addresses or by mail and have shown that other means are the most effective means of providing Defendants with notice of the action. *See Philip Morris*, at *9 (finding that service by email was appropriate where defendants "conduct business extensively, if not exclusively, through their Internet websites and correspond regularly with customers via email"); *Williams v. Advert. Sex LLC.*, 231 F.R.D. 483, 487 (N.D. W.Va. 2005) (*quoting Broadfoot v. Diaz*, 245 B.R. 713, 721 (Bankr. N.D. Ga. 2000)) ("If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be included among them."). Thus, email has the greatest likelihood of reaching those who, like Defendants, are adept at hiding their identity and location, but either (1) rely on email to conduct their activities, or (2) rely on their registrars or registrant proxy services to provide a means to anonymously communicate with them. *See* Compl. ¶¶ 3, 36; Seymour Decl. ¶ 7, 9; *see also Broadfoot*, 245 B.R. at 722 (authorizing email and fax service and noting, "[a] defendant should not be allowed to evade service by confining himself to modern technological methods of communication not specifically mentioned in the Federal Rules. Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party."). Accordingly, service on Defendants as described herein will satisfy due process by apprising them of the action

and giving them the opportunity to answer Plaintiffs' claims.

###### C. N.Y. C.P.L.R. § 308 Authorizes Alternative Service on Defendants Located in the United States.

However unlikely, even if Defendants are located in the United States, alternative service as described herein is appropriate under Federal Rule of Civil Procedure 4(e)(1) and Section 308(5) of the C.P.L.R.  Under Rule 4(e)(1), service may be effected upon individuals in the United States by "following the state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located."  Fed. R. Civ. P. 4(e)(1); *see also* Fed. R. Civ. P. 4(h)(1)(A) (applying Rule 4(e)(1) as to corporate entities in the United Sates).  Section 308(5) provides for service "in such a manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section."  C.P.L.R. § 308(5); *see also* C.P.L.R. § 311(b) & 311-A(b) (allowing service without notice as the court directs on corporations and limited liability companies).  Paragraphs one, two, and four of Section 308, which set forth traditional methods of service, require that a plaintiff know the defendants' whereabouts, i.e., a home or business address.  Because Defendants' locations are unknown, service via C.P.L.R. §§ 308(1), (2), or (4) is impracticable in this case, and the Court may order service of process via an alternate method, including by email.  Courts in New York have authorized service of process by email where, as here, service by traditional methods was impracticable.  *See, e.g., Safadjou v. Mohammadi*, 964 N.Y.S.2d 801, 803-04 (N.Y. App. Div. 2013) ("[B]oth New York courts and federal courts have, upon application by plaintiffs, authorized [e]mail service of process as an appropriate alternative method when the statutory methods have proven ineffective.") (citing *Alfred E. Mann Living Trust v. ETIRC Aviation S.A.R.L.*, 910 N.Y.S.2d 418, 422 (N.Y. App. Div. 2010)).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their

Motion.

Dated:  October 9, 2023                                Respectfully submitted,

                                                                          /s/ *Kevin Lindsey*
                                                                          Kevin Lindsey (*pro hac vice*)

                                                                          Matthew J. Oppenheim

                                                                          OPPENHEIM + ZEBRAK, LLP
                                                                          4530 Wisconsin Avenue NW, 5th Floor
                                                                          Washington, DC 20016
                                                                          Tel:  (202) 480-2999
                                                                          matt@oandzlaw.com
                                                                          klindsey@oandzlaw.com

                                                                          *Attorneys for Plaintiffs*

12

# Exhibit K

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

CENGAGE LEARNING, INC., BEDFORD,
FREEMAN & WORTH PUBLISHING GROUP, LLC
d/b/a MACMILLAN LEARNING, MCGRAW HILL
LLC, and PEARSON EDUCATION, INC.,

         Plaintiffs,

v.

DOES 1 – 50 d/b/a Library Genesis, bookwarrior,
cdn1.booksdl.org, jlibgen.tk, libgen.ee, libgen.fun,
libgen.gs, libgen.is, libgen.lc, libgen.li, libgen.pm,
libgen.rocks, libgen.rs, libgen.space, libgen.st,
libgen.su, library.lol, and llhlf.com,

         Defendants.

**Civil Action No. 23-cv-08136-CM**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/10/2023

## PLAINTIFFS' MOTION TO SERVE DEFENDANTS BY EMAIL

PLEASE TAKE NOTICE that upon the accompanying Memorandum of Law and the

Declarations of Dan Seymour and Kevin Lindsey filed in support, and the entire record herein,

Cengage Learning, Inc., Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan

Learning, McGraw Hill LLC, and Pearson Education, Inc. (collectively, "Plaintiffs") hereby

move for an Order authorizing Plaintiffs to serve Defendants with the Complaint and Summons,

and the other papers required to be served in this case, by electronic means. As set forth in

Plaintiffs' Memorandum of Law, Defendants locations are unknown, and email is the best way to

provide them with notice of this action. Plaintiffs' Motion should be granted pursuant to Federal

Rule of Civil Procedure 4(f)(3), which is applicable to Defendants located abroad, or, if any

Defendants are located in the United States, N.Y. Civil Practice Law and Rule § 308(5).

10/10/2023
After reviewing the papers filed in support of the motion, and being convinced that counsel for plaintiffs have exhausted every avenue for learning the identity of the entities behind these email addresses, the motion for permission to serve by email is granted. As prin communications sent to the email listed in the

Dated:  October 9, 2023

Respectfully submitted.

/s/ *Kevin Lindsey*
Kevin Lindsey (*pro hac vice*)

Matthew J. Oppenheim

OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue NW. 5th Floor
Washington, DC 20016
Tel:  (202) 480-2999
matt@oandzlaw.com
klindsey@oandzlaw.com

*Attorneys for Plaintiffs*

2

Exhibit L

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

AMERICAN CHEMICAL SOCIETY,

     Plaintiff,

v.

SCI-HUB d/b/a WWW.SCI-HUB.CC,
JOHN DOEs 1-99,

     Defendants.

No. 1:17-cv-00726-LMB-JFA

## ORDER FOR SERVICE
## BY PUBLICATION AND EMAIL

     Upon consideration of Plaintiff's Motion for Alternate Service and Plaintiff's Memorandum of Law in support thereof, IT IS HEREBY ORDERED:

     1.    That a copy of this Order be published in either *The Washington Post* or *The Washington Times* within fourteen (14) days after entry of this Order and that a declaration be filed on Plaintiff's behalf, no later than twenty (20) days after the entry of this Order, describing the steps that have been taken to comply with this Order.

     2.    That Plaintiff shall serve a copy of this Order on Defendants via the e-mail addresses service@todaynic.com, admin@sci-hub.io, support@sci-hub.org, sci-hub.org@gmail.com, and 5438063a3qami6zo@5225b4d0pi3627q9@whoisprivacycorp.com.

     3.    That Defendants are hereby advised:

          A.    Plaintiff has filed a Verified Complaint charging the Defendants with direct and contributory copyright infringement under the Copyright Act, 17 U.S.C. § 101, trademark counterfeiting and infringement under the Lanham Act, 15 U.S.C. § 1114(1), and

conversion under Virginia law (the "Counts"). A copy of the Verified Complaint may be obtained from Plaintiff's counsel, David E. Weslow, Wiley Rein LLP, 1776 K Street NW, Washington, DC 20006, telephone (202)719-7000.

        B.    In the event the Plaintiff prevails under the Counts, remedies could include injunctive relief, monetary damages, and/or attorney's fees.

        C.    Any answer or other response to the Verified Complaint should be filed with the Clerk of Court, United States District Court for the Eastern District of Virginia, Alexandria Division, 401 Courthouse Square, Alexandria, Virginia 22314-5798 within twenty-one (21) days from the date of publication of this Order in either *The Washington Post* or *The Washington Times*. If no appearance or pleading is filed as required by this Order, this Court may render a judgment against Defendants.

        4.    That the foregoing steps shall be deemed to constitute service of the Verified Complaint on Defendants Sci-Hub and John Does 1-99 pursuant to the Federal Rules of Civil Procedure.

        Entered this 17th day of July, 2017.

                           /s/

                          Leonie M. Brinkema
                          United States District Judge

2

# Exhibit M

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X

ELSEVIER INC., ELSEVIER B.V., and
ELSEVIER LTD.,

              Plaintiffs,

   - against -

WWW.SCI-HUB.ORG, THE LIBRARY GENESIS
PROJECT, d/b/a LIBGEN.ORG, ALEXANDRA
ELBAKYAN, and JOHN DOES 1-99,

              Defendants.

---------------------------------------X

6/18/15

15 Civ. 4282(RWS)

O R D E R

**Sweet**, **D.J.**

     Plaintiffs Elsevier, Inc., Elsevier B.V., and Elsevier Ltd. (collectively, "Elsevier" or the "Plaintiffs") have moved the Court to allow alternative service of process pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure, and for an Order to Show Cause why a preliminary injunction should not issue. Having reviewed the papers, declarations, exhibits, and memoranda filed in support of the Plaintiffs' application, the motion is granted.

     The Defendants are allegedly affiliated with the Library Genesis Project ("LibGen"), a set of websites that Elsevier claims post scientific literature that it holds under copyright. Elsevier

seeks to serve several LibGen-related websites via email, and to serve Defendant Alexandra Elbakyan, who it claims operates the websites, via email and at a physical address in Almaty, Kazakhstan. The LibGen websites do not list physical addresses where they may be contacted, and hide their locations (and in some cases their email addresses) in their domain registrations.

Service by email is appropriate here because the "defendants conduct business extensively, if not exclusively, through their internet websites" and "do not disclose their physical addresses or location of incorporation." See Philip Morris USA Inc. v. Veles Ltd., No. 06 CV 2988, 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007). Alternate service is also appropriate here because the defendant websites are believed to operate out of Russia, where noncooperation from authorities with service through regular means has led federal courts to authorize alternate service in other cases. E.g., Bidonthecity.com LLC v. Halverston Holdings Ltd., No. 12 Civ. 9258, 2014 WL 1331046, at *10 (S.D.N.Y. Mar. 31, 2014).

It is therefore ORDERED that copies of this Order, notice of the Preliminary Injunction Hearing, and the Complaint may be served by any means authorized by law and this Order, including by email transmission to the email addresses available for Defendants on

their website or to the email addresses of their domain
registrants, as follows:

a) For sci-hub.org, to: support@sci-hub.org, sci-
hub.org@gmail.com, and
522ab14bo3mfc7dy@5225b4d0pi3627q9@private.whois.net;

b) For libgen.org, to:
54a8a84d7kaxh3nt@5225bd4d0pi3627q9.whoisprivacycorp.
com;

c) For elibgen.org, to: libegninfo@yandex.com and
54ca64605o1goil9@5225b4d0pi3627q9.whoisprivacycorp.c
om;

d) For libgen.info, to: libgeninfo@yandex.com and
54a19036ejtinug6@5225b4d0pi3627q9.whoisprivacycorp.c
om

e) For estrorecollege.org, libgeninfo@yandex.com and
54a19036ejtinug6@5225b4d0pi3627q9.whoisprivacycorp.c
om, and

f) For bookfi.org,
52e4d617f98mrf0y@5225b4d0pi3627q9.privatewhois.net.

Defendant Alexandra Elbakyan may be served by email at
mindwrapper@gmail.com and by registered mail, return receipt
requested, to Zhumabaeva, 172, Almaty, Kazakhstan 050014.

It is further ORDERED that the Defendants show cause at 11 a.m. on Tuesday, July 21, before the Part One Judge of this Court, why an order should not be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure requiring, during the pendency of this action:

1. That the Defendants, their officers, directors, principals, agents, servants, employees, successors, and assigns, and all persons and entities in active concert or participation with them, are hereby temporarily restrained from unlawful access to, use, reproduction, and/or distribution of Elsevier's copyrighted works and from assisting, aiding, or abetting any other person or business entity in engaging in unlawful access to, use reproduction, and/or distribution of Elsevier's copyrighted works;

2. That, upon Plaintiffs' request, those in privity with Defendants and those with notice of the injunction, including any Internet search engines, Web Hosting and Internet Service Providers, domain-name registrars, and domain-name registrars that are provided with notice of the injunction, cease facilitating access to any or all domain names and websites through which Defendants engage

in unlawful access to, use, reproduction, and distribution
of Elsevier's copyrighted works;

3. That, upon Plaintiffs' request, those organizations which
   have registered Defendants' domain names on behalf of
   Defendants shall disclose immediately to Plaintiffs all
   information in their possession concerning the identity of
   the operator or registrant of such domain names and of any
   bank accounts or financial accounts owned or used by such
   operator or registrant;

4. That Defendants shall not transfer ownership of the
   Defendants' websites during the pendency of this action,
   or until further order of the Court;

5. That the TLD Registries for the Defendants' websites, or
   their administrators, shall place the domain names on
   registryHold/serverHold as well as serverUpdate,
   ServerDelete, and ServerTransfer prohibited statuses,
   until further Order of the Court;

6. That Plaintiffs may enter the Defendants' websites into
   Google's Webmaster Tools and cancel any redirection of the
   domains that have been entered there by Defendants which

redirect traffic to a new domain name or website and thereby evade the provisions of this Order;

7. That the Defendants shall preserve copies of all its computer files relating to the use of the websites and shall take all steps necessary to retrieve computer files relating to the use of the websites that may have been deleted before entry of this Order; and

8. That security in the amount of $_____ be posted by Plaintiffs prior to _____, 2015 at ____ o'clock.

All papers shall be served in accordance with Local Civil Rule 6.1.

**New York, NY**
**June /8, 2015**

ROBERT W. SWEET
U.S.D.J.