**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OCLC, Inc. | ) | CASE NO. 2:24-cv-00144-MHW-EPD |
| | ) | |
|     Plaintiff, | ) | JUDGE MICHAEL H. WATSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE ELIZABETH A. |
| | ) | PRESTON DEAVERS |
| ANNA'S ARCHIVE, f/k/a PIRATE | ) | |
| LIBRARY MIRROR, et al. | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |

## DEFENDANT MARIA MATIENZO'S MOTION TO DISMISS PLAINTIFF'S COMPLAINTF FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAYBE GRANTED

Now comes Defendant, Maria Matienzo ("Ms. Matienzo"), by and through undersigned counsel and pursuant to Rules 12(B)(2) and 12(B)(6) of the Federal Rules of Civil Procedure, respectfully requests that this Court dismiss Plaintiff's Complaint against her for lack of personal jurisdiction and failure to state a claim upon which relief may be granted.

The Complaint filed by Plaintiff OCLC, Inc. ("OCLC") as against Ms. Matienzo must be dismissed as a matter of law given that neither general nor specific jurisdiction exist over Ms. Matienzo in Ohio. Accordingly, pursuant to Rule 12(B)(2) of the Federal Rules of Civil Procedure, the Complaint must be dismissed for lack of personal jurisdiction.

In addition, OCLC's Complaint against Ms. Matienzo is subject to dismissal for failure to state a claim upon which relief may be granted pursuant to Rule 12(B)(6) of the Federal Rules of Civil Procedure given that it fails to allege any wrongful conduct on the part of Ms. Matienzo and thus fails to plead plausible claims against her. Further, each of the twelve claims asserted against Ms. Matienzo in OCLC's Complaint also fail for the additional reasons set forth in the attached Memorandum in Support that is incorporated herein and filed contemporaneously herewith.

For these reasons, and as more fully demonstrated in the Memorandum in Support, Ms. Matienzo respectfully requests that this Court grant her Motion and dismiss OCLC's Complaint against her in its entirety, with prejudice.

Dated: April 15, 2024                                Respectfully submitted,

                                                     */s/ Sarah M. Benoit*
                                                     Sarah M. Benoit (0086616), Trial Attorney
                                                     Leon D. Bass (0069901)
                                                     **TAFT STETTINIUS & HOLLISTER LLP**
                                                     41 S. High Street, Suite 1800
                                                     Columbus, Ohio 43215
                                                     Phone:  (614) 221-2838
                                                     Fax:       (614) 221-2007
                                                     E-mail:  sbenoit@taftlaw.com
                                                                    lbass@taftlaw.com

                                                     *Counsel for Defendant Maria Matienzo*


<u>**CERTIFICATE OF SERVICE**</u>

On April 15, 2024, this document was filed electronically with the Clerk of the United States District Court for the Southern District of Ohio, Eastern Division, which will electronically serve a copy of the foregoing on all counsel of record for all parties.

                                                     */s/ Sarah M. Benoit*
                                                     Sarah M. Benoit (0086616), Trial Attorney

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| OCLC, Inc. | ) | **CASE NO. 2:24-cv-00144-MHW-EPD** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE MICHAEL H. WATSON** |
| | ) | |
| **v.** | ) | **MAGISTRATE JUDGE ELIZABETH A.** |
| | ) | **PRESTON DEAVERS** |
| **ANNA'S ARCHIVE, f/k/a PIRATE** | ) | |
| **LIBRARY MIRROR, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### I.   INTRODUCTION

This case stems from the alleged hack of data from WorldCat.org, a database of bibliographic records and associated metadata owned by Plaintiff OCLC, Inc. ("OCLC"). Plaintiff alleges that the hack was orchestrated by Co-Defendant Anna's Archive, f/k/a Pirate Library Mirror ("Anna's Archive") beginning in the fall of 2022. As a result of this hack, OCLC has filed suit against Anna's Archives alleging twelve causes of action sounding in both contract and tort. Without any foundation or evidence to support its allegations, OCLC has asserted the same twelve claims against Defendant Maria Matienzo ("Ms. Matienzo"). Ms. Matienzo is an individual residing in Seattle, Washington, who has never been associated with Anna's Archive.

OCLC's Complaint against Ms. Matienzo must be dismissed as a matter of law given that it fails to provide any basis for finding that this Court has personal jurisdiction over her. As the Complaint concedes, Ms. Matienzo is a citizen of Washington, and thus not subject to general jurisdiction in Ohio. Moreover, Ms. Matienzo is not subject to specific jurisdiction in Ohio because: (1) she has not purposefully availed herself to Ohio; (2) has conducted no activity in Ohio; and (3) given her lack of contacts with Ohio and the ability of OCLC in light its broad reach

across the United States and presence in Washington, to bring suit in Ms. Matienzo's state of domicile, it would be unreasonable to subject her to personal jurisdiction in Ohio.

In addition, OCLC's Complaint against Ms. Matienzo fails to plead plausible claims against her and must therefore be dismissed for failure to state a claim upon which relief may be granted. A review of the 200-plus paragraph Complaint reveals just *six* paragraphs containing individual allegations relating to Ms. Matienzo. The Complaint contains another two paragraphs that reference Ms. Matienzo and collectively group her with the other Defendants. A review of these paragraphs reveals that the allegations contained therein are nothing more than conclusory statements that are unsupported by any factual evidence. Further, while OCLC asserts an impressive twelve claims against Ms. Matienzo, each claim fails for the same basic reason: OCLC does not plausibly allege any wrongful conduct by Ms. Matienzo. Each of the twelve claims asserted against Ms. Matienzo also fail for additional reasons demonstrated herein. Given that OCLC has failed to state a claim upon which relief may be granted against Ms. Matienzo, its Complaint as against her is subject to dismissal pursuant to Rule 12(B)(6) of the Federal Rules of Civil Procedure.

Finally, OCLC is aware that Ms. Matienzo has consistently denied any association with Anna's Archive. In fact, Ms. Matienzo has cooperated with OCLC by informally providing requested information in an attempt to secure dismissal from this lawsuit before having to expend significant legal fees to defend herself against the baseless and unfounded allegations asserted in the Complaint in a venue that is nearly 2,500 miles away from her domicile. Despite this cooperation and notwithstanding the fact that Ms. Matienzo has no affiliation whatsoever with Anna's Archive, OCLC has refused to dismiss Ms. Matienzo from this case. Accordingly, Ms.

132547925

Matienzo has been left with no choice other than to seek redress from this Court by way of this Motion to Dismiss.

## II.  FACTUAL ALLEGATIONS IN THE COMPLAINT

Assuming (though not conceding) for purposes of this Motion that the allegations in OCLC's Complaint are true, OCLC alleges that it is an Ohio non-profit organization, which provides a digital infrastructure and services for libraries to collaborate, create, and share bibliographic records. (*See* Complaint ("Compl."), ¶¶ 1-2.) One of the services OCLC offers is WorldCat®, which is an authoritative source of library bibliographic records, which member libraries use primarily for cataloging purposes. (*Id*. at ¶ 3.) In addition, OCLC maintains a library catalog website called WorldCat.org, which is a search engine that allows individuals to search libraries throughout the world. (*Id.* at ¶ 5.)

OCLC alleges that when an individual searches on WorldCat.org, the individual agrees to and is bound by the OCLC WorldCat.org Services Terms and Conditions. (*Id.* at ¶ 58.) OCLC further alleges that it grants the individual a license to use WorldCat® data available on WorldCat.org for a limited purpose, and in exchange, the individual agrees, among other limitations, not to use the data for commercial use; not to harvest "material amounts" of data; not to distribute, display, or disclose the data; and not to store the data. (*Id*.)

OCLC further alleges that in the fall of 2022, it began experiencing cyberattacks on WorldCat.org and OCLC's servers that "significantly affected the speed and operations of WorldCat.org, other OCLC products and services, and OCLC's servers and network infrastructure. (*Id.* at ¶ 9.) In October 2023, OCLC learned that Anna's Archive, a "pirate" or "shadow" library, "illegally hacked WorldCat.org over the previous year, harvesting and stealing 2.2 terabytes of WorldCat® data." (*Id.* at ¶ 10.) Anna's Archive has since made OCLC's Worldcat® data available

- 3 -

"*en masse* for free download and is actively encouraging its visitors to make use of the data in 'interesting' ways." (*Id.*)

OCLC alleges that when Anna's Archive hacked OCLC, hackers used bots (automated software applications) that scraped and harvested data from WorldCat.org and other WorldCat®-based research sites. (*Id.* at ¶¶ 76-80.) These attacks allegedly caused OCLC to experience disruptions to its systems' infrastructure, including disruptions to paid services offered to its customers. (*Id.* at ¶¶ 81-83.)

OCLC generally claims that on October 3, 2023, "Defendants" published a blog post, boasting about scraping data from Worldcat. (*Id.* at ¶ 86.) It generally alleges that "Defendants" have stolen 2.2 terabytes of WorldCat® data. (*Id.* at ¶ 91.) OCLC also generally alleges that it now faces significant harm, mainly that "Defendants" can redistribute the data, which would devalue OCLCs products and services. (*Id.* at ¶¶ 96-103.)

As to Ms. Matienzo, OCLC alleges as follows:

- Maria Dolores Anasztasia Matienzo is a citizen of Washington and resides in Seattle, Washington. Matienzo owns, operates, and/or controls Anna's Archive. (*Id.* at ¶ 19.)[1]

- Defendant Maria Dolores Anasztasia Matienzo is a software engineer at Tome and former catalog librarian at a direct competitor of OCLC. (*Id.* at ¶ 108.)

- On information and belief, in addition to her extensive online presence, she has a GitHub (a software code hosting platform) account called, "anarchivist," and she developed a repository for a python module for interacting with OCLC's WorldCat® Affiliate web services. (*Id.* at ¶ 109.)

- On her personal blog, Matienzo describes herself as an "archivist." (*Id.* at ¶ 110.)

- Matienzo has publicly stated that libraries and archives should be open and publicly available. (*Id.* at ¶ 111.)

---

[1] In Paragraph 19 of the Complaint, OCLC also includes a footnote that deadnames Ms. Matienzo and provides the Court and the public with Ms. Matienzo's pre-transition name.

- On information and belief, Matienzo has a deep understanding of OCLC's WorldCat® and software coding, which she has utilized to support Anna's Archive, along with her experience at an OCLC competitor. (*Id.* at ¶ 112.)

OCLC does not allege that it traced any of the attacks to Ms. Matienzo, that OCLC discovered any shred of evidence demonstrating Ms. Matienzo's alleged ties to Anna's Archive, or that Ms. Matienzo herself committed any wrongful act against OCLC. (*Id.*, generally.) This is because no such evidence exists. Again, Ms. Matienzo has never been affiliated with Anna's Archive and had no involvement whatsoever with the alleged cyber attack on OCLC. Despite the lack of any actual evidence tying Ms. Matienzo to Anna's Archive, OCLC has named her as a defendant in this case and has refused to voluntarily dismiss her (even without prejudice) from the same even after Ms. Matienzo cooperated with OCLC by providing it with certain requested information that further evidenced her lack of involvement in the alleged wrongdoing. If this case is not dismissed, Ms. Matienzo will be forced to litigate a case in which she should have never been named as a defendant in a venue thousands of miles across the country from her state of domicile.

While Ms. Matienzo intends to seek separate redress for OCLC carelessly naming her in this matter in the future, at this time, she simply seeks dismissal from this action in accordance with the Federal Rules of Civil Procedure given that as demonstrated below, personal jurisdiction over Ms. Matienzo in Ohio does not exist. Further, Ms. Matienzo also requests dismissal on the basis that OCLC has failed to state a claim against her upon which relief may be granted pursuant to Rule 12(B)(6) of the Federal Rules of Civil Procedure.

## III. LAW AND ANALYSIS

### A. LEGAL STANDARD – MOTION TO DISMISS

The Federal Rules of Civil Procedure provide that all pleadings which state a claim for relief must contain a "short plain statement of the claim showing that the pleader is entitled to

132547925

relief." Fed. R. Civ. P. 8(a)(2). While the pleading standard as prescribed by Rule 8 does not require the plaintiff to set forth "detailed" factual allegations, it does require more than unsupported legal conclusions and collective allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Rule 8 requires the plaintiff to "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, "labels and conclusions and a formulaic recitation of a cause of action's elements will not do." *Id.* Further, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

When reviewing a motion to dismiss, a court must determine whether the complaint at issue contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 12(b)(6). While a court must accept all allegations as true when assessing a motion under Rule 12(b)(6), "[b]are assertions of legal liability absent some corresponding facts are insufficient to state a claim." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). To survive a motion to dismiss, a complaint's "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 528 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). Nor does a

complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 557.

As demonstrated herein, neither general, nor specific jurisdiction exists over Ms. Matienzo in Ohio. Accordingly, OCLC's Complaint against her must be dismissed. Further, OCLC's Complaint against Ms. Matienzo fails for an additional two reasons. First, the Complaint fails to allege any wrongdoing by Ms. Matienzo. Accordingly, it fails to satisfy the pleading requirements as set forth in *Iqbal* and *Twombly* and must therefore, be dismissed. Second, all twelve (12) causes of action against Ms. Matienzo fail for other, independent reasons as discussed in detail below. For these reasons, Ms. Matienzo is requesting dismissal of OCLC's Complaint against her pursuant to Rule 12(B)(2) and 12(B)(6) of the Federal Rules of Civil Procedure.

### B. MS. MATIENZO IS NOT SUBJECT TO PERSONAL JURISDICTION IN OHIO, AND THEREFORE MUST BE DISMISSED FROM THIS ACTION.

OCLC bears the burden of establishing through "specific facts" that personal jurisdiction exists over Ms. Matienzo in this case. *See Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). Further, although when ruling on personal jurisdiction without an evidentiary hearing, the plaintiff "need only make a 'prima facie' case that the court has personal jurisdiction," in the face of a properly supported motion to dismiss for lack of personal jurisdiction, the plaintiff may not stand on its pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction over the moving defendant. *Id*; *see also Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

Further, though the burden of making a prima facie case is "relatively slight," "the complaint still must "establish with reasonable particularity sufficient contacts between [the moving defendant] and the forum state to support jurisdiction." *Arnold v. CooperSurgical, Inc.*, No. 2:22-cv-1951, 2023 WL 4552154, at *4 (S.D. Ohio July 10, 2023) (citing *Neogen Corp v. Neo*

*Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)). "Accordingly, 'conclusory statements of bare allegations alone are insufficient to establish personal jurisdiction.'" *Id.* (quoting *Morrison v. Taurus Int'l Co.*, No. 3:11-cv-322, 2012 WL 5493962, at *1, 2012 U.S. Dist. LEXIS 162036, at *3 (S.D. Ohio Nov. 13, 2012)).

"A federal court sitting in diversity may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law – and any such exercise of jurisdiction must be compatible with the due process requirements of the United States Constitution." *International Technologies Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997). Ohio's long-arm statute is co-extensive with the federal Due Process Clause. *See* R.C. 2307.382(C) ("In addition to a court's exercise of personal jurisdiction under division (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution"); *see also Architectural Busstrut Corporation v. Smith LC*, No. 2:21-cv-4028, 2022 WL 1837596, at *2 (S.D. Ohio Feb. 8, 2022). "So, if the Court finds it has personal jurisdiction over Defendants under the federal Due Process Clause, it will also have personal jurisdiction over Defendants under Ohio's long-arm statute." *Id.* at *2.

"There are two kinds of personal jurisdiction within the Federal Due Process inquiry: (1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state." *Conn*, 667 F.3d at 712-13 (quoting *Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir.1989)). Here, OCLC has failed to demonstrate that either type of personal jurisdiction exists over Ms. Matienzo. Accordingly, as a matter of law, its Complaint against her must be dismissed.

      **1.    Ms. Matienzo is a Washington resident and not subject to general jurisdiction in Ohio.**

OCLC's Complaint correctly alleges that Ms. Matienzo is a resident of Washington. (*See* Compl., ¶ 19; *see also* Affidavit of Maria Matienzo, ¶ 2, attached as Exhibit A.) As such, Ms. Matienzo is not subject to general jurisdiction in Ohio. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.,* 582 U.S. 255, 262 (2017) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile...." (citation omitted)).

      **2.    Ms. Matienzo is not subject to specific jurisdiction in Ohio.**

The Sixth Circuit employs a three-part test to determine whether the exercise of specific jurisdiction comports with due process:

> (1) the defendant must purposefully avail him or herself of the privilege of acting in the forum state or causing a consequence in the forum state;
>
> (2) the cause of action must arise from the defendant's activities there; and
>
> (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mahasco Indus. Inc.,* 401 F.2d 374, 381 (6th Cir. 1968). "Each criterion represents an independent requirement, and failure to meet any one of the three means personal jurisdiction may not be invoked." *Conti v. Pneumatic Products Corp.,* 977 F.2d 978, 983 (6th Cir. 1992). Again, general conclusory and/or collective allegations are insufficient to demonstrate the existence of specific jurisdiction over a specific defendant. *See Arnold v. CooperSurgical, Inc.*, No. 2:22-cv-1951, 2023 WL 4552154, at *4 (S.D. Ohio July 10, 2023) (quoting *Morrison v. Taurus Int'l Co.*, No. 3:11-cv-322, 2012 WL 5493962, at *1, 2012 U.S. Dist. LEXIS 162036, at *3 (S.D. Ohio Nov. 13, 2012).

"A court must assess each defendant's contacts with the forum state individually." *Darago v. Live Nation Entertainment, Inc.*, No. 5:18-cv-2639, 2019 WL 3082292, * 6 (N.D. Ohio July 15, 2019) (allegations regarding defendants' collective actions, standing alone, do not inform the court as to individual defendant's contact with the forum); *see also Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed. 2d 516 (1980) ("[t]he requirements of *International Shoe*…must be met as to each defendant over whom a state court exercises jurisdiction"); *Johnson v. Diamond Shine, Inc.*, 890 F.Supp.2d 763, 775 (W.D. Ky. 2012) (finding no personal jurisdiction over defendants for whom no party-specific factual allegations had been alleged).

### a. *Ms. Matienzo has not purposefully availed herself to Ohio*

Ms. Matienzo is not subject to specific jurisdiction in Ohio because none of the three *Mohasco* factors are satisfied. First, Ms. Matienzo has not purposefully availed herself of the privilege of acting in Ohio. Courts recognize that the "purposeful availment" requirement is the most significant of the factors considered when determining whether specific jurisdiction exists over a non-resident defendant. *Mohasco*, 401 F.2d at 381. The purposeful availment requirement is "the sine qua non of in personam jurisdiction[.]" *Mohasco*, 401 F.2d at 381–82. This requirement is satisfied only "when the defendant's contacts with the forum state…create **a substantial connection** with the forum State, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *Id.* (citation omitted and emphasis added). "This ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

"The emphasis in the purposeful availment inquiry is whether the defendant has engaged in some overt actions connecting the defendant to the forum state." *Bridgeport Music, Inc. v. Still N*

*The Water Pub.,* 327 F.3d 472, 478 (6th Cir. 2003) (citation omitted) (Purposeful availment is "something akin to a deliberate undertaking," that is, a deliberate effort by the defendant to direct her activities toward, and to make contact with, the forum.). The U.S. Supreme Court has stated that a defendant does not purposefully avail him or herself of the forum state when his/her contacts are "random," "fortuitous," or "attenuated." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985).

Here, OCLC's Complaint does not plead any facts supporting the conclusion that Ms. Matienzo purposefully availed herself to Ohio. The Complaint does not allege that Ms. Matienzo resides in Ohio, conducts business in Ohio, or owns property in Ohio. Instead, OCLC included a general conclusory and collective allegation against all "Defendants." (*See* Compl., ¶ 22.) As set forth above, this is insufficient to demonstrate specific jurisdiction.

Ms. Matienzo is not a resident of Ohio. (*See* Exhibit A, ¶ 2.) She does not own property in Ohio. (*Id.* at ¶ 4.) She has no family in Ohio and does not regularly visit Ohio. (*Id.* at ¶ 5.) Ms. Matienzo does not conduct business in Ohio. (*Id.* at ¶ 6.) Furthermore, Ms. Matienzo has absolutely no affiliation or relationship with Anna's Archive. (*Id.* at ¶ 7.) And, she has never viewed or accessed the OCLC WorldCat.org data through Anna's Archive. (*Id.* at ¶ 8.) Given that Ms. Matienzo has not purposefully availed herself of the privilege of conducting activities in Ohio, no specific jurisdiction exists over her and OCLC's Complaint must be dismissed as a matter of law pursuant to Rule 12(B)(2) of the Federal Rules of Civil Procedure.

### b. *OCLC's causes of action do not arise from any activity conducted by Ms. Matienzo in Ohio*

Although the lack of purposeful availment is enough to warrant dismissal of OCLC's Complaint against Ms. Matienzo for lack of personal jurisdiction, OCLC also fails to satisfy the other two criteria to be considered when determining whether specific jurisdiction exists over a non-resident defendant. The second criterion requires that "the plaintiff's cause of action… 'arise

from'" the defendant's contacts with the forum state. *See Air Products and Controls, Inc. v. Safeguard Intern., Inc.*, 503 F.3d 544, 553 (6th Cit. 2007). Importantly, "[t]he proper question is not *where the plaintiff experienced a particular injury* or effect but *whether the defendant's conduct connects him to the forum in a meaningful way.*" (emphasis added.) *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

Here, OCLC's Complaint does not plead that its causes of action arose from Ms. Matienzo's activities in Ohio. This is because she has no affiliation with Anna's Archive and has conducted no activity in Ohio giving rise to OCLC's claims. (*See* Exhibit A, ¶ 7.) Moreover, the Complaint does not allege any actions whatsoever by Ms. Matienzo that could give rise to OCLC's causes of action against her. Again, conclusory and collective jurisdictional allegations are insufficient to demonstrate the existence of personal jurisdiction over Ms. Matienzo in this case. Further, simply because OCLC may have experienced alleged harm in Ohio does not satisfy the "arising from" requirement. *Bulso v. O'Shea*, 730 F. App'x 347, 350 (6th Cir. 2018). OCLC has failed to allege the specific actions of Ms. Matienzo that connect her to Ohio in a meaningful way. For argument's sake, even if Ms. Matienzo was involved in the alleged hack – which she was not – OCLC's Complaint still fails to allege that the hack was orchestrated and/or completed by Ms. Matienzo in Ohio. Because OCLC fails to satisfy the "arising from" criterion set forth in *Mohasco*, its Complaint against Ms. Matienzo must be dismissed for lack of personal jurisdiction.

### c. *Exercising personal jurisdiction over Ms. Matienzo in Ohio is not reasonable*

Finally, OCLC's Complaint as against Ms. Matienzo cannot satisfy the "reasonableness" criterion set forth in *Mohasco* and therefore, must be dismissed for lack of personal jurisdiction. Under the "reasonableness" criterion, the court must consider several factors, including: "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief,

and the interest of other states in securing the most efficient resolution of controversies." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996). Further, although a plaintiff may have an interest in obtaining convenient and effective relief in its home state, where the burden on the non-resident defendant is high and where the claim does not involve novel questions of Ohio law, the exercise of jurisdiction over a defendant is unreasonable. *Baker v. Bensalz Prods., Inc.*, 480 F.Supp.3d 792, 807 (S.D. Ohio); *see also Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 397 (6th.Cir. 2021) (noting that plaintiff's convenience interests give way to the "imperative that due process mainly concerns 'the burden on the defendant'").

In this case, exercising jurisdiction over Ms. Matienzo would not be reasonable. In light of her lack of contacts with Ohio, the burden of her litigating a case in Ohio, nearly 2,500 miles from her state of domicile, would be extreme. Unlike OCLC, Ms. Matienzo is not a corporate entity with reach across the country. Further, given that OCLC operates and has offices in Seattle, Washington, where Ms. Matienzo resides, Washington clearly has a stronger interest in hearing claims against its resident, particularly when the party bringing the claims, OCLC, conducts business and has an office in Seattle. Given that OCLC cannot satisfy the third and final factor to be considered when determining whether specific jurisdiction exists over an individual defendant as set forth in *Mohasco*, its Complaint against Ms. Matienzo must be dismissed for lack of personal jurisdiction.

Here, OCLC fails to demonstrate even one of the requirements for exercising specific jurisdiction over Ms. Matienzo in Ohio. Accordingly, given that no general or specific jurisdiction exists over her in Ohio, Plaintiff's Complaint against Ms. Matienzo must be dismissed for lack of personal jurisdiction.

- 13 -

### C. OCLC'S COMPLAINT FAILS TO ALLEGE WRONGDOING BY MS. MATIENZO AND IS THUS SUBJECT TO DISMISSAL.

OCLC's Complaint as against Ms. Matienzo also fails to state a claim upon which relief may be granted because OCLC does not allege any specific wrongdoing, *or any specific conduct at all*, by Ms. Matienzo. Under the pleading requirements set forth in *Iqbal* and *Twombly*, a complaint must include specific factual allegations directed toward an individually-named defendant. *See Broadbent v. Americans for Affordable Healthcare Inc.*, No. 1:10-CV-943, 2011 WL 7115984, at *4 (S.D. Ohio Dec. 16, 2011) (citing *Iqbal*, 129 S.Ct. at 1950) (amended complaint failed to state a claim for relief against individual defendant where complaint only alleged individual was an officer of the co-defendant company and where complaint consisted "primarily of conclusory allegations and fail[ed] to include sufficient specific factual allegations directed toward many of the individually-named defendants"). Further, those allegations must allege specific wrongdoing on the part of the named defendant. *Id*. Here, OCLC alleges no conduct and/or wrongdoing against Ms. Matienzo specifically.

Presumably, OCLC brings its vague and collective claims against all Defendants with the hopes of conducting discovery and *then* determining whether Ms. Matienzo is actually associated with Anna's Archive (she is not). Nonetheless, in order to state a claim under Rule 12(B)(6), OCLC must allege that its injury was caused by Ms. Matienzo. *See MSP Recovery Claims, Series LLC v. Nationwide Mut. Ins. Co.*, 594 F.Supp.3d 947, 959 (S.D. Ohio 2022). Here, OCLC's Complaint is devoid of any such allegations. Furthermore, the conclusory and unsupported allegation that "Matienzo owns, operates, and/or controls Anna's Archive," is not sufficient to state a claim against Ms. Matienzo. (*See* Compl., ¶ 19.) "[OCLC] cannot rely on discovery to provide the facts necessary to satisfy *Iqbal* and *Twombly*." *MSP Recovery Claims,* 594 F.Supp.3d at 959.

To amount to more than a "conclusory legal assertion," OCLC must provide factual allegations which support its claim that Ms. Matienzo "owns, operates, and/or controls Anna's Archive." Groundlessly bestowing a title upon Ms. Matienzo does not make it so, even for the purposes of this Motion. *See Saqr v. Univ. of Cincinnati*, No. 1:18-CV-542, 2019 WL 6463388, at *5 (S.D. Ohio Dec. 2, 2019) (citing *Bird v. Delaruz*, 2005 WL 1625303, at *4 (S.D. Ohio July 6, 2005)) (Where complaint against individual defendant is devoid of supporting factual allegations as to specific actions of defendant giving rise to liability and contains conclusory legal assertions as opposed to factual allegations, suit against the individual defendant will not lie).

As previously demonstrated, of the 213 paragraphs in the Complaint, Ms. Matienzo is specifically mentioned in only *eight* of them. Moreover, only six paragraphs specifically relate to Ms. Matienzo. Further, each paragraph contains its own conclusory legal assertion lacking in foundation and fact. To illustrate the strength (or lack thereof) of OCLC's allegations pertaining to Ms. Matienzo, those references are restated here, in their entirety:

- Defendants Anna's Archive, Maria Dolores Anasztasia Matienzo, and John Does #1-20, the individuals operating and doing business as Anna's Archives, have no legal justification for their actions and admit that their general operations violate U.S. and other jurisdictions' copyright laws. Defendants also are well aware of the risk of their illegal actions – that they may be identified and held personally liable, and that Anna's Archives may be shut down. To that end, Defendants maintain alternative domains for Anna's Archive and actively conceal their individual identities. (*See* Compl. ¶ 11.)

- Maria Dolores Anasztasia Matienzo is a citizen of Washington and residents in Seattle, Washington. Matienzo owns, operates, and/or controls Anna's Archives. (*Id.* at ¶ 19 (footnote omitted).)

- Anna's Archive was created and is operated by a team of anonymous "archivists" that refer to themselves as "Anna," *i.e.*, Defendants Matienzo and John Does #1-20. (*Id.* at ¶ 64.)

- Defendant Maria Dolores Anasztasia Matienzo is software [sic] engineer at Tome and former catalog librarian at a direct competitor of OCLC. (*Id.* at ¶ 108.)

- On information and belief, in addition to her extensive online presence, she has a GitHub (a software code hosting platform) account called, "anarchivist," and she developed a repository for a python module for interacting with OCLC's WorldCat® Affiliate web services. (*Id.* at ¶ 109.)

- On her personal blog, Matienzo describes herself as an "archivist." (*Id.* at ¶ 110.)

- Matienzo has publicly stated that libraries and archives should be open and publicly available. (*Id.* at ¶ 111.)

- On information and belief, Matienzo has a deep understanding of OCLC's WorldCat® and software coding, which she has utilized to support Anna's Archive, along with her experience at an OCLC competitor. (*Id.* at ¶ 112.)

With the exception of those eight references to Ms. Matienzo, the remainder of OCLC's Complaint merely refers to the "Defendants," as a collective group. (*Id.*, generally.) It is understandable that the allegations related to John Does #1-20 are vague in nature, given that OCLC concedes that it is not aware of their identities. However, OCLC named Ms. Matienzo individually and still failed to supply this Court and more importantly, Ms. Matienzo, with any real basis for her being named. To tie Ms. Matienzo, a named party, into the same, ambiguous allegations as those it asserts against twenty, unidentified defendants proves fatal to OCLC's claims against her. *See Doe v. Foster*, No. 5:18-CV-1870, 2019 WL 6770094, at *3 (N.D. Ohio Dec. 12, 2019) (quoting *Cameron v. Howes*, No. 1:10-cv-539, 2010 WL 3885271, at *6 (W.D. Mich. Sept. 28, 2010)) ("Where a person is named as a defendant without an allegation of specific conduct, the complaint against him is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.")

Ultimately, without providing sufficient support for its allegation that Ms. Matienzo owns, operates, and/or controls Anna's Archives, all OCLC *really* alleges is that Ms. Matienzo fits the profile of the person and/or persons OCLC believes caused it harm. That is simply not enough. Rather than allege any specific conduct and/or wrongdoing on the part of Ms. Matienzo, OCLC

expects this Court to infer various unlawful acts, including malicious conduct, from a brief description of Ms. Matienzo and her professional and political background. Simply owning a social media account whose name (based on the owner's legal name, political views, and occupation) bears similarities to a defendant's name[2], having the middle name of Anasztasia, formerly being employed by a plaintiff's competitor, opining that information should be widely available, and having coding experience cannot give rise to or serve as a basis for any of the twelve (12) causes of action asserted in OCLC's Complaint. OCLC must allege actual wrongdoing specific to Ms. Matienzo in order to avoid dismissal. Moreover, vague and conclusory allegations of wrongdoing will not suffice. OCLC has failed to meet this burden.

For this reason alone, OCLC's claims against Ms. Matienzo must be dismissed for failure to state a claim upon which relief may be granted.

### D. OCLC'S TWELVE CAUSES OF ACTION AGAINST MS. MATIENZO ALL FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND MUST THEREFORE BE DISMISSED.

OCLC has asserted twelve (12) separate claims against all defendants, including Ms. Matienzo. These claims are:

| | |
|---|---|
| Count 1: | Breach of Contract |
| Count 2: | Unjust Enrichment |
| Count 3: | Tortious Interference with Contract |
| Count 4: | Conspiracy to Tortiously Interfere with Contract |
| Count 5: | Tortious Interference with Prospective Business Relationships |
| Count 6: | Conspiracy to Tortiously Interfere with Prospective Business Relationships |

---

[2] OCLC is aware that the "anarchivist" social media username is simply a double entendre that is drawn from the words "anarchist" and "archivist." OCLC is also aware that Ms. Matienzo has used this username online for over 20 years. This username is in no way associated with Anna's Archive. (*See* Exhibit A, ¶ 9.)

Count 7:       Civil Recovery for Criminal Acts Violation of Ohio Revised Code § 2913.04

Count 8:       Conspiracy to Violate Ohio Revised Code § 2913.04

Count 9:       Trespass to Chattels

Count 10:     Conspiracy to Trespass to Chattels

Count 11:     Conversion

Count 12:     Conspiracy to Convert OCLC's Property

For the reasons set forth below, each of OCLC's claims against Ms. Matienzo fails to state a claim upon which relief may be granted.

> **1.    OCLC's claim for breach of contract as asserted in Count One of the Complaint is subject to dismissal on the basis that no contract existed between OCLC and Ms. Matienzo and as OCLC has not alleged that Ms. Matienzo breached any contract or caused its alleged injuries.**

For a breach of contract claim to survive a motion to dismiss, a plaintiff must allege facts sufficient to establish: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff. *Bihn v. Fifth Third Mortg. Co.*, 980 F.Supp.2d 892, 906 (S.D. Ohio 2013) (citing *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006)). Further, to allege a "plausible claim for relief," a plaintiff "must allege facts sufficient to provide a plausible basis for concluding that each element has been met." *Dawson v. Allstate Vehicle and Property Ins. Co.*, No. 1:22-cv-776, 2024 WL 22735, at *3 (S.D. Ohio Jan. 2, 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937 (2009)). Because OCLC fails to establish or even sufficiently allege each element of its breach of contract claim against Ms. Matienzo, this claim is subject to dismissal pursuant to Rule 12(B)(6).

For a valid contract to exist, there must be an "offer, acceptance, and consideration as well as a manifestation of mutual assent and a meeting of the minds as to the contract's essential terms." *See Panama Portfolio.com SA v. TREXL Capital, LLC*, No. 2:16-0070, 2016 WL 6125398, at *2

(S.D. Ohio Oct. 20, 2016). In its Complaint, OCLC alleges the existence of an express contract between the parties – the OCLC WorldCat.org Services Terms and Conditions ("Terms and Conditions"). (*See* Compl., ¶ 123.) In an express contract, "the assent to the contract's terms is formally expressed in the offer and acceptance of the parties.'" *Byler v. Air Methods Corp.*, 823 Fed.Appx. 356, 362 (6th Cir. 2020) (quoting *Reali Giampetro & Scott v. Society Nat'l Bank*, 133 Ohio App.3d 844, 729 N.E.2d 1259, 1263 (1999)).

OCLC does not allege that it made an offer to Ms. Matienzo and, more importantly, that Ms. Matienzo accepted OCLC's offer, if any. Instead, OCLC alleges that the Terms and Conditions "create a valid and binding contract between OCLC and Defendants, where OCLC **grants the user** a license to use WorldCat® data available on Worldcat.org, and in exchange **the user agrees** not to use the data for commercial use; to harvest "material amounts" of data; to distribute, display, or disclose the data; or to store the data." (emphasis added.) (Compl., ¶ 123.) OCLC does not allege that it granted a license *to Ms. Matienzo*, or that *Ms. Matienzo agreed* to the Terms and Conditions. OCLC does not even allege that Matienzo used Worldcat.org, or that she was considered a "user" under the applicable Terms and Conditions.

Notwithstanding the language of the Terms and Conditions, "[a]cceptance may be expressed by 'word, sign, writing, or act.'" *Tilahun v. Philip Morris Tobacco Co.*, No. C2 04 1078, 2005 WL 2850098, at *3 (S.D. Ohio Oct. 28, 2005) (quoting *Sashti, Inc. v. Glunt Ind., Inc.*, 140 F.Supp.2d 813, 816 (N.D. Ohio 2001)). OCLC does not allege any word, sign, writing, or act by Ms. Matienzo evidencing her acceptance of the Terms and Conditions. Thus, a contract did not exist between OCLC and Ms. Matienzo, and OCLC fails to state a claim against her for breach of contract. *Id.* (dismissing a breach of contract claim because the plaintiff failed "to allege facts suggesting the formation of a contract.")

132547925

Even if a valid and enforceable contract existed between OCLC and Ms. Matienzo (which it does not), to fully state its claim, OCLC must allege that Ms. Matienzo breached that contract, and that its resulting injuries, were caused by Ms. Matienzo's breach. *See MSP Recovery Claims, Series LLC v. Nationwide Mutual Insurance Co.*, 594 F.Supp.3d 947, 959 (quoting *Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012) ("[I]t would be … inappropriate to allow [the plaintiff] to use the discovery process to find the contracts in dispute *after* filing suit." (emphasis in original)). Indeed, OCLC collectively alleges that "Defendants" breached the Terms and Conditions, and "Defendants" caused OCLC to incur damages. (Compl. ¶¶ 125-126.) However, because OCLC does not specifically allege that Ms. Matienzo breached the Terms and Conditions, and that Ms. Matienzo caused OCLC to incur damages, OCLC's breach of contract claim should be dismissed pursuant to Rule 12(B)(6) for failure to state a claim upon which relief may be granted.

> **2.      OCLC's claim for unjust enrichment as asserted in Count Two of the Complaint is subject to dismissal for failure to state a claim given that OCLC does not sufficiently allege a connection between Ms. Matienzo's actions and enrichment on one hand, and its losses on the other.**

To state a claim of unjust enrichment, a plaintiff must establish: (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge of the benefit, and (3) circumstances render it unjust or inequitable to permit the defendant to retain the benefit without compensating the plaintiff. *See Kline v. Mortgage Electronic Sec. Systems*, 659 F.Supp.2d 940, 952 (S.D. Ohio 2009) (quoting *Catlett v. Central Allied Enterprises, Inc.*, 2009 WL 2859223 (Ohio App. 2009)). OCLC alleges that (1) it "conferred a benefit on Defendants by providing access to Worldcat.org, which contains certain WorldCat® data"; (2) "Defendants have knowledge of the benefit of WorldCat® data"; and (3) "Defendants have unjustly retained Worldcat® data." (*See* Compl., ¶¶

129-130.) These collective allegations pertaining only to "Defendants," and not Ms. Matienzo individually, are insufficient to state a claim for unjust enrichment as against Ms. Matienzo.

To state an unjust enrichment claim against all Defendants, OCLC "must plausibly allege that each Defendant was unjustly enriched [at plaintiff's expense]." *Kerrigan v. ViSalus, Inc.*, 112 F.Supp.3d 580, 615 (E.D. Mich. 2015) (emphasis removed.) (citing Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011)) (To state a claim for unjust enrichment, plaintiff's complaint must sufficiently allege a connection between each defendant's actions on the one hand, and plaintiff's losses on the other hand.) Here, to survive this Motion, OCLC must sufficiently allege a connection between Ms. Matienzo's actions and enrichment, on one hand, and its losses on the other. *Id.* OCLC does not specifically mention Ms. Matienzo in its unjust enrichment claim, let alone allege how Ms. Matienzo was unjustly enriched at its expense. In fact, the Complaint contains no such allegations of Ms. Matienzo's actions. Moreover, the unsupported and conclusory allegations against Ms. Matienzo in the Complaint are insufficient to state a claim against her for unjust enrichment. Since OCLC does not allege a connection between Ms. Matienzo's alleged enrichment and OCLC's losses, OCLC's unjust enrichment claim should be dismissed as a matter of law for failure to state a claim upon which relief may be granted.

**3.    OCLC's claims for tortious interference with contract and tortious interference with business relations as asserted in Counts Three and Five of the Complaint are subject to dismissal for failure to state a claim upon which relief may be granted given that OCLC has not pled specific facts alleging that Ms. Matienzo, individually, interfered with OCLC's alleged contractual and/or future business relationships.**

**a.    *Tortuous Interference with Contract***

A plaintiff bringing a claim of tortious interference with contract must allege facts establishing: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5)

- 21 -

resulting damages.'" *Horter Inv. Mgmt., LLC v. Cutter*, 257 F. Supp. 3d 892, 923 (S.D. Ohio 2017) (quoting *Fred Siegal Co. L.P.A. v. Arter & Hadden*, 85 Ohio St. 3d 171, 176, 1999-Ohio-260, 707 N.E.2d 853, 858 (1999)). Regarding its tortious interference with contract claim, OCLC alleges, in relevant part, that: (1) it has entered into contractual relationships with its WorldCat® customers; (2) "[u]pon information and belief, Defendants have knowledge of OCLC's contracts with WorldCat® customers"; (3) "[u]pon information and belief, when Defendants harvested WorldCat® data and distributed it, and when Defendants hacked WorldCat.org and OCLC's servers, they intended for or were substantially certain that customers would cancel their service agreements with OCLC, and otherwise materially interfere with OCLC's contractual relationships with its customers"; (4) "Defendants' interference with OCLC's existing contracts lacks any justification"; and (5) "[a]s a direct and proximate result of Defendants' tortious interference with OCLC's contracts, OCLC has suffered immediate and irreparable injury, loss, or damage[.]" (*See* Compl., ¶¶ 136-140.) As with its previous claims, OCLC again fails to allege any specific conduct or wrongdoing on the part of Ms. Matienzo to supports its claim for tortious interference with contract.

To state its claim for tortious interference with contract, OCLC must plead specific facts alleging that Ms. Matienzo, individually, interfered with OCLC's alleged contractual relationships with its Worldcat® customers. *See Tri-Med Fin. Co. v. Nat'l Century Fin. Enterprises, Inc.*, 208 F.3d 216 (6th Cir. 2000) (dismissing a tortious interference claim because the plaintiff failed to proffer specific facts showing how the individual defendants tortiously interfered with the plaintiff's contracts and business opportunities). OCLC has alleged that "Defendants," not Ms. Matienzo individually, interfered with its contracts. Further, OCLC failed to allege that Ms. Matienzo had knowledge of its contracts with Worldcat® customers or that she intentionally

procured the breach of any contract. Accordingly, OCLC has failed to state a claim upon which relief may be granted against Ms. Matienzo for tortious interference with contract.

### b.    *Tortuous Interference with Business Relations*

To state a claim of tortious interference with business relations, a plaintiff must establish: "(1) a business relationship, (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom.'" *Horter Inv. Mgmt., LLC v. Cutter*, 257 F. Supp. 3d 892, 923 (S.D. Ohio 2017) (quoting *Ginn v. Stonecreek Dental Care*, 30 N.E.3d 1034, 1039 (Ohio Ct. App. 12 Dist. 2015)). While similar, the primary distinction between tortious interference with contract and tortious interference with business relations is that "with the latter, the interference relates to prospective contractual relationships that may not yet be formalized." *Id.* at 924 (citing *Ginn*, 30 N.E.3d at 1040). Like its tortious interference with contract claim, OCLC's claim for tortious interference with business relations as against Ms. Matienzo fails as a matter of law for failure to state a claim upon which relief may be granted.

In support of its claim, OCLC alleges, in relevant part, that: (1) "OCLC, as the owner of WorldCat®, has had, or will have, prospective business relationships with potential customers seeking a cataloging record service as part of their ILS/LSP platforms"; (2) "[u]pon information and belief, Defendants know OCLC has these prospective business relationships"; (3) "Defendants have intentionally, deliberately, willfully, maliciously, and without justification caused or will cause these prospective WorldCat® customers to not enter into a business relationship with OCLC"; and (4) "[a]s a direct and proximate result of Defendants' tortious interference with OCLC's prospective business relationships with future WorldCat® customers, OCLC will suffer immediate and irreparable injury, loss, or damage[.]" (*See* Compl., ¶¶ 152-156.) Once again,

OCLC fails to plead specific facts alleging that Ms. Matienzo, not just "Defendants," as a collective group intentionally interfered with OCLC's prospective business relationships, as required to state a claim. *See Tri-Med Fin. Co.*, 208 F.3d at 216. For this reason alone, OCLC's tortuous interference with business relations claim as against Ms. Matienzo should be dismissed for failure to state a claim.

Additionally, OCLC's claim for tortious interference with business relations fails as a matter of law because it does not identify specific business relationships with which Ms. Matienzo allegedly interfered. A claim for tortious interference with business relations must point to particular customers, or relationships, with which a defendant allegedly interfered. *See Hall v. Cent. Ohio Elderly Care, LLC*, No. 2:16-CV-01102, 2017 WL 4250522, at *3 (S.D. Ohio Sept. 21, 2017) ("[T]he tortious interference claim here requires more. [Counterdefendant] here has no notice as to any particular relationships with which she interfered." (alteration in original)); *Wellington Res. Grp. LLC v. Beck Energy Corp.*, No. 2:12-CV-104, 2013 WL 6158287, at *7 (S.D. Ohio Nov. 25, 2013) (quoting *Wilkey v. Hull*, 366 F. App'x 634, 638) ("The 'vague assertion' that [the defendant] 'interfered with certain unspecified business relationships' is 'just a legal conclusion that is itself entitled to no weight.'")

Here, OCLC vaguely and collectively alleges that "Defendants'" actions interfere with its "prospective business relationships with future WorldCat® customers." (*See* Compl., ¶ 156.) However, such an allegation does not give adequate notice to Ms. Matienzo of the particular relationship(s) with which she allegedly interfered, and thus, OCLC's claim should be dismissed for failure to state a claim upon which relief may be granted.

132547925

**4.     OCLC's claims for trespass to chattels, conversion, and violation of R.C. § 2913.04 as asserted in Counts Seven, Nine, and Eleven of the Complaint are subject to dismissal for failure to state a claim given that OCLC has alleged no specific facts demonstrating how Ms. Matienzo was involved in the trespass, conversion, or violation of R.C. § 2913.04.**

As the requirements to establish claims for trespass to chattels, conversion, and a violation of R.C. § 2913.04 are similar, these claims may be analyzed and ultimately disposed of together.

A trespass to chattels occurs "when one intentionally dispossesses another of chattel." *Cooper v. Liberty Mutual Fire Ins. Co.*, No. 2:20-cv-6542, 2021 WL 5296900, at *4 (S.D. Ohio Nov. 15, 2021) (quoting *Stainbrook v. Fox Broadcasting Co.*, No. 3:05 CV7380, 2006 WL 3757643, at *4 (N.D. Ohio Dec. 19, 2006)). For a trespass to chattels claim to survive a motion to dismiss, a plaintiff must allege that: (a) the defendant dispossessed the plaintiff of the chattel, or (b) the chattel is impaired as to its condition, quality, or value, or (c) the plaintiff was deprived of the use of the chattel for a substantial time, or (d) bodily harm is caused to the plaintiff, or harm is caused to some person or thing in which the plaintiff has a legally protected interest. *See Barrett-O'Neill v. Lalo, LLC*, 171 F.Supp.3d 725, 750 (S.D. Ohio 2016) (quoting *CompuServe Inc. v. Cyber Promotions, Inc.*, 962 F.Supp. 1015, 1021 (S.D. Ohio 1997).

A plaintiff bringing a claim for conversion must allege facts sufficient to establish: "(1) plaintiff's ownership or right to possess the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property; and (3) damages." *Kuvedina, LLC v. Cognizant Technology Solutions*, 946 F. Supp.2d 749, 761 (S.D. Ohio 2013) (citing *In re McWeeney*, 255 B.R. 3, 5 (S.D. Ohio 2000)). Finally, R.C. § 2307.60 provides a civil remedy for a person injured by the criminal act of another. OCLC claims that it is entitled to relief under this statute on the basis that Defendants violated R.C. § 2913.04(B), a criminal statute that prohibits a

person from hacking, gaining access, attempting to gain access, or causing access to be gained to a computer, computer system, or computer network without consent.

For all three claims, OCLC collectively alleges that "Defendants" committed the alleged tortious acts. (*See* Compl., ¶¶ 182-189, 198-205, 168-173.) By broadly and collectively referring to "Defendants" as the tortfeasors in these claims, OCLC fails to allege that Ms. Matienzo, individually, conducted herself in a way which may constitute a trespass to chattels, conversion, or a violation of R.C. § 2913.04. Thus, OCLC's trespass to chattels, conversion, and R.C. § 2913.04 claims should be dismissed as a matter of law, for failure to state claim upon which relief may be granted. *See Kemper v. Saline Lectronics*, 348 F. Supp. 2d 897, 901-02 (N.D. Ohio 2004) (dismissing conversion claim because Plaintiff "broadly alleged that 'Defendants'" converted Plaintiff's money and Plaintiff "presented no specific facts showing how the [individual defendants] were involved in such conduct"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing Fed. R. Civ. P. 8(a)(2)) ("But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief'").

> **5.** **OCLC's various claims for conspiracy as asserted in Counts Four, Six, Eight, Ten, and Twelve are subject to dismissal for failure to state a claim given that OCLC fails to allege facts supporting its conclusory allegation that Defendants formed a malicious combination, or a tacit understanding or design, to commit tortious interference with contract, tortious interference with business relations, violations of R.C. § 2913.04, trespass to chattels, and conversion.**

Although OCLC brings a number of conspiracy-related claims, they all fail for the same reason and can be addressed together. "A civil conspiracy is an *agreement* between two or more persons to injure another by unlawful action." (emphasis added.) *Fulmer v. Myers*, No. 2:16-cv-79, 2016 WL 4208143, at \*5 (S.D. Ohio Aug. 10, 2016) (quoting *Hooks v. Hooks*, 771 F.2d 935,

132547925

943-44 (6th Cir. 1985). "To establish a claim for civil conspiracy, a plaintiff must establish: '(1) a malicious combination; (2) of two or more persons; (3) injury to person or property; and (4) the existence of an unlawful act independent from the actual conspiracy.'" *Id.* (quoting *Eva v. Midwest Nat'l Mortg. Bank, Inc.*, 143 F. Supp.2d 862, 898 (N.D. Ohio 2011)); *see also Aetna Cas. and Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 534 (6th Cir. 2000) ("[A] conspiracy involves an *agreement* to participate in a wrongful activity").

OCLC brings the following conspiracy claims against all Defendants: conspiracy to tortiously interfere with contract (Count Four), conspiracy to tortiously interfere with prospective business relationships (Count Six), conspiracy to violate Ohio Revised Code § 2913.04 (Count Eight), conspiracy to trespass to chattels (Count Ten), and conspiracy to convert OCLC's property (Count Twelve). To support its allegation that the Defendants did, indeed, conspire together, OCLC relies on the same basic and conclusory language: "Defendants formed a malicious combination, or a tacit understanding or design, to …." (*See* Compl. ¶¶ 145, 162, 176, 192, 208.) However, what OCLC fails to provide are facts in support of the allegation that the Ms. Matienzo formed a malicious combination, or a tacit understanding or design with any other Defendant, to commit the tortious acts alleged in the Complaint.

Because OCLC cannot identify any Defendants besides Ms. Matienzo, it is unclear how it can plausibly allege that the Defendants conspired together, or came to an agreement. A failure to identify the alleged coconspirators is fatal to a claim of conspiracy. *See Whittle v. Proctor & Gamble*, No. 1:06-CV-744, 2007 WL 4224360, at *9 (S.D. Ohio Nov. 27, 2007) (dismissing a conspiracy claim that "fails to allege with any degree of specificity the identity of the alleged conspirators"). Since OCLC did not, and cannot, identify any of Ms. Matienzo's alleged coconspirators and has failed to allege that the Defendants came to an agreement to further the

- 27 -

alleged conspiracies, OCLC's conspiracy claims as against Ms. Matienzo should all be dismissed for failure to state a claim upon which relief may be granted. *See Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985) (no civil conspiracy found when plaintiff failed to allege that coconspirators were part of a "*single* plan" to commit an unlawful act).

Lastly, OCLC's conspiracy claims fail for another reason. Namely, once OCLC's underlying tort claims are dismissed, its conspiracy claims must be dismissed as well. Once a plaintiff's substantive claims are dismissed, "his claim for conspiracy must fail." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 354 (6th Cir. 2000) (citing *NPF IV, Inc., v. Transitional Health Servs.*, 922 F.Supp. 77, 83 (S.D. Ohio 1996) ("Conspiracy in and of itself does not normally establish a basis for recovery in a civil action in Ohio; rather, there must be an actionable wrong committed as a result of the conspiracy")). OCLC's tort claims as alleged against Ms. Matienzo fail to state a claim upon which relief may be granted for the reasons set forth herein. Because they must be dismissed, so too must OCLC's claims for conspiracy against Ms. Matienzo.

## IV.    <u>CONCLUSION</u>

For the reasons set forth herein, OCLC's Complaint as against Ms. Matienzo fails to state a claim upon which relief may be granted. Accordingly, Defendant Maria Matienzo respectfully requests that OCLC's Complaint against her be dismissed in its entirety, with prejudice pursuant to Rules 12(B)(2) and 12(B)(6) of the Federal Rules of Civil Procedure.

Dated: April 15, 2024

Respectfully submitted,
*/s/ Sarah M. Benoit*
Sarah M. Benoit  (0086616), Trial Attorney
Leon D. Bass (0069901)
**TAFT STETTINIUS & HOLLISTER LLP**
41 S. High Street, Suite 1800
Columbus, Ohio 43215
Phone: (614) 221-2838/Fax: (614) 221-2007
E-mail:  sbenoit@taftlaw.com
          lbass@taftlaw.com
*Counsel for Defendant Maria Matienzo*

## **CERTIFICATE OF SERVICE**

On April 15, 2024, this document was filed electronically with the Clerk of the United States District Court for the Southern District of Ohio, Eastern Division, which will electronically serve a copy of the foregoing on all counsel of record for all parties.

/s/ Sarah M. Benoit

Sarah M. Benoit  (0086616), Trial Attorney

- 29 -

132547925