IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| OCLC, Inc., <br><br> Plaintiff, <br><br> v. <br><br> ANNA'S ARCHIVE, f/k/a PIRATE LIBRARY MIRROR, MARIA DOLORES ANASZTASIA MATIENZO, and JOHN DOES #1–20 <br><br> Defendants. | Case No. 2:24-cv-00144-MHW-EPD <br><br> Judge Michael H. Watson <br><br> Magistrate Judge Elizabeth A. Preston Deavers |

**STIPULATED PROTOCOL FOR THE PRODUCTION OF DOCUMNTS AND ELECTRONICALLY STORED INFORMATION**

Plaintiff OCLC, Inc. ("OCLC") and Defendant Maria Matienzo ("Ms. Matienzo") (collectively, the "Parties") hereby stipulate and agree that electronically stored information ("ESI") and other documents will be produced and used by the Parties in the above-captioned litigation (the "Litigation") according to the terms of this Stipulated Protocol.

1. **Preservation**. The Parties will take reasonable steps to preserve unique ESI and hard copy documents that are within their respective possession, custody, or control, in accordance with applicable law. The Parties will, as necessary, meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this Litigation.

2. **Format Specifications**. The Parties agree to digitize hard copy documents, and produce them and ESI as single-page, Group IV, 300 DPI .TIFF (black & white) images with searchable extracted text and metadata fields, as outlined below. Further specifications, as outlined

below, will also be applied to the form and format of the ESI and digitized-hard-copy-document-production load files.

3. **ESI**.

    A. **Native Files**. All databases; videos; image files; PowerPoints; spreadsheets (*e.g.*, Microsoft Excel files); and other ESI not easily convertible to .TIFF images will be produced in native format, and in order of storage (*e.g.*, emails with attached spreadsheets will be identified and linked per an ATTACH_RANGE field). To avoid unnecessary duplications, placeholder .TIFF files will be produced to preserve the native location of files. The placeholder will identify the document by associated Bates number, and will state that the document was natively produced. Available metadata and text will be produced in the same manner as other ESI.

    B. **E-mail Threading**. The Parties may apply e-mail threading and inclusiveness-only review, such that only the most inclusive version of any e-mail chain is reviewed and produced. Such e-mail threading must be performed by an e-discovery vendor or platform in a manner consistent with standard practices in the industry. If a Party uses e-mail threading, that Party will populate the Email Thread ID (Email Message ID) metadata field accordingly. Further, e-mail threading shall not (i) eliminate the Parties' ability to identify every custodian who had a copy of the produced document or e-mail, or (ii) remove from production any unique branches or attachments contained within an e-mail thread.

    C. **Hidden Data**. ESI items shall be processed, to the extent practicable, in a

    manner that produces hidden data, including columns, rows, text, worksheets, speaker notes, tracked changes, and comments.

D. **Databases and Structured, Aggregated, or Application Data**. The Parties will meet and confer to address the production, and production format, of ESI contained in a database or other structured or aggregated data source, or ESI otherwise maintained by an application. The Parties will produce, upon request, such documents or databases in native format.

E. **De-NISTing**. ESI will be De-NISTed, removing commercially-available-operating-systems and application-file information contained on the current NIST file list.

F. **Metadata**. The Parties' productions of ESI shall provide the metadata fields set forth below:

  i.  ProductionBegDoc
  ii.  ProductionEndDoc
  iii.  ProductionBegAtt
  iv.  ProductionEndAtt
  v.  CUSTODIAN_PRIMARY
  vi.  CUSTODIANS_ALL
  vii.  AUTHOR
  viii.  DATE_Sent Date*DATE ONLY*
  ix.  DATE_Sent Date*TIME ONLY*
  x.  EM_SUBJECT
  xi.  EM_SENDER
  xii.  EM_TO

  xiii.  EM_CC

  xiv.  EM_BCC

  xv.  DATE_Date created*DATE ONLY*

  xvi.  DATE_Date Created*TIME ONLY*

  xvii.  DATE_Last Modified*DATE ONLY*

  xviii.  DATE_Last Modified*TIME ONLY

  xix.  EF_FILENAME

  xx.  EF_SUBJECT_TITLE

  xxi.  EF_FILEEXT

  xxii.  DOC_TYPE

  xxiii.  EF_MD5HASH

  xxiv.  ProductionPageCount

  xxv.  ProductionTextPath

  xxvi.  ProductionNativePath

  xxvii.  File Path

  xxviii.  File Path_All

  xxix.  Email Thread ID (*i.e.*, Email Message ID)

  xxx.  Redacted

4. **<u>Digitized Hard Copy Documents</u>**.

 A. In digitizing (scanning) hard copy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, hard copy documents should be logically unitized). The Parties will use their best efforts to unitize documents correctly, and will meet and confer to address situations where there are improperly unitized documents.

B. The relationship among the documents in a folder or other grouping should be reflected in the coding of the beginning and ending document and attachment fields.

C. Where a document or a group of documents—such as a folder, clipped bundle, or binder—has an identification spine or other label, the information on the label shall be scanned and produced as a first page of the document or grouping.

D. The Parties' productions of digitized hard copy documents shall provide the metadata fields set forth below:

    i. Beginning Bates number
    ii. Ending Bates number
    iii. Beginning attachment Bates number
    iv. Ending attachment Bates number
    v. Number of pages
    vi. CD volume (if available)
    vii. Source/custodian
    viii. Date created (*i.e.*, date of scanning)
    ix. Redacted

5. **Not Reasonably Accessible ESI**. Absent good cause shown, the Parties need not preserve, search for, or produce the following ESI:

A. Previously deleted computer files, whether fragmented or whole, excluding those deleted e-mails contained within e-mail mailboxes;

B. Temporary or cache files, including internet history, and web browser cache and cookie files; and

    C. Server, system, or network logs.

 6. **Proprietary File Types**. The Parties agree to provide any operating system or application-file information reasonably needed to review and access proprietary file types that are inaccessible on commercially available operating systems.

 7. **Production in Other Formats**. The Parties shall honor reasonable requests for the production of particular documents in other formats, where the .TIFF image is not reasonably usable (*e.g.*, requesting a .JPG file in color for documents that contain color in their un-redacted form).

 8. **Load Files**. The Parties agree to include database load files with each production, which will delineate document breaks and family boundaries. Those files shall include one delimited file that contains all fielded data for each record and another file that contains image-cross-reference information. The preferred format for the fielded data file is standard Concordance (.DAT), although comma separated (.CSV) is also acceptable. Preferred format for the image load file is Opticon (.OPT), although other acceptable formats are IPro (.LFP) and Summation (.DII—for images only).

 9. **Optical Character Recognition**. For all digitized hard copy documents and ESI, the Parties shall produce corresponding Optical Character Recognition ("OCR") text files. The text shall be provided in ASCII text format and shall be labeled with the Bates number of the first page of the corresponding document followed by the extension ".txt." The text files shall be provided as document-level files suitable for importing into commercially available document management or litigation support software, such as Summation or Concordance.

10. **Confidentiality**. The Parties will designate documents as confidential according to the terms of the Stipulated Protective Order. To the extent feasible, original document orientation shall be maintained (*i.e.*, portrait-to-portrait and landscape-to-landscape).

11. **Parent–Child Relationships**. The Parties shall produce documents and ESI in a manner that preserves parent–child relationships—*e.g.*, the association between an email (parent) and its attachment (child). The Parties shall not dissociate attachments from e-mails, or other parent–child relationships, even if the attachments are exact duplicates of other documents in the production. Parent–child documents shall be produced contemporaneously and sequentially, with child documents being numbered immediately after the parent document.

12. **Bates Numbers**. All documents must be assigned a Bates number that shall (A) be unique across the entire document production (*i.e.*, no Bates number should be used more than once); (B) maintain a constant length (zero/0-padded) across the entire production; (C) contain no embedded spaces or special characters other than underscores, backslashes, forward slashes, or hyphens; and (D) be sequential within a given document. For documents produced in native form, the file name will be the Bates number of the placeholder document. If one or more Bates numbers is skipped in a production, the producing Party will so note in a cover letter or email accompanying the production, or in a privilege log if applicable.

13. **Documents Protected from Discovery**. The Parties agree that communications involving counsel that post-date the filing of the Complaint (ECF No. 1) shall be presumed protected from discovery and, therefore, need not be placed on a privilege log.

14. **Redactions**. Where requested documents contain responsive information together with privileged or protected information, and the privileged or protected information can be redacted by the responding Party, while preserving for production the responsive information, the

responding Party shall apply such redactions and produce the requested documents as follows:

    A.    Redactions shall be clearly indicated on the face of the document, with each redacted portion of the document being marked by a black box with white text providing the basis for the redaction, *e.g.*, "Redacted—A/C Privilege." A metadata field shall indicate that a document contains redactions.

    B.    The Parties shall produce the non-redacted portions of documents and their corresponding text/OCR.

    C.    Native Excel files will be redacted and produced in native file format.

    D.    The Parties may redact such personal identifying information that a Party believes in good faith to be subject to federal, state, or foreign data protection laws, with each redacted portion of the document being marked by a black box with white text providing the basis for the redaction, *e.g.*, "Redacted—Protected Health Information."

15.    **Global De-Duplication**. The Parties agree that automated document de-duplication may be applied across ESI and digitized hard copy documents identified for review and production, such that only one copy of a document is reviewed and produced, and provided that the de-duplication process is for exact duplicates only and is performed by an e-discovery vendor or platform in a manner consistent with standard practices in the industry. Further, de-duplication shall be performed only at the document family level, such that attachments are not de-duplicated against identical stand-alone versions of such document, and vice versa.

16.    **No Waiver**. This Stipulated Protocol is intended solely to address the format of document productions. Nothing in this Stipulated Protocol shall (A) affect the rights of any Party to object to or resist any discovery requests or demand for production, whether such rights exist

under the laws of the United States, the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Eastern District of Ohio, or otherwise; (B) waive any objections as to discoverability, admissibility, or confidentiality; (C) establish any agreement as to either the temporal or subject matter scope of discovery in the Litigation or as to the relevance or admissibility of any document; or (D) require disclosure of irrelevant information or relevant information protected by any applicable privilege, protection, or immunity from disclosure.

17. **Privilege Log**. A Party claiming a document is protected or immune from production in discovery shall provide a privilege log. The Parties agree that privilege logs may be populated with document metadata and shall contain the following fields (except that such metadata need not be provided if doing so would reveal the substance of protected information): BegDoc, EndDoc, BegAtt, EndAtt, CUSTODIAN, CUSTODIAN_ALL, AUTHOR, DATE_Sent Date*DATE ONLY*, DATE_Sent Date*TIME ONLY*, EM_SUBJECT, EM_SENDER, EM_TO, EM_CC, EM_BCC, DATE_Date created*DATE ONLY*, DATE_Date Created*TIME ONLY*, DATE_Last Modified*DATE ONLY*, DATE_Last Modified*TIME ONLY, EF_FILENAME, EF_SUBJECT_TITLE, FILE PATH, FILE PATH_ALL, EF_FILEEXT, and DOC_TYPE. The logs must also state the grounds on which each document is withheld—*e.g.*, "attorney–client privilege" or "work product doctrine." Names of attorneys listed in the metadata log shall be noted with an asterisk. The Parties may request further information regarding the basis for any assertion that a document is protected from discovery, including a description under Federal Rule of Civil Procedure 26(b)(5)(A)(ii), to the extent the applicable metadata is insufficient to allow a Party to assess whether a document is protected from discovery. The Parties shall provide privilege logs within a reasonable time after a document is withheld from production, to ensure that the privilege logs do not delay the case schedule or act to the prejudice of the other

Parties.

18. **Resolution of Disputes**. The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this Stipulated Protocol. As soon as reasonably practicable, a Party shall provide written notice to the other Parties if compliance with the Stipulated Protocol is impossible or unreasonable. The Parties shall meet and confer on any disputes related to this Stipulated Protocol. No Party may seek relief from the Court concerning compliance with the Stipulated Protocol without first conferring with the other Parties.

19. **Modification**. This Stipulated Protocol may be replaced or modified by agreement of the Parties (*e.g.*, to allow non-parties producing ESI or documents to join this Stipulated Protocol).

**STIPULATED & AGREED:**

| | |
|---|---|
| */s/ Jeffrey M. Walker* | */s/ Leon D. Bass (with consent)* |
| Jeffrey M. Walker (0096567), Trial Attorney | Leon D. Bass (0069901), Trial Attorney |
| Traci L. Martinez (0083989) | Sarah M. Benoit (0086616) |
| Kathryn M. Brown (0100426) | TAFT STETTINIUS & HOLLISTER LLP |
| Brittany Silverman (0102263) | 41 S. High Street, Suite 1800 |
| SQUIRE PATTON BOGGS (US) LLP | Columbus, Ohio 43215 |
| 2000 Huntington Center | Phone: (614) 221-2838 |
| 41 South High Street | Fax: (614) 221-2007 |
| Columbus, Ohio 43215 | lbass@taftlaw.com |
| Telephone: +1 614 365 2700 | *sbenoit@taftlaw.com* |
| Facsimile: +1 614 365 2499 | |
| jeffrey.walker@squirepb.com | *Attorneys for Defendant Maria Dolores* |
| traci.martinez@squirepb.com | *Anasztasia Matienzo* |
| kathryn.brown@squirepb.com | |
| brittany.silverman@squirepb.com | |

*Attorneys for Plaintiff OCLC, Inc.*