**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| OCLC, Inc., | Case No. 2:24-cv-00144-MHW-EPD |
| **Plaintiff,** | Judge Michael H. Watson |
| v. | Magistrate Judge Elizabeth A. Preston Deavers |
| ANNA'S ARCHIVE, f/k/a PIRATE LIBRARY MIRROR, MARIA DOLORES ANASZTASIA MATIENZO, and JOHN DOES #1–20, | |
| **Defendants.** | |

---

### PLAINTIFF OCLC, INC.'S OPPOSITION TO DEFENDANT MARIA MATIENZO'S MOTION TO DISMISS

---

Plaintiff OCLC, Inc. ("OCLC") respectfully submits this Memorandum in Opposition to Defendant Maria Dolores Anasztasia Matienzo's Motion to Dismiss Plaintiff's Complaint For Lack of Personal Jurisdiction and Failure to State a Claim upon which Relief May Be Granted (the "Motion") (Dkt. 21). For the reasons that follow, OCLC requests that this Court deny her Motion.

## I.    INTRODUCTION

OCLC is not required to put forth its entire case at the motion to dismiss stage, nor is it required to prove its case against Ms. Matienzo before it ever reaches the courthouse steps to file suit. However, Ms. Matienzo seeks to impose these burdens on OCLC in contravention of the Federal Rules of Civil Procedure and Supreme Court and Sixth Circuit precedent. OCLC meets its slight burden to make a prima facie showing of specific personal jurisdiction over Ms. Matienzo because its declaration attached here sets forth her Ohio contacts with reasonable factual particularity, which is the applicable standard—not conclusive proof of her Ohio contacts or "evidence" that would sustain a jury verdict. OCLC also sufficiently alleges wrongdoing by Ms.

Matienzo. OCLC's Complaint contains detailed factual allegations explaining how all the Defendants—including Ms. Matienzo—acted in concert to hack OCLC's WorldCat.org and harvest its data in violation of Ohio law. OCLC's use of the routine pleading convention "Defendants" to denote collective action (as opposed to "Defendants Anna's Archive, Ms. Matienzo, and John Does #1–20" each and every time) in no way obscures the pleadings so that Ms. Matienzo can assert in good faith she is unaware of the nature of the claims against her. Accordingly, Ms. Matienzo's motion should be denied, and her factual disputes as to her involvement in Anna's Archive reserved for after the parties engage in discovery.

## II.    STATEMENT OF FACTS

OCLC provides the digital infrastructure and services for libraries to create and share bibliographic records through WorldCat—the world's most comprehensive database of information about library collections, built by OCLC and thousands of library members. Compl. ¶¶ 1–2, 30, 33–34, Dkt. 1 at PageID 1, 7. WorldCat.org is the world's largest library catalog website. *Id.* ¶ 46, PageID 9. Individuals use the WorldCat.org search engine to query library holdings represented in the WorldCat database. *Id.* ¶¶ 46–47.

Beginning in 2022, OCLC was the victim of persistent cyberattacks on WorldCat.org and its servers that significantly affected the operations of WorldCat.org, other OCLC products and services, and its network infrastructure. *Id.* ¶¶ 9, 75, PageID 3, 13. Through these attacks, hackers harvested WorldCat data by scraping WorldCat.org and calling OCLC's servers to harvest data, stealing proprietary, enriched, and aggregated data. *Id.* ¶¶ 76–78, PageID 14. Hackers also harvested WorldCat data from a member university's website incorporating a subscription-based variant of WorldCat, pinging OCLC's Ohio servers and authenticating these requests with the member's compromised credentials. *Id.* ¶¶ 79–80.

2

In October 2023, Defendant Anna's Archive, the largest online pirate or shadow library, took credit for these attacks. *Id.* ¶¶ 10, 86, PageID 3, 15. Defendant Anna's Archive and the individual defendants who run Anna's Archive anonymously, (collectively, "Defendants"), published a blog post boasting, "[o]ver the past year, we've meticulously scraped all WorldCat records" by taking advantage of "security flaws" OCLC allegedly had in its "backend systems." *Id.* ¶¶ 10, 86, 89, PageID 3, 15–16. Anna's Archive explained it specifically targeted WorldCat.org to steal 2.2 terabytes ("TB") of WorldCat data to "create a TODO list of remaining books" to pirate. *Id.* ¶¶ 87–91, PageID 16. Anna's Archive made WorldCat data available *en masse* for free and encouraged users to download and analyze the data by creating a "mini-competition for data scientists." *Id.* ¶¶ 10, 90, 93–94, PageID 3, 16–17. Anna's Archive also incorporated WorldCat data into its search engine. *Id.* ¶ 95, PageID 17.

After Anna's Archive published this blog post, OCLC undertook an investigation to identify the individuals behind Anna's Archive and the attacks. *Id.* ¶ 107, PageID 19. This has been exceedingly difficult because the individuals behind Anna's Archive go to great lengths, relying on sophisticated technology, to remain anonymous to ensure both that Anna's Archive's domains are not taken down and to avoid the legal consequences of their actions. *See id.* ¶ 65, PageID 11. Each individual behind Anna's Archive understands that their activities are illegal. *Id.* ¶¶ 11, 65, PageID 3, 11. These individuals admit that they are engaging in and facilitating mass copyright infringement, stating, "[w]e deliberately violate the copyright law in most countries." *Id.* ¶ 67 PageID 12. They also knew that their hacking and distribution of OCLC's data is improper, acknowledging that WorldCat is a "proprietary database," that OCLC's "business model requires protecting their database," and that they are "giving it all away. :-)." *Id.* ¶ 90, PageID 16.

3

Despite the drastic efforts of those behind Anna's Archive to conceal their identities, OCLC's investigation identified Ms. Matienzo as a likely culprit behind Anna's Archive. *Id.* ¶¶ 108–112. Accordingly, OCLC brought suit against Defendant Anna's Archive, Ms. Matienzo and the other unnamed individual defendants who run Anna's Archive anonymously.

OCLC faces substantial and irreparable harm from Defendants' collective actions. *Id.* ¶ 100, PageID 18. By encouraging others to participate in the "mini-competition," Defendants have ensured OCLC's WorldCat data will be downloaded, distributed, and incorporated into other applications. *Id.* ¶¶ 93, 97. Moreover, current and future customers may download the data, foregoing OCLC's services, including WorldCat. *Id.* ¶ 100, PageID 18. The impact of Defendants' hacking, harvesting, and distribution of WorldCat data could have significant consequences for every aspect of OCLC's operations. *Id.* ¶¶ 100–06, PageID 18–19.

## III.    ARGUMENT

Ms. Matienzo's Motion must be denied on each of the three grounds she puts forward. First, OCLC has satisfied its slight burden of making a prima facie showing of specific personal jurisdiction over Ms. Matienzo. Second, OCLC has plausibly alleged wrongdoing by Ms. Matienzo, notwithstanding its use of the pleading convention, "Defendants." Finally, each of OCLC's causes of action sufficiently states a claim against her for which relief may be granted.

### A.    OCLC has Satisfied its Slight Burden to Put Forth a Prima Facie Case of Specific Jurisdiction.

Where, as here, a court must decide a Federal Rule of Civil Procedure 12(b)(2) motion based "'solely on written submissions and affidavits,'" "[t]he plaintiff carries the burden of establishing the existence of personal jurisdiction, but that burden is relatively slight." *Ingram Barge Co. v. Zen-Noh Grain Corp.*, 3 F.4th 275, 278 (6th Cir. 2021) (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)). A plaintiff "need only

make a prima facie showing of jurisdiction" by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002); *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The court "must view the pleadings and affidavits in the light most favorable to the plaintiff and not weigh 'the controverting assertions of the party seeking dismissal.'" *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 438 (6th Cir. 2022) (quoting *Ingram*, 3 F.4th at 278). OCLC, through its declaration, satisfies its minimal burden to make a prima facie showing that exercising specific personal jurisdiction over Ms. Matienzo comports with due process.[1]

Due process "requires that a defendant have 'minimum contacts . . . with the forum State . . . such that he would reasonably anticipate being haled into court there.'" *Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980)). The Sixth Circuit applies a three-prong test to determine if the exercise of specific personal jurisdiction is constitutional: (1) the defendant's "purposeful availment 'of the privilege of acting in the forum state or causing a consequence in the forum state,' (2) a "cause of action . . . aris[ing] from activities' in the state" or contacts with the forum state, and (3) a "substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.* (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). OCLC meets its burden as to each prong.

---

[1] It is unclear whether the two-step analysis under Ohio's long-arm statute and the Due Process Clause is still required in light the revised Ohio long-arm statute. *Compare Architectural Busstrut Corp. v. Smith LC*, No. 2:21-cv-4028, 2022 WL 1837596, at *2 (S.D. Ohio Feb. 8, 2022) (concluding the two-step analysis is no longer required) *with Premier Prop. Sales v. Gospel Ministries Int'l, Inc.*, 539 F. Supp. 3d 822, 827 n.2 (S.D. Ohio 2021) (noting the revision did not "collapse" the two-step inquiry). In any case, Matienzo does not dispute that OCLC satisfies the enumerated bases of Ohio's long-arm statute identified in its Complaint. *See* Compl. ¶ 22.

### 1. Defendant Matienzo purposefully availed herself of the Ohio forum when she participated in the repeated scraping of WorldCat.org.

To satisfy the purposeful-availment prong, an out-of-state defendant "must have purposefully availed himself of 'the privilege of acting in the forum state or causing a consequence in the forum state.'" *Air Prods.*, 503 F.3d at 551 (quoting *S. Mach.*, 401 F.2d at 381). "Tortious conduct satisfies this requirement when the defendant intentionally cultivates contacts with the forum," such as when intentional conduct is "expressly aimed" at the forum to cause harm. *Johnson v. Griffin*, 85 F.4th 429, 432–33 (6th Cir. 2023) (quotation omitted); *Scotts Co. v. Aventis S.A.*, 145 F. App'x 109, 113 (6th Cir. 2005). Repeated and extensive data scraping satisfies the purposeful-availment prong. In *Facebook, Inc. v. Sluchevsky*, the defendants purposefully availed themselves of California when they reached repeatedly into the state by scraping Facebook profiles and agreeing to Facebook's Terms of Service, which provided a choice-of-law clause for California, creating a continuous course of dealing. No. 19-cv-01277-JSC, 2020 WL 5823277, at *3–4 (N.D. Cal. Aug. 28, 2020); *see also X Corp. v. Bright Data Ltd.*, No. C 23-03698 WHA, 2024 WL 422075, at *2 (N.D. Cal. Feb. 5, 2024). Repeated, unauthorized access to servers located in the forum state via data scraping when the defendant knows the company is in the forum state also demonstrates purposeful availment. *Sw. Airlines Co. v. Kiwi.com, Inc.*, No. 3:21-cv-00098-E, 2021 WL 4552146, at *3 (N.D. Tex. Aug. 10, 2021); *see The Rightthing, LLC v. Brown*, No. 3:09 CV 135, 2009 WL 249694, at *4–5 (N.D. Ohio Feb. 2, 2009) (repeated access to Ohio files stored on Ohio servers). A defendant also purposefully avails itself of the forum when it scrapes and hacks a plaintiff's website knowing that the plaintiff operates in the forum state and its injuries are likely to be felt there. *BidPrime, LLC v. SmartProcure, Inc.*, No. 1:18-CV-478-RP, 2018 WL 5260050, at *2–3 (W.D. Tex. Oct. 22, 2018).

6

As set forth in Barton Murphy's declaration, Ms. Matienzo, in concert with the other unnamed individuals operating Anna's Archive, repeatedly scraped OCLC's WorldCat.org website over the course of a year as part of a targeted scheme to harm OCLC, an Ohio nonprofit, specifically, by stealing OCLC's WorldCat data and distributing it for free. From OCLC's investigation into Defendant Anna's Archive, OCLC determined that Ms. Matienzo likely was behind, or at least participated, in hacking and scraping WorldCat.org throughout 2022 and 2023, affirmatively reaching into Ohio to harm OCLC. Murphy Decl. ¶¶ 12–13, 19–28, attached here as Exhibit A. As described in Anna's Archive's blog, this was done to intentionally harm OCLC specifically, as the individuals behind Anna's Archive expressly sought OCLC's data and intended to give it away for free. *Id.* ¶¶ 14–15. These efforts resulted in 2.2 TB of data being harvested from WorldCat.org. *Id.* ¶ 15. As in the scraping and hacking cases described above, Anna's Archive's team members, including Ms. Matienzo, created and participated in a substantial, systematic, and ongoing course of conduct with this Ohio forum, resulting in minimum contacts with Ohio that are not random, fortuitous, or attenuated. *See Schneider*, 669 F.3d at 701.

Moreover, Ms. Matienzo knew that the harm to OCLC would be felt in Ohio. Similar to Facebook's choice-of-law clause in *Sluchevsky*, OCLC's Terms and Conditions, which Ms. Matienzo agreed to before accessing WorldCat.org, provide for an Ohio choice-of-law clause and require any notices be sent to OCLC's headquarters in Dublin, Ohio. Murphy Decl. ¶ 7. OCLC is also an Ohio nonprofit with servers in Ohio, meaning any targeted hacking and scraping attacks against OCLC would be felt in Ohio. *Id.* ¶¶ 6, 10, 12–13. Crucially, Ms. Matienzo knew, or reasonably should have known, that OCLC was located in Ohio and that the harm she caused would be felt in Ohio. Ms. Matienzo is a former catalog librarian who has acknowledged in her own publications that OCLC was founded and is based in Ohio. *Id.* ¶ 28. She has applied to work

at OCLC previously, and her former family member has worked at OCLC for close to six years. *Id.* ¶ 27. She also previously worked at one of OCLC's direct competitors. *Id.* These facts, individually and collectively, indicate that Ms. Matienzo knew OCLC is an Ohio nonprofit and that the harm from her purposeful and intentional conduct would be felt in Ohio. Accordingly, "the focal point of the damage was Ohio, and [Ms. Matienzo was] unquestionably aware of the potential damage to" OCLC here in Ohio. *See Scotts*, 145 F. App'x at 114. For these reasons, OCLC has made a prima facie showing that Ms. Matienzo purposefully availed herself of Ohio and could reasonably anticipate being haled into an Ohio court.

Ms. Matienzo contends that OCLC's allegations against all "Defendants" are conclusory and insufficient to establish specific jurisdiction. Mot. to Dismiss (hereinafter, "Mot."), Dkt. 21 at PageID 443. As set forth in more detail below, OCLC's allegations that the Defendants—Anna's Archive, Ms. Matienzo, and the unnamed John Doe Defendants—collectively hacked WorldCat.org and harvested its data are not conclusory. *See infra* Part III.B. Rather, the Complaint specifically alleges that each Defendant, Ms. Matienzo included, engaged in the same conduct together and how each Defendant, collectively and individually, reached into Ohio to cause harm designed to be felt by OCLC in Ohio. *See id.*

Ms. Matienzo also points to her affidavit, Mot., Dkt. 21 at PageID 443, in which she avers that she is not affiliated with Anna's Archive. Matienzo Aff. ¶¶ 7–9, Dkt. 21-1 at PageID 463–64. But on a Rule 12(b)(2) motion, the Court must disregard a defendant's assertions that are contrary to those in OCLC's declaration. *See Theunissen*, 935 F.2d at 1459. Mr. Murphy's affidavit satisfies OCLC's slight burden of making a prima facie showing of purposeful availment. As a result of OCLC's investigation into the identity of the individuals behind Anna's Archive, OCLC pinpointed Ms. Matienzo as a likely culprit. Murphy Decl. ¶¶ 19–28. Some of the facts unearthed

in this investigation include: Ms. Matienzo is an archivist, her middle name is Anasztasia, and she went by "Ana" and/or "Anna" online during the events at issue. *Id.* ¶¶ 20–21. She also uses the online handle, "anarchivist," which, combined with her nickname, is similar to Anna's Archive's former Twitter/X handle, "AnnaArchivist." *Id.* ¶ 22. She shares Anna's Archive's goal that libraries and archives should be free and widely available. *Id.* ¶ 23. Ms. Matienzo has the extensive software programming and website domain hosting experience necessary to help Anna's Archive, as she is a software engineering manager. *Id.* ¶¶ 24–25. She thus has a job in "tech," which is consistent with Anna's Archive's statements that its owners and/or operators have "jobs in finance and tech." *Id.* ¶ 18. She also meaningfully understands OCLC's WorldCat products because she was a catalog librarian at OCLC's direct competitor and developed a repository for a python module that works with OCLC's WorldCat Affiliate web services. *Id.* ¶¶ 26–27. Considering this declaration in a light most favorable to OCLC, OCLC has met its "slight" burden to set forth facts with reasonable particularity that demonstrate Ms. Matienzo's purposeful availment.

To the extent Ms. Matienzo insists that OCLC must conclusively prove her involvement in Anna's Archive, as opposed to merely making a prima facie showing to support specific jurisdiction, this is improper and premature on a Rule 12(b)(2) motion. Ms. Matienzo's involvement and role in Anna's Archive are factual issues bound up in the ultimate merits of OCLC's claims. As the Sixth Circuit has explained, "where the disputed jurisdictional facts are intimately intertwined with the parties' dispute on the merits, a trial court should not require plaintiffs to mount 'proof which would, in effect, establish the validity of their claims and their right to the relief sought.'" *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1215 (6th Cir. 1989) (citation omitted). The proper course of action is to evaluate whether the plaintiff has made a prima facie showing of personal jurisdiction, and, if so, to "postpone[e] proof till trial [which]

allows a plaintiff to present all her proof 'in a coherent, orderly fashion and without the risk of prejudicing his case on the merits.'" *Id.* (citation omitted). OCLC has met its low burden, averring specific facts with reasonable particularity indicating Ms. Matienzo has purposefully availed herself of Ohio as a forum by operating and participating in Anna's Archive's hacking and scraping, together with the other defendants. Whether OCLC can demonstrate by a preponderance of the evidence that Ms. Matienzo was a member of Anna's Archive responsible for these illegal activities or whether Ms. Matienzo's it-wasn't-me defense carries the day are merits issues for a jury—not ones to be resolved on a motion to dismiss.[2]

### 2. OCLC's causes of action arise from Matienzo's contacts with Ohio.

The second prong of the Sixth Circuit's specific-jurisdiction test is whether the causes of action arise from the defendant's contacts. A cause of action arises from the defendant's contacts if it was "made possible by" or "lie[s] in the wake of" the defendant's contacts. *Air Prods.*, 503 F.3d at 553 (citations omitted). OCLC meets this "lenient standard." *Schneider*, 669 F.3d at 703. Each of OCLC's counts were made possible by Ms. Matienzo's contacts with Ohio, *i.e.*, the purposeful and intentionally harmful hacking and scraping of WorldCat.org, which she did as a team member of Anna's Archive. *See* Compl., Dkt. 1 at PageID 21–34.

Matienzo repeats her arguments from the purposeful-availment prong: that she has no contacts with Ohio and that OCLC's allegations against her are conclusory and improperly against

---

[2] OCLC has met its low burden at this stage of the litigation to establish personal jurisdiction over Ms. Matienzo, and Ms. Matienzo's personal jurisdictional arguments are so intricately bound up in the merits of OCLC's case against her that the appropriate time for the Court to consider any remaining factual disagreements regarding jurisdiction is after the close of fact discovery. However, to the extent the Court disagrees and is inclined to grant Ms. Matienzo's Motion on Rule 12(b)(2) grounds at this stage of the case, OCLC requests that the Court permit it to seek jurisdictional discovery into Ms. Matienzo's involvement with Defendant Anna's Archive, the hacking and scraping of WorldCat.org, and her use of WorldCat data.

all Defendants. Mot., Dkt. 21 at PageID 444. These arguments fail for the same reasons as above. *See supra*, Part III.A.1.

### 3. It is reasonable to exercise personal jurisdiction over Matienzo.

Where the first two prongs are satisfied, as here, there is a strong presumption the third prong is satisfied; only in "unusual" cases will the prong not be satisfied. *Schneider*, 669 F.3d at 703. To determine whether exercising jurisdiction is reasonable, courts consider: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." *Air Prods.*, 503 F.3d at 554–55. "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 554 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

The balance of these factors demonstrate that exercising jurisdiction over Ms. Matienzo is reasonable. First, though Ms. Matienzo faces some burden litigating in Ohio, that burden is only slightly more than what it would be defending against this suit in her home state. Importantly, she has already secured Ohio counsel and OCLC is willing to conduct depositions virtually under mutually agreeable terms to lessen any burden upon Ms. Matienzo.

Second, Ohio has a great interest in this matter. Ms. Matienzo and the other defendants affirmatively reached into Ohio to target OCLC—an Ohio citizen—with illegal and damaging hacking and data scraping. The focus of the harm wrought by Ms. Matienzo was also felt in Ohio. Moreover, Ohio law controls this lawsuit under the choice-of-law clause in the Terms and Conditions, and OCLC brings suit under Ohio Revised Code § 2913.04 and § 2307.60. Ohio has a unique interest in resolving issues of Ohio law and ensuring that Ohio citizens are not victims of website scraping, competition is fair, and Ohio victims of intentional torts receive relief.

11

Third, OCLC has a great interest in obtaining relief in the forum in which it was injured (a factor Ms. Matienzo neglects to meaningfully address). And finally, Washington has a less meaningful interest in the resolution of this Ohio-law matter; the fact that Matienzo resides there is the only relevant connection to Washington.

Ms. Matienzo again counters that she has no contacts with Ohio, Mot., Dkt. 21 at PageID 445, but again, OCLC has met its burden to make a prima facie showing that she has Ohio contacts, *see supra* Part III.A.1. She also asserts that OCLC does business in Washington and has offices there. Mot., Dkt. 21 at PageID 445. But only OCLC's WebJunction, a training resource for libraries, is located in Washington, and the business activities at this location have nothing to do with OCLC's WorldCat.org and WorldCat products, nor does this location relate to the actual property that was injured by Ms. Matienzo's actions. Murphy Decl. ¶¶ 8, 13. Additionally, OCLC's property that was damaged in these attacks, servers and network infrastructure, is located in Ohio. *Id.* ¶ 11. Ms. Matienzo has not presented a compelling case that would justify overriding the strong presumption that the exercise of jurisdiction over her in Ohio is reasonable. Accordingly, OCLC has made a prima facie showing of the Court's personal jurisdiction over Matienzo.

### B.     OCLC has Plausibly Alleged Wrongdoing by Defendant Matienzo.

Ms. Matienzo argues throughout her Motion that OCLC fails to state a claim because OCLC refers to Ms. Matienzo, Anna's Archive, and John Does #1–20 collectively as "Defendants" in its Complaint. Mot., Dkt. 21 at PageID 446–58. This argument misunderstands the federal pleading standard. A complaint need not contain "detailed factual allegations," rather, it must set forth enough factual content for the Court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. v. Twombly,* 550 U.S. 544, 556 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

12

*Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied." *Keys v. Humana, Inc.,* 684 F.3d 605, 610 (6th Cir. 2012). A defendant is entitled to fair notice of the basis for a plaintiff's claim, but this threshold is easily satisfied when a complaint contains the operative facts of plaintiff's claims. *Twombly*, 550 U.S. at 555.

OCLC's Complaint satisfies this standard and then some. OCLC alleges in detail how Defendants Anna's Archive, Ms. Matienzo, and the unnamed defendants in concert hacked WorldCat.org and harvested OCLC's WorldCat data from WorldCat.org, that they did so to further their scheme to illegally pirate materials, how this harmed OCLC, and how these acts violated Ohio law. Compl. ¶¶ 81–106, Dkt. 1 at PageID 14–19. Ms. Matienzo cannot reasonably argue she is unaware of the nature of the claims against her—that she, along with other currently unknown team members behind Anna's Archive, illegally hacked and harvested OCLC's WorldCat data. Accordingly, OCLC's allegations are sufficiently pled.

Ms. Matienzo raises three primary arguments in her Motion, all of which fail. ***First***, Matienzo quibbles with OCLC's references to "Defendants" in the Complaint, arguing that this renders OCLC's allegations conclusory and that she is only mentioned in eight paragraphs of the Complaint. Mot., Dkt. 21 at PageID 447–48. OCLC's use of this common pleading convention is well-accepted by this Court when the plaintiff alleges the defendants collectively engaged in misconduct or acted in concert to injure the plaintiff. *See, e.g.*, *Berry v. Cahoon*, 731 F. Supp. 2d 685, 687–88 (S.D. Ohio 2010) ("It makes sense and saves space by grouping the Defendants together in this case, because the Plaintiffs are alleging the Defendants are all liable to the Plaintiffs under the same [sic] causes of action."); *Igo v. Sun Life Assurance Co. of Canada*, 652 F. Supp. 3d 929, 935 (S.D. Ohio 2023); *A.R. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-CV-04935, 2022

WL 17741054, at *11–12 (S.D. Ohio Dec. 16, 2022). OCLC's Complaint clearly defines "Defendants" to include Ms. Matienzo, alleging that she, along with the other individual defendants, are a team behind Anna's Archive, and that they acted in concert with one another to injure OCLC. *See* Compl. ¶ 118, Dkt. 1 at PageID 20. This is consistent with this Court's precedent. And Ms. Matienzo's assertion that only eight paragraphs of the Complaint address her conduct and liability is untrue, given that every paragraph referencing "Defendants" effectively references her (along with the other currently unknown individual defendants).

Ms. Matienzo provides no support for her assertion that this standard pleading convention is improper here. Though in certain circumstances "group pleading" is impermissible, such as when pleading fraud or a constitutional violation, those circumstances do not apply here. *See Marcilis v. Twp. of Redford,* 693 F.3d 589, 596 (6th Cir.2012) (constitutional violations); *In re Huffy Corp. Sec. Litig.* 577 F. Supp. 2d 968, 985 (S.D. Ohio 2008) (fraud). In fact, two of the cases cited by Ms. Matienzo applied heightened pleading standards that are inapplicable to this case. *See Doe v. Foster,* No. 5:18-CV-1870, 2019 WL 6770094, at *3 (N.D. Ohio Dec. 12, 2019) (civil rights action); *Saqr v. Univ. of Cincinnati,* No. 1:18-CV-542, 2019 WL 6463388, at *5 (S.D. Ohio Dec. 2, 2019) (actions against state officials).

***Second***, Ms. Matienzo focuses on the single allegation that she "owns, operates, and/or controls Anna's Archive," arguing this allegation is conclusory. Mot., Dkt. 21 at PageID 447. This argument disregards the paragraphs in the Complaint alleging joint action by Ms. Matienzo with other team members behind Anna's Archive, as discussed above. Additionally, she relies on precedent where a plaintiff merely listed names in a caption or noted an individual's position at a defendant-corporation but never linked those individuals to the actions that caused the plaintiff's alleged injury. *See MSP Recovery Claims, Series LLC v. Nationwide Mut. Ins. Co.,* 594 F. Supp.

3d 947, 959 (S.D. Ohio 2022); *Broadbent v. Ams. for Affordable Healthcare Inc.*, No. 1:10-CV-943, 2011 WL 7115984, at *4 (S.D. Ohio Dec. 16, 2011). The Complaint is far from this type of bare-bones pleading. OCLC's factual allegations connect Ms. Matienzo to Anna's Archive throughout the Complaint. *See* Compl., ¶¶ 11, 19, 64, 108–12, 117, Dkt. 1 at PageID 3, 5, 19, 20. OCLC sets forth specific facts regarding Defendants' collective wrongdoing against OCLC. OCLC pleads that Ms. Matienzo and the other individual defendants together created Anna's Archive (*id.* ¶ 117, PageID 20); pirated and scraped OCLC's WorldCat records (*id.* ¶¶ 88–89 PageID 16); offered OCLC's WorldCat data *en masse* for free via Anna's Archive (*id.* ¶ 90); and that OCLC experienced direct and continuing harm as a result of Defendants' collective actions (*id.* ¶¶ 81, 84, 96–97, PageID 14–15, 17). Simply put, "Defendants do not have to be addressed separately . . . if the Plaintiffs are alleging that all Defendants are liable under the same causes of action." *Berry*, 731 F. Supp. 2d at 688. That is the case here.

   **Third**, Ms. Matienzo improperly attempts to ratchet up the federal pleading standard. Specifically, she appears to argue that OCLC must allege every factual basis supporting her involvement in Anna's Archive and then proceeds to weigh OCLC's allegations, as if she were a fact finder. Mot., Dkt. 21 at PageID 448–49; *see also id.* at PageID 437 (calling for OCLC to provide "evidence"). Under Ms. Matienzo's interpretation of the standard, OCLC must be able to definitively prove its claims before ever filing a complaint. The question on a Rule 12(b)(6) motion is not whether OCLC has proven its case against Matienzo by a preponderance of the evidence or whether a reasonable jury would find in OCLC's favor, but whether OCLC's allegations are *plausible. Cf. Keys,* 684 F.3d at 609 (complaint does not need to establish a prima facie case to survive a Rule 12(b)(6) motion); *Sherlock v. FirstEnergy Corp.*, No. 3:04 CV 7758, 2005 WL 1868170 (N.D. Ohio Aug. 8, 2005) ("[A]fter a response [to a complaint] is filed, the court relies

on 'liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.'" (citation omitted)). Considering OCLC's allegations that Ms. Matienzo is involved in Anna's Archive, has the requisite skill set to run and contribute to Anna's Archive, is an archivist, shares a name with the shadow library, has a deep understanding of OCLC's WorldCat and software coding, and has publicly asserted support for Anna's Archive's goals (Compl. ¶¶ 108–12, Dkt. 1 at PageID 19), the allegations against Matienzo are plausible.

## C.  OCLC Plausibly Alleges all Twelve Causes of Action.

Ms. Matienzo asserts that all OCLC's claims against her fail to satisfy Rule 12(b)(6), but this argument is unfounded. For all but three claims, Ms. Matienzo's Motion essentially repeats her prior argument—that OCLC does not allege specific wrongdoing by her because OCLC uses the pleading convention, "Defendants." Mot., Dkt. 21 at PageID 450–460. As set forth above, this argument falls short. *See supra* Part III.B. The remaining three claims for which Ms. Matienzo raises other grounds for dismissal—breach of contract, tortious interference of prospective business relationships, and civil conspiracy—all state a claim for which OCLC is entitled to relief.

### 1.  OCLC sufficiently alleges contractual breach against Ms. Matienzo.

Ms. Matienzo attacks OCLC's breach of contract claim on the grounds that OCLC has failed to plead that a contract exists between her and OCLC, she breached that contract, and this breach caused injury to OCLC. Mot., Dkt. 1 at PageID 452. However, OCLC plausibly pled that a contract exists between OCLC and Ms. Matienzo, specifically, WorldCat.org's Terms and Conditions. When a user accesses WorldCat.org, OCLC offers that individual a license to use WorldCat.org and its data for limited purposes through the Terms and Conditions. Compl. ¶ 58, Dkt. 1 at PageID 10. In exchange, the user agrees not to use the data for commercial use; to harvest "material amounts" of data; to distribute, display, or disclose the data; or to store the data. *Id.* By using WorldCat.org, the user thus accepts these terms. *See Tilahun v. Philip Morris Tobacco Co.*,

16

No. C2 04 1078, 2005 WL 2850098, at *3 (S.D. Ohio Oct. 28, 2005) ("Acceptance may be expressed by 'word, sign, writing, or act.'"). Ohio recognizes this type of browsewrap agreement as valid and binding. *E.g.*, *Rudolph v. Wright Patt Credit Union*, 175 N.E.3d 636, 651–52 (Ohio Ct. App. 2021); *Walker v. Nautilus, Inc.*, 541 F. Supp. 3d 836, 841 (S.D. Ohio 2021).

Contrary to Ms. Matienzo's contentions, OCLC has adequately pled that she, along with the other Defendants, accepted the Terms and Conditions, breached them, and injured OCLC. OCLC alleges that Ms. Matienzo and the other individual defendants accessed OCLC's WorldCat.org to scrape and harvest millions of OCLC's unique WorldCat records, thereby accepting and breaching OCLC's Terms and Conditions. Compl. ¶¶ 86–89, Dkt. 1 at PageID 15–16. Defendants collectively admitted in a blog post that they accessed WorldCat.org to harvest data, stating "we've meticulously scraped all WorldCat records." *See id*. ¶ 89, PageID 16. Additionally, Defendants showcased their actual knowledge of the Terms and Conditions by publicly acknowledging that WorldCat is a "proprietary database," OCLC's business model requires protecting their database, and the WorldCat data was locked up prior to Defendants' scraping. *See id.* ¶¶ 90–91, 106, PageID 15–16, 19. OCLC also alleges that each Defendant's breach, individually and collectively, harmed it. *Id.* ¶¶ 96–106, PageID 15–19.

Similarly, in *CouponCabin LLC v. Savings.com, Inc.,* the plaintiff brought a breach of contract claim, alleging that the defendants violated its terms and conditions when they scraped data from its website. No. 2:14-CV-39-TLS, 2017 WL 83337, at *4 (N.D. Ind. Jan. 10, 2017). The court held the contractual breach claim was plausible because the plaintiff alleged that the defendants "knowingly and intentionally circumvented [the plaintiff's] security measures in order to continue their data scraping activities." *Id.* The court found it was reasonable to infer that the defendants at least had constructive knowledge of the terms and conditions, and thus, assented to

17

the terms and conditions by accessing and scraping the website. *Id.* at *5. OCLC has adequately

pled that Ms. Matienzo had actual knowledge of the Terms and Conditions, or, as in *CouponCabin*,

that she at least had constructive knowledge of the Terms and Conditions and thus accepted them

when she, along with the other individual defendants, accessed and scraped WorldCat.org.

In sum, OCLC has sufficiently pled facts for this Court to reasonably infer that Ms.

Matienzo's access to WorldCat.org created a valid and binding contract between OCLC and

herself, that she breached the contract, and that this breach harmed OCLC.

### 2. OCLC sufficiently pled that Ms. Matienzo tortiously interfered with its prospective business relationships.

Ms. Matienzo contends that OCLC's claim for "tortious interference with business

relations fails as a matter of law" because OCLC "does not identify particular customers, or

relationships" with which Ms. Matienzo allegedly interfered. *See* Mot., Dkt. 21 at PageID 456.

However, "such specificity is not required at the pleadings stage." *Wagner v. Circle W. Mastiffs*,

732 F. Supp. 2d 792, 807–08 (S.D. Ohio 2010) (holding plaintiff sufficiently alleged facts to state

a claim of tortious inference without naming a specific business relationship interfered with by

defendant); *R & L Carriers, Inc. v. YRC Logistics, Inc.,* Case No. 1:09–cv–383, 2009 WL 3418653,

at *3 (S.D. Ohio Oct. 19, 2009) (same). OCLC identifies the third parties with whom OCLC has

business relationships: "potential customers seeking a cataloging record service as part of their

ILS/LSP platforms." Compl. ¶¶ 144–150, PageID 24–25. This is enough at the pleadings stage.

*See Williamson v. Rexam Beverage Can Co.*, 497 F. Supp. 2d 900, 910 (S.D. Ohio 2007) (tortious

inference); *Spartan Chem. Co. v. Nat'l Chem. Lab'ys of PA, Inc.*, No. 3:17-cv-02487, 2018 WL

6169378, at *4 (N.D. Ohio Nov. 26, 2018) (finding identification of "a contract and business

relationship with its authorized distributors" enough to establish interference with a business

relationship claim at the pleadings stage). Consequentially, OCLC has adequately pled tortious interference with a prospective business relationship by Ms. Matienzo.

### 3. OCLC sufficiently pled that Ms. Matienzo conspired with the other Defendants to injure OCLC.

Again, Ms. Matienzo misconstrues OCLC's burden at this stage, arguing OCLC has failed to adequately plead a malicious combination for its conspiracy claims. Mot. 21, Dkt. 21 at PageID 458. To allege a malicious combination, a plaintiff must plead "a common understanding or design, even if tacit, to commit an unlawful act." *In re Nat'l Century Fin. Enters., Inc.*, 504 F. Supp. 2d 287, 326 (S.D. Ohio 2007). There must be a "general conspiratorial objective." *Id.* (quoting *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 538 (6th Cir. 2000)).

Each of OCLC's conspiracy claims stem from Defendants' "common understanding" and objective to hack WorldCat.org, scrape and harvest WorldCat records, and offer WorldCat data in bulk, for free. *See* Compl. ¶¶ 145, 162, 176, 192, 208, Dkt. 1 at PageID 24, 27, 29, 31, 33. OCLC alleges that the individuals who operate Anna's Archive, *i.e.*, Ms. Matienzo and John Does #1–20, had a common design to commit an unlawful act based on their own public admissions: "we set our sights on . . . WorldCat" and "[o]ver the past year, we've meticulously scraped all WorldCat records." *Id.* ¶¶ 88–89, PageID 15–16. These factual allegations are enough for the Court to reasonably infer that Defendants acted in concert with one another to injure OCLC. *See Auto. Fin. Corp. v. WW Auto*, No. 2:04-CV-261, 2005 WL 1074331, at *5 (S.D. Ohio Apr. 20, 2005) ("A plaintiff, however, is not required to plead with particularity each and every element of the claim of civil conspiracy"); *see also DHI Grp., Inc. v. Kent*, No. H-16-1670, 2017 WL 9939568, at *4, *9 (S.D. Tex. Apr. 27, 2017) (finding sufficient allegations of an agreement for defendants to work in concert to scrape online job boards to look for "backdoors").

Ms. Matienzo asserts that a defendant may not conspire with a "John Doe" defendant but provides no support for this contention. Mot., Dkt. 21 at PageID 459. Rather, the cases Matienzo relies on concern a failure to put forth any facts indicating that the coconspirators were in privity with one another, *i.e.*, acting in concert, not that Doe defendants can never be a party to a conspiracy. *See Whittle v. Proctor & Gamble*, No. 1:06-CV-744, 2007 WL 4224360, at *9 (S.D. Ohio Nov. 27, 2007); *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985). In fact, the Court allows conspiracy claims asserted against John Does to survive a motion to dismiss. *Monaco v. Doe*, No. 2:22-cv-2888, 2022 WL 4291781, at *5–7 (S.D. Ohio Sept. 16, 2022), *R&R adopted sub nom.*, *Monaco v. Doe (1)*, 2022 WL 5187381 (S.D. Ohio Oct. 5, 2022). A conspiracy claim cannot fail on the single assertion that a defendant cannot conspire with a "John Doe" defendant. *See Ghaster v. City of Rocky River*, No. 1:09 CV 2080, 2010 WL 2802685, at *11 (N.D. Ohio May 12, 2010), *R&R adopted*, 2010 WL 2802682 (N.D. Ohio July 13, 2010).

Finally, the argument that the conspiracy claims against Ms. Matienzo must be dismissed if the underlying tort claims against *her* are dismissed misconstrues the "underlying unlawful act" requirement. Mot., Dkt. 21 at PageID 460. "Ohio law does not require each member of an alleged conspiracy to have committed an unlawful act—the unlawful acts of any one member of the conspiracy will satisfy the 'underlying unlawful act' requirement." *Auto. Fin. Corp. v. WW Auto*, No. 2:04-CV-261, 2005 WL 1074331, at *4 (S.D. Ohio Apr. 20, 2005). It is enough that Anna's Archive or one of its team members besides Ms. Matienzo committed the underlying torts.

## IV.    CONCLUSION

For the reasons above, Plaintiff OCLC, Inc. respectfully requests that this Court deny Ms. Matienzo's Motion to Dismiss on all bases.

Dated: May 15, 2024                    Respectfully submitted,
                                       /s/ *Jeffrey M. Walker*
                                       Jeffrey M. Walker (0096567), Trial Attorney

Traci L. Martinez (0083989)
Kathryn M. Brown (0100426)
Brittany Silverman (0102263)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: +1 614 365 2700
Facsimile: +1 614 365 2499
traci.martinez@squirepb.com
jeffrey.walker@squirepb.com
kathryn.brown@squirepb.com
brittany.silverman@squirepb.com

*Attorneys for Plaintiff, OCLC, Inc.*

## CERTIFICATE OF SERVICE

On May 15, 2024, this document and the accompanying exhibits were filed electronically

with the Clerk of the United States District Court for the Southern District of Ohio, Eastern

Division and will be served upon Defendant Anna's Archive at the following email addresses:

AnnaArchivist@proton.me
AnnaDMCA@proton.me
AnnaArchivist+security@proton.me
domainabuse@tucows.com


/s/ *Jeffrey M. Walker*
One of the Attorneys for Plaintiff