**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **OCLC, INC.** | : | |
| | : | **CASE NO. 2:24-cv-00144-MHW-EPD** |
| **Plaintiff,** | : | |
| | : | |
| vs. | : | **JUDGE MICHAEL H. WATSON** |
| | : | |
| **ANNA'S ARCHIVE, f/k/a PIRATE LIBRARY MIRROR, et al.** | : | **MAGISTRATE JUDGE ELIZABETH A. PRESTON DEAVERS** |
| | : | |
| **Defendants.** | : | |

**DEFENDANT MARIA MATIENZO'S REPLY IN SUPPORT OF MOTION TO DISMISS**

**I.      INTRODUCTION**

Despite its obligation to do so, OCLC has failed to offer sufficient and specific factual evidence demonstrating that personal jurisdiction exists over Ms. Matienzo in Ohio. Specifically, the declaration offered by OCLC in opposition to Ms. Matienzo's Motion to Dismiss does not provide this Court with the requisite specific facts establishing jurisdiction, but instead simply restates the conclusory and collective allegations contained in the Complaint and offers additional non-jurisdictional and wholly unrelated information upon which the exercise of jurisdiction cannot be based. Given that OCLC has failed to demonstrate that each jurisdictional criterion is satisfied with respect to Ms. Matienzo, its Complaint against her must be dismissed pursuant to Rule 12(B)(2) of the Federal Rules of Civil Procedure.

Furthermore, for the purpose of brevity and to adhere to the prescribed page limitations, Ms. Matienzo will not address each individual cause of action in this Reply, but respectfully directs the Court to the arguments made in her Motion to Dismiss (ECF No. 21). For the reasons set forth therein and those addressed more thoroughly below, OCLC's Complaint also fails to state a claim

upon which relief may be granted against Ms. Matienzo. Specifically, despite OCLC's contention to the contrary, Ms. Matienzo's alleged association with the other twenty-one (21) defendants, twenty (20) of which are non-identified, and the collective and conclusory allegations that follow are insufficient to state a claim against her upon which relief may be granted.

II. **THE DECLARATION OF BARTON MURPHY DOES NOT SET FORTH SPECIFIC FACTS ESTABLISHING PERSONAL JURISDICTION OVER MS. MATIENZO**

To survive Ms. Matienzo's Motion to Dismiss, OCLC must set forth "specific facts" demonstrating the existence of jurisdiction over Ms. Matienzo in Ohio. *See Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974); *see also Bowe v. Cross River Bank*, 2:22-cv-04266, 2024 WL 1049820 (S.D. Ohio Mar. 11, 2024); *Arnold v. CooperSurgical, Inc.,* 681 F.Supp.3d 803, 816 (S.D. Ohio, July 10, 2023). Despite this requirement, the declaration of Mr. Murphy fails to "establish with reasonable particularity sufficient contacts between [Ms. Matienzo] and the forum state to support jurisdiction." *Arnold, supra* at 814. In fact, Mr. Murphy's Declaration provides nothing more than a restatement of the allegations in OCLC's Complaint, including a description of Ms. Matienzo's background in tech, her name, long-time social media handle, and other non-jurisdictional and conclusory averments that have no bearing whatsoever on the jurisdictional issue at hand.[1] (Murphy Dec. ¶¶ 20-26.; *see also Morrison v. Taurus Int'l Co.*, No. 3:11-cv-322, 2012 WL 5493962 at *1 (S.D. Ohio Nov. 13, 2012) (bare allegations and conclusory statements are insufficient to establish personal jurisdiction.)) At issue here is whether each independent

---

[1] Upon review of Mr. Murphy's declaration, it appears that portions of the same are not based on personal knowledge or grounded in observation or other first-hand experience. While Mr. Murphy makes several conclusory averments in his declaration, he provided no basis for his purported personal knowledge of the same. Such averments are improper and should be disregarded by this Court. *See Jones v. City of Middletown,* Ohio, No. 1:06-CV-007, 2007 WL 9729105, at *5 (S.D. Ohio Aug. 10, 2007) (To be based on personal knowledge, "the inferences and opinions in the affidavits must be grounded in observation or other first-hand experience"); *see also Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007); *Plaskolite, Inc. v. Zhejiang Taizhou Eagle Machinery Co., Ltd.*, No. 08-487, 2008 WL 5190049, *5 (S.D. Ohio Dec. 9, 2008).

133198342

jurisdictional requirement prescribed in *Southern Machine Co. v. Mahasco Indust., Inc.*, 401 F.2d 374 (6th Cir. 1968) is satisfied whereby exercising personal jurisdiction over Ms. Matienzo in Ohio would comport with due process. A review of OCLC's Complaint and the applicable jurisdictional case law reveals that this question is answered emphatically in the negative.[2]

### A. OCLC HAS NOT PLAUSIBLY ALLEGED THAT MS. MATIENZO PURPOSEFULLY AVAILED HERSELF TO OHIO

OCLC incorrectly frames the purposeful availment issue as whether scraping and/or hacking an online database constitutes purposeful availment. (Opp., p. 6-7.) Specifically, OCLC claims that jurisdiction exists over Ms. Matienzo in Ohio on the basis that "repeated and extensive data scraping satisfies the purposeful availment prong." (*Id.* at 7.) In making this claim, OCLC glosses over the fact that the declaration of its Chief Technology and Information Offer, Barton Murphy, fails to actually aver that Ms. Matienzo acted in Ohio or caused any harm or consequence in Ohio. (*See generally*, Murphy Dec.) A review of Mr. Murphy's declaration reveals that it contains no specific jurisdictional facts as to Ms. Matienzo. Instead, it simply restates the conclusory and often collective allegations contained in the Complaint and offers other information that is wholly unrelated to this jurisdictional inquiry, including a description of Ms.

---

[2] In a footnote to their Opposition, OCLC argues that it has met its jurisdictional burden, but then requests to conduct jurisdictional discovery if the court determines that it has not. However, in making this request, OCLC has not demonstrated that it is entitled to the requested jurisdictional discovery and thus is not entitled to the same. *See Angel's Dream, LLC v. Toledo Jet Ctr., LLC*, 684 F.Supp.3d 663, 671 (N.D. Ohio 2023) ("To obtain jurisdictional discovery, a plaintiff must, at a minimum, offer a factual basis for its jurisdictional allegations; give the court "a reasonable basis to expect that ... discovery would reveal evidence that supports the claimed jurisdiction"; and explain what evidence relevant to jurisdiction they would be denied from obtaining."); *see also Nottingham-Spirk Design Assoc., Inc. v. Halo Innovations, Inc.*, 603 F.Supp.3d 561, 572 (N.D. Ohio 2022) (denying jurisdictional discovery because plaintiff did not identify with any specificity how discovery might support a finding of personal jurisdiction and because "[d]iscovery is not required based on mere hope or speculation."); *A.O. Smith Corp. v. United States*, 774 F.3d 359, 369 (6th Cir. 2014) (holding that denial of jurisdictional discovery was appropriate where plaintiffs could only "speculate" that requested discovery "might" contain information relevant to jurisdiction); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981) (holding that a district court did not abuse its discretion in failing to permit discovery on jurisdictional facts where plaintiff offered no factual basis for its jurisdiction claims). OCLC should not be permitted to use jurisdictional discovery to fish for a possible basis for jurisdiction in Ohio.

Matienzo's name, personal and professional background, and social media handle. (Murphy Dec. ¶¶ 20-28.)

Based on that information alone, OCLC asks this Court to determine that Ms. Matienzo herself "created and participated in a substantial, systematic, and ongoing course of conduct with this Ohio forum, resulting in minimum contacts with Ohio that are not random, fortuitous, or attenuated." (Opp., p. 7.) OCLC makes this ask without even so much as offering one single averment of individual conduct or wrongdoing on the part of Ms. Matienzo. Even when interpreted in a light most favorable to OCLC, it has clearly failed to establish a sufficient and/or specific connection between the claims asserted in the Complaint and Ms. Matienzo's specific activities in Ohio. Accordingly, jurisdiction over Ms. Matienzo in Ohio does not exist.

Moreover, in attempting to provide the Court with the requisite "specific facts" demonstrating the existence of jurisdiction over Ms. Matienzo in Ohio, OCLC's Opposition falsely states: "As set forth in Barton Murphy's Declaration, Ms. Matienzo, in concert with the other unnamed individuals operating Anna's Archive, repeatedly scraped OCLC's Worldcat.org website over the course of a year as part of a targeted scheme to harm OCLC, specifically, by stealing OCLC's WorldCat data and distributing it for free." (*Id.*) Notably however, Mr. Murphy's Declaration lacks any such statement. (*See generally*, Murphy Dec.)

Here, OCLC asks this Court to infer jurisdiction on the basis that Ms. Matienzo's middle name and social media handle bears resemblance to the name "Anna" and because Ms. Matienzo allegedly has an understanding of OCLC's products, a job in tech, website hosting experience, and a certain political views relating to the availability of literary works to the public. However, none of these "facts" are jurisdictional in nature and therefore, should not serve as a basis for exercising jurisdiction over Ms. Matienzo in this case. Finding that purposeful availment and/or personal

jurisdiction exists over a defendant on the basis that said defendant has a similar name and/or social media handle or related professional experiences and/or beliefs, effectively eviscerates the insulation and safeguards afforded to non-resident defendants by the personal jurisdiction doctrine. Here, a review of Mr. Murphy's declaration demonstrates that OCLC has failed to set forth specific, non-conclusory facts establishing that jurisdiction exists over Ms. Matienzo in Ohio. Accordingly, OCLC's Complaint is subject to dismissal pursuant to Rule 12(B)(2) of the Federal Rules of Civil Procedure.

B. **THE CASES CITED BY OCLC IN SUPPORT OF PERSONAL JURISDICTION ARE DISTINGUISHABLE**

The cases cited by OCLC in support of the exercise of personal jurisdiction in this case actually demonstrate why personal jurisdiction over Ms. Matienzo is lacking. For example, in *X Corp. v. Bright Data Ltd.*, No. C 23-03698 WHA, 2024 WL 422075 (N.D. Cal. Feb. 5, 2024), the owner and operator of Twitter brought suit against a corporate defendant in the business of selling data it admittedly scrapes from websites and social media platforms and providing tools and services to help its customers scrape data themselves. The defendant corporation in *X Corp* maintained and advertised a sales office in California and directed potential customers to this sales office. *Id.* at *1-2. Further, the defendant provided services to customers in California, marketed to customers in California, located many members of its business development and sales team in California, and advertised and sold California IP address proxies. *Id.* The complaint in *X Corp* contained specific and detailed jurisdictional allegations related to the defendant corporation's purposeful availment in California and its California contacts. *See X Corp* First Amended Complaint, ECF No. 36, 3:23-cv-03698-WHA, ¶¶8-14.) Accordingly, in ruling that personal jurisdiction existed over the corporate defendant, the district court in *X Corp* recognized that the defendant was "hardly the non-resident defendant that specific jurisdiction aspires to

5

insulate…[Here], there is a strong, direct connection between the defendant's form-related activities and the plaintiff's claims." *Id*. at *2.

Next, in *Facebook v. Sluchevsky*, No. 19-cv-01277-JSC, 2020 WL 5823277 (N.D. Cal. Aug. 28, 2020), Facebook filed suit against Gleb Sluchevsky and Andrey Gorbachov, alleging violations of various California statutes and state law claims including breach of contract and fraud. *Id*. at *1. In ruling on Facebook's motion for default judgment, the district court analyzed whether personal jurisdiction existed over the Ukrainian defendants in California. *Id.* at *3. These defendants were specifically and individually identified by Facebook as the individuals behind the operation of fraudulent web operations designed to deceive their users into installing malicious browser extensions that enabled the defendants to scrape information from the app users' social media profiles. *Id.* The individual defendants were specifically and unequivocally identified through an investigation of malicious extensions during which it was determined and later alleged that Sluchevsky and Gorbachev created and marketed malicious extensions on browser stores operated by companies located in California. *Id.* at *2-3. Facebook's complaint against Sluchevsky and Gorbachev contained specific factual allegations demonstrating their actions in California and contacts with California such as transacting business and engaging in commerce in California by collecting user information and creating and marketing malicious extensions on browser stores operated by companies located in California. *See Facebook* Complaint, ECF No. 1, 4:19-cv-01277-YGR, ¶¶ 10-11, 31-47. In light of the alleged extensive contacts with California and the conduct conducted in the state, the court determined that personal jurisdiction existed over each defendant in California. *Id.* at *3.

In *Sw. Airlines Co. v. Kiwi.com, Inc.*, No. 3:21-cv-00098-E, 2021 WL 4552146 (N.D. Tex. Aug. 10, 2021), Southwest Airlines filed suit against the defendant online travel agency. The

6

133198342

defendant allegedly scraped flight and pricing data from Southwest's website and sold tickets for Southwest flights without authorization from Southwest. *Id.* at *1. The defendant in *Southwest* had extensive contacts with Texas including: (1) purchasing over 170,000 flights in Texas; (2) reselling flights departing from or arriving to Texas; (3) reselling services to customers in Texas; (4) targeting and soliciting customers in Texas; and (5) soliciting Southwest leadership in Texas to form a cooperative business relationship. *Id.* at *3. Further, the complaint in *Southwest* contained specific jurisdictional allegations demonstrating purposeful availment by the defendant in Texas. *Id.*; *see also Southwest* First Amended Complaint, ECF No. 53, 3:21-cv-00098-E, ¶¶ 5(a)-(g)-11, 16, 20-27. Accordingly, the district court determined that because the defendant had systematically conducted business in Texas and did not refute its contacts with the forum, the exercise of jurisdiction over it in Texas was proper. *Id.* at *3.

In *BidPrime, LLC v. SmartProcure, Inc.*, No. 1:18-CV-478-RP, 2018 WL, 5260050, (W.D. Tex. Oct. 22, 2018), the plaintiff filed suit against its direct competitor, SmartProcure, Inc. and SmartProcure's CEO, Jeffrey Rubenstein, for the alleged hacking of the plaintiff's website and scraping of information. Mr. Rubenstein was a Florida resident who registered for a free trial access to plaintiff's website using a fake name after his own personal account was shut down. *Id.* at *8. He also used another user's account without authorization to access plaintiff's website and attempted to create at least two other accounts using fake names to access and hack plaintiff's website. *Id.* In addition, Mr. Rubenstein allegedly hired a software developer to write a data-scraping program and directed the developer to scrape thousands of bid requests from plaintiff's website. *Id.* Again, the complaint in *BidPrime* contained specific jurisdictional allegations regarding Mr. Rubenstein's individual conduct in Texas and contacts with Texas. *See BidPrime* First Amended Complaint, ECF No. 34, 1:18-CV-478-RP, ¶¶ 8-11, 35-75. On this basis, the district

7

court found that jurisdiction existed over Mr. Rubenstein in Texas. *Id.* In making this determination, the district court recognized that "all of Rubenstein's alleged conduct constitutes purposeful action directed at the company that he knew to be located in Texas, and he does not dispute that the injuries alleged in this case arise out of this conduct. These allegations are not random, fortuitous, or attenuated[.]" *Id.* at *3.

Finally, in *The Rightthing, LLC v. Brown*, No. 3:09 CV 135, 2009 WL 249694 (N.D. Ohio Feb. 2, 2009), the plaintiff sought a temporary restraining order against the defendant who was its former Business Development Manager, seeking to enjoin her from being employed by its direct competitor, soliciting or persuading its employees or clients into terminating their relationship with it, disclosing its confidential information, accessing its computer files, and preserving data and documents that it had requested. *Id.* at *1. The defendant former employee moved to dismiss on the basis that she was a resident of California and personal jurisdiction did not exist over her in Ohio. *Id.* The complaint in *Brown* alleged that the defendant was an employee of plaintiff, which was headquartered in Findlay, Ohio and that she worked regularly with Ohio-based employees, received and reviewed files from Ohio, and took files from the company's Ohio-based database. *See Brown* Complaint, ECF No. 1, 3:09-cv-00135, ¶¶ 1-3, 12-20, 32-34. In finding that jurisdiction existed over the defendant in Ohio, the district court relied on the aforementioned allegations in determining that the defendant's actions in Ohio directly related to the plaintiff's claims that she violated the Ohio Trade Secrets Act. *Id.* at *5.

In the cases referenced above, the various plaintiffs alleged specific facts demonstrating the existence of personal jurisdiction over each of the defendants in the forum state. In each case, the complaints at issue contained specific and non-conclusory, jurisdictional allegations against each defendant tying each defendant's conduct to the forum. The same cannot be said for complaint

in this case. Here, OCLC's Complaint does not plead any facts supporting the conclusion that Ms. Matienzo purposefully availed herself to Ohio or had any real, meaningful connection whatsoever to Ohio. Neither the Complaint, nor Mr. Murphy's Declaration contain sufficient and/or specific facts demonstrating Ms. Matienzo's contacts with Ohio or specific conduct in Ohio that would support the exercise of jurisdiction over her here. For this reason, OCLC's complaint against Ms. Matienzo must be dismissed for lack of personal jurisdiction in accordance with Rule 12(B)(2).

### C. RECENT SOUTHERN DISTRICT PRECEDENT SUPPORTS DISMISSAL FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(B)(2)

Dismissal for lack of personal jurisdiction is further supported by the Southern District's recent decision in *Bowe v. Cross River Bank*, No. 2:22-cv-04266, 2024 WL 1049820 (S.D. Ohio Mar. 11, 2024). In *Bowe*, the District Court for the Southern District of Ohio examined the requirements of specific jurisdiction and determined that personal jurisdiction does not exist where a plaintiff fails to allege a sufficient connection between Ohio and the specific claims against the individual defendant. In *Bowe*, the plaintiffs filed suit against five defendants in connection with the sale of allegedly defective solar panels. *Id.* at *2. The defendant group included Trivest, a private equity company based in Florida that was a minority owner of the defunct solar panel company, Power Home Solar, LLC d/b/a Pink Energy. *Id.* at *2-3.

In the complaint, the plaintiffs in *Bowe* alleged that Trivest was involved in Pink Energy's day-to-day operations while it was still in operation. *Id.* The plaintiffs' complaint also referred to the defendants collectively and made general, collective and conclusory allegations of wrongdoing against the group. *Id.* The plaintiffs further claimed that "Trivest was an active participant in the facts giving rise to the within causes of action," and was "complicit with" Pink Energy. *See Bowe* Complaint, 2:22-cv-04266, ECF No. 1, ¶¶ 6, 90, 95, 109, 121, 158. Trivest moved for dismissal on the basis that personal jurisdiction did not exist over it in Ohio. *Id.* at *7. The plaintiffs argued

9

for personal jurisdiction on the basis that Trivest was a 25% shareholder of the defunct company and was "intimately involved in designing and facilitating the sale of the faulty solar panel systems to Plaintiffs in Ohio." *Id.* at *8. In further support of their arguments in favor of the exercise of jurisdiction over Trivest, the plaintiffs in *Bowe* relied on their multiple collective allegations of wrongdoing against the defendants as a group. *Id.* However, the complaint's allegations as to the specific conduct of Trivest and/or its connection to Ohio were largely conclusory. *Id.* For this reason, the court rejected plaintiff's jurisdictional arguments, finding that although Trivest owned a portion of the defunct company and allegedly participated in its day-to-day operations, "there [was] not a sufficient connection between Ohio and the specific claims against Trivest for specific jurisdiction to attach." *Id.* The court further recognized that plaintiffs' conclusory and collective allegations were insufficient to establish specific jurisdiction over Trivest in Ohio. *Id.*

Here, OCLC collectively refers to Anna's Archive, John Does #1-20, and Ms. Matienzo as "Defendants" in its Complaint and any allegation of wrongdoing, including "scraping" and/or "hacking" is a collective one. OCLC further alleges that all Defendants participated in an "ongoing course of conduct" in Ohio by hacking WorldCat.org. It claims that because Ms. Matienzo is included in its collective allegations, she must then have conducted activities in Ohio resulting in sufficient minimum contacts with the state. (Opp., p. 7.) Like the plaintiffs in *Bowe*, OCLC claims in a conclusory and collective fashion that Ms. Matienzo was acting in concert with the remaining Defendants. The Southern District has recognized that this is not enough to sufficiently and specifically demonstrate the existence of personal jurisdiction over an individual defendant.

In addition, other district courts have rejected such collective allegations and/or averments and recognized that they are insufficient to justify exercising specific jurisdiction over an individual defendant. *See Jonathan Paul Eyewear, Inc. v. Live Eyewear, Inc.*, No. A-12-CA-908-

133198342

SS, 2013 WL 12090073, *4 (W.D. Tex. Aug. 5, 2013) (holding that identifying defendant and alleged relationship to other defendants coupled with collective allegations of tortious conduct is insufficient to establish personal jurisdiction over individual defendant. Focusing solely on defendants' collective actions did not demonstrate that the individual defendant "personally took any action amounting to purposeful availment…Such generalized, collective allegations of tortious conduct are insufficient to justify exercising specific jurisdiction over [an individual defendant]."); *see also Taco Mamacita, LLC v. Wilco Holdings, LLC*, No. 1:21-cv-62, 2022 WL 16542580, *10-11 (E.D. Tenn. Oct. 29, 2022) (finding that plaintiff's purposeful availment arguments and allegations were insufficient to establish personal jurisdiction over defendant where said allegations treated defendants collectively and where "plaintiffs [made] no allegations specific to any individual defendant's contacts with Tennessee"); *Burkett v. Aztec Well Family*, MO: 20-CV-00052-DC, 2021 WL 2678660, *3 (W.D. Tex. 2021) (holding that "plaintiff's generalized, collective allegations of tortious conduct [were] insufficient to justify exercising specific jurisdiction" over an individual defendant because plaintiff did not show how the individual "personally took any action amounting to purposeful availment").

Like the Complaint, Mr. Murphy's declaration also fails to demonstrate specific conduct by Ms. Matienzo in Ohio that would constitute purposeful availment thus subjecting her to jurisdiction here. Instead, the declaration reiterates that: (1) Anna's Archive is responsible and took credit for the attacks at issue in this case; (2) Anna's Archive purposefully targeted OCLC's WorldCat.org; (3) Anna's Archive intended to offer OCLC's WorldCat® data for free *en masse*; (4) and that Anna's Archive made, and continues to make, 2.2 TB of WorldCat® data that it harvested from WorldCat.org available via public download. (Murphy Dec., ¶¶ 14-16.) Here, given that OCLC's Complaint and Mr. Murphy's Declaration lack specific factual allegations or

11

averments demonstrating how Ms. Matienzo personally took any action amounting to purposeful availment, said allegations and averments are insufficient to justify the exercise of personal jurisdiction over her in this case. As OCLC's Complaint does not plausibly allege that Ms. Matienzo purposefully availed herself to Ohio, it is subject to dismissal for lack of personal jurisdiction pursuant to Rule 12(B)(2) of the Federal Rules of Civil Procedure.

### III. MS. MATIENZO'S ALLEGED ASSOCIATION WITH THE OTHER TWENTY-ONE (21) DEFENDANTS AND ALLEGATIONS OF COLLECTIVE WRONGDOING ARE INSUFFICIENT TO STATE A CLAIM AGAINST HER

In arguing against dismissal, OCLC cites to a variety of cases supporting the proposition that the general use of the term "Defendants" in a complaint is a "common pleading convention." (Opp., p. 13.) In doing so, OCLC demonstrates that it misunderstands the basis of Ms. Matienzo's Motion to Dismiss with respect to OCLC's use of conclusory and collective allegations. While Ms. Matienzo certainly recognizes that the use of "Defendants," or some other collective identifying term, may be acceptable in the average complaint involving multiple identified parties, such collective allegations involving one individual defendant (Ms. Matienzo), an anonymous, international hacking group, and twenty (20) John Doe defendants, can hardly be likened to the standard cases cited by OCLC. A brief review of these cases illustrates their stark factual differences from this lawsuit.

For example, in *Berry v. Cahoon*, 731 F. Supp. 2d 685, 687-88 (S.D. Ohio 2010), the plaintiffs brought action against several named and identified defendants. Two of the defendants unsuccessfully moved to dismiss the claims against them on the basis that the majority of the allegations in the complaint referred to the defendants collectively. *Id.* at 688. At first glance, the facts of *Berry* may appear similar to the facts of this case. However, a seemingly small distinction in the complaint in *Berry* cannot be overlooked. The *Berry* court recognized that, in the plaintiffs'

133198342

complaint, the plaintiffs identified the defendants at issue by "name, address, and association with Beavercreek Christian Church or American Protective Agency." *Id.* Both Beavercreek Christian Church and American Protective Agency were corporate defendants in the case, and the individual defendants were all employees at one or the other. *See Berry* Complaint, No. 3:10-CV-081, at ¶¶ 3-4. Unlike OCLC here, after adequately identifying each defendant, the plaintiff in *Berry* was able to plausibly tie the defendants to each other to warrant the usage of a collective identifier.

Next, in *Igo v. Sun Life Assurance Co. of Canada*, 652 F.Supp.3d 929 (S.D. Ohio 2023), a life insurance company, policyholder, and plan administrator, all for the same decedent's life insurance plan, were named as defendants when the decedent's estate sought to be paid a certain amount under the plan. Two of the defendants moved to dismiss the complaint because it alleged claims against "all defendants." *Id.* at 934. In denying the defendants' motion, the court held that the defendants could be grouped in such a manner because they collectively had responsibilities over administering the insurance plan and paying or denying benefits under the plan. *Id.* at 935. Like in *Berry*, the *Igo* defendants bear no similarities to the defendants in the instant action.

Finally, in *A.R. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-cv-04935, 2022 WL 17741054, at *11-12 (S.D. Ohio Dec. 16, 2022), a victim of human trafficking brought action against the hotels at which she was held captive. The plaintiff alleged in her complaint that all the defendant-hotels were responsible for a continuing course of conduct. *Id.* One hotel moved to dismiss on the basis that the collective allegations were improper. *Id.* In denying the hotel's motion, the court recognized that the plaintiff alleged "specific facts of her own trafficking in the Columbus hotels" and her allegations as to the movant hotel were "specific to that location." *Id.* Compare the allegations in *A.R.* to OCLC's allegations. Here, a review of the Complaint at issue demonstrates that OCLC does not allege specific conduct and/or wrongdoing on the part Ms. Matienzo satisfying

13

133198342

the requirements set forth in *Iqbal* and *Twombly*. Again, to tie Ms. Matienzo, a named party, into the same ambiguous allegations as those it asserts against twenty, unidentified defendants proves fatal to OCLC's claims against her. *See Doe v. Foster*, No. 5:18-cv-1870, 2019 WL 6770094, at *3 (N.D. Ohio Dec. 12, 2019)[3] (quoting *Cameron v. Howes*, No. 1:10-cv-539, 2010 WL 3885271, at *6 (W.D. Mich. Sept. 28, 2010)) ("Where a person is named as a defendant without an allegation of specific conduct, the complaint against him is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.")

Regarding its allegation that Ms. Matienzo "owns, operates, and/or controls Anna's Archive," OCLC claims that the portions of its Complaint "alleging joint action by Ms. Matienzo with other team members behind Anna's Archive" is what makes the allegation plausible. (Opp., p. 14.) For some unknown reason, OCLC fails to realize that the allegations contained in the 200 Paragraphs of its Complaint cannot be attributed to Ms. Matienzo without any factual basis, even under the bare minimum pleading standards. To survive Ms. Matienzo's Motion to Dismiss, OCLC's Complaint must contain specific factual allegations directed toward Ms. Matienzo. *See Broadbent v. Americans for Affordable Healthcare, Inc.*, No. 1:10-cv-943, 2011 WL 7115984, *4 (S.D. Ohio Dec. 16, 2011) (citing *Ashcroft v. Iqbal*, 566 U.S. 662, 129 S.Ct. 1937, 1950; *see also In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014) ("To survive a motion to dismiss, a complaint must plead facts that create a plausible inference of wrongdoing. The mere fact that someone believes something to be true does not create a plausible inference that it is true")[4].

---

[3] In their Opposition, OCLC takes issue with Ms. Matienzo's citation to *Doe v. Foster*, No. 5:18-cv-1870, 2019 WL 6770094, at *3 (N.D. Ohio Dec. 12, 2019) because the case was a civil rights action and involved a heightened pleadings standard. (Opp., p. 14.) However, a plain reading of the case reveals that in discussing personal jurisdiction, the court specifically referenced and applied *Twombly* and noted that "under *Twombly*, of course, there must be factual allegations that rise above the speculative level." *Id.* at *3.
[4] An example of a properly pleaded complaint against an individual and allegedly related corporate entity can be found in *BidPrime, LLC v. SmartProcure, Inc.*, No. 1:18-CV-478-RP, 2018 WL, 5260050, (W.D. Tex. Oct. 22,

133198342

Finally, although OCLC states that Ms. Matienzo's reliance on *MSP Recovery Claims, Series LLC v. Nationwide Mut. Ins. Co.*, 594 F.Supp.3d 947, 959 (S.D. Ohio 2022), in which the plaintiff "noted an individual's position at a defendant-corporation but never linked those individuals to the actions that caused the plaintiff's alleged injury" was somehow in error, OCLC's characterization of the *MSP* complaint is exactly how Ms. Matienzo interprets OCLC's allegations here. (Opp., p. 14.) To avoid dismissal, OCLC must sufficiently allege that its injury was caused by the conduct and/or wrongdoing of Ms. Matienzo. It has not done so and thus, its Complaint is subject to dismissal for failure to state a claim upon which relief may be granted pursuant to Rule 12(B)(6) of the Federal Rules of Civil Procedure. *See MSP,* 594 F.Supp.3d at 959 ("[I]n order to state a claim under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs must allege that their injury was caused by a specific Defendant. Plaintiffs cannot rely on discovery to provide the facts necessary to satisfy *lqbal* and *Twombly*").

## IV. CONCLUSION

For the reasons set forth herein and those articulated in Ms. Matienzo's Motion to Dismiss (ECF No. 21), OCLC's Complaint as against Ms. Matienzo is subject to dismissal in accordance with Rule 12(B)(2) of the Federal Rules of Civil Procedure on the basis that personal jurisdiction does not exist over Ms. Matienzo in Ohio. Further, OCLC's Complaint as against Ms. Matienzo fails to state a claim upon which relief may be granted and is therefore subject to dismissal pursuant to Rule 12(B)(6) of the Federal Rules of Civil Procedure. Accordingly, Defendant Maria Matienzo

---

2018). The complaint in *BidPrime* contained both individual and collective allegations of wrongdoing against the corporate defendant's CEO, Mr. Jeff Rubenstein. *See BidPrime* First Amended Complaint, ECF No. 34, 1:18-CV-478-RP at ¶¶8-11, 35-136. The aforementioned allegations clearly plead facts that create a plausible inference of wrongdoing on the part of Mr. Rubenstein. The same cannot be said for the "facts" as alleged against Ms. Matienzo in this case.

133198342

respectfully requests that OCLC's Complaint against her be dismissed in its entirety, with prejudice.

Dated: June 5, 2024                          Respectfully submitted,

*/s/ Sarah M. Benoit*
Sarah M. Benoit (0086616), Trial Attorney
Leon D. Bass (0069901)
**TAFT STETTINIUS & HOLLISTER LLP**
41 S. High Street, Suite 1800
Columbus, Ohio 43215
Phone: (614) 221-2838/Fax: (614) 221-2007
E-mail:  sbenoit@taftlaw.com
              lbass@taftlaw.com

*Counsel for Defendant Maria Matienzo*

## CERTIFICATE OF SERVICE

On June 5, 2024, this document was filed electronically with the Clerk of the United States District Court for the Southern District of Ohio, Eastern Division, which will electronically serve a copy of the foregoing on all counsel of record for all parties.

*/s/ Sarah M. Benoit*
Sarah M. Benoit (0086616), Trial Attorney

16

133198342