**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **OCLC, Inc.**<br><br>　　　**Plaintiff,**<br><br>　　v.<br><br>**ANNA'S ARCHIVE, f/k/a PIRATE LIBRARY MIRROR, et al.,**<br><br>　　**Anna's Archives.** | **Case No. 2:24-cv-00144-MHW-EDP**<br><br><br>**Judge Michael H. Watson**<br><br>**Magistrate Judge Elizabeth A. Preston Deavers** |

**PLAINTIFF OCLC, INC.'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT ANNA'S ARCHIVE**

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, Plaintiff OCLC, Inc. ("OCLC"), having duly obtained an Entry of Default from the Clerk (Dkt. 39), respectfully moves this Court for a default judgment on its Complaint against defendant Anna's Archive, f/k/a Pirate Library Mirror ("Anna's Archive"). Anna's Archive has knowingly failed to answer or otherwise respond to the Complaint and has decided to refrain from appointing counsel or otherwise participating in this case. Accordingly, OCLC is entitled as a matter of law and equity to judgment in its favor.

A Memorandum in Support of this Motion is attached. This Motion is also supported by the declaration of OCLC Chief Financial Officer and Treasurer, William Rozek, and the other facts and arguments set forth in OCLC's Application for Entry of Default (Dkt. 38), filed on June 28, 2024, all of which are incorporated here by reference.

　　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　*/s/ Jeffrey M. Walker*
　　　　　　　　　　　　　　　　　　　　　Jeffrey M. Walker (0096567), Trial Attorney
　　　　　　　　　　　　　　　　　　　　　Traci L. Martinez (0083989)

Kathryn M. Brown (0100426)
Brittany N. Silverman (0102263)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: +1 614 365 2700
Fax: +1 614 365 2499
jeffrey.walker@squirepb.com
traci.martinez@squirepb.com
kathryn.brown@squirepb.com
brittany.silverman@squirepb.com

*Attorneys for Plaintiff OCLC, Inc.*

**MEMORANDUM IN SUPPORT**

### I. INTRODUCTION

This action stems from defendant Anna's Archive's illegal hacking and scraping of OCLC's WorldCat® data and servers. OCLC provides services to create and share bibliographic records through WorldCat—the world's most comprehensive database of information about library collections. Beginning in 2022, OCLC was the victim of persistent cyberattacks on WorldCat.org and its servers. Anna's Archive, the largest online "pirate" or "shadow" library, proudly and publicly took credit for these attacks. However, the individuals behind Anna's Archive go to great lengths to remain anonymous to ensure that Anna's Archive's domains are not taken down and to avoid the legal consequences of their actions.

OCLC filed its Complaint on January 12, 2024. Due to the intentionally concealed physical addresses and other identifying information about Anna's Archive and the individuals behind it, this Court granted OCLC's Motion to Serve Defendant Anna's Archive by Email. OCLC has served Anna's Archive at all known email addresses in accordance with the Court's order, and Anna's Archive has failed to respond to the Complaint or participate in this action. Accordingly, OCLC properly obtained an entry of default from the clerk on June 28, 2024. Anna's Archive's failure to respond to the Complaint is grounds enough for the Court to grant a default judgment in favor of OCLC, and Anna's Archive's indifference toward defending against the litigation further obviates the need for a trial on the merits of OCLC's claims against Anna's Archive.

OCLC has incurred damages of $5,333,064 as a direct result of Anna's Archive's cyberattacks, but that amount does not fully compensate OCLC for the harm from Anna's Archive's wrongful actions. OCLC continues to suffer from harms that cannot be remedied by monetary damages. OCLC respectfully prays that a default judgment be entered in its favor against

defendant Anna's Archive and that OCLC be granted declaratory judgment, injunctive relief, and monetary damages.

## II.     BACKGROUND

On January 12, 2024, OCLC filed this action against defendants Anna's Archive, Maria Matienzo, and John Does #1–20 due to a series of cyberattacks OCLC's WorldCat.org experienced in 2022 and 2023. In the fall of 2022, OCLC was flooded with cyberattacks in which unidentified hackers illegally harvested WorldCat data by scraping WorldCat.org and calling OCLC's servers. Compl. ¶¶ 75–76, PageID 13–14. The hackers also harvested WorldCat data from a member university's website, pinging OCLC's Ohio servers and authenticating these requests with the member's compromised credentials. *Id.* ¶¶ 79–80, PageID 14. Through these attacks, the hackers stole 2.2 terabytes of proprietary, enriched, and aggregated data. *Id.* ¶¶ 76–78. OCLC spent millions of dollars and thousands of employee hours defending against these attacks. *Id.* ¶¶ 82–85, PageID 15.

In October 2023, Anna's Archive took credit for the cyberattacks, boasting that "[o]ver the past year, we've meticulously scraped all WorldCat records" by taking advantage of "security flaws" OCLC allegedly had in its "backend systems." *Id.* ¶¶ 10, 86, 89, PageID 3, 15–16. Anna's Archive explained that it specifically targeted WorldCat.org to steal WorldCat data and "create a TODO list of remaining books" to pirate. *Id.* ¶¶ 87–91, PageID 16. After obtaining the data, Anna's Archive made WorldCat data available for download *en masse* for free, while also incorporating WorldCat data into its own search engine, thereby maximizing the number of unauthorized users with access to OCLC's data. *Id.* ¶¶ 10, 95, PageID 3, 17. Anna's Archive even encouraged its users and others to exploit the illegally obtained data by creating a "mini-competition for data scientists," incentivizing its users to help develop and analyze Anna's Archive's new collection of data. *Id.*

¶¶ 10, 90, 93–94, PageID 3, 16–17. In light of Anna's Archive's actions, OCLC filed this lawsuit asserting multiple claims against Anna's Archive, including contractual breach, unjust enrichment, hacking in violation of Ohio law, tortious interference, trespass to chattels, and others.

Prior to and after filing the Complaint, OCLC diligently investigated how to serve Anna's Archive through the traditional means set forth in Rule 4 of the Federal Rules of Civil Procedure. *See* Mot. to Serve Defendant Anna's Archive By Email, Dkt. 9, PageID 79–80. However, because of the extreme lengths taken by Anna's Archive to conceal its identifying information, as well as the identities of those who own and operate Anna's Archive, OCLC was unable to obtain the physical address or other contact information besides email addresses for Anna's Archive. *Id*. Accordingly, on January 24, 2024, OCLC filed a Motion to Serve Anna's Archive By Email under Federal Rule of Civil Procedure 4(f), which was granted on March 22, 2024. *See* Opinion & Order Granting Mot. to Serve Anna's Archive By Email, Dkt. 14. On March 27, 2024, OCLC presented the Clerk with a summons directed to Anna's Archive at known email addresses (Dkt. 15), and the Clerk issued the summons for OCLC to serve to Anna's Archive (Dkt. 16). Pursuant to the Court's order, OCLC served the issued summons, along with the Complaint and other case initiating documents, upon Anna's Archive at all known email addresses on March 28, 2024. *See* Kathryn M. Brown Decl., Dkt. 17. OCLC also filed proof of email service, as directed by the Court. *Id.*

Anna's Archive had until April 18, 2024 to respond or otherwise plead in response to OCLC's Complaint. *See* Fed. R. Civ. P. 12(a)(1)(A). Despite OCLC's proper service and Anna's Archive's knowledge of the Complaint, Anna's Archive failed to plead or otherwise defend by the April 18, 2024 deadline and has still yet to respond to the Complaint or participate in the action.

### III. LAW AND ARGUMENT

#### A. OCLC's Request For Default Judgment Is Warranted.

Federal Rule of Civil Procedure 55 governs the procedure for the entry of default and default judgment. First, the clerk enters a default against a party that has failed to plead or otherwise defend against a complaint. Fed. R. Civ. P. 55(a). "Once the default has been entered, the well-pleaded facts of the complaint relating to liability must be accepted as true." *United States v. Cunningham*, No. 07–cv–212, 2009 WL 112831, at *3 (S.D. Ohio Jan. 15, 2009); *see also Broadbent v. Ams. for Affordable Healthcare Inc.*, No. 1:10–cv–943, 2013 WL 1055674, at *3 (S.D. Ohio Mar. 14, 2013) ("Ordinarily, the default itself establishes the defendant's liability."). There must be at least a sufficient basis in the pleadings so that there are unchallenged facts that constitute a legitimate cause of action. *See New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 410 (6th Cir. 2022).

Here, the Clerk has entered default against Anna's Archive. Anna's Archive failed to timely plead or otherwise respond to the Complaint, and OCLC accordingly applied for and was granted an entry of default pursuant to Rule 55(a) on June 28, 2024. Entry of Default, Dkt. 39. No other showing must be made, given that Anna's Archive has never appeared and that Anna's Archive is not a minor or incompetent. *See* Fed. R. Civ. P. 55(b)(2).

However, in further support of judgment, OCLC's well-pleaded Complaint fully and sufficiently articulates the facts and claims against Anna's Archive. OCLC's Complaint adequately alleges wrongdoing by Anna's Archive and contains detailed factual allegations explaining how Anna's Archive harvested OCLC's WorldCat data in violation of contract terms and Ohio law. For example, the Complaint clearly sets forth that Anna's Archive admitted that it impermissibly stole and disseminated OCLC's WorldCat data. Compl., ¶¶ 10, 86, 89, PageID 3,

15–16. The well-pleaded facts in OCLC's Complaint establish that OCLC is entitled to its requested default judgment as well as monetary damages and injunctive relief for all claims asserted in the Complaint.

Through Anna's Archive's failure to respond to the Complaint, OCLC's application for an entry of default (or the clerk's entry of default), and Anna's Archive's complete failure to partake in this action in any way, Anna's Archive has made it clear that it does not intend to defend against or otherwise participate in this action. *See United States v. Wallace*, No. 1:09–cv–87, 2010 WL 2302377, at *3 (S.D. Ohio Apr. 28, 2010) (holding that defendant's failure to respond to the complaint, motions for entry of default, and motions for entry of judgment on damages made it clear that she had no intention of defending against the claims, and that plaintiff's requested default judgment was therefore warranted); *United States v. Standring*, No. 1:06–CV–261, 2008 WL 4416448, at *3 (S.D. Ohio Feb. 26, 2008) (same). And tellingly, on February 8, 2024, Anna's Archive publicly acknowledged this lawsuit on the social media site Reddit.com, indicating Anna's Archive is fully aware of the Complaint against it.[1] Given Anna's Archive's knowledge of the lawsuit and its failure to defend or participate, default judgment, as well as an order granting declaratory relief, against Anna's Archive is warranted.

### B.  OCLC Should Be Awarded The Requested Monetary Damages.

Following an entry of default by the clerk, the Court may enter a default judgment where the party's claims are not for a "sum certain" upon motion by the party entitled to the default. Fed. R. Civ. P. 55(b)(2). When damages are not clearly ascertainable by the clerk entering default against a defendant, the district court conducts an inquiry to determine the amount of damages

---

[1] "Lawsuit Accused Anna's Archive of Hacking WorldCat, Stealing 2.2 TB Data," *Reddit.com* ("Thanks! We're not making any public statements about the lawsuit but rest assured we're fine."), https://www.reddit.com/r/Annas_Archive/comments/1alglxg/lawsuit_accuses_annas_archive_of _hacking_worldcat/ (last visited July 5, 2021).

with reasonable certainty. *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009); *see also* Fed. R. Civ. P. 55(b)(1)–(2). Under such circumstances, an entry of default only admits a defendant's liability, and the amount of damages must be proved. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995). A plaintiff may submit evidence of damages or request a hearing or jury trial be held. *See* Fed. R. Civ. P. 55(b)(2); *Cooper v. Longwood Forest Prods., Inc.*, No. 2:20-CV-3332, 2022 WL 16848366, at *4 (S.D. Ohio Nov. 10, 2022).

Due to Anna's Archive's illegal hacking and scraping attacks on OCLC's servers, OCLC has incurred substantial monetary expenses. While these monetary damages caused by Anna's Archive may not be a "sum certain," such damages are easily calculable as they stem directly from OCLC's defense against Anna's Archive's cyberattacks in conjunction with the costs incurred throughout litigation. *See 3M Co. v. Premium Contractor Sol., LLC*, No. 3:20-CV-443, 2022 WL 1204865, at *1 (S.D. Ohio Apr. 22, 2022) ("The award can include compensatory damages, as well as interest, costs, punitive damages, attorneys' fees, or other appropriate relief."). In order to defend against Anna's Archive's scraping attacks, OCLC was required to divert employees from their typical roles to implement system work-arounds and additional fees and services, costing $2,754,000. William Rozek Decl. ¶¶ 45–48, attached here as Exhibit 1. OCLC diverted 34 full-time OCLC employees to mitigate the harm from these attacks from August 2022 to present, expending 27,540 hours. *Id.* ¶ 45. To stave off the effects of Anna's Archive's attacks while keeping other systems and processes operational, OCLC was forced to spend $1,548,693 upgrading its hardware infrastructure. *Id.* ¶ 54. OCLC also purchased Cloudflare services for two years, incurring total costs of $608,069, to attempt to block the cyberattacks and mitigate their harm. *Id.* ¶ 49. OCLC also engaged a vendor to perform forensic assessments of its website, secured additional security services from another vendor, and was forced to use a two-vendor

network while its employees were diverted, costing $422,302. *Id.* ¶¶ 49–50. OCLC's calculable expenses total $5,333,064, *id.* ¶ 57—the exact amount for which it should be compensated by Anna's Archive.

OCLC's request for monetary damages is supported by the above-referenced declaration and accompanying exhibits filed concurrently herewith. OCLC is also willing to provide whatever additional evidence the Court deems necessary to ascertain the amount of damages Anna's Archive should compensate OCLC for, including testimony from pertinent OCLC employees.

### C. OCLC's Request For Injunctive and Declaratory Relief Should Be Granted.

OCLC has also suffered damage to its reputation, business, and customer goodwill that are impossible to financially quantify and can only be addressed through equitable relief. Anna's Archive's flagrantly illegal actions have damaged and continue to irreparably damage OCLC. As such, issuance of a permanent injunction is necessary to stop any further harm to OCLC. OCLC is seeking a permanent injunction prohibiting Anna's Archive: from scraping or harvesting WorldCat data from WorldCat.org or OCLC's servers; from using, storing, or distributing the WorldCat data on Anna's Archive websites; from encouraging others to scrape, harvest, use, store, or distribute WorldCat data; and requiring the deletion of all copies of WorldCat data in possession of, or easily accessible to, Anna's Archive, including all torrents.

In order for this Court to grant a permanent injunction, OCLC must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Tenn. Valley Auth. v. Jones*, 692 F. App'x 224, 226 (6th Cir. 2017). As

detailed below, all four factors are satisfied and OCLC's request for a permanent injunction should be granted.

### 1. OCLC Has Suffered Irreparable Injury.

The most egregious harms suffered by OCLC are exclusively irreparable. In the context of a request for injunctive relief, "[a]n injury is irreparable if it is not 'fully compensable by monetary damages,' that is, 'the nature of the plaintiff's loss would make damages difficult to calculate.'" *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 852 (6th Cir. 2017) (citations omitted). Injunctive relief is necessary in this case to remedy the damage to OCLC's goodwill and membership, the unknowable loss in sales, and the long term detrimental effect on the viability of WorldCat and OCLC's business. Courts have recognized as irreparable harm a variety of injuries that OCLC has suffered here, including "loss of customer goodwill." *Id.* at 853 (quoting *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511–12 (6th Cir. 1992)); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007). The irreparable harm to OCLC's customer goodwill is particularly acute here, for several reasons, given the unique aspects of OCLC's operations and its WorldCat offering.

First, Anna's Archive's free distribution of WorldCat data has threatened OCLC membership and participation in WorldCat generally. By illegally harvesting OCLC's data and giving it away for free, Anna's Archive harmed OCLC's paid membership network and threatened future participation in WorldCat. Between August 2022 and October 2023, when OCLC was juggling Anna's Archive's cyberattacks, OCLC's customers experienced disruptions and OCLC's products were unable to be maintained and updated per OCLC's normal schedule and standards. Rozek Decl., ¶¶ 51–53, 55. OCLC's customers experienced more than 560 hours of disrupted, degraded, and unavailable services due to these attacks, which OCLC addressed during more than

68 incidents affecting WorldCat customers globally. *Id.* ¶ 55. OCLC customers entered 600 service tickets during this time due to the attacks. *Id.* ¶ 56. In sum, these cyberattacks certainly injured OCLC's customer goodwill.

OCLC's harm is not merely retrospective, however. The more libraries and institutions that participate in WorldCat and catalog their bibliographic records with OCLC, the more records that are available through WorldCat and the more valuable that WorldCat becomes to OCLC's members. *Id.* ¶¶ 10–16, 61. Any loss in OCLC membership and WorldCat participation has a direct, negative impact on customers that remain. *Id.* ¶ 61. Thus, Anna's Archive's distribution of WorldCat records and data for free negatively impacts OCLC membership and WorldCat participation. *Id.* ¶ 61–66.

Secondly, permitting Anna's Archive to continue to unlawfully distribute OCLC's WorldCat data will damage OCLC's current and future customer good will for WorldCat specifically. WorldCat is one of OCLC's most financially important offerings. *Id.* ¶¶ 22, 63. WorldCat has brought in an average of 40% of OCLC's revenue over the past 5 years. *Id.* ¶ 22. The Sixth Circuit has found irreparable harm in circumstances where there is a loss of customer good will for products that contribute a much smaller percentage of a company's total product portfolio. *See, e.g.*, *S. Glazer's*, 860 F.3d at 852–53 (finding irreparable harm where the product at issue served at 25% of the branch's product line revenue and 4% of the branch's overall revenue and noting irreparable harm has been found when a manufacturer's products comprise 0.51% of overall business).

In addition, courts have found that a plaintiff is more likely to suffer irreparable harm from the loss of customer good will for a particular product when that product provides "opportunities to attract new customers and to cross-sell the other products in its portfolio." *Id.* at 852. Similarly,

here, WorldCat is not just important to OCLC individually; WorldCat also sits at the center of OCLC's family of products and services. *Id.* ¶ 63. OCLC's cataloging, resource sharing, discovery sharing, OCLC publisher, and OCLC data services all benefit from WorldCat records. *Id.* ¶ 64. By providing WorldCat records for free, Anna's Archive has undermined the strength of WorldCat in the market and decreased its value to OCLC's other products and services. *Id.* ¶ 64–66.

Courts have also found irreparable harm for other reasons—separate from loss of goodwill—that are directly applicable here. According to *Certified Restoration Dry Cleaning Network*, the "likely interference with customer relationships resulting from the breach" of a binding agreement and the "loss of fair competition" qualify as injuries that are "'not fully compensable by money damages'" because "'the nature of the[se] loss[es] would make the damages difficult to calculate.'" 511 F.3d at 550 (quoting *Basicomputer*, 973 F.2d at 511). Due to the entry of default, Anna's Archive is now deemed liable for tortious interference, further bolstering the showing of irreparable harm. *See Cunningham*, 2009 WL 112831, at *3. Anna's Archive has intentionally interfered, and continues to intentionally interfere, with OCLC's current and prospective customer relationships and contracts, and has itself breached its contract with OCLC, all of which has resulted in the loss of fair competition for cataloging services and the ILS/LSP market more generally. Rozek Decl. ¶¶ 44–66.

### 2. Remedies Available At Law Are Inadequate To Compensate For OCLC's Injury.

OCLC has incurred substantial and detrimental costs as a result of the cyberattacks and data scraping conducted by Anna's Archive. Rozek Decl., ¶¶ 57, 66. However, the continuing harms suffered by OCLC due to Anna's Archive's illegal conduct cannot be sufficiently compensated by monetary damages. *See S. Glazer's*, 860 F.3d at 852–53. Monetary damages will not adequately measure the damage to OCLC's customer goodwill and membership, the

unknowable loss in sales of other products and services, or the long term detrimental effect on the viability of WorldCat and OCLC's business and its ability to compete that might result from the loss of OCLC's proprietary data and largest and most important investment and source of revenue. *See id.* at 854; *Certified Restoration Dry Cleaning Network*, 511 F.3d at 550. The irreparable injury suffered by OCLC can only be satisfactorily remedied by a complete ceasing of the harvesting, scraping, and dissemination of all illegally procured WorldCat data. This necessary remedy can only be achieved by this Court's issuance of a permanent injunction.

### 3. Considering The Balance Of Hardships Between OCLC And Anna's Archive, A Remedy In Equity Is Warranted.

The entirety of Anna's Archive's "business" is based on illegal conduct. Any alleged hardship suffered by Anna's Archive due to the issuance of a permanent injunction would be negligeable and entirely based upon its own unlawful actions. *See DISH Network, LLC v. Williamson*, No. 3:13-CV-50-TAV-CCS, 2013 WL 6119222, at *6 (E.D. Tenn. Nov. 21, 2013) (considering a defendant's piracy of the plaintiff's services). Anna's Archive provides access to its pirate library for free.[2] *See* Compl., ¶¶ 70, 72, PageID 12–13. Prohibiting Anna's Archive from operating its illegal pirate library that openly violates copyright laws across the world should not be considered a "hardship." A loss of Anna's Archive's ill-begotten gains due to the issuance of a permanent injunction is not the type of hardship that should weigh in Anna's Archive's favor. *See DISH Network*, at *6 ("The only hardship to Defendant from this injunction would be to prevent him from engaging in future illegal activity, so the balance clearly weighs in Plaintiffs' favor."); *Summit Tool Co. v. Xinkong USA, Inc.*, No. 5:20-CV-1182, 2021 WL 3190780, at *7 (N.D. Ohio July 28, 2021) ("Moreover, defendant faces no hardship as a consequence of being enjoined from

---

[2] While Anna's Archive is providing mass downloads for free, Anna's Archive is also leveraging OCLC's WorldCat data to solicit subscription services. Rozek Decl., ¶ 36.

violating federal and state trademark laws."); *Custom Designs of Nashville, Inc. v. Alsa Corp.*, 727 F. Supp. 2d 719, 727 (M.D. Tenn. 2010) ("Plaintiffs suggest that [Defendant] would suffer no hardship other than the loss of a stream of revenue which was provided in the first place by illegal conduct. Such a hardship is not sufficient to defeat the order of an injunction against a defendant.").

Ultimately, whatever limited potential harm that granting injunctive relief could have on Anna's Archive would be of Anna's Archive's own making, given that it actively scraped and harvested WorldCat data for over a year, all while knowing its actions were illegal. *Avery Dennison Corp. v. Kitsonas*, 118 F. Supp. 2d 848, 855 (S.D. Ohio 2000) (finding that the defendant's corporation would not be harmed by injunction because "it has no right to the information in [defendant's employee's] possession" and "[a]ny harm to [defendant's employee] would be as a direct result of his own actions," given that he was aware of the restrictive covenants yet chose to accept employment with defendant's corporation). Even if the court were inclined to find that Anna's Archive could suffer some hardship, the harms that OCLC has suffered far outweigh the harms Anna's Archive would face from having its illegal activities hindered. Accordingly, this factor weighs in favor of granting a permanent injunction in OCLC's favor.

### 4. The Public Interest Would Be Served By A Permanent Injunction.

If this Court were to grant OCLC's request for a permanent injunction, the public interest would be far from disserved. Rather, injunctive relief will advance the public interest by hindering illegal activity, preventing injury to OCLC employees and this community, protecting uninterrupted access to WorldCat, and preserving contractual relationships.

First, the public interest will be served by averting illegal activity. *See DISH Network*, 2013 WL 6119222, at *6 ("The public interest is not disserved by an injunction as it will protect copyrights and help enforce federal law."); *Pashby v. Delia*, 709 F.3d 307, 329 (4th Cir. 2013)

("The public interest always lies with upholding the law[.]") (applying a different multi-factor test for entering a preliminary injunction but discussing the same public-interest prong). Issuance of a permanent injunction will hinder Anna's Archive's continuous illegal activities, including Anna's Archive's mass piracy and copyright infringement activities and its unlawful actions directed at OCLC. As now deemed true, Anna's Archive unlawfully accessed OCLC's servers in violation of Ohio Revised Code § 2913.04 and committed trespass to chattels and conversion when it harvested OCLC's data. Any use or distribution of the illegally obtained data, and any continued data harvesting by Anna's Archive, must be prevented to uphold the law. *See DISH Network, LLC v. De Forest*, No. 1:17-CV-59, 2017 WL 4900374, at *1 (W.D. Mich. May 12, 2017) ("The public's interest is served by protecting intellectual property and enforcing federal law."). Moreover, Anna's Archive has publicly acknowledged that it is using the wrongfully obtained OCLC WorldCat data to further its unlawful copyright infringement and pirate activities. Compl. ¶ 67, PageID 12.[3] Multiple countries and publishers have already recognized the illegality of Anna's Archive's pirate activities, banning its domains. Rozek Decl., ¶ 43. Anna's Archive has been banned in several other countries for its deliberate violations of copyright laws, and publishers are making shutting down Anna's Archive a top priority. *See id.* Therefore, the public interest will be served by an injunction that curtails the continuing harm from Anna's Archive's flagrant disregard for the law.

Second, injunctive relief will prevent significant injury to OCLC's employees. OCLC currently employs over 1,348 workers worldwide and 820 in Ohio. *Id.* ¶ 65. Of OCLC's total workforce, 20% is devoted to the development, procurement, maintenance, improvement, and

---

[3] *See also Introducing the Pirate Library Mirror (EDIT: moved to Anna's Archive): Preserving 7TB of books (that are not in Libgen),* Anna's Blog (July 1, 2022), https://annas-blog.org/blogintroducing.html.

- 13 -

enhancement of OCLC WorldCat records. *Id.* ¶ 18. Anna's Archive's making OCLC's data publicly available for free is detrimental to current and future enrollment in OCLC products and services. *Id.* ¶ 66. It would also harm OCLC's workforce, particularly given the financial importance of WorldCat to OCLC's other products, overall operations, and continued success. *Id.* ¶ 65.

Third, OCLC has ongoing, long-term relationships with its non-profit, government, academic, and library members and customers around the world, and they rely on continued and uninterrupted access to WorldCat's robust catalogue of records to service and support their patrons, students, researchers, and customers. *Id.* ¶¶ 25, 53. WorldCat is a club good, in economic terms, meaning it derives its value through the efforts and investments of OCLC and its members. *Id.* ¶¶ 10, 14. Any unauthorized use by those who do not contribute toward the cost of the providing WorldCat diminishes the ability of members who contribute to enjoy the benefits of WorldCat. *Id.* ¶ 64. Anna's Archive is not authorized to use or incorporate WorldCat data into its websites nor to publicly provide that data for free, but that is exactly what they are doing and what it will continue to do absent injunctive relief. This, in turn, diminishes the overall value of the services OCLC provides, and ultimately harms the non-profit, government, academic, and library institutions that are an essential part of our communities and economies. *See id.* ¶ 60–62, 64, 66.

Finally, under Ohio law, "[p]reserving the sanctity of contractual relations and preventing unfair competition have traditionally been in the public interest." *Blakeman's Valley Office Equip., Inc. v. Bierdeman*, 786 N.E.2d 914, 920 (Ohio Ct. App. 2003); *see also, e.g.*, *Total Quality Logistics, LLC v. Riffe*, No. 1:19-cv-23, 2019 WL 5553293, at *7 (S.D. Ohio Oct. 28, 2019) (citations omitted); *S. Glazer's*, 860 F.3d at 853 ("The public has a strong interest in holding parties to their agreements."). Here, Anna's Archive knowingly breached WorldCat.org's Service Terms

and Conditions. Compl., ¶¶ 122–127, PageID 21–22. Even further, Anna's Archive has tortiously interfered with OCLC's contracts with current and future customers by scraping WorldCat data and offering it for free. *Id.* ¶¶ 135–142, 151–158, PageID 23–26. The public has a strong interest in preserving the sanctity of these contracts and preventing unfair competition by enjoining Anna's Archives' wrongful actions.

## IV. Conclusion

For the foregoing reasons, OCLC respectfully prays that a default judgment be entered in its favor and against defendant Anna's Archive on each of its claims in its Complaint for the requested relief of declaratory judgment, injunctive relief, and monetary damages. While OCLC is confident the requested relief is fully supported by this Motion and the information incorporated herein, if this Court deems it proper, OCLC is prepared to attend a hearing for the purpose of assessing and awarding declaratory and injunctive relief and damages.

Respectfully submitted,

Date: July 5, 2024

*/s/ Jeffrey M. Walker*
Jeffrey M. Walker (0096567), Trial Attorney
Traci L. Martinez (0083989)
Kathryn M. Brown (0100426)
Brittany N. Silverman (0102263)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: +1 614 365 2700
Fax: +1 614 365 2499
jeffrey.walker@squirepb.com
traci.martinez@squirepb.com
kathryn.brown@squirepb.com
brittany.silverman@squirepb.com

*Attorneys for Plaintiff OCLC, Inc.*

- 16 -

## CERTIFICATE OF SERVICE

On July 5, 2024, this document and the accompanying attachment was filed electronically with the Clerk of the United States District Court for the Southern District of Ohio, Eastern Division, which will electronically serve a copy of the foregoing on all counsel of record for all parties, and will be served upon Anna's Archive at the following email addresses:

AnnaArchivist@proton.me
AnnaDMCA@proton.me
AnnaArchivist+security@proton.me
domainabuse@tucows.com

*/s/ Jeffrey M. Walker*
Jeffrey M. Walker

*An Attorney for Plaintiff OCLC, Inc.*