# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **OCLC, Inc.** | **Case No. 2:24-cv-00144-MHW-EDP** |
| **Plaintiff,** | **ORAL ARGUMENT REQUESTED** |
| **v.** | **Judge Michael H. Watson** |
| **ANNA'S ARCHIVE, f/k/a PIRATE LIBRARY MIRROR, et al.,** | **Magistrate Judge Elizabeth A. Preston Deavers** |
| **Defendants.** | |

## PLAINTIFF OCLC, INC.'S MOTION FOR RECONSIDERATION AND PROPOSED CERTIFICATION ORDER

Plaintiff OCLC, Inc. ("OCLC") requests that this Court reconsider its March 21, 2025 Opinion and Order ("Opinion") denying OCLC's Motion for Default Judgment against Defendant Anna's Archive as to four different causes of action: contractual breach, tortious interference of contract, trespass to chattels, and unjust enrichment.[1] As the Opinion indicates, data scraping raises complex, novel legal issues that courts across the country are carefully considering, some of which implicate state-law questions. OCLC also understands that the procedural posture of this case, including the ex parte nature of default judgment proceedings, gives this Court pause. However, the Court need not tread into undecided Ohio law to award OCLC the relief it seeks on those four claims.

As an initial matter, this is not just a data scraping case. Anna's Archive did not limit its wrongful conduct to the traditional data scraping at issue in the cases identified in the Court's Opinion. It did much more. It also engaged in hacking and other activities to access records and

---

[1] OCLC maintains that all its claims are not preempted and are sufficiently pled, but for the purposes of this motion, OCLC only seeks reconsideration of these four claims.

data gated off from what is publicly available on WorldCat.org, including by stealing login credentials from an OCLC member and using those credentials to gain access to and take WorldCat data only available through a paid subscription. The hacking harmed OCLC's physical servers and interrupted WorldCat's operations for OCLC's customers. This clarification on its own merits reconsideration of the Court's Opinion.

As set forth in the Memorandum of Law supporting this Motion, this Court should resolve the federal preemption issues before certifying any state-law questions to the Ohio Supreme Court. OCLC's claims are sufficiently pled to avoid novel questions of Ohio law. OCLC appreciates that the Court has not yet had briefing on these specific issues and submits this Motion and Memorandum to provide additional clarity in the absence of typical adversarial briefing. OCLC also submits the attached proposed certification order as Exhibit 1, as directed, to the extent any state-law questions remain. OCLC requests oral argument so that it may address any questions the Court may have on OCLC's Motion for Default Judgment or this motion for reconsideration.

<div style="margin-left: 50%;">

Respectfully submitted,

*/s/ Jeffrey M. Walker*
Jeffrey M. Walker (0096567), Trial Attorney
Traci L. Martinez (0083989)
Kathryn M. Brown (0100426)
Brittany N. Silverman (0102263)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: +1 614 365 2700
Fax: +1 614 365 2499
jeffrey.walker@squirepb.com
traci.martinez@squirepb.com
kathryn.brown@squirepb.com
brittany.silverman@squirepb.com

*Attorneys for Plaintiff OCLC, Inc.*

</div>

## **MEMORANDUM OF LAW**

In its March 21, 2025 Opinion, this Court determined it would certify issues of state law before resolving whether the Copyright Act preempts OCLC's claims. Op., Dkt. 47, PageID 872–84. It denied without prejudice OCLC's Motion for Default Judgment against Defendant Anna's Archive, a pirate library that hacked and scraped OCLC's WorldCat.org, causing harm to the database itself and interfering with OCLC's operations. *Id.* at 884–85. The Court ordered OCLC to submit a proposed order certifying questions to the Ohio Supreme Court.[1] *Id.*

OCLC requests that the Court reconsider this Opinion, including its determination that certification to the Ohio Supreme Court is necessary before the Court can award OCLC default judgment, for two reasons. First, Sixth Circuit precedent shows that identifying the state-law interests in OCLC's contract and common law claims against Anna's Archive is not a prerequisite for the federal preemption analysis and is unnecessary for the Court to grant default judgment against Anna's Archive. This Court is well-equipped to decide the preemption issue. Moreover, the specific claims for which OCLC seeks reconsideration—breach of contract, tortious interference of contract, trespass to chattels, and unjust enrichment—are not preempted by federal copyright law. *See Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.,* 590 F.3d 381, 389 (6th Cir. 2009) (reconsideration is proper when there is "a need to correct a clear error").

Second, OCLC has sufficiently pled these claims so that this Court need not decide novel questions of Ohio law. The Opinion did not address all theories of liability raised by OCLC, including that Anna's Archive did not just scrape the public face of WorldCat.org, but also managed to harvest data by pinging OCLC's servers directly and hacking WorldCat.org by stealing

---

[1] Today, OCLC voluntarily dismissed Defendant Maria Matienzo so that the litigation focuses on getting a final judgment against Anna's Archive.

user credentials. Many of these theories do not turn on those novel questions. Importantly, OCLC has new evidence supporting its contractual breach claim against Anna's Archive, which further makes it unnecessary to answer any difficult issues of state law. *See id.* (reconsideration is appropriate when there is "new evidence available" or "a need to correct a clear error or prevent manifest injustice").

To the extent the Court disagrees that reconsideration is warranted, OCLC also submits a proposed certification order. That proposal presents two questions for certification, as the Ohio Supreme Court accepts only a handful of certified questions of state law from federal courts each year, and when it does, it typically certifies only one or two questions. Additionally, the Ohio Supreme Court only certifies questions that are "determinative." Ohio Sup. Ct. Rule 9.01(A). OCLC believes that the two proposed questions have the best chance of being accepted because there are only two questions, and they are purely legal and case-determinative.

OCLC's proposal omits questions about Ohio's interests in OCLC's common-law claims. The Opinion suggested that OCLC's claims may be preempted, but that the Court may not conclude the claims are preempted if there is a distinct state-law interest at stake for those claims. *E.g.*, Op., Dkt. 47, PageID 875. The Court sought to certify questions so the Ohio Supreme Court could identify those state-law interests. *E.g.*, *id.* at PageID 876. But because the Opinion observes only that the Copyright Act "*may* preempt" OCLC's claims (*id.* at PageID 875, 877, 882 (emphasis added)), Ohio's interests are not determinative. Including non-determinative questions will make the Ohio Supreme Court less likely to accept any of the certified questions.

**LEGAL ANALYSIS**

**I.    Certification is Unnecessary, and OCLC's Claims Are Not Preempted.**

This Court's opinion chiefly relies on two data scraping cases, *X Corp. v. Bright Data Ltd.*, 733 F. Supp. 3d 832 (N.D. Cal. 2024), and *Snap-on Business Solutions Inc. v. O'Neil & Associates,*

*Inc.*, 708 F. Supp. 2d 669 (N.D. Ohio 2010), in raising its concern that OCLC's claims might be preempted by federal copyright law. Op., Dkt. 47, PageID 875. *Snap-on* considers express preemption under the Copyright Act, 708 F. Supp. 2d at 680–81, while *X Corp.* considers conflict preemption, 33 F. Supp. 3d at 851. Accordingly, this motion addresses whether these two types of preemption require the resolution of state-law questions, specifically, the determination of state-law interests in OCLC's state-law claims (as identified by this Court, Op., Dkt. 47, PageID 875–76), and whether OCLC's state-law claims are preempted by either type of preemption (two issues OCLC has never had the opportunity to brief). Express preemption lacks any state-law question and does not bar OCLC's claims; the same is true for conflict preemption. The Court should conclude OCLC's claims are not preempted.

### A. Express Preemption does not Require Consideration of State-Law Questions or Bar the Four Claims on Which OCLC Seeks Reconsideration.

Express preemption requires interpreting the explicit language of a federal statute that says state law is preempted. *See Tyrrell v. Norfolk S. Ry. Co.*, 248 F.3d 517, 522 (6th Cir. 2001). Under § 301(a) of the Copyright Act, courts apply a two-part test to determine if a state-law claim is expressly preempted: (1) does the at-issue work come "within the scope of the 'subject matter of copyright' as set forth in Sections 102 and 103 of the Copyright Act"; and (2) are "the rights granted under state law [the] equivalent to any of the exclusive rights within the scope of federal copyright protection." *E.g.*, *Stromback v. New Line Cinema*, 384 F.3d 283, 300 (6th Cir. 2004). The equivalency requirement asks whether the state-law claim "assert[s] rights that are 'equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106[.]'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 456 (6th Cir. 2001).

The § 301(a) analysis does not depend on interpreting state-law issues. The first prong asks whether the claim's subject matter fits within the subject matter of the federal Copyright Act. The

3

second prong requires an "extra element" in the state claim not otherwise found in a copyright claim, which "changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Stromback*, 384 F.3d at 301 (citation omitted). The only "interpretation" of state law required is to list the claim's elements. Indeed, no case cited by this Court considering express preemption under the Copyright Act addressed any other state-law question as part of its analysis, nor did they ever identify any state "interests" to apply. *See, e.g.*, *Snap-on*, 708 F. Supp. 2d at 680–81; *Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956, 972 (N.D. Cal. 2024); *Digital Drilling Data Sys., LLC v. Petrolink Servs., Inc.*, 965 F.3d 365, 378–82 (5th Cir. 2020); *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627, 649–50 (E.D. Pa. 2007). There is no state-law question, like a state-law interests question, to certify for express preemption.

OCLC's four state-law claims raised by this motion are not expressly preempted by § 301(a). The first step of the test is easy. OCLC does not claim here that its WorldCat database is within the subject matter of the Copyright Act. The WorldCat database is not an original work of authorship under § 102. Nor is the WorldCat database derivative of an original work under §103.

To create WorldCat and its records, OCLC applies its own enhancements to bibliographic data, none of which is original authorship but is instead factual data. OCLC's work ensures that its data and records are higher quality with fewer duplicates, better information, and more searchable records. WorldCat is a procedure, process, or system that makes the data and records far more useful and accessible for WorldCat customers. Such a database has been expressly carved out from copyright protection. *See* 17 U.S.C. § 201(b) (copyright protection does not extend to "any idea, procedure, process, system, [or] method of operation"). This is why OCLC does not allege any Copyright Act violations in the instant matter.

But even if WorldCat records and data fell within the subject matter of federal copyright law, OCLC's four claims at issue in this motion do not meet the second prong of the § 301(a) analysis because its Ohio law claims are not mere equivalents of federal copyright claims. Section 106 of the Copyright Act, as relevant here, prohibits the reproduction of, preparation of derivative works from, and distribution of copyrighted works. *Id.* at § 106. Each of the claims for which OCLC now requests default judgment requires additional elements besides the reproduction of, preparation of derivative works from, and distribution of OCLC's WorldCat records and data. For this reason as well, they are not preempted by the Copyright Act.

***Contractual Breach.*** OCLC's contract claim requires proof of an offer and acceptance via the WorldCat.org Terms and Conditions. Section 106 contains no such elements. Notably, in *Snap-on*, the court did not even raise preemption of the plaintiff's contractual breach claim. 708 F. Supp. 2d at 681–83. The Sixth Circuit has held that the Copyright Act does not expressly preempt contract claims. *See Wrench*, 256 F.3d at 456–57; *Lynn v. Sure-Fire Music Co., Inc.*, 237 F. App'x 49, 54 (6th Cir. 2007); *Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 437 (6th Cir. 2009).

***Tortious interference of contract.*** The Opinion correctly did not identify OCLC's tortious interference of contract claim as being preempted by the Copyright Act. Though tortious interference claims are sometimes preempted under § 301(a), *see, e.g.*, *Stromback*, 384 F.3d at 306, OCLC's claim against Anna's Archive contains an extra element that changes the character of the claim. Here, OCLC alleges that Anna's Archive's hacking and scraping prevented OCLC from protecting its customers' data and impeded OCLC's ability to operate, which led *OCLC* to be unable to provide services for a time to its customers in violation of the WorldCat Policy. Compl., Dkt. 1, ¶¶ 82–83; William Rozek Decl., Dkt. 40-1, ¶¶ 55–56. OCLC thus alleges that Anna's Archive's hacking and scraping caused *OCLC* to breach its contractual obligations owed

5

to its customers. Compl., Dkt. 1, ¶¶ 119, 138. This is a distinct, additional element of proof that distinguishes OCLC's tortious interference of contract claim from other tortious interference claims that rely exclusively on the copying and distribution of information or works. *See Jedson Eng'g, Inc. v. Spirit Constr. Servs., Inc.*, No. 1:08CV413, 2010 WL 11538008, at *3 (S.D. Ohio Mar. 17, 2010) (soliciting information is an element distinct from reproducing, distributing, or displaying information).

*Trespass to chattels.* OCLC's trespass to chattels claim is also not preempted. OCLC alleges that Anna's Archive's hacking and scraping interfered with and damaged not only WorldCat.org and WorldCat data and records, but also OCLC's *physical servers and networks*. Compl., Dkt. 1, ¶¶ 81-82; Rozek Decl., Dkt. 40-1, ¶¶ 44–54. When scraping has damaged or slowed physical servers and networks, courts (including federal courts in Ohio) have found trespass to chattels. *See CompuServe Inc. v. Cyber Promotions, Inc*., 962 F. Supp. 1015, 1021–22 (S.D. Ohio 1997) (defendant's use of plaintiff's servers diminished the value of plaintiff's computer equipment by draining the computers' processing power and harmed plaintiff's reputation with customers); *Snap-on*, 708 F. Supp. 2d at 678–80 (defendant's access to plaintiff's servers impaired the servers' condition, quality, or value as the scraper program crashed the website and caused slow run times). In *Snap-on*, the Northern District of Ohio highlighted that contacts with a physical computer server that damaged the server and temporarily deprived the plaintiff of the use of the servers amount to physical trespass, although the damage and deprivation was not physical damage to the server. 708 F. Supp. 2d at 679–80. This component of interference with a physical object is fundamentally different than the elements of a Copyright Act violation.

*Unjust Enrichment.* As an alternative to contractual breach, OCLC's unjust enrichment claim is not preempted. Here OCLC does not allege injury from Anna's Archive based only on its

6

copying and distribution of WorldCat.org data from scraping; OCLC further alleges that Anna's Archive stole login credentials from an OCLC member and used those credentials to take WorldCat data beyond that which is publicly accessible. Compl., Dkt. 1, ¶¶ 78–80. This information in particular is protected by subscriptions and is gated off from publicly available data. *Id.* ¶¶ 44, 52, 106. Accordingly, OCLC's unjust enrichment claims involve elements beyond the copying and distribution of WorldCat data—it also includes Anna's Archive's improper and unlawful access to a subscription-protected variant of WorldCat.org, which gave it access to more robust WorldCat data. *Id.* ¶¶ 78–80; *cf. Snap-on*, 708 F. Supp. 2d at 681 (observing that not all unjust enrichment claims are preempted by the Copyright Act). The Copyright Act does not pertain to hacking or the theft of user credentials to access portions of a website that are protected.

## B. Conflict Preemption does not Turn on State-Law Interests or Preempt OCLC's Claims.

Conflict preemption, a type of implied preemption, occurs "to the extent [state law] actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Fenner v. Gen. Motors, LLC*, 113 F.4th 585, 594 (6th Cir. 2024). The Sixth Circuit has been reluctant to apply obstacle preemption, holding that "[t]here is a 'high threshold' for" an argument that a state claim is "obstacle preempted," *id.* (citation omitted), and observing that "[s]everal justices [of the United States Supreme Court] view obstacle preemption with more skepticism because, unlike other types of preemption, it doesn't require an express statutory basis or a clear legal conflict," *Dayton Power & Light Co. v. Fed. Energy Reg. Comm'n*, 126 F.4th 1107, 1128 (6th Cir. 2025).

Neither basis of conflict preemption involves identifying state-law interests in state-law claims—the specific question identified by this Court. Conflict preemption asks whether (1) it is

possible to comply with both state and federal law at the same time, and (2) whether the state law is an obstacle to the federal law. *See, e.g.*, *Fenner*, 113 F.4th at 594. Neither basis requires anything but an accurate understanding of the state law claim itself. Put differently, the Court does not need to identify state-law interests in the common-law claims to decide whether a claim is preempted by either type of conflict preemption. Accordingly, the state-law interest question identified by this Court is not determinative to the conflict preemption analysis, nor will that question "materially" change the preemption analysis such that this Court should abstain from deciding that OCLC's claims are not federally preempted. *See* Op., Dkt. 47, PageID 876.

*X Corp.*, the only data scraping case in the Opinion that addresses conflict preemption, confirms that deciding whether conflict preemption bars a claim does not depend on resolving a state-law question. In *X Corp.*, the district court considered obstacle preemption, specifically. 33 F. Supp. 3d at 851. The court concluded that obstacle preemption applied, *i.e.*, that the state-law claims actually stood as obstacles to the purposes of the Copyright Act. *Id.* Only then did the court evaluate whether there were state-law interests distinct from Congress's objectives in enacting the Copyright Act that would counsel against applying obstacle preemption. *Id.* at 852–53. In contrast, the Opinion in this case did not first conclude that there was obstacle preemption, and as set forth below, there is no obstacle preemption. *See infra*. Therefore, Ohio's interests in OCLC's common-law claims are not determinative questions in this case.

Moreover, OCLC's claims are not subject to conflict preemption based on federal copyright law. There is no suggestion in this case that Anna's Archive cannot comply with the Copyright Act while complying with Ohio state law. Anna's Archive can easily avoid copying, distributing, and creating derivative works that are copyrighted while not hacking and scraping WorldCat.org, the basis of OCLC's claims for which it seeks reconsideration. Indeed, if Anna's

Archive had not scraped or hacked WorldCat.org, Anna's Archive would not have violated either Ohio or federal law as to OCLC's WorldCat.org.

This leaves only obstacle preemption. Ohio's common-law claims for breach of contract, tortious interference of contract, trespass to chattels, and unjust enrichment do not stand as obstacles to the accomplishment of the full purposes and objectives of Congress when it enacted the Copyright Act. These foundational common-law claims are traditionally within state purview, and so this Court's preemption analysis must be narrowly confined. *See Fenner*, 113 F.4th at 593–94 ("[I]mplied preemption analysis does not justify a freewheeling judicial inquiry into whether a state statute [or other state law] is in tension with federal objectives; such an endeavor would undercut that principle that it is Congress rather than the courts that preempts state law." (cleaned up)). OCLC's claims are premised on the hacking of OCLC's servers and WorldCat.org with credentials that Anna's Archive wrongfully obtained, *and* on the scraping of data that is *not* within the subject matter of the Copyright Act.

For this reason, OCLC's state-law claims do not conflict with federal copyright claims—both may exist simultaneously because the subject of OCLC's claims does not pertain to copyrightable works. Because WorldCat data and records, as well as hacking, are well beyond the subject matter of the Copyright Act, OCLC's claims cannot be an obstacle to any congressional objectives memorialized in the Copyright Act.

The Opinion cites to *X Corp.* to conclude that OCLC's data scraping claims may be preempted by federal contract law (leading to a final step of the obstacle preemption analysis whether there is a separate state-law interest in the state claims), but *X Corp.'s* facts are just too different to be applicable. *X Corp.* involved a social media website full of posts of original works that were subject to copyright protection, such as pictures and videos. *See* 733 F. Supp. 3d at 851–

52. There, users posted the material that X Corp. sought to contractually protect, though the users' posts were intended to be public. *Id.* at 848–49. The analysis in *X Corp.* expressly turns on the existence of copyright-protected works to conclude obstacle preemption applied, specifically, interference with copyright owners' exclusive rights and the fair use doctrine. *Id.* at 851–52. And X Corp. sought to claim rights over user created content, like posts. *Id.*

This case involves a database of bibliographic records enhanced and improved by OCLC. In contrast to *X Corp.*, the WorldCat database does not contain any records or data that are themselves the subject of copyright protections. WorldCat records *en masse* are not intended for public consumption without a paid subscription, unlike *X Corp.* And the WorldCat records that Anna's Archive hacked and scraped contain data that would ***not*** otherwise be available to a member of the public searching WorldCat. Compl., Dkt. 1, ¶¶ 76–80, 106.

OCLC does not claim rights over user created or contributed content. Instead, OCLC seeks to protect WorldCat records and data, which is the product of OCLC's enhancements, enrichments, and organization of underlying bibliographic data, some of which OCLC itself creates. OCLC has no claim on the underlying bibliographic data supplied by customers; libraries retain all rights, title, and interest in their contributed bibliographic data. *See id.* ¶¶ 34, 37; WorldCat.org Terms & Conditions, Dkt. 1-2. OCLC's WorldCat.org Terms and Conditions do not even provide a license to use underlying bibliographic data; rather, they grant users a non-exclusive license to use OCLC's WorldCat records and data, which are the product of OCLC's enhancements, improvements, and modifications. Compl., Dkt. 1, ¶ 58.

Importantly, *X Corp.* does not hold that obstacle preemption applies to a non-copyrightable database like WorldCat. *X Corp.* concluded that the claims interfered with Congress's intent to have certain data be "free from restraint" because X Corp. claimed a "de facto copyright" in the

10

form of a non-exclusive license to use data from users. 733 F. Supp. 3d at 851–52. (The WorldCat.org Terms and Conditions do not operate in the same manner.) Applying the *X Corp.* court's result to this case, to hold that all information and data that is *not* copyrighted is still preempted by the Copyright Act, would be absurd. In fact, no court in the Sixth Circuit has applied obstacle preemption to the Copyright Act in this manner.

Such an interpretation would, in any case, be contrary to Sixth Circuit precedent. As noted *supra*, the Sixth Circuit only sparingly applies obstacle preemption due to the high threshold required by the Court's precedent. *Fenner*, 113 F.4th at 594. Conflict preemption "should be narrow and precise, to prevent the diminution of the role Congress reserved to the States while at the same time preserving the federal role." *Downhour v. Somani*, 85 F.3d 261, 266 (6th Cir. 1996) (citations omitted).

*X Corp.* does not apply the Sixth Circuit's "high threshold," nor does it discuss whether Congress intended, through the Copyright Act, to so thoroughly obliterate all state-law contractual or tort claims that deal at all with the use, distribution, copying, etc. of information—copyrightable or otherwise. Though Congress did not grant copyright protection to every form of information, there is also no indication that Congress intended to foreclose all common-law relief to non-copyrightable information. Applying the Sixth Circuit's "high threshold" for conflict preemption, this Court should hold that OCLC's claims are not barred by obstacle preemption.

## II. The Court Should Grant Default Judgment on OCLC's Claims.

OCLC has sufficiently pled claims in a manner that does not require wading into unanswered questions of state law. The Opinion speculated that some of OCLC's claims against Anna's Archive may fail due to a lack of factual allegations. Op., Dkt. 47, PageID 875. Specifically, it suggested that (1) the breach of contract claim failed to plead that Anna's Archive had actual knowledge of OCLC's WorldCat.org Terms and Conditions; (2) the unjust enrichment

claim failed because Anna's Archive only obtained publicly available data from WorldCat.org; (3) tortious interference with contract failed because OCLC did not allege any actual breach of contract; and (4) trespass to chattels failed because OCLC did not allege any facts that Anna's Archive's data scraping dispossessed OCLC of its data or servers. *See id.*

As set forth below, OCLC's Complaint specifically alleges each of those facts—and does so in a manner that does not require certification of any state-law question to the Ohio Supreme Court. On a motion for default judgment, the question is whether the well-pled facts, accepted as true, demonstrate there is a legitimate cause of action. *See New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 410 (6th Cir. 2022); *Wood v. Bronzie*, No. 1:20-CV-231, 2020 WL 4015247, at *1 (S.D. Ohio July 16, 2020) (finding that liability may be shown by well-pled allegations). A court may consider the allegations set forth in the complaint in its determination of liability, as well as additional evidence filed in support of the motion for default judgment. *E.g.*, *Joe Hand Promotions, Inc. v. Mathews*, No. 2:22-CV-2593, 2023 WL 2727251, at *2 (S.D. Ohio Mar. 31, 2023). A court may also grant default judgment on fewer than all claims raised in the complaint.[2] *See, e.g.*, *RJ Kagan Consulting, LLC v. Amarantus Bioscience Holdings, LLC*, No. 1:21-CV-78, 2023 WL 2163131 (S.D. Ohio Feb. 22, 2023). OCLC has sufficiently alleged facts and provided evidence that give rise to viable claims for relief under the default judgment standard for the four claims on which OCLC seeks reconsideration.

### A. OCLC Sufficiently Alleged Facts to Support That Anna's Archive had Actual Knowledge of OCLC's WorldCat.org Terms and Conditions.

OCLC properly pled a breach of contract claim in its Complaint. In its Opinion, the Court questioned whether OCLC's browsewrap agreement, *i.e.,* WorldCat.org's Terms and Conditions (the "Terms and Conditions"), is binding upon Defendants. Op., Dkt. 47, PageID 873–74.

---

[2] Alternatively, OCLC is willing to withdraw its Motion for Default Judgment on the other claims.

According to the Court, "courts enforce browsewrap terms only if the website user had actual or constructive knowledge of a site's terms and conditions prior to using the site." *Id.* at PageID 874. In the event that Ohio courts do apply an actual knowledge standard, the Court asserted that "OCLC does not plead that Defendant had constructive (or actual) knowledge of the Terms and Conditions." *Id.* OCLC did in fact plead actual knowledge in its Complaint, satisfying the most stringent standard and requiring no analysis of Ohio's choice in standard. In addition, OCLC has uncovered new evidence proving that Anna's Archive knowingly breached the Terms and Conditions, as Anna's Archive continued to scrape WorldCat.org *following the initiation of this lawsuit*.

As a preliminary matter, some courts, state and federal, have already applied the-actual-or-constructive knowledge standard to browsewrap agreements under Ohio law. *E.g.*, *Rudolph v. Wright Patt Credit Union*, 175 N.E.3d 636, 651–52 (Ohio Ct. App. 2021); *Walker v. Nautilus, Inc.*, 541 F. Supp. 3d 836, 841 (S.D. Ohio 2021). This Court could follow suit.

In any event, OCLC pleads that Anna's Archive had actual knowledge of the Terms and Conditions. OCLC alleges when an individual accesses WorldCat.org, the individual agrees to OCLC's Terms and Conditions. Compl., Dkt. 1, ¶ 58. Through the Terms and Conditions, OCLC grants the user a license to use WorldCat data available on WorldCat.org for a limited purpose, and in exchange, the individual agrees, among other limitations, not to use the data for commercial use; not to harvest "material amounts" of data; not to distribute, display, or disclose the data; and not to store the data. *Id.*

OCLC then alleges specific facts on how Anna's Archive showcased their actual knowledge of the protections granted by these Terms and Conditions through its own blog posts:

89. And "[o]ver the past year, we've meticulously scraped all WorldCat records. At first, we hit a lucky break. WorldCat was just rolling out their complete

13

website redesign (in Aug 2022). This included a substantial overhaul of their backend systems, introducing many security flaws. We immediately seized the opportunity, and were able scrape hundreds of millions (!) of records in mere days."

90.     Defendants acknowledged that WorldCat is a "proprietary database" in which OCLC "aggregates metadata records from libraries all over the world, in exchange for giving those libraries access to the full dataset, and having them show up in end-users' search results." "Even though OCLC is a non-profit, their business model requires protecting their database. Well. We're sorry to say, friends at OCLC, we're giving it all away. :-)"

*Id.* ¶¶ 89–90; *see also id.* ¶ 106 (citing a post from Anna's Archive, where it publicly acknowledges that the WorldCat data was "locked up" prior to Defendant's "liberation").

Accepting the Anna's Archive admissions alleged by OCLC as true, Defendants collectively admitted that they are aware that the WorldCat data is protected, and that Defendants had to circumvent security measures to obtain the data. This is a direct acknowledgement, or in other words, a demonstration of actual knowledge, of the limits set forth in the Terms and Conditions for a user's use of WorldCat data. These facts create a reasonable inference that Anna's Archive had actual knowledge of the Terms and Conditions. Given that OCLC adequately pled in its Complaint that Anna's Archive had actual knowledge of the Terms and Conditions, the highest possible standard for knowledge, this Court need not decide any novel issues of state law on knowledge.

Reconsideration is also appropriate when there is "new evidence available." *Louisville/Jefferson Cnty. Metro Gov't*, 590 F.3d at 389. Anna's Archive has been aware of this lawsuit since at least February 8, 2024, and thus, has had knowledge of the existence of the Terms and Conditions since that date. As set forth in OCLC's Motion for Default Judgment, on February 8, 2024, Anna's Archive publicly acknowledged this lawsuit on the social media site Reddit.com.[3]

---

[3] "Lawsuit Accused Anna's Archive of Hacking WorldCat, Stealing 2.2 TB Data," *Reddit.com* ("Thanks! We're not making any public statements about the lawsuit but rest assured we're fine."),

OCLC subsequently served Anna's Archive with the Complaint on March 28, 2024, and before both dates, OCLC emailed a cease-and-desist letter to Anna's Archive in October 2023, informing it of its misconduct. *See* Kathryn M. Brown Decl., Dkt. 17, ¶ 5; Mot. to Serve by Email, Dkt. 9; Cease and Desist Letter, Dkt. 9-2, PageID 118–20 (warning Anna's Archive that its "activities are . . . illegal and violate OCLC Worldcat.org Services Terms and Conditions"). However, Anna's Archive continued to scrape WorldCat data from WorldCat.org even after it had been put on notice of its breach of the Terms and Conditions. In a blog post, Anna's Archive **admitted to scraping WorldCat.org again in December 2024**.[4] This is concrete evidence that Anna's Archive had **actual** knowledge of the Terms and Conditions, knew scraping WorldCat.org was in violation of the Terms and Conditions, and still decided to do so. This new evidence shows that OCLC's breach of contract claim against Anna's Archive should proceed to default judgment.[5]

### B. OCLC Sufficiently Alleged an Unjust Enrichment Claim.

OCLC's Complaint also successfully pled an unjust enrichment claim as an alternative to OCLC's breach of contract claim. The Opinion notes that it is not clear under Ohio law whether, or when, it is unjust to retain publicly available data. Op., Dkt. 47, PageID 876–77. However, OCLC has set forth clearly in its Complaint that Defendants' intrusion into its WorldCat data and servers was more than merely accessing and harvesting publicly available data—it was also hacking via wrongfully obtained user credentials and access to *non*-public data by pinging OCLC's servers. Thus, it is not necessary to certify a question addressing publicly available information when the Court can grant default judgment upon OCLC's theory of unjust enrichment that relies

---

https://www.reddit.com/r/Annas_Archive/comments/1alglxg/lawsuit_accuses_annas_archive_of _hacking_worldcat/ (last visited Apr. 11, 2025).
[4] *Anna's Archive*, https://annas-archive.org/blog/all-isbns.html (last visited Apr. 11, 2025).
[5] In the alternative, OCLC respectfully requests that the Court grant OCLC leave to amend its Complaint to include these additional facts.

on scraping data from WorldCat.org, taking data protected behind a subscription wall through hacking, and the misuse of an OCLC member's stolen login credentials.

It is true Anna's Archive scraped and harvested publicly available data from WorldCat.org using bots (automated software applications). Compl., Dkt. 1, ¶¶ 76, 77. But, as also pled in OCLC's Complaint, "[t]he bots also harvested data from WorldCat.org by pretending to be an internet browser, directly calling or 'pinging' OCLC's servers, and bypassing the search or user interface, of WorldCat.org. More robust WorldCat data was harvested directly from OCLC's servers*, including enriched data not available through the WorldCat.org user interface*." *Id.* ¶ 78 (emphasis added). Further, OCLC alleged that:

> 79. Finally, WorldCat data was harvested from a member's website incorporating WorldCat Discovery Services, a subscription-based variation of WorldCat.org that is available only to a member's patrons. Again, the hacker pinged OCLC's servers to harvest WorldCat records directly from the servers. To do this through WorldCat Discovery Services/FirstSearch, the hacker obtained and used the member's credentials to authenticate the requests to the server as a member library.
>
> 80. From WorldCat Discovery Services, hackers harvested 2 million richer WorldCat records *that included data not available in WorldCat.org.* This hacking method resulted in the harvesting of some of OCLC's most proprietary fields of WorldCat data.

*Id.* ¶¶ 79–80 (emphasis added). Anna's Archive, as pled in the Complaint, itself, recognized that it hacked WorldCat.org and took WorldCat data that was not publicly available. *Id.* ¶ 106 ("Even though it was a small tragedy that your data was locked up…we could not have done it without the decades of hard work you put into building the collections that we now liberate.").

As alleged by OCLC, it would be unjust for Anna's Archive to retain the benefit of the WorldCat records and data because Anna's Archive is not only avoiding paying for a membership, which would have granted it access to the non-public WorldCat data it improperly obtained, but Anna's Archive acted in bad faith by exploiting its access to WorldCat data with the specific intent

16

to hack OCLC, scrape data, and give it away for "free." *Id.* ¶¶ 10, 12, 70, 86, 90, 93, 131–132. This Court should, thus, grant OCLC default judgment against Anna's Archive on its unjust enrichment claim in the alternative to its contract claim.

### C. OCLC's Complaint Includes Facts Sufficient to Show Tortious Interference with Contract.

OCLC adequately pled in its Complaint that Anna's Archive's tortiously interfered with OCLC's contracts with its members. The Court takes issue with OCLC's tortious interference claim on two fronts—OCLC did not plead an actual breach of contract, nor is it clear if interface data scraping is without justification. Op., Dkt. 47, PageID 878. Respectfully, neither contention is correct.

First, OCLC sufficiently alleged that Anna's Archive procured OCLC's breach of its obligations to its members under OCLC's Rights and Responsibilities ("WorldCat Policy") in its Complaint. The Complaint asserts that "over 10,000 libraries have subscriptions to use WorldCat." Compl., Dkt. 1, ¶ 31. These member libraries must agree to OCLC's contractual requirements to have access to the entire WorldCat database, including the WorldCat Rights and Responsibilities. *Id.* ¶ 42. "In turn, OCLC agrees to maintain the exceptionally high quality of WorldCat data, enrich the data, make it available in WorldCat.org for discovery purposes, i.e., so that individuals can easily search member libraries' catalogues, and otherwise 'use member-contributed data to support its public purposes and to benefit the cooperative.'" *Id.* ¶ 43. OCLC, thus, breached its obligations when Defendant's scraped and hacked WorldCat.org.

The Complaint alleges that OCLC's customers experienced many significant disruptions in paid services during and following the cyberattack as a result of Anna's Archive's hacking attacks on WorldCat.org. *Id.* ¶ 82. Specifically, OCLC's customers experienced more than 560 hours of disrupted, degraded, and unavailable services due to the attacks. Rozek Decl., Dkt. 40-1,

¶ 55. OCLC customers entered 600 service tickets between August 2022 and October 2023, 134 of which were entered on October 26, 2022 alone due to search errors caused by Anna's Archive's actions. *Id.* ¶ 56. In addition, "[d]uring this time, customers threatened and likely did cancel their products and services with OCLC due to these disruptions." Compl., Dkt. 1, ¶ 83. Moreover, OCLC is in continuing violation of its obligation to protect the member-shared data as Anna's Archive is offering WorldCat data *en masse* for free. *See id.* ¶¶ 92–99. As such, the Complaint sets forth actual breaches of contracts by OCLC with OCLC's customers, and OCLC's filing of this lawsuit and pursuit of default judgment against Anna's Archive is a key part of OCLC's efforts to fulfill its commitments to WorldCat customers and to prevent further abuse of WorldCat records and OCLC's systems and servers by Anna's Archive or similar actors.

Second, as described in Part II.B.2., OCLC has not solely alleged in its Complaint that Anna's Archive's improper (*i.e.*, unjust) interference was surface-level data scraping of a public-facing website. Rather, the intrusion went far beyond this, extending to the hacking of OCLC and then the harvesting of its proprietary data. *Id.* ¶¶ 78–80. Anna's Archive, itself, recognizes this fact. *Id.* ¶ 106. Thus, similarly to OCLC's unjust enrichment claim, the Court need not certify to the Court a question as to whether data scraping by itself is without justification because whether coopting user credentials to access otherwise protected data is clearly without justification. *See Havensure, LLC v. Prudential Ins. Co. of Am.*, 595 F.3d 312, 315–16 (6th Cir. 2010) (listing the factors Ohio courts consider to determine if a defendant's interference lacks justification). Accordingly, the elements of a claim for tortious interference with contract are sufficiently pled in OCLC's Complaint and this Court may grant default judgment on this claim without asking the Ohio Supreme Court to address whether scraping of public information alone is unjustified.

**D. OCLC's Trespass to Chattels Claim Is Sufficiently Alleged.**

OCLC has pled facts sufficient to state a claim for trespass to chattels. In its Opinion, the Court states that "[t]o make a claim for trespass, OCLC must show it had a possessory interest in chattel and that Defendants either (1) dispossessed OCLC of the chattel; (2) impaired the chattel's condition, quality, or value; (3) deprived OCLC of the chattel's use for a substantial time; or (4) harmed OCLC or something in which OCLC had a legally protected interest." Op., Dkt. 47, PageID 880. While the Court does not dispute OCLC has a possessory interest in its data and servers, the Court asserts that OCLC does not "elaborate on how Defendants' data scraping 'dispossessed' or 'deprived' OCLC of its chattels" and that "would ordinarily doom OCLC's trespass claim." *Id.*

But OCLC did sufficiently allege in its Complaint that it was "dispossessed" or "deprived" of its chattels. In its Complaint, OCLC asserts that Anna's Archive's intermeddling materially damaged OCLC's servers and infrastructure. For instance, the Complaint includes the fact that the attacks substantially affected the performance of OCLC's systems and servers, requiring around-the-clock efforts from November 2022 to March 2023 to prevent services outages and maintain the production systems' performance for customers. Compl., Dkt.1, ¶ 81. In fact, OCLC had to divert its full-time employees to work against the attacks as well as engage various companies to assist in preventing the attacks and repairing OCLC's network infrastructure. Rozek Decl., Dkt. 40-1, ¶¶ 45, 47. There was such a disturbance to OCLC's servers that "OCLC's customers experienced many significant disruptions in paid services . . . requiring OCLC to create system workarounds to ensure services functioned." Compl., ¶ 82; *see also* Rozek Decl., Dkt. 40-1, ¶¶ 55, 56. To maintain service to its customers, OCLC had to purchase 60 new physical servers due to the damage and strain caused by Anna's Archive's attacks on OCLC's original servers, costing

OCLC $1,548,643. Rozek Decl., Dkt. 40-1, ¶ 54. As recognized in the Court's Opinion, this is enough to "dispossess" or "deprive" OCLC of its chattels. Op., Dkt. 47, PageID 881.

Moreover, trespass to chattels is not only proven by "dispossessing" or "depriving" OCLC of its chattels. As the Court recognizes in its Opinion, OCLC's trespass to chattels claim could also be viable if OCLC alleged that Anna's Archive did any of the above four actions. *Id.* at PageID 880. OCLC's Complaint explicitly alleges that "Defendants' trespass to WorldCat data and OCLC's servers and related infrastructure has impaired its condition, quality, and/or value by, including but not limited to, offering WorldCat data for public download, and damaging OCLC's servers and related infrastructure and reputation with its customers." Compl., Dkt. 1, ¶ 186; *see also* Rozek Decl., Dkt. 40-1, ¶ 55 ("OCLC generally saw a loss of good will with regard to its suite of products related to WorldCat.org."). Courts have found that these facts are enough to establish a trespass to chattels claim. *See CompuServe*, 962 F. Supp. at 1021–22; *Snap-on*, 708 F. Supp. 2d at 678–80. Here, OCLC spent "$5,333,064 to respond to and mitigate the harm from Anna's Archive's almost yearlong attack," demonstrating the damage to OCLC's servers and network, including substantial slowdowns and interruptions. Rozek Decl., Dkt. 40-1, ¶ 57. The facts alleged in OCLC's Complaint go beyond the requisites needed to state a viable trespass to chattels claim against Anna's Archive. Accordingly, the Court can grant default judgment upon this claim without wading into whether scraping of public websites alone constitutes trespass to chattels.

## CONCLUSION

For the foregoing reasons, Plaintiff OCLC, Inc. requests that this Court reconsider its March 21, 2025 Opinion denying OCLC's Motion for Default Judgment against Anna's Archive. If the Court declines to reconsider its decision in full or in part, OCLC respectfully requests this Court consider narrowing the number of questions certified to the Ohio Supreme Court in accordance with the Proposed Certification Order attached to this Motion.

Respectfully submitted,

*/s/ Jeffrey M. Walker*
Jeffrey M. Walker (0096567), Trial Attorney
Traci L. Martinez (0083989)
Kathryn M. Brown (0100426)
Brittany N. Silverman (0102263)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: +1 614 365 2700
Fax: +1 614 365 2499
jeffrey.walker@squirepb.com
traci.martinez@squirepb.com
kathryn.brown@squirepb.com
brittany.silverman@squirepb.com

*Attorneys for Plaintiff OCLC, Inc.*

## **CERTIFICATE OF SERVICE**

On April 11, 2025, this document and the accompanying attachment was filed electronically with the Clerk of the United States District Court for the Southern District of Ohio, Eastern Division, which will electronically serve a copy of the foregoing on all counsel of record for all parties, and will be served upon Anna's Archive at the following email addresses:

AnnaArchivist@proton.me
AnnaDMCA@proton.me
AnnaArchivist+security@proton.me
domainabuse@tucows.com

*/s/ Jeffrey M. Walker*
Jeffrey M. Walker
*An Attorney for Plaintiff OCLC, Inc.*