# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| OCLC, Inc.<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANNA'S ARCHIVE, f/k/a PIRATE LIBRARY MIRROR, et al.,<br><br>　　　　Defendants. | Case No. 2:24-cv-00144-MHW-EDP<br><br><br>Judge Michael H. Watson<br><br>Magistrate Judge Elizabeth A. Preston Deavers |

## [PROPOSED] CERTIFICATION ORDER

MICHAEL H. WATSON, UNITED STATES DISTRICT COURT JUDGE:

Under Ohio Supreme Court Rule of Practice 9.01, this Court certifies two questions of Ohio law to the Ohio Supreme Court. This Court provides the following information:

**I.   Name of the Case**

*OCLC, Inc. v. Anna's Archive, f/k/a Pirate Library Mirror, et al.*, Case No. 2:24-cv-00144-MHW-EDP, United States Southern District of Ohio.

**II.   Statement of Facts**

OCLC provides the digital infrastructure and services for libraries to create and share bibliographic records through WorldCat—the world's most comprehensive database of information about library collections, built by OCLC and thousands of library members. Compl., Dkt. 1, ¶¶ 1–2, 30, 33–34. OCLC alleges that its members must have a paid subscription to use WorldCat. *Id.* ¶ 44. Members must also agree to OCLC's contractual requirements, including the WorldCat Rights and Responsibilities. *Id.* ¶ 42. OCLC asserts in its Complaint that, in turn, OCLC agrees to maintain the WorldCat data, enrich the data, make it available in WorldCat.org for

discovery purposes, and otherwise "use member-contributed data to support its public purposes and to benefit the cooperative." *Id.* ¶ 43.

WorldCat.org is the world's largest library catalog website. *Id.* ¶ 46. Individuals use the WorldCat.org search engine to query library holdings represented in the WorldCat database. *Id.* ¶ 46–47. According to OCLC's Complaint, when an individual accesses WorldCat.org, the individual agrees to a browsewrap agreement—OCLC's WorldCat.org Services Terms and Conditions ("Terms and Conditions"). *Id.* ¶ 58. Through the Terms and Conditions, OCLC grants the individual a license to use WorldCat data available on WorldCat.org for a limited purpose, and in exchange, the individual agrees, among other limitations, not to use the data for commercial use; not to harvest "material amounts" of data; not to distribute, display, or disclose the data; and not to store the data. *Id.*

On January 12, 2024, OCLC, Inc. filed this action against Defendants Anna's Archive, Maria Matienzo, and John Does #1–20 due to a series of cyberattacks on OCLC's WorldCat.org in 2022 and 2023. Compl., Dkt. 1. As alleged in OCLC's Complaint, through these attacks, hackers harvested WorldCat data by scraping WorldCat.org (*i.e.*, data scraping) and calling OCLC's servers to harvest data, stealing proprietary, enriched, and aggregated data. *Id.* ¶¶ 76–78. Hackers also surreptitiously obtained a member's login credentials, which they used to steal WorldCat data from a member university's subscription-based version of WorldCat.org. *Id.* ¶¶ 79–80. The hackers again pinged OCLC's Ohio servers, but this time, they could authenticate these requests with the member's compromised credentials. *Id.* OCLC asserts that the hacking attacks materially affected OCLC's production systems and servers, requiring around-the-clock efforts from November 2022 to March 2023 to attempt to limit service outages and slowdowns, and maintain the production systems' performance for customers. *Id.* ¶ 81. OCLC alleges that customers still

experienced significant disruptions in paid services as a result of the attacks, requiring OCLC to create system workarounds to ensure services functioned. *Id.* ¶ 82.

According to OCLC's Complaint, Anna's Archive took credit for the cyberattacks in an October 2023 blog post, stating "[o]ver the past year, we've meticulously scraped all WorldCat records" by taking advantage of "security flaws" OCLC allegedly had in its "backend systems." *Id.* ¶¶ 10, 86, 89. In the blog post, Anna's Archive explained that it stole 2.2 terabytes of WorldCat data from WorldCat.org to "create a TODO list of remaining books" to pirate. *Id.* ¶ 87–91. Anna's Archive incorporated the WorldCat data into its search engine, made the data available *en masse* for free, and encouraged its users to download and analyze the data by creating a "mini-competition for data scientists." *Id.* ¶¶ 10, 90, 93–95.

OCLC filed its Complaint, alleging breach of contract, unjust enrichment, tortious interference of contract and prospective business relationships, violation of Ohio Revised Code § 2913.04, trespass to chattels, conversion, and civil conspiracy. Compl., Dkt. 1. OCLC's claims rest in the Defendants' alleged scraping, hacking, and disseminating of WorldCat data. *Id*. OCLC alleges, among other things, that Defendants' conduct breached WorldCat.org's Terms and Conditions, which appear as a browsewrap agreement, that prohibits using the WorldCat data for commercial use; harvesting material amounts of the WorldCat data; distributing, displaying, or disclosing the WorldCat data; and storing the WorldCat data. *Id.* ¶¶ 123–125. OCLC also claimed that Defendants unjustly and intentionally interfered with OCLC's obligations to its customers under the WorldCat Rights and Responsibilities agreement by scraping and hacking WorldCat.org, specifically OCLC's obligations to maintain the WorldCat data, make it available in WorldCat.org so that individuals can easily search member libraries' catalogs, and use member-contributed data to support public purposes. *Id.* ¶¶ 43, 136–138. Defendants also allegedly accessed, used, and

3

damaged OCLC's WorldCat data and servers without authorization, amounting to trespass to chattels or, in the alternative, conversion. *Id.* ¶¶ 182–189, 198–205.

OCLC alleges that prior to initiating this action, it investigated Anna's Archive and the individuals behind it. *Id.* ¶ 107. Through this investigation, OCLC identified Defendant Maria Matienzo as a likely culprit behind Anna's Archive. *Id.* ¶ 108–112. Ms. Matienzo denied her involvement, and accordingly, filed a motion to dismiss the claims against her. Mot. to Dismiss, Dkt. 21.

OCLC was unable to obtain the physical address or other contact information besides email addresses for Anna's Archive. Mot. to Serve by Email, Dkt. 9, PageID 79–80. The Court permitted OCLC to serve Anna's Archive by email (Order, Dkt. 14), but Anna's Archive has thus far failed to respond to the Complaint or otherwise participate. The Clerk accordingly awarded OCLC an entry of default on June 28, 2024 against Anna's Archive. Entry of Default, Dkt. 39.

OCLC then moved for default judgment against Anna's Archive. Mot. for Default J., Dkt. 40. OCLC requested declaratory judgment, injunctive relief, and monetary damages. *Id*. On September 19, 2024, the Court requested additional briefing to support OCLC's motion for default judgment. Order for Suppl. Br'g, Dkt. 42. In its Order, the Court directed OCLC to explain "which claims it seeks default judgment on and why, as a matter of law, the facts it has pled in its complaint are sufficient to establish Anna's Archive's liability for each such claim" in light of the "complex and developing area of law" regarding the "legal proprietary of data harvesting." *Id.* at PageID 822. OCLC submitted its supplemental brief on October 22, 2024. Suppl. Br., Dkt. 46.

On March 21, 2025, the Court denied OCLC's motion for default judgment and Ms. Matienzo's motion to dismiss without prejudice. Op., Dkt. 47. The Court indicated in its opinion that it is not clear (1) when browsewrap agreements are enforceable under Ohio law; (2) whether

4

Ohio tort law prohibits data scraping, including claims for trespass to chattels, conversion, and tortious interference; and (3) whether OCLC's claims are preempted by federal copyright law or are they protected by a state-law interest. *Id.* The Court concluded it would certify Ohio-law questions to the Ohio Supreme Court for determination before it could truly consider OCLC's motion for default judgment or Ms. Matienzo's motion to dismiss. *Id.* OCLC voluntarily dismissed Ms. Matienzo with prejudice so that the litigation would focus on a final judgment against Anna's Archive. Voluntary Dismissal, Dkt. 48; Mot. to Reconsider, Dkt. 49.

### III. Questions of Law to be Answered

1. Whether Ohio law enforces browsewrap agreements when a user has actual or constructive knowledge of the agreement at issue, which is the standard adopted by other jurisdictions.

2. Whether data scraping that interferes with a party's operations and damages that party's servers gives rise to tort law claims under Ohio law, such as trespass to chattels, conversion, and tortious interference.

### IV. Name of Each Party

1. Plaintiff OCLC, Inc.

2. Defendant Anna's Archive f/k/a Private Library Mirror

3. Defendants John Does #1–20

### V. Names, Addresses, and Telephone Numbers of Counsel for Each Party

1. Plaintiff OCLC, Inc. is represented by:

   Jeffrey M. Walker (0096567), Trial Attorney
   Traci L. Martinez (0083989)
   Kathryn M. Brown (0100426)
   Brittany N. Silverman (0102263)
   **SQUIRE PATTON BOGGS (US) LLP**
   2000 Huntington Center
   41 South High Street
   Columbus, Ohio 43215
   Telephone: (614) 365-2700
   Fax: (614) 365-2499

5

        jeffrey.walker@squirepb.com
        traci.martinez@squirepb.com
        kathryn.brown@squirepb.com
        brittany.silverman@squirepb.com

2. Defendant Anna's Archive has not appeared and is not represented by counsel.

## VI. Designation of One of the Parties as the Moving Party

None of the parties moved for certification. Because the questions of Ohio law arise out of OCLC's pleadings, the Court designates Plaintiff OCLC, Inc. as the moving party.

## VII. Conclusion

The Court **CERTIFIES** the above questions of law to the Ohio Supreme Court. In accordance with Ohio Supreme Court Rule of Practice 9.03(A), the Clerk of the United States District Court for the Southern District of Ohio is instructed to serve copies of this certification upon all parties or their counsel and file this certification order under the seal of this Court with the Clerk of the Ohio Supreme Court.

**IT IS SO ORDERED.**

Date: _____     _____
                                                                    Judge Michael H. Watson
                                                                    UNITED STATES DISTRICT JUDGE