## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

OCLC, Inc.,

      Plaintiff,

      v.

Anna's Archive, f/k/a
Pirate Library Mirror, *et al.*,

      Defendants.

Case No. 2:24-cv-144

Judge Michael H. Watson

Magistrate Judge Deavers

## OPINION AND ORDER

The Court certifies two questions of Ohio law to the Supreme Court of

Ohio.  To comply with Ohio Supreme Court Rule of Practice 9.01, the Court

provides the following information.

## I.     NAME OF THE CASE

*OCLC, Inc. v. Anna's Archive, et al.*, Case No. 2:24-cv-00144-MHW-EDP,

United States District Court for the Southern District of Ohio.

## II.     STATEMENT OF FACTS

OCLC provides the digital infrastructure and services for libraries to create

and share bibliographic records through WorldCat—the world's most

comprehensive database of information about library collections, built by OCLC

and thousands of library members.  Compl. ¶¶ 1–2, 30, 33–34, ECF No. 1.

OCLC's members must purchase a subscription to use WorldCat.  *Id.* ¶ 44.
Members must also agree to OCLC's contractual requirements, including the
WorldCat Rights and Responsibilities.  *Id.* ¶ 42.  In turn, OCLC agrees to
maintain the WorldCat data, enrich the data, make it available in WorldCat.org for
discovery purposes, and otherwise "use member-contributed data to support its
public purposes and to benefit the cooperative."  *Id.* ¶ 43.

WorldCat.org is the world's largest library catalog website.  *Id.* ¶ 46.
Individuals use the WorldCat.org search engine to query library holdings
represented in the WorldCat database.  *Id.* ¶ 46–47.  According to OCLC's
Complaint, when an individual accesses WorldCat.org, the individual agrees to a
browsewrap agreement—OCLC's WorldCat.org Services Terms and Conditions
("Terms and Conditions").  *Id.* ¶ 58.  Through acceptance of the Terms and
Conditions, OCLC grants the individual a license to use WorldCat data available
on WorldCat.org for a limited purpose, and, in exchange, the individual agrees,
among other limitations, not to use the data for commercial use; not to harvest
"material amounts" of data; not to distribute, display, or disclose the data; and not
to store the data.  *Id.*

On January 12, 2024, OCLC filed this action against Defendants Anna's
Archive, Maria Matienzo, and John Does #1–20 after a series of "cyberattacks"
on OCLC's WorldCat.org in 2022 and 2023.  Compl., ECF No. 1.  As alleged in
OCLC's Complaint, through these "attacks," a group of "hackers" harvested
WorldCat data by scraping WorldCat.org and calling OCLC's servers to harvest

"proprietary, enriched, and aggregated" data. *Id.* ¶¶ 76–78. The "hackers" also obtained a member's login credentials, which they used to steal WorldCat data from a member university's subscription-based version of WorldCat.org. *Id.* ¶¶ 79–80. The "hackers" again pinged OCLC's Ohio servers, but this time, they could authenticate these requests with member credentials. *Id.* OCLC asserts that the "hacking" materially affected OCLC's production systems and servers, requiring around-the-clock efforts from November 2022 to March 2023 to attempt to limit service outages and slowdowns and to maintain the production systems' performance for customers. *Id.* ¶ 81. OCLC alleges that customers nonetheless experienced significant disruptions in paid services because of the attacks, requiring OCLC to create system workarounds to ensure services functioned. *Id.* ¶ 82.

According to OCLC's Complaint, Anna's Archive took credit for the "cyberattacks" in an October 2023 blog post, stating, "[o]ver the past year, we've meticulously scraped all WorldCat records" by taking advantage of "security flaws" OCLC allegedly had in its "backend systems." *Id.* ¶¶ 10, 86, 89. In the blog post, Anna's Archive explained that it scraped 2.2 terabytes of WorldCat data from WorldCat.org to "create a TODO list of remaining books" to pirate. *Id.* ¶ 87–91. Anna's Archive incorporated the WorldCat data into its search engine, made the data available en masse for free, and encouraged its users to download and analyze the data by creating a "mini-competition for data scientists." *Id.* ¶¶ 10, 90, 93–95.

OCLC sued, alleging breach of contract, unjust enrichment, tortious interference with contract and prospective business relationships, violation of Ohio Revised Code § 2913.04, trespass to chattels, conversion, and civil conspiracy.  Compl., ECF No. 1.  OCLC's claims rest in Defendants' alleged scraping, hacking, and disseminating of WorldCat data.  *Id.*  OCLC alleges, among other things, that Defendants' conduct breached WorldCat.org's Terms and Conditions, which appear as a browsewrap agreement, that prohibits using the WorldCat data for commercial use; harvesting material amounts of the WorldCat data; distributing, displaying, or disclosing the WorldCat data; and storing the WorldCat data.  *Id.* ¶¶ 123–125.  OCLC also claimed that Defendants unjustly and intentionally interfered with OCLC's obligations to its customers under the WorldCat Rights and Responsibilities agreement by scraping and hacking WorldCat.org, specifically OCLC's obligations to maintain the WorldCat data, make it available in WorldCat.org so that individuals can easily search member libraries' catalogs, and use member-contributed data to support public purposes.  *Id.* ¶¶ 43, 136–138.  Defendants also allegedly accessed, used, and damaged OCLC's WorldCat data and servers without authorization, amounting to trespass to chattels or, in the alternative, conversion.  *Id.* ¶¶ 182–189, 198–205.

OCLC alleges that prior to initiating this action, it investigated Anna's Archive and the individuals behind it.  *Id.* ¶ 107.  Through this investigation, OCLC identified Defendant Maria Matienzo as a likely culprit behind Anna's

Archive. *Id.* ¶ 108–112.  Matienzo denied her involvement and, accordingly, moved to dismiss the claims against her.  Mot. to Dismiss, ECF No. 21.

OCLC did not obtain a physical address or other contact information besides email addresses for Anna's Archive.  Mot. to Serve by Email, ECF No. 9, PageID # 79–80.  The Court permitted OCLC to serve Anna's Archive by email, ECF No. 14, but Anna's Archive has thus far failed to respond to the Complaint or otherwise participate.  The Clerk accordingly awarded OCLC an entry of default on June 28, 2024, against Anna's Archive.  Entry of Default, ECF No. 39. OCLC then moved for default judgment against Anna's Archive.  Mot. for Default J., ECF No. 40.  OCLC requested declaratory judgment, injunctive relief, and monetary damages.  *Id.*  On September 19, 2024, the Court requested additional briefing to support OCLC's motion for default judgment.  Order for Suppl. Br'g, ECF No. 42.  In its Order, the Court directed OCLC to explain "which claims it seeks default judgment on and why, as a matter of law, the facts it has pled in its complaint are sufficient to establish Anna's Archive's liability for each such claim" in light of the "complex and developing area of law" regarding the "legal propriety of data harvesting." *Id.* at PAGEID # 822.  OCLC submitted its supplemental brief on October 22, 2024.  Suppl. Br., ECF No. 46.

On March 21, 2025, the Court denied without prejudice OCLC's motion for default judgment and Ms. Matienzo's motion to dismiss.  Op., ECF No. 47.  The Court flagged in its Opinion that it is unclear (1) when browsewrap agreements are enforceable under Ohio law; (2) whether Ohio tort law (trespass to chattels,

conversion, and tortious interference, among others) prohibits data scraping; and

(3) whether OCLC's claims are preempted by federal copyright law. *Id.* The

Court concluded it would certify questions to the Supreme Court of Ohio for

determination before considering OCLC's motion for default judgment or

Matienzo's motion to dismiss. *Id.*

OCLC moved to dismiss Ms. Matienzo with prejudice so that the litigation

would focus on a final judgment against Anna's Archive. Joint Motion to Dismiss,

ECF No. 51; *see also* Notice of Voluntary Dismissal, ECF No. 48. The Court

granted that motion. Order, ECF No. 52.

## III.    QUESTIONS OF OHIO LAW TO BE CERTIFIED

1. What level of knowledge of browsewrap terms must a website user
   have for those terms to be enforceable against the website user under
   Ohio law?

2. Whether and under what circumstances data scraping gives rise to
   tort claims, such as trespass to chattels, conversion, and tortious
   interference, under Ohio law.

## IV.    NAME OF EACH PARTY

1. Plaintiff OCLC, Inc.

2. Defendant Anna's Archive f/k/a Private Library Mirror

3. Defendants John/Jane Doe #1–20

### V.     NAMES, ADDRESSES, AND TELEPHONE NUMBERS OF COUNSEL FOR EACH PARTY.

1. Plaintiff OCLC, Inc. is represented by:
   Jeffrey M. Walker (0096567), Trial Attorney
   Traci L. Martinez (0083989)
   Kathryn M. Brown (0100426)
   Brittany N. Silverman (0102263)
   **SQUIRE PATTON BOGGS (US) LLP**
   2000 Huntington Center 41 South High Street
   Columbus, Ohio 43215
   Telephone: (614) 365-2700
   jeffrey.walker@squirepb.com
   traci.martinez@squirepb.com
   kathryn.brown@squirepb.com
   brittany.silverman@squirepb.com

2. Counsel for Defendants Anna's Archive and Doe 1–20 have not appeared.

### VI.     DESIGNATION AS ONE PARTY AS THE MOVING PARTY

Because the questions of Ohio law arise out of OCLC's pleadings, the

Court designates OCLC as the moving party.

### VII.     CONCLUSION

The Court **CERTIFIES** the above questions to the Supreme Court of Ohio.

Per Ohio Supreme Court Rule of Practice 9.03(A), the Clerk of the United States

District Court for the Southern District of Ohio shall serve copies of this

certification upon all parties or their counsel and file this certification order under

the seal of this Court with the Clerk of the Supreme Court of Ohio.

**IT IS SO ORDERED.**

MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT